RICHARD J. NELSON (State Bar No.  141658)
E-Mail:      *rnelson@sideman.com*
LOUIS P. FEUCHTBAUM (State Bar No.  219826)
E-Mail:      *lfeuchtbaum@sideman.com*
ANGELA M. HE (State Bar No.  319351)
E-Mail:      *ahe@sideman.com*
ARTUR A. MINASYAN (State Bar No.  322248)
E-Mail:      *aminasyan@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:      (415) 392-1960
Facsimile:      (415) 392-0827

Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>              Plaintiffs,<br><br>        v.<br><br>DEXON COMPUTER, INC., A Minnesota Corporation,<br><br>              Defendant. | CASE No.  3:20-cv-4926 CRB<br><br>**PLAINTIFFS CISCO SYSTEMS, INC. AND CISCO TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANT DEXON COMPUTER, INC.'S MOTION TO DISMISS**<br><br>Date:  November 19, 2020<br>Time:  10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge:    Honorable Charles R. Breyer |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## <u>TABLE OF CONTENTS</u>

2

Page

3    I.     INTRODUCTION ............................................................................................ 1

4    II.    STATEMENT OF FACTS ............................................................................... 1

5           A.     Dexon Procures Cisco Products And Service Contracts From Within
                   California For Resale ........................................................................... 2

6
7           B.     Dexon Directs its Sales to California .................................................. 4

8           C.     Dexon's Online Conduct Directed at California .................................. 5

9           D.     Cisco's Timely Filing Of This Opposition .......................................... 6

10   III.   ARGUMENT ................................................................................................... 6

11          A.     The Legal Standard For Personal Jurisdiction in California ................. 7

12          B.     Personal Jurisdiction Is Justified By Dexon's Torts Committed In California ........ 8

13          C.     Personal Jurisdiction Is Supported By Dexon's Purposeful Activities in
                   California That Give Rise to Cisco's Claims ....................................... 9

14                 1.     Dexon's Sales to California ...................................................... 10

15                 2.     Dexon's Continuous Interactions with PFT .............................. 11

16                 3.     Dexon Directing Its Business to California Through Its Website .............. 11

17                 4.     Cisco's Claims Arise from Dexon's Contacts with California .................. 13

18          D.     The Exercise of Personal Jurisdiction is Reasonable ............................ 13

19          E.     Dexon's Request For Transfer Should Be Denied Because The Private and
                   Public Interest Factors Do Not Favor Transfer ....................................... 14

20          F.     Jurisdictional Discovery ...................................................................... 15

21   IV.    CONCLUSION ................................................................................................ 16

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*As You Sow v. Crawford Laboratories, Inc.*
   50 Cal.App.4th 1859 (1996)...................................................................................10

6
*Ballard v. Savage,*
7    65 F.3d 1495 (9th Cir. 1995).............................................................................7, 13

8
*Boschetto v. Hansing,*
   539 F.3d 1011 (9th Cir. 2008).............................................................................7, 8
9

*Brayton Purcell LLP v. Recordon & Recordon,*
10    606 F.3d 1124 (9th Cir. 2010).................................................................................7

11
*Burger King Corp. v. Rudzewicz*
12    471 US 462 (1985) ....................................................................................7, 8, 13

13
*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv.,*
   *Inc.,*
14    788 F.2d 535 (9th Cir. 1986)...................................................................................15

15
*Caruth v. International Psychoanalytical Ass'n,*
   59 F.3d 126 (9th Cir. 1995).......................................................................................7
16

*Cisco Systems, Inc., et. al. v. Dexon Computer, Inc.,*
17    Case No. 3:11-cv-1455 WHA (N.D. Cal. 2011) .......................................................5

18
*Cisco Systems, Inc. et al. v. Zahid Sheikh et al.,*
19    Case No. 4:18-cv-07602-YGR ..................................................................................2

20
*Daimler AG v. Bauman,*
21    571 U.S. 117 (2014) ..................................................................................................7

22
*Dole Food Co., Inc. v. Watts*
   (9th Cir. 2002) 303 F.3d 1104.................................................................................14
23

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.,*
24    905 F.3d 597 (9th Cir. 2018)....................................................................................8

25
*GTE New Media Services Inc. v. BellSouth Corp.*
   (D.C. Cir. 2000) 199 F.3d 134 ...............................................................................15
26

27
*International Shoe Co. v. State of Wash., Office of Unemployment Compensation &*
   *Placement*
28    326 US 310 (1945) ....................................................................................................7

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

*Jones v. GNC Franchising, Inc.*
    (9th Cir. 2000) 211 F.3d 495.............................................................................14

*Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*,
    Case No. 17-cv-04992-BLF, 2019 WL 4888693 (N.D. Cal. Sep. 26, 2019).........................3, 7

