John A. Conkle (SB# 117849)
Amanda Washton (SB# 88324)
a.washton@conklelaw.com
**CONKLE, KREMER & ENGEL, PLC**
3130 Wilshire Boulevard
Suite 500
Santa Monica, CA 90403
Tel:  (310) 998-9100

Michael M. Lafeber (*pro hac vice*)
mlafeber@taftlaw.com
O. Joseph Balthazor Jr. (*pro hac vice*)
jbalthazor@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: 612.977.8400
Fax: 612.977.8650

Attorneys for Movant
Dexon Computer, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., and CISCO TECHNOLOGY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DEXON COMPUTER, INC.,<br><br>Defendant. | CASE NO: 3:20-cv-4926<br><br>**DEFENDANT DEXON COMPUTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**Date**: November 19, 2020<br><br>**Time**: 10:00 a.m.<br><br>**Location**: Courtroom 6, 17th Floor<br><br>**Judge**: Honorable Charles R. Breyer |

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 3

II. CISCO'S ALLEGATIONS DO NOT ESTABLISH EXPRESS AIMING ...... 3

    A. Purposeful Direction Test ................................................................................ 3

    B. Purported Contacts Relied on by Cisco do not Constitute "Purposeful Direction" ......................................................................................................... 4

        1. Sales to Cisco's Investigators ........................................................ 4

        2. Procurement from a California Company ................................. 5

        3. Dexon's Minimal Sales of Cisco Product ................................... 6

        4. Passive Website ............................................................................... 8

    C. Transfer ............................................................................................................ 10

    D. Jurisdictional Discovery ................................................................................ 10

III. CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*,
   No. 15-CV-02991-JST, 2015 WL 5834135 (N.D. Cal. Oct. 7, 2015) ......... 10, 12

*As You Sow v. Crawford Laboratories, Inc.*
   50 Cal.App.4th 1859 (1996), *as modified* (Dec. 13, 1996) ................................ 10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ................................................................ 5, 6, 8, 9

*Bancroft & Masters, Inc. v. August Nat. Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ............................................................................ 13

*Cisco Sys. Inc. v. Link US, LLC*,
   No. 18-CV-07576-CRB, 2019 WL 6682838 (N.D. Cal. Dec. 6,
   2019) ........................................................................................................ 6, 7, 14

*Erickson v. Nebraska Mach. Co.*,
   No. 15-cv-01147, 2015 WL 4089849 (N.D. Cal. July 6, 2015) ......................... 12

*Frankie Valli & The Four Seasons v. EMI Music Publ'g Ltd.*,
   No. 17-cv-7831-MWF (JCX), 2018 WL 6136818 (C.D. Cal. May
   22, 2018) ............................................................................................................ 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ........................................................................... 13

*Millennium Enterprises, Inc. v. Millennium Music, LP*,
   33 F. Supp. 2d 907 (D. Or. 1999) ........................................................................ 8

*Perez v. Indian Harbor Ins. Co.*,
   No. 4:19-CV-07288-YGR, 2020 WL 2322996 (N.D. Cal. May 11,
   2020) .................................................................................................................. 15

*Philip Morris USA Inc. v. Shalab*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) ............................................................... 9

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   No. 2:12-CV-07559(ODW/SHX), 2013 WL 12303362 (C.D. Cal.
   Sept. 5, 2013) .................................................................................................... 15

*Shamsuddin v. Vitamin Research Products*
    (D.Md.2004) 346 F.Supp.2d 804 ........................................................................... 12

*Snowney v. Harrah's Entm't, Inc.*,
    35 Cal. 4th 1054, 112 P.3d 28 (2005) ................................................................... 11

*Theos Med. Sys., Inc. v. Nytone Med. Prod., Inc.*,
    No. 19-CV-01092-VKD, 2020 WL 500511 (N.D. Cal. Jan. 31,
    2020) ..................................................................................................................... 12

*Toro Co. v. Hunter Indus. Inc.*,
    No. 14-cv-4463, 2015 WL 4545403 (D. Minn. July 27, 2015) ........................... 14

*Wang v. Wu*,
    No. 16-CV-1684(GWM/RWX), 2016 WL 10957847 (C.D. Cal.
    Dec. 7, 2016) ........................................................................................................ 15

Walden v. Fiore
    571 U.S. 277 (2014 ............................................................................................ 8, 9

**Statutes**

Lanham Act ................................................................................................................. 9, 14

**Other Authorities**

U.S.D.C. Local Rule 7-3(a) ................................................................................................ 5

Federal Rule of Civil Procedure Rule 12(b)(2) ........................................................... 12

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Cisco has failed to identify *any* binding Ninth Circuit authority supporting its broad allegations of personal jurisdiction over Dexon in California.[1]  Cisco relies on four types of alleged contacts— "set up" purchases by Cisco investigators; procurements from a California company; 2.9% sales revenue involving irrelevant non-infringing product not at issue; and a website—all of which have been expressly rejected by courts in this district as satisfying the purposeful direction test.

