1 RICHARD J. NELSON (State Bar No. 141658)
E-Mail:       *rnelson@sideman.com*
2 LOUIS P. FEUCHTBAUM (State Bar No. 219826)
E-Mail:       *lfeuchtbaum@sideman.com*
3 ANGELA M. HE (State Bar No. 319351)
E-Mail:       *ahe@sideman.com*
4 ARTUR A. MINASYAN (SBN 322248)
E-Mail:       *aminasyan@sideman.com*
5 SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
6 San Francisco, California 94111-3711
Telephone:    (415) 392-1960
7 Facsimile:    (415) 392-0827
8

9 Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc.
10

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                      **SAN FRANCISCO DIVISION**

14

15 CISCO SYSTEMS, INC., a Delaware          CASE NO. 3:20-cv-4926 CRB
corporation, and CISCO
16 TECHNOLOGY, INC., a California           **FIRST AMENDED COMPLAINT FOR**
corporation,                              **DAMAGES AND INJUNCTIVE RELIEF**
17                                         **FOR:**
                    Plaintiffs,
18                                         **1. FEDERAL TRADEMARK**
       v.                                     **INFRINGEMENT 15 U.S.C. § 1114;**
19                                         **2. USE OF A COUNTERFEIT MARK 15**
DEXON COMPUTER, INC., A                        **U.S.C. § 1117(c);**
20 Minnesota Corporation,                  **3. UNFAIR COMPETITION 15 U.S.C. §**
                                              **1125(a)(1)(A);**
21                  Defendant.             **4 UNFAIR BUSINESS PRACTICES, CAL.**
                                              **BUS. & PROF. CODE § 17200 et seq.; and**
22                                         **5.  UNJUST ENRICHMENT**
23

24                                         **JURY TRIAL DEMANDED**

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Plaintiffs Cisco Systems, Inc. ("CSI") and Cisco Technology, Inc. ("CTI") (together,

2   "Cisco" or "Plaintiffs"), hereby complain and allege against Defendant Dexon Computer, Inc.

3   ("Dexon") as follows:

4   **I.    INTRODUCTION**

5   1.    This case seeks to hold Dexon accountable for its continual use of counterfeit

6   Cisco trademarks in commerce, to dupe its customers into believing that the illicit Cisco-branded

7   products and software licenses it was selling are genuine, when in fact they were not.  Dexon has

8   repeatedly sold counterfeit Cisco products over a period that now well-exceeds 15 years.  In that

9   decade-and-a-half period, Dexon has refused to voluntarily comply with every one of Cisco's

10  requests for its assistance in deterring counterfeit trafficking, it ignored Cisco's demands that it

11  cease selling counterfeit products, and it appears to not have taken reasonable measures that would

12  allow it to better guard against its continued procurement of counterfeit Cisco products.  Cisco has

13  been, and continues to be harmed by Dexon's illegal use of its trademarks, which appears may

14  only be remediable by court action.  Unfortunately, Cisco is not the only victim of Dexon's

15  counterfeit trafficking schemes.

16  2.    Consumers rely on Cisco products and licenses to run complex, critical and

17  highly secured networks.   But counterfeit Cisco products can cause network downtime, and

18  substantial business interruption.  Cisco brings this action to protect consumers from receiving

19  inferior counterfeit products or invalid licenses, to recover for the significant damage Dexon's

20  unlawful and infringing conduct has caused to Cisco, to put a stop to Dexon's unlawful and

21  infringing conduct, and to enjoin further unlawful and infringing conduct.

22  **II.   THE PARTIES**

23  3.    At all times mentioned in this First Amended Complaint, Plaintiff Cisco Systems,

24  Inc., has maintained its principal place of business at 170 W. Tasman Drive, San Jose, California

25  95134, where it remains to this date.  Cisco Systems, Inc. is and has been a Delaware Corporation

26  since January 2021.  Prior to that, and at all times mentioned herein, Cisco Systems, Inc. was a

27  California corporation.  Plaintiff Cisco Technology, Inc., is, and at all times mentioned herein was,

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose,

2   California 95134.

3       4.   On information and belief, Defendant Dexon Computer, Inc., is and was at all

4   relevant times mentioned herein a business entity incorporated in the State of Minnesota with its

5   principal place of business in Bloomington, Minnesota.

6       5.   Cisco is informed and believes, and thereon alleges, that Dexon undertook

7   obligations or rights arising out of the subject events and happenings herein referred to, engaged in

8   actions or omissions, either intentional or negligent, regarding the subject events and happenings

9   herein referred to, and/or benefited unjustly from the efforts, work, and goods of Cisco.

10  **III.    JURISDICTION AND VENUE**

11      6.   This is an Action founded upon violations of Federal trademark laws, pursuant to

12  15 U.S.C. §§ 1051, *et seq*.  This Court has original subject matter jurisdiction over this action

13  pursuant to the provision of the Lanham Act, 15 U.S.C. § 1121, as well as under 28 U.S.C. §§

14  1331 and 1338(a) and (b).

15      7.   This Court has supplemental subject matter jurisdiction over the pendent state

16  law claims pursuant to 28 U.S.C. § 1367, because these claims are so related to Cisco's claims

17  under federal law that they form part of the same case or controversy and derive from a common

18  nucleus of operative facts.

19      8.   This Court has personal jurisdiction over Dexon, because Dexon has repeatedly

20  and over a prolonged period of time directed its activities into California, which activities are

21  related to Cisco's claims.  Dexon transacts a significant amount of business in California.  During

22  the period from July 1, 2017 and December 31, 2019, Dexon derived at least 2.9% of its total

23  revenues from business it conducted in California.  Dexon regularly buys and sells Cisco products

24  in California.  It also actively solicits business in this state.  Dexon maintains a website through

25  which it solicits business throughout the United States, including within the State of California,

26  which website is interactive in that it allows people within California to exchange information

27  with Dexon and to submit payment for products that Dexon advertises on that website.  Cisco

28  alleges on information and belief that at all times relevant to this Complaint, Dexon has

1  continuously operated that website and that Dexon has purposefully maintained contacts within

2  the State of California for the purpose of conducting business here.

3      9.      California also has personal jurisdiction over Dexon because Dexon has

4  committed tortious acts within California that are at issue in this lawsuit.  Dexon has harmed Cisco

5  through willful violations of the Lanham Act by, among other things, procuring counterfeit Cisco

6  products from California for resale by Dexon, by selling counterfeit Cisco products to end users in

7  California, and by having counterfeit products that it sold shipped from a location within

8  California.  Dexon has also committed acts within California that constitute Unfair Business

9  Practices and Unjust Enrichment.  These California directed activities occurred within this Judicial

10  District, among other places in the state.

11      10.     California also has personal jurisdiction over Dexon as the result of an agreement

12  among the parties.  As described more thoroughly in paragraph 63 below, Dexon sold certain

13  licenses subject to an agreement, which directs that any disputes related to or arising out of the

14  license terms are subject to the exclusive jurisdiction of the Federal Courts for the Northern

15  District of California or of the California Superior Court for Santa Clara County.  By that

16  agreement, the parties also agreed that venue in those courts is proper.  This action includes

17  disputes that are related to and arise out of Dexon's violation of those license terms.

18      11.     Venue is also proper in this district, pursuant to 28 U.S.C. § 1391(b)(2) because a

19  substantial part of the events or omissions giving rise to Cisco's claims occurred in this judicial

20  district.

21  **IV.    FACTUAL ALLEGATIONS**

22      **A.    Cisco's Business and History**

23      12.     Founded in 1984, Cisco is the worldwide leader in developing, implementing,

24  and providing the technologies behind networking, communications, and information technology

25  products and services.  Cisco develops and provides a broad range of networking products and

26  services that enable seamless communication among individuals, businesses, public institutions,

27  government agencies, and service providers.  Specifically, the thousands of engineers who work at

28  Cisco develop and provide networking and communications hardware, software, and services that

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities

2  and campuses, and around the world.

