John A. Conkle, (SB# 117849)
 j.conkle@conklelaw.com
Amanda R. Washton (SB# 227541)
 a.washton@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (30) 998-9109

Michael M. Lafeber (*pro hac vice*)
 mlafeber@taftlaw.com
O. Joseph Balthazor Jr. (*pro hac vice*)
 jbalthazor@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: 612.977.8400
Fax: 612.977.8650

Attorneys for Movant
Dexon Computer, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEXON COMPUTER, INC., a Minnesota corporation,<br><br>Defendant. | Case No. 3:20-cv-4926-CRB<br><br>**DEFENDANT DEXON COMPUTER, INC.'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: May 28, 2021<br>Time: 10:00 AM<br>Location: Zoom<br><br>Hon. Charles R. Breyer<br>Presiding Judge |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that Defendant Dexon Computer, Inc. ("Dexon") renews its motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure for an order dismissing all claims in Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc.'s ("Cisco") First Amended Complaint for lack of personal jurisdiction or, alternatively, for an order transferring this action under 28 U.S.C. § 1404, to the United States District Court of Minnesota.  This Renewed Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the Second Declaration of Stephen O'Neil in Support of Dexon's Motion to Dismiss ("O'Neil Decl."); the record in this matter; and such other and further papers, evidence, and argument as may be submitted to support this Motion.

Dated:  April 19, 2021              Amanda R. Washton, member of
                                    CONKLE, KREMER & ENGEL
                                    Professional Law Corporation


                                    By: */s/Amanda R. Washton*
                                        Amanda R. Washton
                                        Attorneys for Movant
                                        Dexon Computer, Inc.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 6

II. FACTUAL BACKGROUND ..................................................................................... 6

    A. Dexon Computer, Inc. ...................................................................................... 6

    B. Cisco's Opportunity to Conduct Jurisdictional Discovery ..................... 7

III. ARGUMENT ............................................................................................................... 8

    A. Personal Jurisdiction ....................................................................................... 8

        1. Legal Standard .................................................................................... 8

        2. No General Jurisdiction ..................................................................... 9

        3. No Specific Jurisdiction ................................................................... 11

            a. Purposefully Availing itself of the privileges of conducting business in California ................................... 12

                (1) No express aiming .................................................... 13

                (2) No knowledge of harm in California. .................... 14

            b. Arising out of forum-related activities ............................. 15

            c. Comporting with fair play and substantial justice ............ 16

            d. Cisco's "License" Argument Lacks Merit ........................ 17

    B. Transfer ........................................................................................................... 18

        1. Legal Standard .................................................................................. 18

        2. The Private and Public Interest Factors Favor Transfer ............. 18

IV. CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alsop v. Carolina Custom Prod., Inc.*,
   No. 07-cv-212-VAP, 2007 WL 2441025 (C.D. Cal. June 29, 2007) .............. 13

*Asher Worldwide Enterprises LLC v. Sur La Table, Inc.*,
   No. 11-cv-1183-MJP, 2012 WL 112641 (W.D. Wash. Jan. 10, 2012) ........... 13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) .............................................. 12

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) ....................................................... 12

*Calder v. Jones*,
   465 U.S. 783 (1984) .................................................... 9, 12

*Cisco Sys. Inc. v. Link US, LLC*,
   No. 18-cv-07576-CRB, 2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) ............. 8

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ............................................. 12

*Congoleum Corp. v. DLW Aktiengesellschaft*,
   729 F.2d 1240 (9th Cir. 1984) ............................................. 11

*Costa v. Keppel Singmarine Dockyard PTE, Ltd.*,
   No. CV 01-11015MMM, 2003 WL 24242419 (C.D. Cal. Apr. 24, 2003) ........... 10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................ 8

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) .............................................. 8

*Dow Chem. Co. v. Calderon*,
   422 F.3d 827 (9th Cir. 2005) ............................................... 8

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
   No. 19-CV-05611-PJH, 2020 WL 1244918 (N.D. Cal. Mar. 16, 2020) ........... 15

*Flynt Distrib. Co. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984) .............................................. 8