*Philip Morris USA Inc. v. Liu*,
    489 F. Supp. 2d 1119 (C.D. Cal. 2007)....................................................................8

*Philip Morris USA inc. v. Shalab*,
    352 F.Supp.2d 1067 (C.D. Cal. 2004)....................................................................11

*Picot v. Weston*
    780 F. 3d 1206 ( 9th Cir. 2015)........................................................................7, 9

*Premier Fabrics, Inc. v. Walters and Mason Retail, Inc.*
    Case No. CV 18-2126-JFW(SKX), 2018 WL 6164766 (C.D. Cal., Aug. 1,
    2018)..........................................................................................................11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)..............................................................................7

*Shamsuddin v. Vitamin Research Products*
    (D.Md.2004) 346 F.Supp.2d 804 ........................................................................12

*Snowney v. Harrah's Entertainment, Inc.*
    (2005) 35 Cal.4th 1054 [29 Cal.Rptr.3d 33, 112 P.3d 28]........................................12

*Walden v. Fiore*
    571 US 277 (2014)............................................................................................7

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
    433 F3d 1199 (9th Cir. 2006)(en banc)..................................................................7

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*
    (W.D.Pa.1997) 952 F.Supp. 1119 ........................................................................12


**Statutes**

15 U.S.C. §§ 1051, et. seq.....................................................................................8

15 U.S.C. § 1114, 1117(c), and 1125(a)(1)(A), i.e. ....................................................15

15 U.S.C. § 1114(a)..............................................................................................8

28 USC § 1404(a)..............................................................................................14

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**Other Authorities**

Fed. R. Civ. P.  12(b)(2) ..................................................................................................7

Fed. R. Civ. P. 60(b) .......................................................................................................6

U.S. Constitution ..............................................................................................................7

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco") hereby

2    submit their Opposition to Dexon Computer, Inc.'s ("Dexon's") Motion to Dismiss [ECF Doc. #

3    10]. Cisco's Opposition is based upon this filing, and the concurrently filed Declaration of Louis

4    P. Feuchtbaum in support of that Opposition.

5                                **I.      INTRODUCTION**

6        Dexon Computer, Inc. is a long-time trafficker in counterfeit Cisco products.   In fact,

7    during 2011, after Dexon had a search warrant executed by the FBI at its facility, which revealed a

8    large number of counterfeit Cisco products, and after Dexon repeatedly ignored Cisco's demand

9    letters that Dexon cease and desist selling counterfeit Cisco products, Cisco sued Dexon in the

10   U.S. District Court for the Northern District of California, in an attempt to deter Dexon from

11   further illegal conduct.   That lawsuit was eventually settled, pursuant to a confidential agreement.

12   Unfortunately, Dexon has remained undeterred.

13       In the intervening nine years, since Cisco first sued Dexon, Dexon has continued to traffic

14   in counterfeit Cisco products.   Again, it has repeatedly ignored Cisco's demands that it cease and

15   desist that illegal conduct.   It reneged on several promises it had made to assist Cisco's

16   investigations into illegal conduct.   Dexon's bad conduct appears unabated.

17       In carrying out its counterfeit trafficking schemes, Dexon has repeatedly directed its

18   conduct at California.   It has procured numerous Cisco products from resellers within this state,

19   including counterfeits that it has resold.   It has shipped counterfeit Cisco products from within

20   California.   It has repeatedly sought assistance from Cisco, a company that it knows is not only

21   headquartered here, but also performs a significant amount of its business activity from within this

22   state.   Significantly, Dexon has also committed torts that are at issue in Cisco's complaint in

23   California.   California's personal jurisdiction over Dexon in this matter is established by both an

24   overall weighing of its conduct here, and by the fact that it has committed the torts at issue in this

25   lawsuit within the state.

26                              **II.      STATEMENT OF FACTS**

27       Since at least 2006, Dexon has directed its business activities at people and entities within

28   the state of California to procure and sell counterfeit Cisco products, and commit other tortious

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

acts.  [Cisco's Complaint, ECF Document No. 1, ("Doc. 1"), ¶¶ 25, 27.]  This conduct includes: the purchase of counterfeit and other Cisco products from various procurement sources within the state; the sale of products to purchasers within California, which include the sales of counterfeit Cisco products; procuring service contracts on Cisco products from Cisco partners in California; advertising and soliciting business within California; communications with Cisco regarding technical assistance on its products; and, downloading upgrades for Cisco products.

### A.   Dexon Procures Cisco Products And Service Contracts From Within California For Resale

Dexon regularly directs its activities towards California to procure Cisco products, including counterfeits, and certain Cisco service contracts that it can only obtain through subterfuge.