## II.   CISCO'S ALLEGATIONS DO NOT ESTABLISH EXPRESS AIMING

### A.   Purposeful Direction Test

Cisco does not dispute that the purposeful direction test applies to this Court's personal jurisdiction analysis of tort claims. *See* (Doc. No. 10 at 12 ("To satisfy the purposeful direction test, the plaintiff must establish that the defendant '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)))). Rather, Cisco argues certain claim herein are non-tort claims and, for that, reason, the Court need not analyze Dexon's contact under the purposeful direction test. (Doc. No. 22 at 13-14, 14-18).

Cisco is mistaken. All the claims in the complaint sound in tort. (Doc. No. 1 at ¶¶ 55-82). As Dexon explained in its opening memorandum, when a case sounds in tort, like this case here, the Court applies the purposeful direction test to analyze

---

[1] In addition, Cisco's Opposition was untimely. Local Rule 7-3(a) is clear: "The opposition must be filed and served not more than 14 days after the motion was filed." L.R. 7-3(a). Dexon filed its motion to dismiss for lack of personal jurisdiction on September 25, 2020. (Doc. No. 10). Accordingly, Cisco's opposition deadline was October 9, 2020. L.R. 7-3(a). Cisco filed its opposition on October 16, 2020—21 days after Dexon filed its motion. (Doc. No. 22). Cisco's opposition was seven-days late. L.R. 7-3(a).

whether Dexon's contacts satisfy the specific jurisdiction standard. *Axiom*, 874 F.3d at 1068. Therefore, the Court need not, as Cisco suggests, split the personal jurisdiction analysis between "tort claims" and "non-tort claims."

### B. Purported Contacts Relied on by Cisco do not Constitute "Purposeful Direction"

Cisco relies on four types of contacts to establish personal jurisdiction over Dexon in California: (1) "set up" purchases by Cisco's investigators on two occasions; (2) procurement of alleged counterfeit Cisco products from a California company; (3) a small percentage of sales of unrelated non-infringing Cisco products to California residents; and (4) maintaining a website. (Doc. No. 22 at ). All of these purported contacts fail to satisfy the specific jurisdiction standard.

#### 1. Sales to Cisco's Investigators

Cisco confirms that the only specific California sales on which it relies were procured by Cisco's own investigators. (Doc. No. 10 at 14). This Court has expressly rejected Cisco's reliance on such sales. *See Cisco Sys. Inc. v. Link US, LLC*, No. 18-CV-07576-CRB, 2019 WL 6682838, at *5 (N.D. Cal. Dec. 6, 2019) ("[S]ales of counterfeit goods to Cisco's investigator . . . cannot establish express aiming because the personal jurisdiction analysis focuses on the defendant's, not the plaintiff's, contacts with the forum.").

Cisco claims that this Court's reasoning in *Link* is "inapposite" because such investigatory purchases "can still demonstrate a defendant's intent to conduct relevant activity in the forum state." See (Doc. No. 10 at 14 (citing *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015)). Cisco's reliance on *Pico* is misplaced. Contrary to Cisco's argument, the *Pico* court determined, as in the present case, that the defendant's contacts did *not* satisfy the requisite "express aiming" requirement of the purposeful direction test. *Id.* As this Court previously explained to Cisco, sales to Cisco's investigators do not satisfy the "express aiming" requirement of the purposeful direction test because it would be "incongruous to allow the plaintiff to

unilaterally create personal jurisdiction." *Link*, 2019 WL 6682838, at *5. The allegations regarding sales to Cisco investigators in California are, therefore, inadequate to satisfy the purposeful direction test.

### 2. Procurement from a California Company

Cisco also claims that Dexon's procurement of Cisco products from a California company satisfy the express aiming requirement because the products "are highly likely counterfeit." (Doc. No. 22 at 14, 16). Specifically, it contends purchases of allegedly counterfeit product constitutes an independent actionable tort. *See id.* ("Dexon committed actionable torts within California on every occasion when it procured a counterfeit Cisco product from California for resale.") First, Cisco fails to cite or provide any authority for its assertion that all such purchases "are highly likely counterfeit." Second, assuming *arguendo* all such purchases involved counterfeit products - which Cisco knows is not the case – Cisco fails to provide any authority for the proposition that such unknowing purchases constitute an independent tort.