3      13.    Since its founding, Cisco has pioneered many of the important technologies that

4  created and enabled global interconnectivity.  During the past three decades, Cisco has invested

5  billions of dollars, and the time and dedication of thousands of its engineers, in the research,

6  development, and sale of industry-leading networking and communications products and services.

7      14.    Cisco has also built up tremendous goodwill and brand reputation among

8  consumers, including corporate and government consumers, through significant investment in

9  advertising, promoting, and delivering products, software, and services of the highest quality

10 under the CISCO trademark and the family of CISCO-related trademarks (collectively, the "Cisco

11 Marks").  Cisco has used the Cisco Marks to identify goods and services as being genuine and

12 authorized, and therefore, the Cisco Marks are well-recognized signifiers of Cisco's best-in-class

13 products, software, and services.

14 **B.**    **Cisco's Trademarks**

15     15.    CTI owns all rights, title, and interest in the Cisco Marks, many of which are

16 included on the Principal Register of the U.S. Patent and Trademark Office ("USPTO"), and it has

17 licensed the use of the Cisco Marks to CSI.  The Cisco Marks are well-known.  They are used in

18 connection with Cisco's networking hardware and software products and services.  They include,

19 but are not limited to, the following marks that are used in interstate commerce:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO | 3,709,076 | November 10, 2009 |
| ılıılıı CISCO | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| ılıılıılı | 3,763,903 | March 23, 2010 |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

16.    The Cisco Marks are distinctive, having no meaning outside of their use by Cisco in its course of business operations and in its advertising to distinguish its products and services. Cisco uses the Cisco Marks to advertise through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, and web sites.

17.    Cisco has attained one of the highest levels of brand recognition among consumers due to its extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for the past three decades.  As a result of Cisco's longstanding and widespread use and promotion of the Cisco Marks, Cisco customers around the globe have come to rely upon the Cisco Marks to identify Cisco's high-quality hardware, software, and services.  Many of Cisco's products are purchased by the U.S. government, the military, hospitals, and by other industries, in critical and life-essential applications.

18.    Cisco's customers associate Cisco's famous and well-known trademarks, including, among others, CISCO and the Cisco logo, exclusively with Cisco and Cisco's products and services. When customers encounter these marks and decide to purchase goods and services identified by these marks, they expect to receive genuine Cisco products that have been produced by Cisco.  Moreover, when customers purchase products that are advertised as "new factory sealed," they reasonably believe that they are purchasing genuine products manufactured or authorized by Cisco that have not been tampered with from the time the product was sealed in its shipping packaging.

**C.    Counterfeit "Cisco" Products**

19.    Counterfeit products that bear markings similar to the Cisco Marks provide customers with a false assurance that the products they have purchased (1) are reliable and conform with Cisco's high standards, (2) come with applicable warranties, (3) can be placed under a Cisco service support contract (i.e., SMARTnet), and (4) come with all of the necessary accessories sold with the product that have been selected and approved by Cisco for use with the product.

20.    In addition to harm to customers, the sale of counterfeit Cisco products harms Cisco in many ways.  Counterfeit Cisco products which fail or degrade create the false impression

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   that Cisco products are unreliable, thereby improperly tarnishing Cisco's reputation and causing

2   Cisco to lose control of its goodwill and suffer lost sales and future business opportunities.  When

3   customers purchase Cisco-branded parts that are counterfeit and unreliable, their image of Cisco is

4   diminished and Cisco's opportunity to sell genuine, high-quality products to those customers may

5   be lost forever.  As a result of the manufacture and distribution of such counterfeit products, Cisco

6   suffers substantial and irreparable harm to its brand, image, business, and goodwill with the

7   public.  Cisco also suffers lost sales when customers purchase counterfeit products instead of

8   genuine Cisco products.

9        **D.    Impact on Health, Safety, and National Security Caused by Counterfeit Cisco**

10          **Products**

11          21.    Cisco products are part of the backbone of the United States information

12   technology network.  Many of Cisco's products are purchased by U.S. governmental entities, the

13   military, hospitals, and by other industries, and used in important and life-essential applications.

14   Critical governmental and other infrastructure is built on, and relies upon, Cisco products to

15   maintain the security of data storage and transfer.

16          22.    It would be difficult to overstate the importance that the assured quality of

17   Cisco's products has for customers who need to ensure the reliable functioning of their critical

18   processes.  Cisco firewalls, for example, ensure the integrity of government, medical, and business

19   data and communications.  The U.S. government recognizes the importance of installing only

20   genuine Cisco products.  In a criminal trial involving counterfeit Cisco products sold to the U.S.

21   Marine Corps, Staff Sargent Lee Chieffalo, USMC, testified that he specifically demanded

22   genuine Cisco products when he ordered them, because if the networks that the "Cisco" products

23   were in failed due to substandard counterfeit products, "Marines could die."

24        **E.    Dexon's History And Practice Of Trafficking In Counterfeit Cisco Products**

25          23.    For each of the instances where Dexon trafficked in counterfeit Cisco products

26   that is described in this Complaint, Cisco alleges that Dexon used a Cisco Mark, which is identical

27   to or nearly indistinguishable from the corresponding Cisco Mark that is registered with the

28   USPTO.  In each of those instances the Cisco Mark was used on a Cisco-branded product, which

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

was determined to be counterfeit in that the product *appears* to be a genuine product manufactured by Cisco, but in actuality was not manufactured by Cisco, or under its authority.  For each of those instances, Dexon used the Cisco Mark in commerce without Plaintiffs' permission or authority.

24.     From at least July 2006 through the present, Dexon has repeatedly and systematically engaged in schemes to traffic counterfeit Cisco products.  In these schemes, Dexon falsely represented to the public that various Cisco-branded products it was selling are genuine, when in fact they are not.  In that approximately fifteen year period, Cisco has repeatedly informed Dexon that it was selling counterfeit products, it repeatedly demanded that Dexon cease and desist selling those counterfeits, and it has requested Dexon's assistance in identifying the sources for those counterfeit products so that Cisco could thwart those suppliers from further damaging its brand and from defrauding the public.  In almost every instance, Dexon refused to cooperate with Cisco, and refused to identify the counterfeit traffickers who supply it.

25.     As described more fully below, Cisco asserts that Dexon's long history of counterfeit trafficking, and of repeatedly denying Cisco's requests for assistance in identifying its sources for counterfeit Cisco products, provide evidence that Dexon's illegal conduct was done willfully, or that Dexon has been willfully blind to the fact that it has been selling counterfeit Cisco products for a period that is now approaching almost two decades.

F.     **Activity Prior to 2015 Demonstrating Dexon's Pattern and Practice of Knowingly Trafficking in Counterfeit Cisco Products**

(1)     **Dexon's July 27, 2006 Sale of Counterfeit Cisco Products to a Cisco Investigator (Reston, Virginia)**

26.     On or about July 27, 2006, Dexon sold three counterfeit Cisco products (Product identification codes ("PID"): GLC-LH-SM, WIC-1DSU-T1-V2, and NM-4T) to an investigator, who was working for Cisco.  Dexon represented that these were all genuine Cisco products and that they were new.   Dexon sent two of these products (PIDs: GLC-LH-SM and WIC-1DSU-T1-V2) directly from its business location in Minnesota, to the investigator in Reston, Virginia.  One of these parts (PID: NM-4T) was sent by Dexon from 15330 Barranca Parkway, Irvine, California. These parts were inspected by a Cisco engineer who determined that they were all counterfeit.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### (2)   FBI's Seizure of Counterfeit Cisco Products from Dexon on February 26, 2008

27.     On February 26, 2008, the Federal Bureau of Investigation ("FBI") executed a search warrant at Dexon's business location in Minnesota.  In the course of that search, the FBI seized 204 Cisco-branded products that appeared suspicious.  Cisco engineers inspected a sampling of these products and determined all those sampled were counterfeit.