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clemens Ltd.*,
   328 F.3d. 1122 (9th Cir. 2003) ............................................. 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ........................................................ 9

*Hughes v. Wal–Mart Stores, Inc.*,
    250 F.3d 618 (8th Cir. 2001) .......................................................................... 19

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ......................................................................................... 9

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .......................................................................... 18

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770, 772 104 S. Ct. 1473 L.Ed.2d 790 (1984) ................................. 11

*L.A. Gem & Jewelry Design, Inc. v. Reese*,
    No. 15-cv-03035-SJO-MRWx, 2015 WL 4163336 (C.D. Cal. July 9, 2015) ............................................................................................................... 11

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) .......................................................................... 19

*Matson Navigation Co., Inc. v. Sherwin-Williams Co.*,
    No. 17-cv-00081(EDL), 2017 WL 7310771 (N.D. Cal. Sept. 11, 2017) ....... 16

*Monster Energy Co. v. Cycle Locators Inc.*,
    No. 18-cv-00050-JGB-KKX, 2018 WL 6431009 (C.D. Cal. June 25, 2018) ....................................................................................................... 10, 13

*Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.*,
    No. 12-cv-05586-CW, 2013 WL 245594 (N.D. Cal. Jan. 22, 2013) ............. 10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..................................................................... 9, 11

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................ 8

*Toro Co. v. Hunter Indus. Inc.*,
    No. 14-cv-4463 (MJD/FLN), 2015 WL 4545403 (D. Minn. July 27, 2015) ............................................................................................................... 19

*Walden v. Fiore*,
    571 U.S. 287 (2014) ................................................................................. 14, 15

**FEDERAL STATUTES**

Fed. R. Civ. P. 12 ........................................................................................................ 8

**STATE STATUTES**

Cal. Civ. Proc. Code § 410.10 .................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In response to Dexon's original motion to dismiss, the Court afforded Cisco the opportunity to conduct jurisdictional discovery, including third party discovery, to attempt to buttress its personal jurisdictional arguments. Despite being allowed four (4) months of discovery, Cisco's amended allegations remain lacking. Namely, Cisco's discovery uncovered just 26 transactions over a 4 ½ year period involving *allegedly* counterfeit sales to California consumers. Such *allegedly* counterfeit sales represent just .125% (or $1/8^{th}$ of 1%) of Dexon's total sales revenue over that same time period. Such a slender reed supports neither general nor specific jurisdiction.

## II. FACTUAL BACKGROUND

### A. Dexon Computer, Inc.

Dexon is a Minnesota corporation that was founded in 1992. (Doc. No. 10-1, ¶ 2). It sells, rents, and services new, refurbished, and discontinued networking hardware. (*Id.*, ¶ 3). Some of its product offerings include routers, servers, switches, transceivers and phones. (*Id.*).

Dexon has one office, which is in Bloomington, Minnesota. (*Id.*, ¶ 4). Its registered agent's address is in Minneapolis, Minnesota. (*Id.*). Dexon has approximately 23 employees, all of whom reside and physically work in Minnesota. (*Id.*, ¶ 5). Dexon does not have any employees, offices, or service-of-process agents in California. (*Id.*, ¶ 6). It is not licensed to do business in California, owns no property in California, and pays no taxes there. (*Id.*, ¶ 7). Dexon does not do any direct advertising in California; specifically, Dexon does not run any print, television or radio ads with circulation in or near California. (*Id.*, ¶ 8)

Dexon has sold a de minimis amount of product to customers with a California shipping address. (*Id.*, ¶ 9). Such products are often drop-shipped directly from Dexon's third-party suppliers and vendors. (*Id.*).

### B. Cisco's Opportunity to Conduct Jurisdictional Discovery

In response to Dexon's original motion to dismiss (Doc. No. 10), the Court allowed Cisco to conduct jurisdictional discovery, including third-party discovery, relevant to Dexon's California sales. (Doc. No. 24). The Court originally granted Cisco leave to file an amended complaint within 90 days of November 11, 2020. Cisco was subsequently allowed an additional 30 days to complete its jurisdictional discovery and file an amended complaint (Doc. No. 30). Despite having four (4) months to conduct jurisdictional discovery covering the period "July 22, 2016 to the present,"[1] including the ability subpoena Dexon customers and inspect any suspect products, Cisco has only been able to come forward with a total of 26 new transactions involving sales of *alleged*[2] counterfeit product by Dexon to California consumers. (Doc. No. 32, ¶¶ 60, 62).