In 2006, Dexon procured counterfeit Cisco products from Arbitech, LLC, a reseller in Irvine, California.  [Doc. 1 at ¶ 27]  Again, during March 2019, Dexon procured a Cisco product from Arbitech that the end user complained did not work because it had "compliance" issues. [Concurrently filed Declaration of Louis P. Feuchtbaum In Support of Opposition to Dexon's Motion to Dismiss ("Feuchtbaum Decl."), ¶ 1]

On at least 125 different occasions, between January 16, 2017 and June 19, 2019, Dexon ordered Cisco products from PureFutureTech ("PFT"), a company located in Alameda County, California.  Over those 30 months, Dexon purchased a massive quantity of Cisco products—2,779 in total.  [Feuchtbaum Decl., ¶ 2.]  Cisco has inspected some of these products and determined they are counterfeit.   [Doc. 1, ¶¶ 45-46]   Cisco's complaint also describes how most of the remaining products that Dexon acquired from PFT are also counterfeit.[1]  *Id.*

For example, during the period from March through July 2018, Dexon purchased 31 Cisco-branded products from PFT, which PFT had acquired from HongKongSellsi. [Feuchtbaum Decl.,

---

[1] Cisco sued PureFutureTech and related companies for sales of counterfeit Cisco products, in a an action that is pending in this court.  *Cisco Systems, Inc. et al. v. Zahid Sheikh et al.,* Case No. 4:18-cv-07602-YGR.

¶ 3]  As Cisco alleges in its complaint, Cisco believes that all 31 of these products are counterfeit because HongKongSellsi is known to sell products that are predominantly counterfeit.[2]  *Id.*  Cisco was able to locate and inspect five of these products that Dexon had acquired from PFT.  [Doc. 1, ¶ 45]  Each of those five products is counterfeit.  *Id.*

Further, it seems likely that a large portion of the remaining products that Dexon procured from PFT are also counterfeit based upon PFT's known practices.  As one former employee of the organization that controls PFT testified under oath, PFT ordered Cisco products from sources in China and had them shipped to a receiving station in Nevada.[3]  [Doc. 1, ¶ 46]  From Nevada, the products were sent to a UPS store near PFT's Fremont location, and then someone would drive to that location to pick up the "Cisco" products and counterfeit labels.  The evidence is quite clear that PFT engaged in counterfeiting operations in Fremont; employees witnessed other employees placing counterfeit Cisco labels on the products, and have testified under oath about it.  *Id.*  Indeed, Cisco has analyzed dozens of transceivers that were sold by the organization that controls PFT and determined that they were all counterfeit.  *Id.*

Furthermore, during the period from September 2017 through September 2018, Dexon purchased more than 285 Cisco products from a California reseller located in Anaheim, at a cost of more than $169,000.  [Feuchtbaum Decl., ¶ 4a]  Cisco determined that at least six (and likely many more) of those products are counterfeit.  [Feuchtbaum Decl., ¶ 4b]  Dexon had resold these six "Cisco" modules  for use by the U.S. Navy in Guam.  *Id.*

Dexon has also purchased from Cisco's authorized resellers in California certain service contracts that Cisco offers for sale only through its authorized distribution channel ("SMARTnet").  SMARTnet service contracts provide Cisco end users with a means to promptly

---

[2] Cisco sued HongKong Sellsi and others in 2018.  *Cisco Systems, Inc. et al. v. Beccela's Etc., LLC, Case No. 18-cv-00477-BLF.*  HongKong Sellsi did not respond to the complaint, and the Clerk entered default.

[3] Use of the Nevada import address was apparently PFT's attempt to conceal from U.S. Customs and Border Patrol ("USCBP") that PFT was the importer.  USCBP had previously seized a shipment of counterfeit Cisco products that PFT was attempting to import.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   assess any technical issues that arise with a given product.  When those issues cannot be resolved

2   remotely by Cisco's Technical Assistance Center, SMARTnet allows the end users to get an

3   "advanced replacement" of that product, where Cisco sends a free replacement prior to the end

4   user returning to Cisco the malfunctioning product.  [Feuchtbaum Decl., ¶ 5]  Normally, Cisco

5   limits the sale of SMARTnet contracts to only the original end user of products, where the end

6   user purchased the product from Cisco's authorized distribution channel.  Products purchased

7   otherwise can only be covered by SMARTnet after, *inter alia*, the products have been inspected to

8   ensure that they are not counterfeit, and have not been altered.