On the contrary, in the Ninth Circuit, mere purchases of counterfeit or infringing product do not satisfy the specific jurisdiction test. *See Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 912 (D. Or. 1999) ("Here, plaintiff's assert no ascertainable loss caused by defendant's purchase of inventory from [an Oregon company]. . . . Accordingly, plaintiff's cause of action for unfair trade practices does not arise or relate to defendants' purchase of inventory from [an Oregon company] and cannot confer personal jurisdiction over defendants.").

Moreover, *Walden* made clear express aiming "requires more." *Axiom*, 874 F.3d at 1070 (citing *Walden*, 571 U.S. at 286, 134 S. Ct. 1115). Specifically, a plaintiff must establish that the defendant's contacts have a "substantial connection" to the forum state. See *Axiom*, 874 F.3d at 1070 ("In *Walden*, the Supreme Court rejected [the] conclusion that the defendants' knowledge of [the plaintiffs'] strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum,

comprised sufficient minimum contacts."). Individualized targeting "may remain relevant to the minimum contacts inquiry, [but] it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Id.*[2]

As the Ninth Circuit explained in *Axiom*, even if Cisco could establish that some portion of products procured remotely from California are counterfeit, "[t]he foreseeability of injury in a forum is not a 'sufficient benchmark' for exercising personal jurisdiction." *Axiom*, 874 F.3d at 1070 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985)). Any such remote purchases from California are "too attenuated and isolated to support the exercise of jurisdiction." *Axiom*, 874 F.3d at 1070 (internal quotations and citations omitted). For these reasons, Cisco has failed to demonstrate that Dexon's procurements create a "substantial connection" to California.

### 3. Dexon's Minimal Sales of Cisco Product

Cisco also contends that a "significant portion of Dexon's sales are made in California," pointing to Dexon's acknowledgement that just 2.9% of its sales of Cisco product over the past three years are attributable to California customers. (Doc. No. 22 at 15).

Cisco's attempt to rely on the minimal 2.9% sales figure for specific jurisdiction misses the mark. At best, Cisco has alleged that some small percentage of Dexon's overall Cisco sales are counterfeit. It cannot rely on Dexon's unrelated total sales

---

[2] Relying on *Philip Morris USA Inc. v. Shalab*, 352 F. Supp. 2d 1067, 1073-74 (C.D. Cal. 2004), Cisco argues that Dexon's knowledge as to whether the products it procured were counterfeit is irrelevant to the jurisdictional analysis because the Lanham Act imposes strict liability. (Doc. No. 22 at 16). In *Philip Morris*, however, the court analyzed Lanham Act claims on a motion for summary judgment, not on a motion to dismiss for lack of personal jurisdiction. 352 F. Supp. 2d at 1073. The Court in that case said *nothing* about strict liability being applicable to a defendant's contacts under a due process analysis. *Id.*

figure, the majority of which is not alleged to be counterfeit, to support specific jurisdiction over a much smaller de minimis number of sales alleged to be counterfeit.

In analogous cases, this district has repeatedly determined that sales of the accused products between 1% and 10% are not sufficient. *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-CV-02991-JST, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (collecting cases).  Putting this in perspective, Cisco has alleged just two instances of sales of supposedly counterfeit product into California (and both sales were to Cisco investigators.)  Accordingly, the actual percentage of Dexon's California Cisco sales alleged to be counterfeit, and therefore relevant to Cisco's claims, is significantly less than .01%.   This does not support the exercise of specific personal jurisdiction in California over Dexon.

Cisco erroneously relies on *As You Sow v. Crawford Laboratories, Inc.* 50 Cal.App.4th 1859, 1870 (1996), *as modified* (Dec. 13, 1996).  Although unclear, to the extent Cisco is arguing such minimal remote sales create general jurisdiction over Dexon, they are wrong.  In fact, the *Sow* court expressly rejected a similar argument, correctly concluding the defendant's 1% sales "did **not** involve systematic and continuous contacts with California." *Id.* (emphasis added).  In finding specific jurisdiction, the court reasoned the defendant "contract[ed] directly with private distributors located in California" and "purposefully consummated business arrangements with California companies on 16 separate occasions so it could profit from the products' use in California." *Id.*  No such contract exists here.  Specifically, Dexon has not contracted with or utilized any distributors or other sales agents in California.  Rather, all sales have been consummated remotely via Minnesota based Dexon sales representatives.