### (3)   Cisco's First Cease and Desist Letter to Dexon and its CEO

28.     On March 7, 2008, in reaction to the FBI's seizure of Cisco-branded products from Dexon during execution of its search warrant, Cisco sent a letter to Steven O'Neill ("O'Neill"), Dexon's President and CEO, demanding that Dexon cease and desist selling counterfeit Cisco products.  Cisco requested that Dexon assist it in identifying its sources of counterfeit products. On March 18, 2008, Dexon responded to that letter through counsel, denying that Dexon had been involved in any illegal conduct.  Dexon declined to assist Cisco's investigation into its sources of counterfeit Cisco products.

### (4)   Dexon's June 2010 Sale of Counterfeit Cisco Products to Wayne State University (Detroit, Michigan), and Cisco's C&D Letter

29.     On or about January 21, 2010, Dexon provided Wayne State University ("WSU") with a bid to supply it with various new Cisco products.  On or about February 9, 2010, WSU issued a $180,000 purchase order to Dexon for those products.  Dexon shipped those products to WSU during, or about, June 2010.  WSU became concerned that some of those products might not be genuine and sent thirteen of them to Cisco for inspection.  On or about July 6, 2010, engineers examined those products (twelve GLC-SX-MM's and one GLC-LH-SM) and determined that all thirteen were counterfeit.

30.     On August 6, 2010, Cisco sent a letter to Dexon's CEO, O'Neill, informing him of Dexon's sale of counterfeit Cisco products to WSU and demanding that Dexon cease and desist its illegal conduct.  In that letter, Cisco demanded that Dexon preserve all evidence regarding its procurement and sale of the counterfeit Cisco products, requested that Dexon quarantine for

1  inspection any Cisco-branded products that it procured in the same batch as the counterfeit

2  products, and requested Dexon's assistance in tracing the counterfeit products to the source.

3       31.    On August 23, 2010, Dexon responded to Cisco's Cease and Desist Letter through

4  counsel.  Dexon denied that it knowingly engaged in the sale of counterfeit products or had any

5  liability "for trademark counterfeiting without regard to notice, knowledge, or intent[]." Dexon

6  also demanded that Cisco "substantiate [its claims] with more specific information about the

7  nature of the liability…." and requested that Cisco provide it with "all information available to

8  substantiate [its]claim that the products listed in [Cisco's] letter are in fact counterfeit."  Dexon

9  conditioned a willingness "to discuss how it might cooperate in Cisco's investigation," upon the

10 "extent that Cisco is willing to provide the [information that Dexon requested]."

11      32.    On August 30, 2010, Cisco responded to Dexon by providing it with much of the

12 requested information.  Cisco provided Dexon with general guidelines on how to avoid purchasing

13 counterfeit products, but noted that many indicia of genuine products are maintained as trade

14 secrets because of the need to avoid educating counterfeiters.  Cisco provided Dexon with legal

15 authority to address its contention that it could not be liable for trademark counterfeiting.  Cisco

16 noted Dexon's previous refusals to identify its source for counterfeit products, and renewed its

17 request for Dexon's assistance.  Nonetheless, Dexon refused to provide Cisco with any assistance

18 in identifying the sources of these counterfeit products.

19          **(5)    Dexon's July 2010 Sale of Counterfeit Cisco Products To A Cisco
                     Investigator (Los Angeles, California)**

20

21      33.    On or about July 14, 2010, Dexon sold seven Cisco-branded products to an

22 investigator in Los Angeles, CA, who was working for Cisco.  Dexon represented that these were

23 genuine Cisco products and that they were all new.  On July 21, 2010, Dexon shipped these

24 products to the investigator at an address in Los Angeles, CA.  On August 9, 2010, engineers

25 completed their examination of these parts and determined that all seven were counterfeit (one

26 WS-C2960-24TC-L, four GLC-SX-MM, and two GLC-LH-SM's).

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

### G.   Dexon's Illegal Conduct Giving Rise to Its Present Liabilities

34.   Dexon has continued to engage in a scheme to sell counterfeit Cisco products, and to protect its suppliers of counterfeit products by concealing their identities.  On every occasion when Cisco requested Dexon's assistance in providing information about people and entities who supplied Dexon with counterfeit or illegally acquired Cisco products, Dexon's response was substantially the same: Dexon denied any wrong-doing, it claimed to be committed to maintaining the integrity of the marketplace, and then, paradoxically, it refused to assist Cisco's efforts to investigate and deter continued counterfeit trafficking.

### (1)   Dexon's July 2015 Sale of A Counterfeit Cisco Product to Things Remembered, Inc. (Highland Heights, Ohio), and Cisco's C&D Letter

35.   On or about July 20, 2015, Dexon sold to Things Remembered, Inc. ("Things Remembered") a Cisco-branded WS-C2960X-48FPD-L switch, bearing serial number FOC1820S15Y.  Things Remembered contacted Cisco for assistance during 2020 after that switch failed.  Upon further investigation, Cisco determined that this switch was counterfeit.

36.   On August 27, 2020, shortly after determining that this switch was counterfeit, Cisco sent a Cease and Desist Letter to Dexon, through counsel, and requested Dexon's assistance in identifying its procurement source for this counterfeit product.  Dexon responded by raising questions about Cisco's counterfeit determination and related issues.  Cisco responded to Dexon's questions and provided additional information about its counterfeit determinations.  Dexon failed to further respond, or to provide any assistance.

### (2)   Dexon's December 2016 Sale of Counterfeit Cisco Products to Jack Henry & Associates, Inc. (Monett, Missouri), and Cisco's C&D Letter

37.   On or about December 29, 2016, Dexon sold a large quantity of Cisco transceivers to Jack Henry & Associates, Inc. ("Jack Henry") in Monett, Missouri.  In May 2017, a Cisco engineer examined three of them (a GLC-TE, a SFP-10G-LR, and a SFP-10G-SR) and determined that they were counterfeit.

38.   On June 26, 2017, Cisco sent a Cease and Desist Letter to Dexon, through its counsel.  That letter identified the counterfeit Cisco-branded transceivers that Dexon sold to Jack

1   Henry, as well as other activities by Dexon that infringed upon Cisco's trademarks, and

2   misleading statements that Dexon made in advertising regarding the Cisco-branded products it

3   was selling.

4         39.    On July 31, 2017, Dexon responded to Cisco's June letter, largely by objecting to

5   Cisco's claims.  It provided a list of conditions that Cisco would need to satisfy before Dexon

6   would assist Cisco's investigation into the source of counterfeits.

7           **(3)     Dexon's October 2017 Sale of Counterfeit Cisco Products To A Cisco**

8                  **Investigator (Berkeley, California)**

9         40.    On or about October 13, 2017, an investigator working for Cisco conducted a test

10  purchase of the following Cisco-branded products from Dexon: a WS-C3560X-24T-E, a GLC-

11  SX-MMD, a GLC-LH-SMD, a SFP-10G-SR, and a SFP-10G-LR.  Two of these products (the

12  SFP-10G-SR and SFP-10G-LR) were the same model of transceivers that Cisco addressed with

13  Dexon a few months earlier, in June 2017.  Dexon shipped those products from its business

14  location in Minnesota to an address in Berkeley, California.  A Cisco engineer inspected each of

15  these products and determined that they were all counterfeit.

16          **(4)     Dexon's January 2018 Sale of Counterfeit Cisco Product to Community**

17                 **Health Alliance (Reno, Nevada) and Cisco's C&D Letter**

18        41.    On or about January 29, 2018, Dexon sold to Community Health Alliance

19  ("Community Health") a Cisco-branded WS-C2960X-48FPS-L switch, bearing serial number

20  FOC2011S3JK.  Community Health contacted Cisco for assistance during 2020 after that switch

21  malfunctioned.  Upon further investigation, Cisco determined that this switch was counterfeit.