Such newly alleged counterfeit sales represent a mere .125% of Dexon's total sales over the same period. (Second Declaration of Stephen O'Neil, ¶¶ 3-4). Tellingly, Dexon produced documentation revealing sales of 6,618 separate products to California customers during the relevant period. Of those 6,618 products, Cisco is only able to allege that 60, or .9%, are counterfeit. (*Id.*, ¶¶ 60-62). Contrary to painting the picture of an "intentional" or "bad faith" actor, jurisdictional discovery has confirmed that to the extent Dexon's sales have included counterfeit products, Dexon is merely an innocent middle-man reseller. Dexon is no different than the Cisco authorized channel partners who have been victimized by the presence of counterfeit Cisco product in the stream of commerce. (Doc. No. 10-1 at 5-7).

---

[1] Cisco's jurisdictional discovery requests defined the "Relevant Period" as "July 22, 2016 to the present."

[2] Dexon disputes all of Cisco's "counterfeit" allegations. Moreover, as noted in Dexon's original motion, to the extent any product is ultimately determined to have been counterfeit, it's likely the result of Cisco's own failure to properly control its manufacturing and distribution channels.

## III.  ARGUMENT

### A.  Personal Jurisdiction

#### 1.  Legal Standard

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  The plaintiff has the burden of demonstrating that jurisdiction is proper. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).  Because this Court has not yet held an evidentiary hearing, the plaintiff is required only to make out a prima facie case of jurisdiction, which is met if the plaintiff points to "admissible evidence which, if believed, would be sufficient to establish personal jurisdiction." *Cisco Sys. Inc. v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 WL 6682838, at *2 (N.D. Cal. Dec. 6, 2019) (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clemens Ltd.*, 328 F.3d. 1122, 1129 (9th Cir. 2003)).  Critically, the plaintiff must cite specific evidence; "mere 'bare bones' assertions of minimum contacts with [California] or legal conclusions unsupported by specific factual allegations will not satisfy [the] pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  In determining whether to exercise jurisdiction, this Court may consider supporting affidavits. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Courts test personal jurisdiction over a non-resident defendant (like Dexon) under a two-part analysis: the exercise of jurisdiction must (1) "satisfy the requirements of the applicable long-arm statute" and (2) "comport with federal due process." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005). California's long-arm statute, however, is coterminous with Constitutional limits. Cal. Civ. Proc. Code § 410.10; *see Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.").  For that reason, the two-part inquiry turns into one. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

797, 801 (9th Cir. 2004) ("[T]he jurisdictional analyses under state law and federal due process are the same.").

To comport with federal due process, Dexon must have "certain minimum contacts with [California] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotations omitted). The minimum contacts analysis focuses on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quotation omitted)). Personal jurisdiction over a non-resident defendant may be general or specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Here, Cisco appears to allege both. (Doc. No. 32).

2. <u>No General Jurisdiction</u>

General jurisdiction arises if a defendant has "substantial" or "continuous and systematic" contacts with the forum. *Helicopteros*, 466 U.S. at 415. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

Here, Cisco alleges that this Court has personal jurisdiction over Dexon, because "[d]uring the period from July 1, 2017 and December 31, 2019, Dexon derived at least 2.9% of its total revenues from business it conducted in California"[3];

---

[3] Cisco's Amended Complaint misrepresents the volume of Dexon's sales to customers with California shipping addresses. Specifically, Cisco alleges that "[d]uring the period from July 1, 2017 and December 31, 2019, Dexon derived at least 2.9% of its total revenues from business it conducted in California." (Doc. No. 32, ¶ 8) (italics added). This is inaccurate. Such statement appears to be derived from the original Declaration of Dexon President and CEO Stephen O'Neil (Doc. No. 10-1). Mr. O'Neil did not represent that 2.9% of Dexon's "total revenues" derived from California sales. Rather, he represented that "just 2.9% of Dexon's revenues *from Cisco products* involved customers with a California shipping address." (*Id.*, ¶ 9) (italics added).

and (2) "Dexon maintains a website through which it solicits business throughout the United States, including within the State of California." (Doc. No. 32 at ¶ 8). Cisco's allegations do not come close to establishing that Dexon is "at home" in California. *Daimler*, 571 U.S. at 139.