9       During July 2018, Dexon reached into California to wrongfully acquire SMARTnet

10  service contracts from a reseller in Anaheim.  [Feuchtbaum Decl., ¶ 4b]  Dexon then resold those

11  SMARTnet contracts for use by the U.S. Navy on three of the counterfeit Cisco products, which

12  Dexon also sold.  *Id.*  In addition to these SMARTnet contracts being relevant to Cisco's claims

13  regarding Dexon's sales of counterfeit products that are at issue in the Complaint, they are also

14  relevant to Cisco's Unfair Business Practices claim.[4]

15  **B.    Dexon Directs its Sales to California**

16      In addition to Dexon purchasing counterfeit Cisco products from vendors in California, as

17  described above, Dexon also sells counterfeit Cisco products into this state.  Cisco's Complaint

18  describes two different occasions when Dexon sold counterfeit Cisco products into California.

19  [Doc. 1, ¶¶ 34, 39]  While it is worth noting that Cisco currently has only a limited ability to

20  identify all of Dexon's sales activity in California, legitimate or otherwise, Dexon itself described

21  conducting a significant amount of business here.  Over a 27-month period, Dexon purposefully

22  directed its business activities from Minnesota to California on such a sustained basis that it

23

24

25  _____

26  [4] Cisco anticipates seeking leave to amend its complaint to include the additional allegations that
27  are described in this Opposition.

28

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    derived 2.9% of its total revenues from sales in this state.[5]  [Dexon's Motion to Dismiss, ECF

2    Document # 10 ("Doc. 10") at 8:9-13.]

3        **C.     Dexon's Online Conduct Directed at California**

4        Going back to at least 2006, Dexon has solicited business from California residents

5    through a website it maintains that advertises products it sells, including those manufactured by

6    Cisco.  That website presently provides a means for Dexon's California-based customers to submit

7    inquiries regarding the purchase of products, including Cisco products, and it also provides a "Pay

8    Portal" through which purchasers in California can submit payment to Dexon.  In addition to its

9    maintenance of this website, Dexon has repeatedly directed its electronic activity towards Cisco,

10   which Dexon understands operates its headquarters and much of its operations from San Jose,

11   California.[6]

12       During the period from March 2018 through February 2019, Dexon accessed over 3,100

13   webpages that Cisco maintains on its website for the purpose of providing product information

14   and technical support, among other things, on over 465 different occasions.  [Feuchtbaum Decl., ¶

15   7]  These contacts included requests for technical assistance on counterfeit Cisco products that

16   Dexon was attempting to sell.  *Id.*  Further, between December 2012 and February 2019, Dexon

17   has downloaded software from Cisco's servers on at least 172 occasions, including software that

18   Cisco believes was intended for installation on counterfeit Cisco products.  *Id.*

19

20

21   _____

22   [5]  According to Dexon, it derived 2.9% of its revenue from California sales during the period
     between July 1, 2017 and December 31, 2019.  [Doc. 10, 8:9-13.]  It is unclear why Dexon chose
23   those dates, especially since they comprise only a small portion of the relevant time period that is
     described in Cisco's Complaint.  Thus, it is also unclear whether Dexon might have derived more
24   than 2.9% of its revenue from California during that relevant period.

25   [6]  Dexon is aware that Cisco operates its headquarters and many of it business operations from
     California as the result of Cisco's disclosures in another lawsuit that Cisco prosecuted against
26   Dexon for trademark counterfeiting, among other causes of action, here in the Northern District of
     California.  *See Cisco Systems, Inc., et. al. v. Dexon Computer, Inc.*, Case No.  3:11-cv-1455
27   WHA (N.D. Cal. 2011).

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**D.   Cisco's Timely Filing Of This Opposition**

At about 3:20 p.m. on October 15, 2020, Dexon's counsel filed a "Notice of Non-Receipt of Opposition to [Dexon's Motion to Dismiss]." [Feuchtbaum Decl., ¶ 8]  That notice mistakenly indicated that Cisco had not filed a response to Dexon's Motion to Dismiss within the time allowed.  *Id.*  It asked the Court to deem Cisco as having consented to the motion, and to dismiss Cisco's complaint.  *Id.*

Shortly after receiving this notice, Cisco's counsel contacted Amanda Washton, Dexon's counsel who filed the notice, to inform her that Cisco's response to the motion was not due until October 16th, as indicated in the docket.  [Feuchtbaum Decl., ¶ 9]  Cisco requested Dexon withdraw its notice and its request for summary dismissal of this action.  *Id.*

In response, Ms. Washton indicated that she had seen the October 16th deadline for Cisco's response on the docket, but that she regarded that deadline as invalid.  [Feuchtbaum Decl., ¶ 10]  Ms. Washton denied Cisco's request to withdraw the notice and indicated that Cisco should raise any concerns it has with the court.  *Id.*  Cisco promptly notified this Court's Courtroom Deputy that it would be timely filing its opposition.  *Id.*  If Cisco is somehow in error and this filing is late, it requests that the Court allow any additional briefing as may be necessary for the Court to consider this Opposition, pursuant to Fed. R. Civ. P. 60(b).