### 4. Passive Website

Relying on the court's *Zippo* analysis in *Snowney v. Harrah's Entm't, Inc.*, 35 Cal. 4th 1054, 1065, 112 P.3d 28, 35 (2005), Cisco claims that "Dexon's website is yet one more California directed activity, which, taken collectively, warrant the exercise of specific personal jurisdiction." (Doc. No. 22 at 17).

Cisco's reliance on the sliding-scale *Zippo* test is misplaced.[3]  "[I]n the Ninth Circuit, [w]hen evaluating purposeful direction in the context of websites, courts typically examine the level of interactivity and commercial nature of the exchange of information that occurs on the website to determine if sufficient contacts exist to warrant the exercise of jurisdiction." *See Erickson v. Nebraska Mach. Co.*, No. 15-cv-01147, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015) (stating that the purpose "is to determine whether the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." (quotation omitted)). Ninth Circuit courts are hesitant to hale out-of-state defendants (like Dexon) into a foreign court based on generic allegations of website interactivity and counterfeit sales. *See Theos Med. Sys., Inc. v. Nytone Med. Prod., Inc.*, No. 19-CV-01092-VKD, 2020 WL 500511, at *7 (N.D. Cal. Jan. 31, 2020) (collecting cases).

---

[3] Its reliance on *Snowney* is equally misguided. *See* 112 P.3d at 35 (finding jurisdiction where defendants (1) "advertised extensively in California through billboards, newspapers, and radio and television stations located in California"; (2) "listed a toll-free phone number for making reservations at their hotels in their California advertisements and on their Web site"; and (3) "regularly sent mailings advertising their hotels to selected California residents"). In the present case, Dexon has conducted no similar or analogous active advertising or promotion within California. Cisco also relies on a decision from the United States District of Maryland, but in doing so, it erroneously and misleadingly attributes the court's *Zippo* reasoning to that of the California Supreme Court's. See (Doc. No. 22 at 17 ("Importantly, the **California Supreme Court** acknowledged that some courts attribute personal jurisdiction to such websites. *See Shamsuddin v. Vitamin Research Products* (D.Md.2004) 346 F.Supp.2d 804, 810." (emphasis added))).

For example, in *Adobe*, the plaintiff claimed that it was "highly likely" that the defendant had sold infringing products to California through its website because "1.2% of [its] sales [we]re shipped to California and because [it] advertise[d] for sale and s[old] infringing software on its website and through its Amazon.com account." 2015 WL 5834135, at *5. The plaintiff's complaint, however, "allege[d] little information . . . beyond its bald assertion that the website is 'interactive' and its allegation that the website features infringing Adobe products for sale." *Id.* The district court therefore granted the defendant's Rule 12(b)(2) motion to dismiss. *Id.*

Like in *Adobe*, Cisco has not alleged facts sufficient to establish that Dexon's California sales occurred through its website or involved counterfeit products. *Id.* Cisco alleges that its attorney accessed Dexon's website "sometime in 2009." (Doc. No. 22-1 ¶ 6). But Cisco's allegations rely on allegations occurring between 2016 and 2020. (Doc. No. 1 at ¶¶ 35-53).

Cisco also claims, without citing authority, that Dexon expressly aimed its conduct at California because it "accessed over 3,100 webpages that Cisco maintains on its website for the purpose of providing product information and technical support, among other things, on over 465 different occasions." (Doc. No. 22 at 10); (Doc. No. 22-1 ¶ 7). As an initial matter, even it could support such allegations, Cisco fails to provide any support for the notion that such alleged conduct constitutes express aiming for the purpose of establishing specific jurisdiction. Regardless, such alleged conduct easily fails the third prong because Cisco cannot establish that accessing Cisco's website is the "but for" cause of Cisco's trademark infringement claims. *Bancroft & Masters, Inc. v. August Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

As the Ninth Circuit has recognized, "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011). Because Cisco has failed to establish the "substantial connection"

required for this Court to exercise personal jurisdiction, this Court should dismiss Cisco's complaint.

### C. Transfer

Cisco contends that transfer is inappropriate because California state law applies to two out of five claims, and the parties will litigate remotely given the pandemic. Both arguments are unpersuasive.

First, even if state law may apply to a **minority** of Cisco's claims, "the primary claims in [Cisco]'s Complaint arise under federal law—the Lanham Act," which "undermines [Cisco]'s assertion that a local court should decide its state law []claims." *Toro Co. v. Hunter Indus. Inc.*, No. 14-cv-4463 (MJD/FLN), 2015 WL 4545403, at *5 (D. Minn. July 27, 2015). Second, the pandemic favors neither party as the parties will likely litigate remotely regardless of the venue.