22        42.    On September 21, 2020, shortly after determining that this switch was counterfeit,

23  Cisco sent a Cease and Desist Letter to Dexon, through counsel, and requested Dexon's assistance

24  in identifying its procurement source for this counterfeit product.  Dexon responded by raising

25  questions about Cisco's counterfeit determination and related issues.  Cisco responded to Dexon's

26  questions and provided additional information about its counterfeit determinations.  Dexon failed

27  to further respond, or to provide any assistance.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1
2

**(5)      Dexon's April 2018 Sale of Counterfeit Cisco Products to Tucson Medical Center (Arizona)**

3      43.      On or about April 16, 2018, Dexon sold 20 Cisco transceivers (SFP-10G-LR) to
4   Tucson Medical Center ("TMC") in Arizona.   These transceivers were identical to one of the
5   models of counterfeit transceivers that Dexon had sold to Jack Henry, and that Cisco had
6   specifically addressed with Dexon's counsel in the June 2017 Cease and Desist Letter.   During
7   June 2018, TMC sought technical assistance from Cisco to correct malfunctions with three of
8   these transceivers.   Cisco inspected each of these three malfunctioning products and determined
9   that they were all counterfeit.

10
**(6)      Dexon's April 2018 Sale of Counterfeit Cisco Products to DARCARS (Maryland), and Cisco's C&D Letter**
11

12      44.      On or about April 16, 2018, Dexon sold two WS-C3650-48PS-E switches, among
13   other products, to DARCARS, a business located in Silver Spring, Maryland.   On or about May
14   12, 2020 DARCARS contacted Cisco for assistance because those switches were malfunctioning.
15   After evaluating these two switches, Cisco determined they are counterfeit.

16      45.      On May 13, 2020, counsel for Cisco contacted counsel for Dexon, and requested
17   Dexon's cooperation to disclose the source of the counterfeit switches that Dexon sold to
18   DARCARS, and to quarantine any other Cisco products from the same source.   Once again,
19   Dexon would not provide any information about the source of the counterfeit Cisco products.

20
**(7)      Dexon's August 2018 Sale of Counterfeit Cisco Products to Lockridge, Grindal, Nauen, PLLP (Minneapolis, Minnesota)**
21

22      46.      On or about August 22, 2018, Dexon sold various Cisco-branded products to
23   Lockridge, Grindal, Nauen, PLLP, a law firm in Minneapolis, Minnesota ("LGN").   During or
24   about January 2019, LGN sought technical assistance from Cisco because four of the six Cisco
25   WS-C2960X-48FPS-L switches that LGN had purchased from Dexon were malfunctioning.
26   Cisco inspected those four switches and determined that they are all counterfeit.

27
28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**(8)     Dexon's August 2018 Sale of Counterfeit Cisco Products to Regional Justice Information Service (St. Louis, MO) and Cisco's C&D Letter**

0

47.     On or about August 27, 2020, Dexon sold to Regional Justice Information Service ("Regional Justice") in St. Louis, MO, two Cisco-branded WS-C9300-24T-E switches, bearing serial numbers FCW2307L09M and FOC2307X0AH.   Regional Justice contacted Cisco for assistance after those switches malfunctioned.  Upon further investigation, Cisco determined that both of these switches were counterfeit.

48.     On December 15, 2020, shortly after determining that these switches were counterfeit, Cisco sent a Cease and Desist Letter to Dexon, through counsel, and requested Dexon's assistance in identifying its procurement source for these counterfeit products.  Dexon failed to respond, or to provide any assistance.

**(9)     Dexon's Purchases in 2018 of Counterfeit Switches from PureFutureTech (Fremont, California)**

49.     In 2018, Dexon purchased "Cisco" switches from PureFutureTech, a company in Fremont, California.  PureFutureTech purchased many "Cisco" products from Chinese sources, including a company called HongKong Sellsi.  Based upon information and belief, Cisco alleges that HongKong Sellsi sold predominately counterfeit Cisco products.  Cisco has analyzed many switches sold by HongKong Sellsi, and they have been predominantly counterfeit.  In 2019, Cisco filed a civil complaint against HongKong Sellsi in the Northern District of California, alleging that HongKong Sellsi sold counterfeit Cisco products.  HongKong Sellsi did not respond, and the Court entered default against it.

50.     Cisco sought Dexon's cooperation to locate the HongKong Sellsi switches that Dexon had purchased from PureFutureTech, but Dexon refused to cooperate.  Cisco filed a motion in federal court in Minnesota to compel Dexon to comply with a subpoena, and the court ordered Dexon to disclose the customers to which it sold the HongKong Sellsi switches.  Dexon identified two companies—one in Texas and one in Ohio.  Cisco contacted both of those companies and analyzed the switches that Dexon sold to them.  Every one of the five switches that Dexon sold to those companies was counterfeit.

SIDEMAN & BANCROFT LLP

LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

2

### (10)   Dexon's Purchases in 2017 to 2019 of Counterfeit Transceivers from PureFutureTech (Fremont, California)

3      51.      In addition to the counterfeit products that Dexon sold that originated from

4   HongKong Sellsi, Dexon purchased many more products from PureFutureTech during the period

5   from 2017 through 2019 that are believed and alleged to be counterfeit.  A former employee of the

6   organization that controls PureFutureTech has testified under oath that the organization sold

7   counterfeit Cisco transceivers.   Supporting this former employee's belief that PureFutureTech

8   regularly sold counterfeit Cisco transceivers were her observations that: the products were

9   imported from China to a receiving location in Nevada, and her personally having observed other

10  employees in Fremont place counterfeit Cisco labels on the products before selling them.   The

11  receiving location in Nevada makes no logistical sense, other than an attempt to obfuscate based

12  on the fact that U.S. Customs and Border Patrol had earlier seized shipment of counterfeit Cisco

13  products going to the Fremont address.  Cisco has analyzed dozens of transceivers sold by the

14  organization that controls PureFutureTech, and determined that they are counterfeit.

15      52.      On information and belief, and as detailed in the following table, Cisco alleges that

16  Dexon purchased at least 1,351 counterfeit Cisco transceivers on 33 separate occasions from

17  PureFutureTech and a related entity, located in Fremont. California, and that Dexon then

18  reintroduced those products into commerce by selling them.  Any reseller, such as Dexon, should

19  have reasonably known that Dexon's procurement price for these Cisco-branded products was so

20  substantially below the Global List Price ("GLP")[1] that they were likely counterfeit.  Thus, Cisco

21  alleges on information and belief that the low price indicates that these products all were

22  counterfeit, and that Dexon knew that the products were counterfeit, or was willfully blind to that

23  fact:

| Date | Quantity Procured By Dexon | Item | GLP | Dexon's Cost | Dexon's Discount Off GLP |
|------|------|------|------|------|------|
| 2/24/2017 | 2 | GLC-BX-D | $1,300 | $74 | 94% |