First, Dexon has no offices, employees, property, or agents in California. It is incorporated in Minnesota, and its principal place of business is in Minnesota. Although Dexon has sold products to California residents, "[c]ourts have routinely rejected the suggestion that generating [even] substantial revenue from the sale of products or services to forum state residents is by itself sufficient to support the exercise of general jurisdiction." *Costa v. Keppel Singmarine Dockyard PTE, Ltd.*, No. CV 01-11015MMM, 2003 WL 24242419, at *10 (C.D. Cal. Apr. 24, 2003) (collecting cases); *see Helicopteros,* 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough" to establish general jurisdiction). Courts have declined to exercise general jurisdiction when the percentage of sales are negligible compared the company's overall sales *and* the company does not advertise in the forum or otherwise direct activities there. *See Monster Energy Co. v. Cycle Locators Inc.*, No. 18-cv-00050-JGB-KKX, 2018 WL 6431009, at *3 (C.D. Cal. June 25, 2018) ("Defendant maintains one storefront in Illinois, is incorporated in Illinois, and California is not its principal place of business. Additionally, Defendant promotes itself using its Illinois phone number and directs customers to its Wauconda, Illinois address. Furthermore, the sales to California residents are sporadic and represent less than a fraction of one percent of Defendant's total sales per year. Defendant cannot be described as being 'essentially at home' in California.") (internal record citations omitted); *Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.*, No. 12-cv-05586-CW, 2013 WL 245594, at *3 (N.D. Cal. Jan. 22, 2013) ("These sales constitute less than fifteen percent of Defendants' total product sales. What's more, these sales have not prompted Defendants to travel to California, send sales agents there, or tailor their marketing towards the state in any way. Past Supreme Court and Ninth Circuit

DEFENDANT DEXON COMPUTER, INC.'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

decisions make clear that Defendants' activities are insufficient to support general jurisdiction." (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 779, n.11, 104 S. Ct. 1473, 79 L.Ed.2d 790 (1984), *and Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984))). As the Supreme Court has cautioned, "[i]f [Dexon]'s California activities sufficed to allow adjudication of this [Minnesota]-rooted case in California, the same . . . reach would presumably be available in every other State in which [Dexon]'s sales are sizable." *Daimler*, 571 U.S. at 139.

Second, Dexon operates a website where customers from anywhere in the United States can place an order. And Dexon does not advertise in California or send sales agents to California. "Absent evidence of significant sales in the forum state, email or website advertising, standing alone, do not give rise to [personal] jurisdiction." *L.A. Gem & Jewelry Design, Inc. v. Reese*, No. 15-cv-03035-SJO-MRWx, 2015 WL 4163336, at *4 (C.D. Cal. July 9, 2015). The Ninth Circuit has squarely addressed a passive website like the one at issue here and determined that it falls short of establishing general jurisdiction. In *Schwarzenegger v. Fred Martin Motor Co.*, the defendant had, among other contacts, "an Internet website accessible by anyone capable of using the Internet, including people living in California." 374 F.3d at 801. The Ninth Circuit reasoned that merely operating a website available to all Internet users does not the general jurisdiction standard because it merely establishes that a defendant does business *with* California, not *in* California. *Id.* (citing *Bancroft & Masters*, 223 F.3d at 1086). Because Dexon's website is passive, it does not qualify as a basis to exercise personal jurisdiction over Dexon.

### 3. No Specific Jurisdiction

Cisco contends that this Court has specific jurisdiction over Dexon in California because Dexon has (1) procured counterfeit Cisco products from California for resale; (2) sold counterfeit Cisco products to end users in California; and (3)

shipped counterfeit products from a location within California. (Doc. No. 32 at ¶ 9). Cisco's First Amended Complaint falls short of establishing a prima facie basis for this Court to exercise specific jurisdiction over Dexon.