**III.   ARGUMENT**

This Court has personal jurisdiction over Dexon because Dexon has committed tortious acts at issue in this lawsuit within this state.  Dexon has also directed significant other relevant activities towards California and maintained contacts within the state, as evidenced by the wide array of sales, purchases, and business solicitations it conducted here.  Further, California's jurisdiction here is reasonable.

Dexon's suggestion that the case should be transferred to Minnesota because California is an inconvenient forum is not justified.  A balancing of the relevant factors show that the action should be maintained here.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

### A.   The Legal Standard For Personal Jurisdiction in California

When opposing a jurisdictional challenge under Rule 12(b)(2), Cisco "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "[U]ncontroverted allegations in the complaint must be taken as true," and any conflicts in the evidence must be resolved in Cisco's favor.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Where the motion is based on written materials, Cisco is required only to "make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995); *see also, Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

Federal courts ordinarily follow state law in determining the bounds of that state's personal jurisdiction over a foreign defendant.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S.  Constitution.  *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008).

Due process requires that the Defendant have certain minimum contacts with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement* 326 US 310, 316 (1945)(internal quotations omitted); *Walden v. Fiore* 571 US 277, 283 (2014).  Where a foreign defendant has not committed a relevant tort within the forum state, personal jurisdiction may still exist in the forum when: (1) the out-of-state defendant purposefully directed its activities toward residents of the forum state or otherwise established contacts with the forum state; (2) the plaintiff's claim arises out of or results from defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction is reasonable in that it comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz* 471 US 462, 477-478 (1985); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme* 433 F3d 1199, 1206 (9th Cir. 2006)(en banc).  The defendant's relevant activities require only "an intent to perform an actual, physical act in the real world." *See Picot v. Weston* 780 F. 3d 1206, 1214 ( 9th Cir. 2015); *see also, Monterey Bay Military Hous., LLC v. Ambac*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  *Assurance Corp.*, Case No.  17-cv-04992-BLF, 2019 WL 4888693, at *29 (N.D.  Cal.  Sep.  26,

2  2019) (plaintiff's allegation that defendant intentionally misrepresented material facts regarding

3  loan subsidies meets threshold test).

4       Additionally, personal jurisdiction is likely to exist with respect to a particular case when a

5  foreign defendant commits a tortious act at issue in that case within the forum.  *See Freestream*

6  *Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).  Generally, where a

7  defendant commits a tortious act in the forum state, the plaintiff's burden under the *Burger King*

8  two-prong test has been satisfied, and the burden is shifted to the defendant to show that

9  jurisdiction would be unreasonable.  *See id.* ("Because Plaintiffs allege that Defendants committed

10 the intentional tort of defamation while present in the forum state, the first two prongs of the

11 minimum contacts test are satisfied here.")

12      After a plaintiff makes a prima facie showing that the first two prongs of the personal

13 jurisdiction test have been satisfied, the motion to dismiss must be denied unless the defendant can

14 make "a 'compelling case' that the exercise of jurisdiction would not be reasonable.  *Boschetto v.*

15 *Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

16 462, 476–78 (1985)).

17      Here, Dexon's motion to dismiss must be denied unless it can present a compelling case

18 that California jurisdiction would be unreasonable because the first two prongs of the personal

19 jurisdiction test are established in two separate and independent ways.  First, Dexon committed

20 tortious acts at issue in the lawsuit within this state.  Second, Cisco's claims arise as the result of

21 Dexon's purposeful conduct directed at California residents and its contacts with California.

22   **B.      Personal Jurisdiction Is Justified By Dexon's Torts Committed In California**

23      The gravamen of Cisco's complaint is related to Dexon's many violations of the Lanham

24 Act, which proscribes any use of a counterfeit registered trademark in commerce.  15 U.S.C. §§

25 1051, et. seq.  As described explicitly within that law, the use of a counterfeit registered trademark

26 in connection with the sale, advertising, or distribution of goods or services, among other things,

27 is actionable.  15 U.S.C. § 1114(a).  A defendant's ignorance that a trademark is counterfeit is no

28 defense as the Lanham Act is a strict liability statute.  *Philip Morris USA Inc. v. Liu*, 489 F. Supp.

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

2d 1119, 1122 (C.D. Cal. 2007).  Specific personal jurisdiction over Dexon exists in California because Dexon repeatedly committed torts at issue in this lawsuit within California by procuring counterfeit Cisco products from California for resale, and by selling counterfeit Cisco products into California.