Therefore, even if this Court denies Dexon's motion to dismiss, this Court should exercise its discretion and transfer this action to the United States District Court in Minnesota

### D. Jurisdictional Discovery

Cisco requests jurisdictional discovery. (Doc. No. 22 at 20-21). A district court may grant a motion for jurisdictional discovery if "[f]urther discovery . . . might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Link*, 2019 WL 6682838, at *5 (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).

Between the Related Litigation and Cisco's motion to compel in the District of Minnesota, Cisco has already conducted "further discovery" to identify facts that would support this Court's exercise of personal jurisdiction over Dexon in California. After years of reviewing documents, Cisco has identified no facts sufficient to constitute a basis for jurisdiction that it has not already received as a result of prior litigation.

Courts in the Ninth Circuit routinely deny motions for jurisdictional discovery in like circumstances. *See Perez v. Indian Harbor Ins. Co.*, No. 4:19-CV-07288-YGR, 2020 WL 2322996, at *4 (N.D. Cal. May 11, 2020) ("Here, [plaintiff] has not identified specifically what he would hope to uncover through additional jurisdictional discovery that has not already been provided in the prior litigation or in the briefing on this motion. The Court therefore DENIES this request for jurisdictional discovery."); *Roth v. CHA Hollywood Med. Ctr., L.P.*, No. 2:12-CV-07559(ODW/SHX), 2013 WL 12303362, at *4 (C.D. Cal. Sept. 5, 2013) ("Ekin has also already had an opportunity to resort to generally available data on these prospective class members, and that data has done little to advance the citizenship issue."); *see also Wang v. Wu*, No. 16-CV-1684(GWM/RWX), 2016 WL 10957847, at *3 (C.D. Cal. Dec. 7, 2016) ("Plaintiff contends that its jurisdictional argument will be materially advanced if, in addition to this information, CTBC provides the names and addresses of the shareholders who received payments. Yet, Plaintiff conceded that he already effectively has this information - he knows the shareholders in the closely-held corporation."). What is more, the uncontroverted evidence before this Court demonstrates that the personal jurisdiction question is not a close call, which weighs against granting Cisco's jurisdictional discovery request. *See Frankie Valli & The Four Seasons v. EMI Music Publ'g Ltd.*, No. 17-cv-7831-MWF (JCX), 2018 WL 6136818, at *8 (C.D. Cal. May 22, 2018) (denying motion for jurisdictional discovery). Another attempt here would likewise be futile.

For the above reasons, this Court should deny Cisco's request for jurisdictional discovery.

## III.  CONCLUSION

For the foregoing reasons, Dexon respectfully requests that this Court grant its motion to dismiss for lack of personal jurisdiction or, alternatively, transfer this action to the United States District Court of Minnesota, and deny Cisco's request for jurisdiction discovery.

Dated:  October 22, 2020

Michael M. Lafeber
mlafeber@taftlaw.com
O. Joseph Balthazor Jr.
jbalthazor@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: 612.977.8400
Fax: 612.977.8650

Respectfully submitted,

*/s/ Amanda R. Washton*
John A. Conkle (SB# 117849)
Amanda Washton (SB# 88324)
j.conkle@conklelaw.com
a.washton@conklelaw.com
**CONKLE, KREMER & ENGEL, PLC**
3130 Wilshire Boulevard
Suite 500
Santa Monica, CA 90403
Tel:  (310) 998-9100

*Attorneys for Movant*
Dexon Computer, Inc.

# PROOF OF SERVICE

**Cisco Systems, Inc v. Dexon Computer, Inc., et al.**
**Case No. 3:20-cv-4926**

**STATE OF , COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of . My business address is 3130 Wilshire Boulevard, Suite 500, Santa Monica, CA 90403-2351.

On October 22, 2020, I served true copies of the following document(s) described as **DEFENDANT DEXON COMPUTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** on the interested parties in this action as follows:

Richard J. Nelson
Louis P. Feuchtbaum
Angela M. He
Artur A. Minasyan
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
E-Mail: rnelson@sideman.com
E-Mail: lfeuchtbaum@sideman.com
E-Mail: ahe@sideman.com
E-Mail: aminasyan@sideman.com
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 22, 2020, at Santa Monica, California.

　　　　　　　　　　　　　　　　　　　*/s/ Amanda R. Washton*
　　　　　　　　　　　　　　　　　　　Amanda R. Washton