[1]  Global List Price is the full retail price for a given product.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Date | Quantity Procured By Dexon | Item | GLP | Dexon's Cost | Dexon's Discount Off GLP |
|---|---|---|---|---|---|
| 2/24/2017 | 2 | GLC-BX-U | $1,300 | $77 | 94% |
| 6/1/2017 | 2 | GLC-ZX-SM | $3,995 | $92 | 98% |
| 6/12/2017 | 2 | GLC-ZX-SM | $3,995 | $92 | 98% |
| 9/12/2017 | 50 | SFP-10G-LR | $3,995 | $65 | 98% |
| 2/15/2018 | 20 | GLC-LH-SM | $995 | $29 | 97% |
| 2/15/2018 | 35 | SFP-10G-SR | $995 | $47 | 95% |
| 3/8/2018 | 3 | QSFP-H40G-ACU10M | $1,250 | $236 | 81% |
| 3/8/2018 | 8 | QSFP-H40G-AOC10M | $1,000 | $290 | 71% |
| 3/9/2018 | 8 | GLC-LH-SM | $995 | $29 | 97% |
| 3/9/2018 | 8 | SFP-10G-LR | $3,995 | $66 | 98% |
| 3/16/2018 | 8 | SFP-10G-LR | $3,995 | $66 | 98% |
| 3/20/2018 | 4 | GLC-LH-SM | $995 | $29 | 97% |
| 4/10/2018 | 25 | GLC-T | $450 | $42 | 91% |
| 4/10/2018 | 50 | SFP-10G-LR | $3,995 | $66 | 98% |
| 5/4/2018 | 30 | GLC-T | $450 | $42 | 91% |
| 5/4/2018 | 10 | GLC-TE= | $450 | $56 | 88% |
| 5/7/2018 | 60 | SFP-10G-SR-S | $700 | $60 | 91% |
| 5/15/2018 | 250 | SFP-10G-LR | $3,995 | $65 | 98% |
| 5/31/2018 | 100 | SFP-10G-LR | $3,995 | $65 | 98% |
| 6/18/2018 | 60 | SFP-10G-LR | $3,995 | $66 | 98% |
| 6/20/2018 | 50 | GLC-T | $450 | $43 | 90% |
| 6/26/2018 | 52 | GLC-LX-SM-RGD | $1,095 | $38 | 97% |
| 7/12/2018 | 10 | SFP-10G-LR | $3,995 | $66 | 98% |
| 7/16/2018 | 50 | SFP-10G-LR | $3,995 | $67 | 98% |
| 8/1/2018 | 2 | GLC-TE= | $450 | $47 | 90% |
| 9/14/2018 | 15 | GLC-LH-SMD | $995 | $29 | 97% |
| 9/14/2018 | 50 | SFP-10G-SR | $995 | $47 | 95% |
| 9/19/2018 | 50 | SFP-10G-SR | $995 | $47 | 95% |
| 10/9/2018 | 16 | SFP-10G-LR | $3,995 | $64 | 98% |
| 10/12/2018 | 20 | GLC-LH-SMD | $995 | $31 | 97% |
| 10/16/2018 | 20 | SFP-10G-LR | $3,995 | $63 | 98% |
| 10/17/2018 | 7 | SFP-10G-LR-S | $2,000 | $83 | 96% |
| 10/19/2018 | 50 | SFP-10G-SR | $995 | $47 | 95% |
| 10/22/2018 | 19 | SFP-10G-LR | $3,995 | $64 | 98% |
| 10/31/2018 | 33 | GLC-SX-MM | $500 | $26 | 95% |
| 11/21/2018 | 39 | GLC-SX-MMD | $500 | $33 | 93% |
| 1/14/2019 | 40 | GLC-LH-SMD | $995 | $29 | 97% |
| 1/16/2019 | 50 | SFP-10G-LR | $3,995 | $54 | 99% |
| 1/30/2019 | 6 | GLC-LH-SMD | $995 | $29 | 97% |
| 5/3/2019 | 35 | SFP-10G-SR | $995 | $39 | 96% |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**(11)   Dexon's Sales of Counterfeit Cisco Products to Murray State University (Murray, Kentucky) in 2018 and 2019, and Cisco's C&D Letter**

53.     On or about April 17, 2018, Dexon sold a Cisco WS-C2960X-48FPD-L switch to Murray State University in Murray, Kentucky ("Murray State").  On or about June 6, 2018, Dexon sold Murray State a Cisco WS-C2960X-48LPD-L switch.  On or about September 10, 2019, Dexon sold Murray State another Cisco WS-C2960X-48FPD-L switch.  Each of these Cisco-branded switches began malfunctioning, causing Murray State to seek technical assistance from Cisco.  After evaluating these three switches, Cisco determined that they were all counterfeit.

54.     On April 7, 2020, Cisco sent a Cease and Desist Letter to Dexon, through its counsel.  That letter identified the counterfeit Cisco switches that Dexon sold to Murray State, demanded that Dexon preserve all evidence related to its purchase of those counterfeit products, and requested Dexon's assistance in identifying others who traffic in counterfeit Cisco products.  Once again, Dexon refused to provide any information about the source of the counterfeit Cisco product.

**(12)   Dexon's July 2019 Sale of Counterfeit Cisco Products to MedRisk (King of Prussia, Pennsylvania)**

55.     In or about July 2019, Dexon sold ten Cisco GLC-TE transceivers to MedRisk Inc, a healthcare organization located in King of Prussia, Pennsylvania ("MedRisk").  Eight of these products began malfunctioning, shortly after MedRisk received them from Dexon.  MedRisk sought technical assistance from Cisco.  After evaluating these eight transceivers, Cisco determined that all of them are counterfeit.

**(13)   Dexon's September 2019 Sale of Counterfeit Cisco Products to Coppell Independent School District (Coppell, Texas), and Cisco's C&D Letter**

56.     On or about September 30, 2019, Dexon sold six QSFP-40G-ER4 transceivers to Coppell Independent School District ("Coppell ISD").  These transceivers are extremely sophisticated, with a Global List Price of $37,495 each.  Dexon sold them for a remarkably low price of $2,645 each.

57.     On October 4, 2019, Coppell ISD contacted Cisco's Technical Assistance Center ("TAC") because the transceivers were not functioning.  The TAC agent obtained information about three of the transceivers, and ultimately a Cisco engineer determined that the transceivers are counterfeit.

58.     On April 13, 2020, Cisco sent a Cease and Desist Letter to Dexon, through its counsel.  That letter identified the counterfeit Cisco transceivers that Dexon sold to Coppell ISD, demanded that Dexon preserve all evidence related to its purchase of those counterfeit products, and requested Dexon's assistance in identifying others who traffic in counterfeit Cisco products. Once again, Dexon refused to provide any information.

**H.      Dexon's California Directed Conduct Identified Through Jurisdictional Discovery**

59.     Cisco conducted jurisdictional discovery in accordance with a Court order, which provided a 90-day window during which it could make inquiries relevant to identifying additional conduct that Dexon directed towards California.  This limited discovery period allowed Cisco to seek information for only a small portion of the sales that Dexon disclosed having made in California during the relevant period.  Nonetheless, even with having made only limited inquiries, Cisco has discovered significant additional illegal and tortious conduct by Dexon within California.

**(1)      Dexon's Sale of Counterfeit Cisco Products to California Customers**

60.     Each of the entries in the table, below, identifies Dexon's sale of counterfeit Cisco products into California and/or Dexon's shipment of counterfeit Cisco products into California. Cisco engineers examined photographs of the products and/or electronic information obtained from the products and determined that on at least 18 separate occasions during the period spanning from 2017 to 2020, 40 of the Cisco-branded products that Dexon sold/shipped to California are counterfeit.   Any  reseller,  such  as  Dexon,  should  have  reasonably  known  that  Dexon's

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

procurement price[2] for these Cisco-branded products was so substantially below the GLP that they were likely counterfeit.  Thus, Cisco alleges on information and belief that Dexon knew that the products were counterfeit, or was willfully blind to that fact:

| Date of sale by Dexon[3] | Number of Counterfeit Products | Dexon Customer and Location | Relevant Conduct | Sales Price Discount Off Of GLP |
|---|---|---|---|---|
| 2017-2018[4] | 2 | Glenn County Office of Education, Willows, CA | Dexon sold 2 counterfeit Cisco WS-C3850-48P-S switches into California for $4,195 each (GLP of $17,540 each).  Dexon also shipped the counterfeit products into California. | 76% |
| 2/15/2017 | 2 | SAG-AFTRA and Industry Sound Recording Distribution Fund, Valley Village, CA | Dexon sold 2 counterfeit Cisco GLC-T transceivers into California for $115 each (GLP of $450 each).  Dexon also shipped the counterfeit products into California. | 74% |
| 5/9/2017 | 1 | City of Eureka, Eureka, CA | Dexon sold 1 counterfeit Cisco WS-C3560X-48PF-E switch into California for $1,850 (GLP of $16,100 each).  Dexon also shipped the counterfeit product into California. | 89% |
| 12/15/2017 | 1 | Farmersville Unified School District, Farmersville, CA | Dexon sold a counterfeit Cisco WS-C3750X-48PF-S switch into California for $1,695 (GLP of $16,100 each).  Dexon also shipped the counterfeit product into California. | 89% |

[2]  Given that Dexon is in the business of selling products at a profit, Dexon's procurement price for these products should be less than the sales price that is provided in the table.