A court may exercise specific jurisdiction over a nonresident defendant if all three of the following requirements are met:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail[] himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quotations omitted). Cisco has the burden to establish the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If Cisco can do so, the burden shifts to Dexon to establish a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

a. Purposefully Availing itself of the privileges of conducting business in California

In trademark cases, Ninth Circuit courts analyze the first prong under "the purposeful direction test." *Axiom*, 874 F.3d at 1068 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). To satisfy the purposeful direction test, the plaintiff must establish that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quotation omitted).

Cisco relies on three types of purported contacts to attempt to force Dexon to defend itself in this foreign district: (1) random sales to California customers (Doc. No. 32 at ¶¶ 36-38, ¶¶ 40-43, ¶¶ 47-52); (2) shipments to Cisco investigators in

California (*id.* at ¶ 39, ¶ 53); and (3) purchases of products from a defendant in the Related Litigation (*id.* at ¶¶ 44-46).

Even if Dexon committed an intentional act of shipping Cisco products to California, Dexon's minimal California sales fail to demonstrate that Dexon expressly aimed its activities at California, and its lack of knowledge of counterfeit products shows that it did not know that its act of shipping Cisco products would cause harm in California.

### (1)   No express aiming

To establish express aiming, Cisco relies on Dexon's minimal sales to California customers and scant examples of counterfeit products.  Such contacts do not satisfy the express aiming requirement.

Courts in the Ninth Circuit have determined that express aiming does not arise where, as here, the only contact with the forum is an extremely small percentage of the defendant's overall sales  *See Asher Worldwide Enterprises LLC v. Sur La Table, Inc.*, No. 11-cv-1183-MJP, 2012 WL 112641, at *5 (W.D. Wash. Jan. 10, 2012) ("The extremely small percentage of Defendants' nationwide sales that occur in Washington—0.02 percent—. . . weighs against finding that Defendants conduct was expressly aimed at Washington.").  Rather, courts have concluded that the plaintiff must show "something more." *Monster Energy Co. v. Cycle Locators Inc.*, No. 18-00050-JGB-KKX, 2018 WL 6431009, at *4 (C.D. Cal. June 25, 2018).

To illustrate, in *Monster Energy Co. v. Cycle Locators Inc.*, the defendant operated a website, sold a fraction of 1% of products to California, but did not advertise there.  *Id.*  In determining that the plaintiff had failed to establish express aiming, the district court explained that (1) "[a]ny sales to California residents [wer]e merely     incidental"; (2) "Defendant [did] nothing beyond the maintenance of its website"; and (3) the defendant did not "initiate[] any sales to California residents." *Id.*; *see Alsop v. Carolina Custom Prod., Inc.*, No. 07-cv-212-VAP, 2007 WL 2441025, at *7-8 (C.D. Cal. June 29, 2007) ("Defendant has not targeted advertising

or promotional materials to residents of California because it advertises in motorcycle magazines that are nationally distributed. Less than one percent of sales were to California residents. . . . Plaintiffs have not met their burden of establishing that Defendant purposefully directed its activities at California.").

Like the defendants' sales in *Asher Worldwide Enterprises*, *Alsop*, and *Monster Energy*, Dexon's allegedly counterfeit sales to California residents over the 4 ½ year period Cisco was allowed to conduct jurisdictional discovery represent just .125% (or 1/8th of 1%) of Dexon's overall sales. And like the defendants in those cases, Dexon does not advertise in California, and it does not initiate sales with California customers. Cisco has therefore failed to demonstrate how Dexon's minimal relevant California sales and passive website satisfies the express aiming requirement.