As described in Cisco's complaint, Dexon sold counterfeit Cisco products to California on at least two occasions.  [Doc. 1 at ¶¶ 34, 39]  That these sales were made to Cisco's investigators is not determinative to whether they are relevant in evaluating personal jurisdiction.  The authorities that Dexon's Motion relies upon to claim that these sales are not relevant when made to a Cisco investigator are inapposite.  Those cases merely assert that test purchases into California are not *sufficient* to establish personal jurisdiction because a plaintiff should not be able to create jurisdiction wherever it pleases by making test purchases into a desired jurisdiction.  [Doc. 10 at 14:10-24]  However, such evidence can still demonstrate a defendant's intent to conduct relevant activity in the forum state.  *See Picot* 780 F. 3d at 1214 (holding that the proper focus is upon the defendant's intent to perform an act in the forum state).  But, far more significant than Dexon's sale of counterfeit Cisco products in California are Dexon's purchases of counterfeit products here.

Dexon committed actionable torts within California on every occasion when it procured a counterfeit Cisco product from California for resale.  These individual tortious acts consist of Dexon's: 2 procurements from Irvine; 5 procurements Cisco products from Alameda County, which Cisco established were counterfeit after inspecting them; an additional 26 procurements from Alameda County, which are highly likely counterfeit due to having been sourced from a company in China that sells almost exclusively counterfeit products; and 6 procurements from Anaheim, which Cisco determined are counterfeit based upon inspections it conducted of them.

### C.   Personal Jurisdiction Is Supported By Dexon's Purposeful Activities in California That Give Rise to Cisco's Claims

Separate and apart from personal jurisdiction existing in California due to Dexon having committed tortious acts here, Dexon is also subject to personal jurisdiction as the result of repeatedly and over a prolonged period of time directing its activities into California, which

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

activities are related to Cisco's claims.  Dexon transacts a significant amount of business in California, both buying and selling Cisco products, it also solicits business in this state, and it directs its actions to California when it seeks assistance directly from Cisco, which in addition to being a California corporation, operates its headquarters and a significant amount of its business in the state.

### 1.    Dexon's Sales to California

A significant portion of Dexon's sales are made in California.  By its own admission, Dexon made 2.9% of all its sales in California over a 29-month period.  [Doc. 10 at 8:9-13]  This seems especially significant given that Dexon is operated from a location near Minneapolis, which is about 2,000 miles away from this state.  It seems highly unlikely that a company could possibly conduct so many of its sales within a state from which it is so distant without intentionally, purposefully, and repeatedly directing its activity there.  While Dexon improbably claims that these sales are "de minimis," that misses the point and is irrelevant to the legal analysis.

Personal jurisdiction analysis rests not upon the "quantity of activity," but upon the defendant's purpose.  "Instead of focusing on the quantity of activity, [a court] must look to see if the defendant purposefully availed itself of the benefits and protections of California law to make it reasonably foreseeable to be 'haled into the court in the forum State' to defend itself in an action relating to its products."  *As You Sow v. Crawford Laboratories, Inc.* 50 Cal.App.4th 1859, 1870 (1996), as modified (Dec.  13, 1996) *citing World–Wide Volkswagen Corp. v. Woodson*, (1980) 444 U.S.  286, 297 (1980).   Indeed, Dexon conducted about three times as many sales in California as is sufficient to establish personal jurisdiction under established authority.  *See id.* (finding a sufficient basis for personal jurisdiction where defendant conducted less than 1% of its sales in California.)  While this activity, taken alone, should be sufficient to demonstrate that Dexon purposefully availed itself of the benefits and protections of California law to make it reasonably foreseeable that it could be haled into the court here, this is but one measure of Dexon's significant contacts with this state.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

### 2.     Dexon's Continuous Interactions with PFT

In addition to Dexon's sales into California, it repeatedly purchased Cisco products from California, including counterfeits.  Specifically, from 2017 to 2019, Dexon purchased numerous counterfeit Cisco products from PFT, a company located in Fremont, California.  [Doc. 1 at ¶¶44-46]  Between January 2017 and June 2019, Dexon purchased more than 2,770 Cisco products from PFT.  Dexon's purchases included 32 Cisco switches that are likely counterfeit and 5 switches that Cisco was able to inspect that are counterfeit.  Further, given sworn testimony that a former PFT employee offered about the company's operations, it seems unlikely that a well-established reseller such as Dexon would not have known about PFT's flagrant and open counterfeit trafficking.[7]

Importantly, it is not relevant to jurisdictional analysis whether Dexon knew that any of the products it was selling into California, or procuring from within California were counterfeit. [Doc. 10 at 15:26-28]  Ignorance is not a defense to violations of the Lanham Act.  *Philip Morris USA inc. v. Shalab*, 352 F.Supp.2d 1067, 1073-74 (C.D.  Cal.  2004)(citing 15 U.S.C.  § 1114). And even if Dexon presumably did not know that the products purchased from PFT were counterfeit, it definitely knew that the products it has sold for years were counterfeit because of Cisco's repeated cease and desist letters and a lawsuit against Dexon for its prior counterfeit trafficking activities.