[3]  Unless otherwise noted, this is the date from Dexon's invoices.

[4]  Cisco is presently unable to determine the exact dates that Dexon sold each of these switches because the records Dexon provided were incomplete.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Date of sale by Dexon[3] | Number of Counterfeit Products | Dexon Customer and Location | Relevant Conduct | Sales Price Discount Off Of GLP |
|---|---|---|---|---|
| 2/13/2018 | 1 | Financial Partners Credit Union, Downey, CA | Dexon sold 1 counterfeit Cisco WS-C3650-48FD-E switch into California for $4,400 (GLP of $25,510 each). Dexon also shipped the counterfeit product into California. | 83% |
| 3/19/2018 | 1 | Farmersville Unified School District, Farmersville, CA | Dexon sold a counterfeit Cisco WS-C3850-24T-E switch into California for $2,295 (GLP of $14,170 each). Dexon also shipped the counterfeit product into California. | 84% |
| 4/23/2018 | 1 | Financial Partners Credit Union, Downey, CA | Dexon sold 1 counterfeit Cisco WS-C3650-48FD-E switch into California for $4,400 (GLP of $25,510 each). Dexon also shipped the counterfeit product into California. | 83% |
| 5/28/2020 | 8 | Claremont McKenna College, Claremont, CA | Dexon sold 8 counterfeit Cisco GLC-LH-SM Transceivers into California for $125 each (GLP of $995 each). Dexon also shipped the counterfeit products into California. | 87% |
| 5/30/18 | 1 | East Bay MUD, Oakland, CA | Dexon sold 1 counterfeit Cisco WS-C3850-24T-E switch into California for $4,200 (GLP of $14,170 each). Dexon also shipped the counterfeit product into California. | 70% |
| 9/11/2018 | 1 | Financial Partners Credit Union, Downey, CA | Dexon sold 1 counterfeit Cisco WS-C3650-48FD-E switch into California for $4,400 each (GLP of $25,510 each). Dexon also shipped the counterfeit product into California. | 83% |

SIDEMAN & BANCROFT LLP

LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Date of sale by Dexon[3] | Number of Counterfeit Products | Dexon Customer and Location | Relevant Conduct | Sales Price Discount Off Of GLP |
|---|---|---|---|---|
| 6/26/2019 | 2 | Salinas Valley Memorial Healthcare, Salinas, CA | Dexon sold 2 counterfeit Cisco SFP-10G-SR transceivers into California for $80 each (GLP of $995 each).  Dexon also shipped the counterfeit products into California. | 92% |
| 9/25/2019 | 1 | Financial Partners Credit Union, Downey, CA | Dexon sold 1 counterfeit Cisco WS-C3650-48FD-E switch into California for $4,400 (GLP of $25,510 each).  Dexon also shipped the counterfeit product into California. | 83% |
| 10/14/2019 | 1 | Financial Partners Credit Union, Downey, CA | Dexon sold 1 counterfeit Cisco WS-C3650-48FD-E switch into California for $4,400 (GLP of $25,510 each).  Dexon also shipped the counterfeit product into California. | 83% |
| 10/28/2019 | 7 | Salinas Valley Memorial Healthcare, Salinas, CA | Dexon sold 7 counterfeit Cisco SFP-10G-LR transceivers into California for $115 each (GLP of $3,995 each).  Dexon also shipped the counterfeit products into California. | 97% |
| Winter 2020 | 2 | SAFE Credit Union, Folsom, CA | Dexon sold 2 counterfeit Cisco GLC-T transceivers into California for $95 each (GLP of $450 each).  Dexon also shipped the counterfeit products into California. | 79% |
| 4/24/2020 | 5 | SAFE Credit Union, Folsom, CA | Dexon sold 5 counterfeit Cisco GLC-LH-SM transceivers into California for $145 each (GLP $995 each).  Dexon also shipped the counterfeit products into California. | 85% |

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Date of sale by Dexon[3] | Number of Counterfeit Products | Dexon Customer and Location | Relevant Conduct | Sales Price Discount Off Of GLP |
|---|---|---|---|---|
| 5/20/2020 | 2 | Financial Partners Credit Union, Downey, CA | Dexon sold 2 counterfeit Cisco WS-C3650-48FD-E switches into California for $4,485 each (GLP $25,510 each).  Dexon also shipped the counterfeit products into California. | 82% |
| 6/3/2020 | 1 | Financial Partners Credit Union, Downey, CA | Dexon sold 1 counterfeit Cisco WS-C3650-48FD-E switch into California for $4,500 each (GLP of $25,510 each).  Dexon also shipped the counterfeit product into California. | 82% |

(2)     **Dexon's Sale of Counterfeit Cisco Licenses to California Customers**

61.     Dexon sold counterfeit software licenses to its customers in California.  Cisco software licenses are often transmitted via a document that is referred to as a Product Activation Key Certificate ("PAK").  A PAK typically includes a code that allows a user to unlock or download Cisco software.  The PAK also includes other descriptors by which Cisco can often determine whether the PAK was illegally copied.  Each PAK contains Cisco Marks that have been included on the Principal Register of the USPTO.

62.     In every instance described in the table below, Dexon provided its California customers with a counterfeit PAK, which copied a valid code that enabled the customer to access Cisco software without Cisco ever being paid for it.  Further, any reseller, such as Dexon, should have reasonably known that Dexon's procurement price[5] for these counterfeit Cisco licenses was so substantially below the GLP that they were likely counterfeit.  Thus, Cisco alleges on information and belief that the low price indicates that Dexon knew that the products were counterfeit, or was willfully blind to that fact:

---

[5]  Given that Dexon is in the business of selling products at a profit, Dexon's procurement price for these products should be less than the sales price that is provided in the table.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Date of sale by Dexon[6] | Number of Counterfeit Licenses | Dexon Customer and Location | Relevant Conduct | Sales Price Discount Off Of GLP |
|---|---|---|---|---|
| 2017-2018[7] | 1 | East Bay MUD, Oakland, CA | Dexon sold 1 counterfeit PAK (L-LIC-CT5508-25A) into California for $1,495 (GLP $12,495 each).  Dexon also transmitted that counterfeit license into California. | 88% |
| 8/28/2017 | 1 | Farmersville Unified School District, Farmersville, CA | Dexon sold 1 counterfeit PAK (ASA-5555-BOT-1YR) into California for $1,295 (GLP $4,500). Dexon also transmitted that counterfeit license into California. | 71% |
| 10/30/2017 | 3 | SA Recycling, Orange, CA | Dexon sold 3 counterfeit PAKs (FL-CME-SRST-25=) into California for $1,225 each (GLP $1250 each).  Dexon also transmitted that counterfeit license into California. | 2% |
| 3/21/2018 | 4 | SA Recycling, Orange, CA | Dexon sold 4 counterfeit PAKs (SL-4330-SEC-K9=) into California for $350 each (GLP $1,750 each).  Dexon also transmitted that counterfeit license into California. | 80% |
| 2/28/2018 | 1 | SA Recycling, Orange, CA | Dexon sold 1 counterfeit PAK (SL-4330-SEC-K9=) into California for $350 each (GLP $1,750 each). Dexon also transmitted that counterfeit license into California. | 80% |

---

[6] Unless otherwise noted, this is the date from Dexon's invoices.