As previously argued, to the extent Cisco contends Dexon's *purchases* from California entities establish express aiming, such arguments have been expressly rejected. (Doc. No. 10 at 15-16). In *Premier Fabrics, Inc. v. Walters & Mason Retail, Inc.*, the district court rejected the plaintiff's argument "that [Defendant]'s purchases of the allegedly infringing products from [a California company] [we]re sufficient to satisfy the express aiming requirement" because the defendant's "allegedly tortious conduct consist[ed] of purchasing allegedly infringing garments from . . . a vendor who *happened* to be located in California." No. 18-cv-2126-JFW(SKX), 2018 WL 6164766, at *5 (C.D. Cal. Aug. 1, 2018) (emphasis added). The district court ultimately granted the Defendant's Rule 12(b)(2) motion to dismiss. *Id.* at *8. The same relief should happen here.

### (2)   No knowledge of harm in California.

Cisco's allegations that Dexon intended to cause harm in California by selling products to the state do not satisfy the purposeful direction test. Rather, the Court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom*, 874 F.3d at 1069-70 (quoting *Walden v. Fiore*, 571 U.S. 287-88 (2014)). Even if Dexon's "intentional act

eventually caused harm to [Cisco] in California, and [Dexon] may have known that [Cisco] lived in California . . . [,] this does not confer jurisdiction . . . ." *Schwarzenegger*, 374 F.3d at 807.

For example, in a similar case in this District also involving Cisco, Cisco "incorrectly argue[d] that the effects test [wa]s satisfied by allegations that [a plaintiff] intentionally infringed [Cisco's] intellectual property rights knowing [Cisco] was located in the forum state." *Cisco Sys. Inc.*, 2019 WL 6682838, at *4. The district court explained that the "Ninth Circuit has held such allegations inadequate to establish personal jurisdiction after *Walden v. Fiore*, 571 U.S. 277 (2014), which 'made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.'" *Id.* (quoting *Axiom*, 874 F.3d at 1069-70 (quoting *Walden*, 571 U.S. at 287-88)). As in that case, here, Cisco improperly relies on general allegations, which is not sufficient. *See Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 1244918, at *7 (N.D. Cal. Mar. 16, 2020) ("Plaintiffs argue that California is the focal point of their harm because Five Star's business is centered in California and thus the brunt of the harm Five Star suffers from the imitation product is in California. This is precisely the sort of plaintiff-centered harm that *Walden* and *Axiom Foods* foreclosed").

For the above reasons, Cisco fails to establish the purposeful direction. On that basis, this Court may dismiss the First Amended Complaint for lack of personal jurisdiction.

        b.    Arising out of forum-related activities

Even if Cisco could establish the first prong, Cisco's allegations do not demonstrate that its claims against Dexon "arise[] out of or relate[] to the [Dexon]'s forum-related activities." *Axiom*, 874 F.3d at 1068. Here, the claims arise out of the manufacture and importing of counterfeit products as alleged in the Related Litigation, not the "random, fortuitous or attenuated" down-stream sales made my

innocent "middle man" re-sellers like Dexon. *Matson Navigation Co., Inc. v. Sherwin-Williams Co.*, No. 17-cv-00081(EDL), 2017 WL 7310771, at *7 (N.D. Cal. Sept. 11, 2017) (quoting *Burger King*, 471 U.S. at 475). To the extent Cisco points to sales of counterfeit products, those alleged sales occurred outside California. (Doc. No. 32 at ¶¶ 36-38, ¶¶ 40-43, ¶¶ 47-52). In fact, one such example occurred in Minnesota. (*Id.* at ¶ 43). For all those reasons, Cisco's allegations do not establish that Dexon's attenuated contact arise out of or relate to the subject claims.

      c.  Comporting with fair play and substantial justice

Likewise, even if Cisco established the first two prongs, this Court's exercise of personal jurisdiction over Dexon would nevertheless violate the third prong's requirement that "the exercise of jurisdiction . . . comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom*, 874 F.3d at 1068. In analyzing the third prong, courts consider the following factors:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Here, the above factors weigh in Dexon's favor. The alleged California sales represent a small fraction of Dexon's overall sales; the majority of Dexon's sales occurred in the appropriate forum: Minnesota. Litigating outside California will not burden Cisco, which is a global company with unlimited resources. For those reasons, exercising jurisdiction over Dexon in California does not "comport with fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 802.