### 3.     Dexon Directing Its Business to California Through Its Website

Finally, during the period of Dexon's infringing activity, it has and it continues to maintain a website (www.dexon.com) through which it solicits business throughout the United States,

---

[7]  Dexon's motion mistakenly relies upon *Premier Fabrics, Inc.*, an unpublished case, to suggest that purchasing counterfeit products in California is not sufficient to establish personal jurisdiction.  Of course, that ignores the fact that Dexon's California directed activities far exceed the mere purchase of counterfeit products.  But, it also misstates the rule proposed by that case. The court in that case found that the confluence of three facts supported defendant's argument that it was not subject to personal jurisdiction, which facts are not present here.  *See Premier Fabrics, Inc. v. Walters and Mason Retail, Inc.* Case No. CV 18-2126-JFW(SKX)) 2018 WL 6164766, at *5 (C.D. Cal., Aug.  1, 2018)

including within the State of California.  [Doc. 1 at ¶9]  As mentioned above, it was precisely through this website that the aforementioned sales to Cisco's investigators were made.   To determine whether a Web site is sufficient to establish purposeful availment, California Courts employ a sliding scale analysis, which is described in *Zippo Mfg.  Co. v. Zippo Dot Com, Inc.* (W.D.Pa.1997) 952 F.Supp. 1119.  *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1063 [29 Cal.Rptr.3d 33, 39, 112 P.3d 28, 33].

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, at p.  1124.

At a minimum, Dexon's website falls under the middle ground category because buyers can interact with the website to exchange information and pay for products.  Importantly, the California Supreme Court acknowledged that some courts attribute personal jurisdiction to such websites.  *See Shamsuddin v. Vitamin Research Products* (D.Md.2004) 346 F.Supp.2d 804, 810 ("Some courts have held that <u>sufficient minimum contacts are established, and the defendant is 'doing business' over the Internet where the defendant's website is capable of accepting and does accept purchase orders from residents of the forum state.</u>" (emphasis added.))  But even if not alone sufficient to establishing sufficient minimum contacts for personal jurisdiction, Dexon's website is yet one more California directed activity, which, taken collectively, warrant the exercise of specific personal jurisdiction.  *See Snowney v. Harrah's Entertainment, Inc.,* 35 Cal.4th 1054, 1065 (2005)("In any event, even assuming that defendants' Web site, by itself, is not sufficient to establish purposeful availment, the site in conjunction with defendants' other contacts with California undoubtedly is.")

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

### 4. Cisco's Claims Arise from Dexon's Contacts with California

Cisco satisfies the second prong of the personal jurisdiction test because all of the aforementioned California activity is the fertile ground from which Cisco's claims against Dexon arise.  For many years, Dexon has engaged in a scheme through which it purchased and sold counterfeit products from and within California.  It directed a significant portion of its business activities to this state through related business activities that it transacted here.  And, it continued to engage in this illegal conduct, without taking any apparent remedial action, after being repeatedly warned by Cisco about its misconduct.

Not surprisingly, Dexon attempts to minimize all of this by claiming that it merely performed "random, fortuitous or attenuated down-stream sales [of an] innocent 'middle man'[.]" [Doc. 10 at 16:15-20]  That simply understates the extent of Dexon's participation in active trafficking of counterfeit Cisco products in various states, *including California.*  It is also irrelevant because, even if true, the Lanham Act is a strict liability tort for which the actor's state of mind not an issue.

As a general rule, many courts use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities.  In other words, the element is satisfied if plaintiff would not have suffered loss "but for" defendant's activities.  *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995) .  Here, but for Dexon's stream of sales of counterfeit Cisco products into and from California, Dexon's purchases of counterfeit Cisco products from PFT, a known California-based trafficker of counterfeit Cisco products, Dexon's solicitation of business from California through its website, Cisco would not have suffered loss in the form of infringed trademarks and damages.  Therefore, Cisco's claims arise in a substantial part out of Dexon's contacts with California.

### D. The Exercise of Personal Jurisdiction is Reasonable

While, assuming that Cisco has satisfied its burden on the first two factors of the *Burger King* test, it is Dexon's burden to establish that personal jurisdiction here would be unreasonable, such an argument would be unavailing.  To determine the reasonableness of exercising personal jurisdiction, the courts consider several factors: (1) the extent of the defendants' purposeful

1   injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum;

2   (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest

3   in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

4   importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

5   existence of an alternative forum.  *Dole Food Co., Inc. v. Watts* (9th Cir. 2002) 303 F.3d 1104,

6   1114.  In review of these factors, the balance weighs in favor of personal jurisdiction here.