[7] Cisco is presently unable to determine the precise date for this sale.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Date of sale by Dexon[6] | Number of Counterfeit Licenses | Dexon Customer and Location | Relevant Conduct | Sales Price Discount Off Of GLP |
|---|---|---|---|---|
| 10/30/17 | 3 | SA Recycling, Orange, CA | Dexon sold 3 counterfeit PAKs (SL-4330-SEC-K9=) into California for $350 each (GLP $1,750 each).  Dexon also transmitted that counterfeit license into California. | 80% |
| 3/21/2018 | 4 | SA Recycling, Orange, CA | Dexon sold 4 counterfeit PAKs (SL-4330-UC-K9=) into California for $340 each (GLP $1,610 each). Dexon also transmitted that counterfeit license into California. | 79% |
| 10/30/2017 | 3 | SA Recycling, Orange, CA | Dexon sold 3 counterfeit PAKs (SL-4330-UC-K9=) into California for $340 each (GLP $1,610 each).[8] Dexon also transmitted that counterfeit license into California. | 79% |

63.     Cisco does not authorize third parties, like Dexon, to sell its software.  Instead, Cisco only issues its software licenses through authorized channels.  As such, Dexon has been distributing "Cisco" branded software in competition with genuine and licensed Cisco software and trading off of Cisco's trademarks to do so, by misrepresenting that Dexon could sell valid Cisco licenses.  In fact, any Cisco license sold by an unauthorized source is invalid.  As detailed in Cisco's End User License Agreement ("EULA"), a license is valid only if the user purchased it from an "Approved Source," which is limited to either Cisco, or a reseller, distributor or systems integrator that has been authorized by Cisco.  By that definition, Dexon is not an Approved Source.  Dexon knew that any Cisco licenses it sold were invalid.  It provided customers with a copy of Cisco's EULA, which describe how any license sold by Dexon, or similar entities, are

---

[8]  It is presently unclear from the available documentation whether one of the SL-4330-UC-K9= licenses may have been sold on 2/28/2018.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

invalid.  Nonetheless, Dexon continued to inform its customers that it could sell Cisco licenses, and it did sell those invalid licenses.  In Section 19 of the EULA, Dexon explicitly agreed that it was subject to the exclusive jurisdiction of the Federal Courts of the Northern District of California or the California Superior Court for Santa Clara County for any disputes arising out of, or related to the EULA.  As part of that agreement, Dexon also consented that venue in either of those courts was proper.

## DEXON'S WILLFULNESS

64.     At the time of each sale noted herein, Cisco had already put Dexon on notice that it was selling counterfeit Cisco products.  Cisco asserts on information and belief that had Dexon intended to avoid selling counterfeit Cisco products, it would have voluntarily worked with Cisco to identify counterfeit suppliers, and it also would have changed its procurement practices to avoid using counterfeit suppliers.  Dexon's continued procurement and sale of counterfeit Cisco products resulted from its willfully trafficking in counterfeit Cisco products, or it is the result of Dexon's willful blindness to the fact that it was trafficking in counterfeit Cisco products.

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement
### (15 U.S.C. § 1114)

65.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

66.     The Cisco Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

67.     Dexon has sold, offered to sell, distributed, and advertised infringing products bearing Cisco Marks ("Infringing Products").

68.     The differences between Dexon's Infringing Products and genuine Cisco goods are material.  Cisco asserts on information and belief that having all original Cisco components and

1 entitlement to warranty services are relevant to customers' decisions about whether, and from

2 whom, to purchase Cisco products.

3   69.   Dexon's actions have caused confusion, mistake, and deception as to the origin and

4 quality of Dexon's Infringing Products because they are intentionally calculated to mislead the

5 general purchasing public into believing that Dexon's Infringing Products originated from, are

6 associated with, or are otherwise authorized by Cisco, when in fact they are not.

7   70.   Upon information and belief, Dexon's infringing actions were committed

8 fraudulently, willfully, and in bad faith, with knowledge of Cisco's exclusive rights to, and

9 goodwill in, the Cisco Marks, or with willful blindness to the same, and with the intent to cause

10 confusion, to cause mistake, and/or to deceive.

11   71.   Dexon's unauthorized use of the Cisco Marks constitutes trademark infringement

12 of the federally registered Cisco Marks and has caused substantial damage to Cisco and to the

13 reputation and goodwill symbolized by the Cisco Marks in violation of Section 32 of the Lanham

14 Act, 15 U.S.C. § 1114, in an amount to be proven at trial.

15   72.   Dexon's conduct described above, including the unauthorized use of the Cisco

16 Marks in interstate commerce, has directly and proximately caused substantial, irreparable injury

17 to Cisco and to the business and goodwill represented by the Cisco Marks, which leaves Cisco

18 without an adequate remedy at law.

19
**SECOND CLAIM FOR RELIEF**
20
**Federal Trademark Counterfeiting**
**(15 U.S.C. § 1114)**
21

22   73.   Cisco incorporates by reference each of the allegations in the preceding paragraphs

23 of this Complaint as though fully set forth here.

24   74.   The Cisco Marks are valid, protectable trademarks that have been registered as

25 marks on the principal register in the USPTO.  Cisco is the owner and registrant of the Cisco

26 Marks.

27   75.   As described in more detail above, Dexon has used and counterfeited the Cisco

28 Marks in connection with the marketing, promotion, and sale of their goods and services without

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Cisco's consent, in a manner that is likely to cause, and has actually caused, confusion and/or

2    mistake, or that has deceived members of the consuming public and/or the trade.  Indeed, Dexon's

3    counterfeiting and infringing activities are likely to cause and are actually causing confusion,

4    mistake, and deception among members of the trade and the general consuming public as to the

5    origin, sponsorship, and quality of Dexon's infringing products, counterfeit packaging, inferior

6    warranty, and other related commercial activities.  As of the filing of this Complaint, Dexon is

7    continuing to infringe the Cisco Marks unabated as alleged above.

8        76.    Dexon has publicly advertised, sold, offered to sell, and distributed counterfeit

9    Cisco products in interstate commerce in direct competition with Cisco and without authorization

10   or consent to use the Cisco Marks but with full knowledge of Cisco's notorious prior rights in

11   those marks.

12       77.    Dexon's counterfeit Cisco products reproduce, counterfeit, copy, and colorably

13   imitate the Cisco Marks or display a spurious designation that is identical with, or substantially

14   indistinguishable from, the Cisco Marks.  Dexon has applied their reproductions, counterfeits,

15   copies, and colorable imitations of the Cisco Marks to labels, prints, and packages intended to be

16   used in commerce upon or in connection with the sale, offering for sale, distribution, or

17   advertising of Dexon's counterfeit products, which is likely to cause confusion, to cause mistake,

18   or to deceive.

19       78.    Dexon's unauthorized use of the Cisco Marks on or in connection with Dexon's

20   counterfeit products was conducted intentionally and with notice and full knowledge that the use

21   was unauthorized by Cisco.   Accordingly, Dexon's actions constitute willful trademark

22   infringement and counterfeiting of the Cisco Marks in violation of 15 U.S.C. §§ 1114 and 1117.

23       79.    Cisco has been, and continues to be, damaged by Dexon's infringement, including

24   by suffering irreparable harm through the diminution of trust and goodwill among Cisco

25   consumers and members of the general consuming public and the trade.  Cisco is entitled to an

26   injunction against Dexon, and an order of destruction of all infringing products, as well as all

27   monetary relief and other remedies available under the Lanham Act, including but not limited to

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   trebled damages and/or actual profits, reasonable attorneys' fees, costs and prejudgment interest,

2   and/or statutory damages.

3                           **THIRD CLAIM FOR RELIEF**
                            **False Designation of Origin**
4                              **(15 U.S.C. § 1125)**

5

6       80.     Cisco incorporates by reference each of the allegations in the preceding paragraphs

7   of this Complaint as though fully set forth here.