This Court may also determine that the exercise of jurisdiction is unreasonable based on Dexon's minimal sales. For instance, in *Zumba Fitness, LLC v. Brage*, the district court determined that there was "some purposeful direction" based on sales to California residents, but the court ultimately concluded that "the degree of Defendant's purposeful interjection into the Central District of California is so small that it favors a finding of unreasonableness." No. 11-cv-5361-GHK-CWX, 2011 WL 4732812, at *3-4 (C.D. Cal. Oct. 6, 2011. Therefore, even if the Court determines that Dexon purposefully directed its activities at California, it may nevertheless determine that the exercise of jurisdiction in unreasonable based on Dexon's minimal sales.

d. Cisco's "License" Argument Lacks Merit

Recognizing it lacks the requisite contacts to support personal jurisdiction, Cisco attempts to rely on a contractual "consent" to jurisdiction argument. (Doc. No. 32, ¶ 63) ("In Section 19 of the EULA, Dexon explicitly agreed that it was subject to the exclusive jurisdiction of the Federal Courts of the Northern District of California or the California Superior Court for Santa Clara County for any disputes arising out of, or related to the EULA. As part of that agreement, Dexon also consented that venue in either of those courts was proper.") Cisco fails to note that Dexon is *not* a party to the subject End User License Agreement ("EULA"). Such agreement, by its express terms, is between Cisco and the end user consumer.

> **CISCO**
>
> **Cisco End User License Agreement**
>
> This is an agreement between You and Cisco Systems, Inc. or its affiliates **("Cisco")** and governs your Use of Cisco Software. **"You"** and **"Your"** means the individual or legal entity licensing the Software under this EULA. **"Use"** or **"Using"** means to download, install, activate, access or otherwise use the Software. **"Software"** means the Cisco computer programs and any

(Second O'Neil Dec., Ex. A). Even if Dexon were a party to the EULA, which it is not, Cisco also fails to explain how a trademark infringement dispute between it and Dexon is a "claim arising under the EULA.) (*Id.*)

This Court may therefore dismiss the Complaint for lack of personal jurisdiction.

### B. Transfer

If this Court does not dismiss the Complaint for lack of personal jurisdiction over Dexon, Dexon respectfully requests that this Court transfer this case to the appropriate forum, the District of Minnesota.

#### 1. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).

#### 2. The Private and Public Interest Factors Favor Transfer

Convenience and fairness are determined based on private and public interest factors, which the Court weighs on a motion to transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). In deciding a motion to transfer, courts therefore balance the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99.

Here, all the factors favor a transfer. All the potential witnesses for Dexon live in Minnesota. (Doc. No. __, ¶ 3). All the subject purchase orders, and invoices are housed or stored in Minnesota. (*Id.*, ¶ 4). All the subject agreements with Dexon's customers were negotiated in Minnesota. (*Id.*). And although California state law

may apply to some claims, "the primary claims in [Cisco]'s Complaint arise under federal law—the Lanham Act," which "undermines [Cisco]'s assertion that a local court should decide its state law []claims." *Toro Co. v. Hunter Indus. Inc.*, No. 14-cv-4463 (MJD/FLN), 2015 WL 4545403, at *5 (D. Minn. July 27, 2015). "Indeed, federal district courts are 'faced almost daily with the task of applying some state's law other than that of the forum state, and [they are] capable of resolving . . . dispute[s] under [another state's] law." *Id.* (quoting *Hughes v. Wal–Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001)).

Because only one factor favors Cisco (the plaintiff's interest in choosing a forum), that factor should be given minimal consideration. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff]'s choice [of forum] is entitled to only minimal consideration.").

For those reasons, this Court should exercise its discretion and transfer this action to the United States District Court in Minnesota.

## IV.   CONCLUSION

For the foregoing reasons, Dexon respectfully requests that this Court grant its renewed motion to dismiss for lack of personal jurisdiction or, alternatively, transfer this action to the United States District Court of Minnesota.

Dated:  April 19, 2021         Amanda R. Washton, member of
                               CONKLE, KREMER & ENGEL
                               Professional Law Corporation


                        By:   */s/Amanda R. Washton*
                              Amanda R. Washton
                              Attorneys for Movant
                              Dexon Computer, Inc.