7   Here, Dexon argues that all of the alleged sales occurred outside California.  [Doc. 10 at

8   17:9-10]  This is simply not true.  Dexon had made numerous sales in California and even shipped

9   one package *from* California.  [Doc. 1 at ¶¶ 27, 34, 39]  Cisco agrees that one sale occurred in

10  Minnesota, but that does not tip the scale of fair play and substantial justice because Dexon's

11  infringing activity encompassed various states all of the United States.  Rather, looking at the

12  extent of Dexon's purposeful injection into California as described above, it is clear that personal

13  jurisdiction is proper.  Additionally, Dexon would not be substantially burdened by defending in

14  California because the implemented measures of safety resulting from the pandemic do not require

15  frequent appearances, if any.   Therefore, exercising jurisdiction over Dexon in California

16  comports with fair play and substantial justice, satisfying the third and final prong of the specific

17  personal jurisdiction analysis and this action is properly brought in this state.

18      **E.   Dexon's Request For Transfer Should Be Denied Because The Private and Public
            Interest Factors Do Not Favor Transfer**

19

20  "For the convenience of parties and witnesses, in the interest of justice," the court may

21  transfer an action "to any other district or division where it might have been brought or to any

22  district or division to which all parties have consented." 28 USC § 1404(a). Dexon correctly points

23  out that convenience and fairness are determined based on private and public interest factors.

24  *Jones v. GNC Franchising, Inc.* (9th Cir. 2000) 211 F.3d 495, 498.  These factors include:

25          (1) the location where the relevant agreements were negotiated and
            executed, (2) the state that is most familiar with the governing law, (3) the
26          plaintiff's choice of forum, (4) the respective parties' contacts with the
            forum, (5) the contacts relating to the plaintiff's cause of action in the chosen
27          forum, (6) the differences in the costs of litigation in the two forums, (7) the
            availability of compulsory process to compel attendance of unwilling non-
28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

party witnesses, and (8) the ease of access to sources of proof. *Id.* at 498-499.

Here, the balancing of factors does not favor a transfer.  First, California Courts are most familiar with the governing law.  Although Cisco alleges violations of 15 U.S.C. § 1114, 1117(c), and 1125(a)(1)(A), i.e., federal laws, it also alleges a violation of California common law unfair competition, trademark infringement and California unfair business practices i.e., California state laws. *Id.* at ¶55-84.  Stated differently, two out of five causes of actions require the application of California law.  Therefore, this factor favors California.  Second, Cisco chose California as the forum, which is a factor that Dexon admits also favors California.  [Doc. 10 at 18:19-20]  Third, Dexon's numerous contacts with California, especially its purchases of hundreds of products from various California resellers, cause a substantial portion of Cisco's allegations and claims to be dependent upon third-party witnesses who reside here.  The balance of factors here favors California as the contacts relating to many of Cisco's causes of action in California are here, *and* venue in California would allows ease of access to them and sources of proof, including the physical evidence that Cisco holds here. This balancing of the factors, therefore, warrants the litigation to occur in California as opposed to Minnesota.

## F.    Jurisdictional Discovery

If a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified. *GTE New Media Services Inc. v. BellSouth Corp.* (D.C. Cir. 2000) 199 F.3d 134.  Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).

If the Court is not convinced that there is a sufficient basis upon which to exercise personal jurisdiction over Dexon, it should allow Cisco to conduct limited jurisdictional discovery to obtain documents that are presently solely in Dexon's possession and are relevant to establishing personal jurisdiction, such as the volume of Dexon's sales to this state for the relevant time period,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  or customer complaints regarding counterfeit products that involve either the sale or procurement

2  of those products from within this state.

3  ## IV.   CONCLUSION

4  The U.S. District Courts within California have personal jurisdiction over Dexon in this

5  matter because: (1) Dexon committed tortious acts within this state that are at issue in this lawsuit;

6  (2) Even if Dexon had not committed any tortious acts within California, Cisco's claims arise as

7  the result of Dexon's purposeful conduct directed at California residents and its contacts with

8  California; and, (3) California jurisdiction is reasonable.  In short, Dexon's conduct in the state

9  should have caused it to anticipate being reasonably haled into court here.

10  Further, the case should not be transferred on the basis of the Norther District of California

11  being an inconvenient forum for Dexon.  Dexon should not be able to conduct the amount of

12  activity that it did in California, including illegal activity, and then demand that all Cisco

13  evidence, witnesses, third-party witnesses that reside in the state, and all California claims be

14  transferred to Minnesota.

16  DATED:  October 16, 2020             SIDEMAN & BANCROFT LLP

17                                      By:      /s/ *Artur A. Minasyan*
                                              _____
18                                            ARTUR A. MINASYAN
                                              Attorneys for Plaintiffs Cisco Systems, Inc.
19  2835-290\4554823                           and Cisco Technology, Inc.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711