8       81.     Dexon resells the Infringing Products that are designed to appear identical to

9   genuine Cisco products and thereby employ the same nature, style, look, and color as genuine

10  Cisco products.  Moreover, as alleged above, Dexon sold products that had affixed counterfeit or

11  infringing versions or reproductions of the Cisco Marks to unauthorized products and/or to the

12  packaging, wrapping, etc., in which the Infringing Products are packaged.  This unauthorized use

13  of the Cisco Marks was likely to cause confusion, to deceive, and to mislead the consuming public

14  into believing that there was some affiliation, connection, or association between Dexon and Cisco

15  and was likely to cause confusion, mistake, or deception as to the origin, source, sponsorship,

16  authorization, approval, or affiliation of Dexon's Infringing Products.

17      82.     Dexon's actions, including the unauthorized use of the Cisco Marks in commerce,

18  constitute false designation of origin, false or misleading descriptions of fact, and false or

19  misleading representations of fact, which have caused confusion, mistake, and deception, as to

20  Dexon's association or affiliation with Cisco, as well as to the origin, source, and sponsorship of

21  Dexon's Infringing Products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

22  1125(a).

23      83.     Dexon's unauthorized and misleading use of the Cisco Marks constitutes willful

24  infringement of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco to

25  treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

26      84.     Dexon's conduct has directly and proximately caused Cisco to suffer damage in an

27  amount to be proven at trial.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

85.     Dexon's actions described above, including its unauthorized and misleading use of the Cisco Marks in commerce have caused substantial and irreparable injury to Cisco and to the business and goodwill represented by the Cisco Marks, thereby leaving Cisco without an adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**California Unfair Business Practices**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

86.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

87.     California Business and Professions Code §§ 17200 *et seq.* prohibits acts of unfair or unlawful business practices, which includes unfair competition.

88.     Dexon has knowingly, willfully, and unlawfully infringed the Cisco Marks, including through the sale of infringing Cisco hardware and software products in violation of the Lanham Act, 15 U.S.C. § 1114.  By this conduct, Dexon also engaged in unfair competition by depriving Cisco of sales through its trafficking in cheaper counterfeit products that were misrepresented by Dexon to be genuine.

89.     As a direct, proximate, and foreseeable result of Dexon's sale of infringing Cisco networking hardware parts, Cisco has further been deprived of lost revenue and payments, and has therefore sustained injury in fact.

90.     Dexon has knowingly, willfully, and unlawfully sold invalid Cisco licenses by misrepresenting that those licenses are valid, when in fact they are not.  Dexon's conduct deprived Cisco of revenues that it would have earned had the licenses been validly purchased from Cisco or from an authorized source.  Thus, as a direct, proximate, and foreseeable result of Dexon's sale of invalid Cisco licenses, Cisco has suffered injury in fact.

91.     Dexon's practices were unlawful, and constitute unfair competition as defined by Cal. Bus. & Prof. C. §§ 17200 *et seq*.  Dexon's misconduct was unlawful because, as described herein, its misconduct constitutes violations of numerous state and federal statutes, including but not limited to Cal. Civ. Code § 1797.81, conversion, state false advertising laws such as Cal. Bus.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Prof. Code § 17500, as well as the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and the Federal

2  Trade Commission Act, 15 U.S.C. § 45.  Further, their alleged conduct was unfair in that Dexon's

3  actions, as described herein, significantly threatened and/or harmed competition through

4  infringement, counterfeiting, and false advertising.

5       92.    As a direct and proximate result of Dexon's unlawful and unfair business practices,

6  Cisco has lost money and property, and has suffered irreparable injury to its brand, business

7  reputation, and goodwill.  As such, Cisco's remedy at law is not adequate to compensate for the

8  injuries inflicted by Dexon.  Accordingly, Cisco is entitled to temporary, preliminary, and

9  permanent injunctive relief against Dexon, in addition to restitution in an amount to be proven at

10  trial.

<br>

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Common Law)**

14       93.    Cisco incorporates by reference each of the allegations in the preceding paragraphs

15  of this Complaint as though fully set forth here.

16       94.    Dexon unjustly received benefits at the expense of Cisco through its wrongful

17  conduct, as alleged further above. Dexon continues to unjustly retain these benefits at the expense

18  of Cisco.  The unjust receipt of the benefits obtained by Dexon lacks any adequate legal basis and

19  thus cannot conscientiously be retained by Dexon.  Therefore, the circumstances of the receipt and

20  retention of such benefits are such that, as between Cisco and Dexon, it is unjust for Dexon to

21  retain any such benefits.

22       95.    Cisco is therefore entitled to full restitution of all amounts and/or other benefits in

23  which Dexon has been unjustly enriched at Cisco's expense, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

25  WHEREFORE Cisco respectfully prays for the following relief:

26       A.    For entry of judgment in favor of Cisco and against Dexon on each of Cisco's

27  claims for relief alleged in this Complaint;

28       B.    For a preliminary and permanent injunction restraining Dexon; their officers,

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   agents, servants, employees, attorneys, and affiliated companies; assigns and successors in

2   interest; and those persons in active concert or participation with them, from:

3           (i) importing, exporting, assisting in the importation or exportation, manufacturing,

4   procuring, distributing, shipping, retailing, selling, offering for sale, marketing, advertising, or

5   trafficking in any products not authorized by Cisco and bearing unauthorized simulations,

6   reproductions, counterfeits, copies, or colorable imitations of the Cisco Marks which are likely to

7   cause confusion, or bearing a design that is of a substantially similar appearance to the Cisco

8   Marks listed in this Complaint;

9           (ii) From passing off, inducing, or enabling others to sell or pass off as authentic

10  products produced by Cisco or otherwise authorized by Cisco, any product not manufactured by

11  Cisco or produced under the control or supervision of Cisco and approved by Cisco, which uses

12  any of the Cisco Marks listed in this Complaint; and

13          (iii) From committing any act calculated to cause purchasers to believe that

14  products from Dexon are those sold under the control and supervision of Cisco, or are sponsored,

15  approved, or guaranteed by Cisco, or are connected with and produced under the control or

16  supervision of Cisco;

17  C.      For a determination that Dexon's acts of trademark infringement constitute cases of

18  willful and exceptional infringement;

19  D.      For actual damages as a result of Dexon's unlawful conduct, alleged above, as well

20  as any profits that are attributable to the alleged conduct and are not taken into account in

21  computing Cisco's actual damages;

22  E.      For maximum statutory damages available under the law to the extent Cisco elects

23  statutory damages for any claim for relief;

24  F.      For punitive damages to the fullest extent available under the law;

25  G.      For reasonable attorneys' fees to the fullest extent available under the law;

26  H.      For treble and/or enhanced damages to the fullest extent available under the law;

27  I.      For full restitution, including restoration of all property unlawfully taken from

28  Cisco, as well as any ill-gotten gains from the unauthorized resale of Cisco's property;

1    J.    For prejudgment interest and the costs of prosecuting these claims to the fullest

2 extent available under the law;

3    K.    For any additional injunctive, specific performance, and/or other provisional

4 remedies, as appropriate; and,

5    L.    For such other and further relief as the Court deems just and proper.

6 DATED: March 19, 2021            Respectfully submitted,

7                                 SIDEMAN & BANCROFT LLP

8

9                                 By:   /s/ *Richard J. Nelson*

10                                      Richard J. Nelson
                                        Attorneys for Plaintiffs
11                                      Cisco Systems, Inc. and Cisco Technology, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## JURY DEMAND

2

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs Cisco Systems, Inc. and

3 Cisco Technology, Inc.  hereby demand a trial by a jury on all issues herein so triable.

4 DATED: March 19, 2021                              SIDEMAN & BANCROFT LLP

5

6                                                    By:    /s/ *Richard J. Nelson*

7                                                          Richard J. Nelson
                                                          Attorneys for Plaintiffs
8                                                          Cisco Systems, Inc. and Cisco Technology, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   4651030v8

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711