1  RICHARD J. NELSON (State Bar No. 141658)
   E-Mail:      *rnelson@sideman.com*
2  LOUIS P. FEUCHTBAUM (State Bar No. 219826)
   E-Mail:      *lfeuchtbaum@sideman.com*
3  ANGELA M. HE (State Bar No. 319351)
   E-Mail:      *ahe@sideman.com*
4  ARTUR A. MINASYAN (State Bar No. 322248)
   E-Mail:      *aminasyan@sideman.com*
5  SIDEMAN & BANCROFT LLP
   One Embarcadero Center, Twenty-Second Floor
6  San Francisco, California 94111-3711
   Telephone:    (415) 392-1960
7  Facsimile:    (415) 392-0827

8  Attorneys for Plaintiffs
   Cisco Systems, Inc. and Cisco Technology, Inc.

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

13  CISCO SYSTEMS, INC., a Delaware            CASE No. 3:20-cv-4926 CRB
    corporation, and CISCO TECHNOLOGY,
14  INC., a California corporation,            **PLAINTIFFS CISCO SYSTEMS, INC.
                                               AND CISCO TECHNOLOGY, INC.'S
15              Plaintiffs,                     OPPOSITION TO DEFENDANT DEXON
                                               COMPUTER, INC.'S RENEWED
16       v.                                    MOTION TO DISMISS**

17                                             Date: May 28, 2021
    DEXON COMPUTER, INC., A Minnesota          Time: 10:00 AM
18  Corporation,                               Courtroom: 6, 17th Floor
                                               Judge: Honorable Charles R. Breyer
19              Defendant.

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

**TABLE OF CONTENTS**

Page

2

3    I.    INTRODUCTION.................................................................................... 1

4    II.   STATEMENT OF FACTS...................................................................... 2

5          A.    Dexon Agreed To Personal Jurisdiction In The Northern District Of
                 California.................................................................................... 2

6          B.    Dexon Procured Cisco Products And Service Contracts From Within
7                California For Resale ................................................................ 5

8                1.    Dexon Procured Two Counterfeit Cisco Products From A Reseller
                       in Irvine .................................................................................. 5

9
10               2.    Dexon Procured At Least Five Counterfeit Cisco Switches From A
                       Reseller In Alameda County ...................................................... 5

11               3.    Dexon Procured 1,351 Counterfeit Cisco Transceivers From The
12                     Alameda County Reseller........................................................... 5

13               4.    Dexon Procured At Least Six Counterfeit Cisco Products From A
                       Reseller In Anaheim, And Then Resold Them For Use By The U.S.
                       Navy ........................................................................................ 6

14         C.    Dexon Sells Counterfeit Cisco Products Into California ........................ 6

15               1.    Dexon's Sales Of Counterfeit Products Into California Discovered
16                     Through Jurisdictional Discovery. ............................................. 6

17         D.    Dexon's Online Conduct Directed at California ................................ 7

18   III.  LEGAL ARGUMENT .......................................................................... 8

19         A.    Legal Standard For Personal Jurisdiction.................................... 8

20         B.    Dexon Is Subject To Personal Jurisdiction In California Because It
21               Consented To The Exclusive Jurisdiction of California Courts............. 10

22         C.    Dexon Is Subject To Personal Jurisdiction Because It Committed Torts In
                 California.................................................................................... 11

23         D.    Personal Jurisdiction Is Supported By Dexon's Purposeful Activities
24               Directed At California That Give Rise to Cisco's Claims ................. 13

25               1.    Dexon's Sales to California.......................................................... 13

26               2.    Dexon's Continuous Interactions with PFT ................................. 14

27               3.    Dexon Directing Its Business to California Through Its Website............... 14

28               4.    Cisco's Claims Arise from Dexon's Contacts with California .................. 15

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

E.    The Exercise of Personal Jurisdiction is Reasonable ................................. 16

F.    Dexon's Request For Transfer Should Be Denied Because The Private And
Public Interest Factors Weigh Against It ....................................... 17

IV.    CONCLUSION .......................................................................... 18

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*As You Sow v. Crawford Laboratories, Inc.*
   50 Cal.App.4th 1859 (1996)...............................................................13

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995)........................................................8, 15

*Boschetto v. Hansing,*
   539 F.3d 1011 (9th Cir. 2008)...........................................8, 9, 12, 15

*Brayton Purcell LLP v. Recordon & Recordon,*
   606 F.3d 1124 (9th Cir. 2010)...................................................8

*Burger King Corp. v. Rudzewicz*
   471 US 462 (1985)..............................................................8, 9, 12

*Caruth v. International Psychoanalytical Ass'n,*
   59 F.3d 126 (9th Cir. 1995)......................................................8

*Cisco Systems, Inc., et. al. v. Dexon Computer, Inc.,*
   Case No. 3:11-cv-1455 WHA (N.D. Cal. 2011) ...................7

*Cybersell, Inc. v. Cybersell, Inc.,*
   130 F.3d 414 (9th Cir. 1997)....................................................14

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)................................................................8

*Dole Food Co., Inc. v. Watts*
   (9th Cir. 2002) 303 F.3d 1104..................................................16

*Drop Dead Co. v. S. C. Johnson & Son, Inc.,*
   326 F.2d 87, 93 (9th Cir. 1963)...............................................12

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.,*
   905 F.3d 597 (9th Cir. 2018).................................................9, 12

*Golden Eagle Ins. Co. v. Foremost Ins. Co.,*
   20 Cal. App. 4th 1372 (1993)..................................................10

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
   485 F.3d 450 (9th Cir. 2007)...................................................10

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*
   326 US 310 (1945) ........................................................................................ 8

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000) ......................................................................... 17

*Lueck v. Sundstrand Corp.,*
   236 F.3d 1137 (9th Cir. 2001) ....................................................................... 17

*Martensen v. Koch,*
   942 F.Supp.2d 983 (N.D. Cal. 2013) ............................................................. 11

*Nat'l Equip. Rental, Ltd. v. Szukhent,*
   375 U.S. 311 (1964) ...................................................................................... 10

*New England Duplicating Co. v. Mendes,*
   190 F.2d 415 (1st Cir. 1951) .......................................................................... 11

*Philip Morris USA Inc. v. Liu,*
   489 F. Supp. 2d 1119 (C.D. Cal. 2007) .......................................................... 11

*Philip Morris USA Inc. v. Shalab,*
   352 F.Supp.2d 1067 (C.D. Cal. 2004) ............................................................ 15

*Premier Fabrics, Inc. v. Walters & Mason Retail, Inc.,*
   No. 18-cv-2126-JFW(SKX), 2018 WL 6164766 (C.D. Cal. Aug. 1, 2018) ........ 12

*Rearden LLC v. Rearden Com., Inc.,*
   683 F.3d 1190 (9th Cir. 2012) ....................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ......................................................................... 8

*Walden v. Fiore*
   571 US 277 (2014) ........................................................................................ 8

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London,*
   407 F. Supp. 3d 931 (S.D. Cal. 2019) ....................................................... 10, 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
   433 F3d 1199 (9th Cir. 2006) (en banc) ......................................................... 9

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*
   952 F.Supp. 1119 (W.D.Pa.1997) ................................................................. 14

**Statutes**

15 U.S.C. §§ 1051, et. seq. ................................................................................ 11

15 U.S.C. § 1114 ........................................................................................................... 17

15 U.S.C. § 1114(a) ...................................................................................................... 11

15 U.S.C. § 1117(c) ...................................................................................................... 17

15 U.S.C. § 1125(a)(1)(A) ........................................................................................... 17

Lanham Act ...........................................................................................................*passim*

**Other Authorities**

Rule 12(b)(2) .................................................................................................................. 8

U.S. Constitution ........................................................................................................... 8

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco" or

2   "Plaintiffs") hereby submit their Opposition to Dexon Computer, Inc.'s ("Dexon's") Renewed

3   Motion to Dismiss [ECF Document No. 34 ("Doc. 34")], which seeks to dismiss Cisco's First

4   Amended Complaint. Cisco's Opposition is based upon this filing, and the concurrently filed

5   Declaration of Louis P. Feuchtbaum in support of this Opposition ("Feuchtbaum Decl.").

6   **I.    INTRODUCTION**

7   Cisco's original complaint (Doc. 1) identified numerous relevant facts that support

8   personal jurisdiction over Dexon in California.  In addition to these, jurisdictional discovery

9   revealed that approximately 27% of all Cisco products and software that Dexon sold into

10  California, and which Cisco was able to examine, are counterfeit.  *Infra.*

11  Dexon Computer, Inc. is a long-time trafficker in counterfeit Cisco products.  In fact,

12  during 2011, a large number of counterfeit Cisco products were discovered at Dexon's facility

13  after a search warrant was executed by the FBI.  [Cisco's First Amended Complaint ("FAC"),

14  ECF Document No. 32, ("Doc. 32"), ¶ 28.] After Dexon repeatedly ignored Cisco's demands that

15  Dexon cease and desist selling counterfeit Cisco products, Cisco sued Dexon in the U.S. District

16  Court for the Northern District of California, in an attempt to deter Dexon from further illegal

17  conduct.    That lawsuit was eventually settled, pursuant to a confidential agreement.

18  Unfortunately, Dexon has remained undeterred.

19  In the intervening nine years, since Cisco first sued Dexon, Dexon has brazenly continued

20  to traffic in counterfeit Cisco products.  Not only has Dexon repeatedly ignored Cisco's demands

21  that it cease and desist that illegal conduct, Dexon reneged on several promises it had made to

22  assist Cisco's investigations into illegal conduct.  Dexon's unlawful conduct continues, unabated.

23  As detailed below, in carrying out its counterfeit trafficking schemes, Dexon has

24  repeatedly directed its conduct at California.  It shipped counterfeit Cisco products from within

25  California.  It sold at least 62 counterfeit Cisco products to its customers located in California.  It

26  procured numerous Cisco products from resellers within this state, including 1,364 counterfeit

27  Cisco products, which it then reintroduced into commerce, in violation of the Lanham Act. Each

28  of these acts constitute an independent tortious act that is at issue in Cisco's First Amended

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Complaint.

2       Dexon previously consented to the exclusive jurisdiction of certain California courts,

3  including this one, for disputes related to many of the acts that are at issue in this lawsuit.

4  California's personal jurisdiction over Dexon in this matter is established through the following:

5  (1) Dexon's consent,  (2) the fact that Dexon has committed the torts at issue in this lawsuit within

6  California, and (3) by an overall weighing of its relevant conduct that was directed towards

7  California.

8  **II.**  **STATEMENT OF FACTS**

9       Since at least 2006, Dexon has directed its business activities at people and entities within

10  the state of California to procure and sell counterfeit Cisco products, and commit other tortious

11  acts.  [Cisco's First Amended Complaint ("FAC"), ECF Document No. 32, ("Doc. 32"), ¶¶ 24-

12  25.]  This conduct includes: the purchase of counterfeit and other Cisco products from various

13  procurement sources within the state; the sale of large volumes of Cisco products to purchasers

14  and customers within California, which include the sales of counterfeit Cisco products; procuring

15  service contracts on Cisco products from Cisco partners in California; advertising and soliciting

16  business within California, and; using counterfeit documents to transmit Cisco software to

17  customers in California.  *Id.* at ¶¶ 8-10.

18      **A.**    **Dexon Agreed To Personal Jurisdiction In The Northern District Of California**

19

20       During the period from March 2017 through July 2020, Dexon purchased at least 278

21  Product Activation Keys ("PAKs")[1] that activated Cisco software, and it then resold that software

22

23  [1]  Unlike in earlier years, when a software sale involved providing the customer with a tangible
24  item, such as a diskette or Compact Disc on which the software was stored, today most software is
pre-installed on a piece of hardware.  In those situations, a user buys the software by purchasing a
25  "key," which is a string of alphanumeric characters and ASCII symbols that unlocks the pre-
installed software and is subject to a license agreement.  Cisco's FAC and this Opposition refer to
26  software purchases as the purchase of "software licenses," or of "Product Activation Keys," as it
best describes the particular circumstance.

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  to its California customers on 37 separate occasions.[2]  [Feuchtbaum Decl., ¶ 1d]  Each time Dexon

2  acquired a Cisco software license, Dexon agreed to be bound by the terms of a Cisco End User

3  License Agreement ("EULA"), which, among other things, directed that any related disputes

4  would be subject to the jurisdiction of this Court.  Dexon was aware of the EULA and its contents

5  at the time that it committed the actionable conduct.  [Feuchtbaum Decl., ¶ 2]  Dexon transmitted

6  copies of the EULA to its customers, along with the PAKs that activated the Cisco software.  *Id.*

7  Dexon's resale of Cisco software gives rise to various causes of action, which are among those

8  included in Cisco's FAC.

9       Cisco revised the EULA on three occasions during the period that Dexon purchased and

10 then resold Cisco software.  However, the following material terms of the EULA are substantively

11 unchanged:

12  • By its plain terms, the EULA applied to anyone who purchased a software license.

13      [Feuchtbaum Decl., Exhibit ("Exh.") A, pp. 2, 7, 14, 20]

14  • The EULA prohibited the sale of Cisco software by anyone other than an "Approved

15      Source," which the EULA defines as Cisco, or one of its authorized distributors or

16      resellers.  Dexon is not among those entities that are authorized to sell Cisco software.

17      [Feuchtbaum Decl., Exh. A, pp. 2 ("Cisco licenses You the right to Use only the Software

18      You acquire from an Approved Source."); 7, 14, 20 (the software license is valid when

19      purchased "from an Approved Source[.]")]

20  • The EULA prohibited a purchaser from transferring, sublicensing, or assigning its rights

21      under the software license to any third-party, absent limited exceptions that do not apply to

22  _____

23  [2]  These 278 sales likely represent only a small portion of all the Cisco software that Dexon resold
     into California.  In order to conduct jurisdictional discovery in the limited time available, Cisco
24  performed a triage of the invoices that Dexon produced to identify a manageable number of
     entities and products for which to issue subpoenas.  Thus, Cisco was able to inquire about only a
25  small portion of Dexon's total California sales.  The 278 PAKs that Dexon purchased and resold
     do not include any transactions that might exist in the majority of Dexon's California sales, about
26  which Cisco did not inquire through discovery.

27

28

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

Dexon.   [Feuchtbaum Decl., Exh. A, pp. 2 (prohibiting the "transfer, sublicense, or assign[ment]" of any rights under the license); 8, 15, 21(directing that the licensee may not "sell, resell, transfer, sublicense, or assign" any rights under the license.)]

• As specified in the EULA, any claims arising under it are subject to the exclusive jurisdiction of the U.S. District Court for the Northern District of California, or of the California Superior Court for Santa Clara County.  [Feuchtbaum Decl., Exh. A, pp. 5, 11, 18, 24]

Dexon purchased Cisco software and then either activated the software, or worked with its customers to activate the software.  As one example of how Dexon accomplished this, Dexon appears to have posed as the end user to purchase a PAK for Cisco software that had been ordered by one of its customers, the Claremont McKenna College.  [Feuchtbaum Decl., Exh. B]  Dexon obtained the serial number from this customer for the product on which the software was to be activated.  Dexon then obtained a PAK that would activate the software for that product.  *Id.* In this instance, Dexon emailed the PAK to Claremont McKenna College, and then, after Claremont McKenna College complained about having difficulty, Dexon sent a follow-up email to facilitate activation of the software that Dexon had purchased and then resold.  *Id.*

Cisco's FAC includes allegations and claims that are related to Dexon's violations of the EULA.  Of Dexon's 278 purchases of Cisco software that it resold to California customers, on at least twenty occasions, Dexon provided a software activation key by using documents containing counterfeit Cisco trademarks to transmit the PAK.  [Doc. 32, ¶ 62]  Additionally, Dexon breached its obligations under the EULA by reselling the Cisco software with PAKs that had been illegally copied, depriving Cisco of revenue from Dexon's and its customers' use of the Cisco software.  [Doc. 32, ¶¶ 62-63]  In addition to Cisco's claims against Dexon under the Lanham Act, Dexon's resale of the software also gives rise to the FAC's causes of action for Unfair Competition, Unfair Business Practices, and Unjust Enrichment.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**B.**     **Dexon Procured Cisco Products And Service Contracts From Within California For Resale**

Dexon regularly directs its activities towards California to procure Cisco products, including counterfeit products, and certain Cisco service contracts that it can only obtain through subterfuge.  Dexon then re-introduces these illicit products and services back into commerce by reselling them.

1.     Dexon Procured Two Counterfeit Cisco Products From A Reseller in Irvine

In 2006, Dexon procured a counterfeit Cisco product from a reseller in Irvine, California. [Doc. 32, ¶ 26]  In March 2019, Dexon again procured a Cisco product from that same reseller, which the end user complained did not work because it had "compliance" issues.  [Feuchtbaum Decl., Exh. C]

2.     Dexon Procured At Least Five Counterfeit Cisco Switches From A Reseller In Alameda County

In 2018, Dexon purchased "Cisco" switches from PureFutureTech ("PFT"), a company in Fremont, California.  [Doc. 32, ¶ 50]  Cisco examined five of these switches and determined that every one of them was counterfeit.[3]  *Id.*

3.     Dexon Procured 1,351 Counterfeit Cisco Transceivers From The Alameda County Reseller

On at least 125 different occasions, between January 16, 2017 and June 19, 2019, Dexon ordered Cisco products from PFT.  Cisco's FAC identifies 1,351 transceivers[4] that Dexon

_____

[3]  Cisco discovered these products despite Dexon's efforts to conceal them. During 2019, Cisco filed a lawsuit in the Northern District of California against PFT's supplier, HongKong Sellsi ("HKS"), a well-known counterfeit trafficker. Cisco requested Dexon's assistance in identifying the products that had been supplied to it by PFT, but Dexon refused. Cisco then subpoenaed Dexon for information sufficient to identify the location of those products, but Dexon filed a motion to quash that subpoena. Cisco was able to inspect those products only after the Court ordered Dexon to comply with Cisco's subpoena.

[4]  The FAC details the grounds upon which Cisco alleges on information and belief that each of (footnote continued)

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   purchased from PFT for resale to Dexon's customers.  [Doc. 32, ¶ 52]   As alleged in the FAC, all

2   of these transceivers were counterfeit.  *Id.*  Many of these products were sold to Dexon in quantity

3   and at a cost of less than 5% of the Cisco Global List Price for the genuine products.  *Id.* After

4   acquiring these counterfeit products, Dexon then reintroduced them into commerce by selling

5   them.  *Id.*

6           4.   Dexon Procured At Least Six Counterfeit Cisco Products From A Reseller
                 In Anaheim, And Then Resold Them For Use By The U.S. Navy
7

8           During the period from September 2017 through September 2018, Dexon purchased more

9   than 285 Cisco products from a California reseller located in Anaheim.  [Feuchtbaum Decl., ¶¶ 5,

10  5a, Exh. D]   Cisco determined that at least six (and likely many more) of those products are

11  counterfeit.  [Feuchtbaum Decl., ¶ 5b]  Dexon resold these six of these "Cisco" modules for use by

12  the U.S. Navy in Guam.  *Id.*

13  **C.      Dexon Sells Counterfeit Cisco Products Into California**

14          Cisco's FAC describes two different occasions when Dexon sold counterfeit Cisco

15  products into California.  [Doc. 32, ¶¶ 33, 40]  In addition to these, Cisco has been able to identify

16  60 additional counterfeit sales by Dexon into this state from the limited purview offered by

17  jurisdictional discovery.  *Id.* at ¶¶ 60, 62.

18          1.   Dexon's Sales Of Counterfeit Products Into California Discovered Through
                 Jurisdictional Discovery.
19

20          Cisco was able to make only limited inquiries to identify counterfeit products that Dexon

21  sold into California due to the time constraints it had in which to conduct jurisdictional discovery.

22  To accomplish this, Cisco conducted a triage of the 617 pages of invoices that Dexon provided,

23  reflecting sales to its California customers, in order to identify subpoena targets who were likely to

24  timely produce documents related to products that Cisco would be able to efficiently analyze to

25  determine whether they were counterfeit.  [Feuchtbaum Decl., ¶ 1]  Cisco served subpoenas on

26  _____

27  these transceivers is counterfeit.

28

1    only 46 out of the 119 California entities that were identified in the Dexon invoices, and then

2    inquired about only a portion of the products Dexon sold to those entities.  *Id.* at ¶ 1b.

3        Out of the approximately 4,600 products[5] that Dexon identified having sold in California

4    during the relevant period, Cisco's subpoenas inquired about only 621 of them.  Out of those 621

5    product inquiries, Cisco received information sufficient to analyze only about 226 products.[6]  *Id.*

6    at ¶¶ 1b, 1c.  Out of those 226 products examined, Cisco determined that 60, or 27% of the

7    products sold by Dexon in California were counterfeit.  *See* FAC, Doc. 32, ¶¶ 60, 62.

8        **D.    Dexon's Online Conduct Directed at California**

9        Going back to at least 2006, Dexon has solicited business from California residents

10   through a website it maintains that advertises products it sells, including those manufactured by

11   Cisco.  [Doc. 32., ¶ 8]  That website provides a means for Dexon's California-based customers to

12   submit inquiries regarding the purchase of products, including Cisco products, and it also provides

13   a "Pay Portal" through which purchasers in California can submit payment to Dexon.  *Id.*  In

14   addition to its maintenance of this website, Dexon has repeatedly directed its electronic activity

15   towards Cisco, which Dexon understands operates its headquarters and much of its operations

16   from San Jose, California.[7]

17

18

19   [5] As used here, "products" also includes PAK certificates.

20   [6] The subpoena responses were limited by many factors, including: products having been taken out
     of service or not being locatable; Dexon being unable to provide serial numbers for products; the
21   subpoena respondents being unable to determine which of their Cisco products Dexon had sold to
     them, and; the subpoena respondents' inability to fully comply with the subpoena due to
22   manpower and facility COVID restrictions that were in effect during early 2021, when the
23   subpoena responses were prepared.

24   [7]  Dexon is aware that Cisco operates its headquarters and many of its business operations from
     California as the result of Cisco's disclosures in another lawsuit that Cisco prosecuted against
25   Dexon for trademark counterfeiting, among other causes of action, here in the Northern District of
     California.  *See Cisco Systems, Inc., et. al. v. Dexon Computer, Inc.*, Case No.  3:11-cv-1455
26   WHA (N.D.  Cal.  2011).

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

III.    **LEGAL ARGUMENT**

Dexon is subject to personal jurisdiction in this Judicial District for three separate and independent reasons. First, Dexon agreed that California courts would have exclusive jurisdiction for all claims arising out of the EULA, which are among the claims asserted in Cisco's FAC. Second, Dexon has committed at least 1,426 separate tortious acts in California that are the subject of this lawsuit. Finally, Dexon has purposefully directed its activities towards California, in such a significant manner that personal jurisdiction here would comport with traditional notions of fair play and substantial justice.

A.    **Legal Standard For Personal Jurisdiction**

When opposing a jurisdictional challenge under Rule 12(b)(2), Cisco "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "[U]ncontroverted allegations in the complaint must be taken as true," and any conflicts in the evidence must be resolved in Cisco's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where the motion is based on written materials, Cisco is required only to "make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995); *see also, Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

Federal courts ordinarily follow state law in determining the bounds of that state's personal jurisdiction over a foreign defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution. *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008).

Due process requires that the Defendant have certain minimum contacts with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement* 326 US 310, 316 (1945) (internal quotations omitted); *Walden v. Fiore* 571 US 277, 283 (2014). Where a foreign defendant has not committed a relevant tort within the forum state, personal jurisdiction may still exist in the forum when: (1) the out-of-state

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  defendant purposefully directed its activities toward residents of the forum state or otherwise

2  established contacts with the forum state; (2) the plaintiff's claim arises out of or results from

3  defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction is

4  reasonable in that it comports with "fair play and substantial justice." *Burger King Corp. v.*

5  *Rudzewicz* 471 US 462, 477-478 (1985); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

6  *L'Antisemitisme* 433 F3d 1199, 1206 (9th Cir. 2006) (en banc).[8]

7          Additionally, personal jurisdiction is likely to exist with respect to a particular case when a

8  foreign defendant commits a tortious act at issue in that case within the forum.  *See Freestream*

9  *Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).   Generally, where a

10  defendant commits a tortious act in the forum state, the plaintiff's burden under the *Burger King*

11  two-prong test has been satisfied, and the burden is shifted to the defendant to show that

12  jurisdiction would be unreasonable.  *See id.* ("Because Plaintiffs allege that Defendants committed

13  the intentional tort of defamation while present in the forum state, the first two prongs of the

14  minimum contacts test are satisfied here.")

15          After a plaintiff makes a prima facie showing that the first two prongs of the personal

16  jurisdiction test have been satisfied, the motion to dismiss must be denied unless the defendant can

17  make "a 'compelling case' that the exercise of jurisdiction would not be reasonable.  *Boschetto v.*

18  *Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

19  462, 476–78 (1985)).

---

[8] It is worth noting that Dexon's motion seems to confuse the legal standard to be applied.  Dexon repeatedly details its limited physical presence in California.  But that misses the point of the purposeful direction test.  A defendant need not be physically present for a state to have personal jurisdiction over it when that defendant directs relevant conduct to the forum state from outside of it.

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Here, Dexon's motion to dismiss must be denied because the first two prongs of the

2  personal jurisdiction test are established in two separate and independent ways,[9] and because

3  Dexon cannot present a *compelling* case that California jurisdiction would be unreasonable.

4    **B.    Dexon Is Subject To Personal Jurisdiction In California Because It Consented
       To The Exclusive Jurisdiction of California Courts**

5

6    Dexon purchased Cisco software, subjecting its use to the terms of the EULA.  Among

7  those terms, Dexon consented that any disputes arising from the EULA would be subject to the

8  *exclusive* jurisdiction of this U.S. District Court, or of the California Superior Court in Santa Clara

9  County.  Dexon violated the EULA by reselling the Cisco software.  The manner in which it

10  resold the software gives rise to causes of action in Cisco's FAC for Unfair Competition, Unfair

11  Business Practices, Unjust Enrichment, and violations of the Lanham Act.

12    It is well established law that parties may agree to submit to jurisdiction of a given court.

13  *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964).  "Under general contract principles, a

14  forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that

15  the defendant agrees to be so bound."  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d

16  450, 458 (9th Cir. 2007) (citations omitted).

17    Here, there is no significant question that Dexon agreed to be bound by the terms of the

18  EULA.  First, Dexon was fully aware of the terms of the EULA because it provided copies to its

19  customers to whom it sold the Cisco software.  Second, the EULA directs that any user who does

20  not agree to be bound by its terms may not activate or otherwise use the software.  Being aware of

21  this term, Dexon continued with its use of the software.  Finally, Dexon's agreement to be bound

22  by the terms of the EULA "may be inferred from inaction in the face of a duty to act."  *Golden*

23  *Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1386 (1993), as modified on denial of

24

25  [9]  First, Dexon committed tortious acts at issue in the lawsuit within California.  Second, Cisco's

26  claims arise as the result of Dexon's purposeful conduct directed at California residents and from
    Dexon's contacts with California.

27

28

1    reh'g (Jan. 7, 1994).   "Silence coupled with retention of [a benefit conferred by contract] may

2    constitute sufficient evidence of acceptance so as to place [the contract] in full force and effect."

3    *See id.* at 1372.

4          Having knowingly agreed to be bound by the EULA's jurisdiction clause, Dexon cannot

5    seek to have the case transferred based upon a claim that the venue is somehow not appropriate.

6    Generally, a jurisdiction clause in a contract subsumes a defendant's ability to challenge venue.

7    *See White Knight Yacht LLC v. Certain Lloyds at Lloyd's London,* 407 F. Supp. 3d 931, 943 (S.D.

8    Cal. 2019) ("For purposes of evaluation of a motion to dismiss on grounds of forum non

9    conveniens, forum-selection clauses will almost always control.")

10         **C.      Dexon Is Subject To Personal Jurisdiction Because It Committed Torts In
                     California**

11

12         The gravamen of Cisco's complaint is related to Dexon's many violations of the Lanham

13   Act, which proscribes any use of a counterfeit registered trademark in commerce.   15 U.S.C. §§

14   1051, et. seq.   As described explicitly within that law, the use of a counterfeit trademark in

15   connection with the sale, advertising, or distribution of goods or services, among other things,  is

16   actionable.   15 U.S.C. § 1114(a).   A defendant's ignorance that a trademark is counterfeit is no

17   defense as the Lanham Act is a strict liability statute.   *Philip Morris USA Inc. v. Liu*, 489 F. Supp.

18   2d 1119, 1122 (C.D. Cal. 2007).   Specific personal jurisdiction over Dexon exists in California

19   because Dexon repeatedly committed torts at issue in this lawsuit within California by procuring

20   counterfeit Cisco products from California for resale, and by selling counterfeit Cisco products

21   into California.[10]

22         As described in Cisco's FAC, Cisco identified 62 counterfeit Cisco products and PAK

23   certificates that Dexon sold to various of its customers in California.  [Doc. 32, ¶¶ 33, 40, 60, 62]

24   _____

25   [10] Dexon mistakenly tries to shield itself from this jurisdictional analysis by claiming that there is
     insufficient activity to satisfy the "effects" test.   But that is a strawman argument because "the
26   'effects' test appears unnecessary where, as here, part of the alleged tort occurred in [the forum]."
     *Martensen v. Koch*, 942 F.Supp.2d 983, 994 (N.D. Cal. 2013).

27

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

1   Each one of these sales, standing on their own, constitutes an independent tort because each

2   individual use of a counterfeit trademark in commerce is a violation of the Lanham Act.

3          Dexon also committed an actionable tort for every one of the 1,324 counterfeit Cisco

4   products that it procured from California.  Dexon incorrectly claims that these purchases do not

5   matter, but that argument ignores well-established Lanham Act jurisprudence.  "[A] mark shall be

6   deemed to be in used in commerce on goods when. . . the goods are sold or <u>transported in</u>

7   <u>commerce</u>. . . ."  *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012)

8   (emphasis added). Any "transportation in commerce is a 'use' for trade-mark registration purposes

9   <u>even though there is no sale</u>." *New England Duplicating Co. v. Mendes,* 190 F.2d 415, 418 (1st

10   Cir. 1951) (emphasis added).[11]   The sole act of shipping a single product with an infringing

11   trademark is sufficient to establish liability under the Lanham Act, even when the product is not

12   being offered for sale.  *Drop Dead Co. v. S. C. Johnson & Son, Inc.*, 326 F.2d 87, 93 (9th Cir.

13   1963) (describing that a violation of the Lanham Act existed when defendant shipped one can with

14   an infringing mark attached, in an attempt to register that infringing mark).  For purposes of the

15   Lanham Act, "[i]f the [counterfeit] label is affixed and the goods transported in commerce, the

16   mark is 'used in commerce'."  *See id.*

17          This Court may properly assert personal jurisdiction over Dexon because, having

18   committed torts in this state, Plaintiffs' two-prong jurisdictional test under *Burger King* is

---

20   [11]   Dexon misapplies an unpublished case in an effort to controvert the well-established rule that
21   transporting a counterfeit trademark in commerce is sufficient to sustain a cause of action under
      the Lanham Act.  Defendant incorrectly cites *Premier Fabrics, Inc. v. Walters & Mason Retail,*
22   *Inc.*, No. 18-cv-2126-JFW(SKX), 2018 WL 6164766, at *5 (C.D. Cal. Aug. 1, 2018) for the
      proposition that purchasing an "infringing" product from a seller in California is not relevant to
23   having committed a tort, and that it is not sufficient to satisfy the express aiming test.  However,
      *Premier Fabrics* was a case regarding copyright infringement, so it is not relevant to modifying a
24   clear rule of the Lanham Act, which holds that the mere transport of a counterfeit article is a
      violation.    Further, the *Premier Fabrics* Court did not find that purchases of products in a forum
25   state can never be relevant to satisfy personal jurisdiction.  Instead, that Court merely held that
26   where Defendant's purchases were the <u>only</u> activity directed to the forum, that was not <u>sufficient</u>
      to satisfy the express aiming prong of the *Calder* test.  *Id.*

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  satisfied.  *Freestream Aircraft (Berm.) Ltd.*, 905 F.3d at 603.  Dexon cannot satisfy its burden

2  because a <u>compelling case</u> cannot be made that that California's exercise of jurisdiction would be

3  unreasonable.  *Boschetto*, 539 F.3d at 1016.

4     **D.     <u>Personal Jurisdiction Is Supported By Dexon's Purposeful Activities Directed</u>**
       **<u>At California That Give Rise to Cisco's Claims</u>**

5

6     Separate and apart from personal jurisdiction existing in California due to Dexon having

7  consented to jurisdiction here, and having committed tortious acts here, Dexon is also subject to

8  personal jurisdiction as the result of repeatedly and over a prolonged period of time directing its

9  activities into California, which activities are related to Cisco's claims.  Dexon transacts a

10 significant amount of business in California, both buying and selling Cisco products, it solicits

11 business in this state, and it seeks assistance directly from Cisco, which in addition to being a

12 California corporation, operates its headquarters and a significant amount of its business in the

13 state.

14              1.     <u>Dexon's Sales to California</u>

15    A significant portion of Dexon's sales are made in California.  By its own admission,

16 Dexon made 2.9% of all its Cisco sales in California over a 29-month period.  [Doc. 10 at 8:9-13]

17 This seems especially significant given that Dexon is operated from a location near Minneapolis,

18 which is about 2,000 miles away from this state.  It seems highly unlikely that a company could

19 possibly conduct so many of its sales within a state from which it is so distant without

20 intentionally, purposefully,  and repeatedly directing its activity there.  While Dexon seems to

21 claim that these sales are de minimis, that misses the point.  Such a claim not only strains

22 credulity, but it is also irrelevant under the law.

23    Personal jurisdiction analysis rests not upon the "quantity of activity," but upon the

24 defendant's purpose.  "Instead of focusing on the quantity of activity, [a court] must look to see if

25 the defendant purposefully availed itself of the benefits and protections of California law to make

26 it reasonably foreseeable to be 'haled into the court in the forum State' to defend itself in an action

27 relating to its products."  *As You Sow v. Crawford Laboratories, Inc.* 50 Cal.App.4th 1859, 1870

28 (1996), as modified (Dec. 13, 1996) *citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  286, 297 (1980).  Indeed, Dexon conducted about three times as many sales in California as is

2  sufficient to establish personal jurisdiction under established authority.  *See id.* (finding a

3  sufficient basis for personal jurisdiction where defendant conducted less than 1% of its sales in

4  California.)  While this activity, taken alone, should be sufficient to demonstrate that Dexon

5  purposefully availed itself of the benefits and protections of California law to make it reasonably

6  foreseeable that it could be haled into the court here, this is but one measure of Dexon's significant

7  contacts with this state.

8  　　　　2.　　Dexon's Continuous Interactions with PFT

9  　　　　As already described above, Dexon maintained a continual relationship with PFT in

10  California for the purpose of procuring Cisco products, most of which were demonstrated, or

11  likely to be counterfeit.  Between January 2017 and June 2019, Dexon purchased more than 2,770

12  Cisco products from PFT, including 1,401 products that either were, or are likely to be counterfeit.

13  [Doc. 32, ¶¶ 49-52]

14  　　　　3.　　Dexon Directing Its Business to California Through Its Website

15  　　　　During the relevant period, Dexon has operated and continues to operate a website that has

16  sufficient interactivity to demonstrate purposefully directed activity towards this state that

17  supports personal jurisdiction.  Maintaining a website may be relevant for jurisdictional analysis

18  when it offers more than just a passive listing of information:

19  　　　　"At one end of the spectrum are situations where a defendant clearly
20  does business over the Internet.  If the defendant enters into
contracts with residents of a foreign jurisdiction that involve the
21  knowing and repeated transmission of computer files over the
Internet, personal jurisdiction is proper.  At the opposite end are
22  situations where a defendant has simply posted information on an
Internet Web site which is accessible to users in foreign
23  jurisdictions.  A passive Web site that does little more than make
information available to those who are interested in it is not grounds
24  for the exercise [of] personal jurisdiction.  The middle ground is
occupied by interactive Web sites where a user can exchange
25  information with the host computer.  In these cases, the exercise of
jurisdiction is determined by examining the level of interactivity and
26  commercial nature of the exchange of information that occurs on the
Web site."

27  *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F.Supp. 1119, 1124 (W.D.Pa.1997).  *See also*

28  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (finding that *Zippo* test is

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   applicable, though finding that facts presented there were not sufficient to establish personal

2   jurisdiction).

3         Dexon's website is relevant for jurisdictional analysis because it is interactive. It allows

4   people within California to exchange information with Dexon and to submit payment for products

5   that Dexon advertises on that website. [Doc. 32, ¶ 8]  As already described above, it was precisely

6   through this website that Dexon made its sales to Cisco's investigators in California.

7                      4.       Cisco's Claims Arise from Dexon's Contacts with California

8         Cisco satisfies the second prong of the personal jurisdiction test because all of the

9   aforementioned California activity is the fertile ground from which Cisco's claims against Dexon

10  arise.  For many years, Dexon has engaged in a scheme through which it purchased and sold

11  counterfeit products from and within California.  It directed a significant portion of its business

12  activities to this state through related business activities that it transacted here.  And, it continued

13  to engage in this illegal conduct, without taking any apparent remedial action, after being

14  repeatedly warned by Cisco about its misconduct.

15        Not surprisingly, Dexon attempts to minimize all of this by claiming that it merely

16  performed "random, fortuitous or attenuated down-stream sales [of an] innocent 'middle man'[.]"

17  [Doc. 34 at 15:26-16:3]  That vastly understates the extent of Dexon's participation in active

18  trafficking of counterfeit Cisco products in various states, *including California.*  It is also

19  irrelevant because, even if true, the Lanham Act is a strict liability tort for which the actor's state

20  of mind not an issue.  *See Philip Morris USA Inc. v. Shalab*, 352 F.Supp.2d 1067, 1073-74 (C.D.

21  Cal.  2004) (citing 15 U.S.C.  § 1114).

22        As a general rule, many courts use a "but for" test to determine whether the claim "arises

23  out of" the nonresident's forum-related activities.  In other words, the element is satisfied if

24  plaintiff would not have suffered loss "but for" defendant's activities.  *Ballard v. Savage* 65 F.3d

25  1495, 1500 (9th Cir. 1995).  Here, but for Dexon's stream of sales of counterfeit Cisco products

26  into and from California, Dexon's purchases of counterfeit Cisco products from PFT (a known

27  California-based trafficker of counterfeit Cisco products), and Dexon's solicitation of business

28  from California through its website, Cisco would not have suffered loss in the form of infringed

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

1  trademarks and damages.   Therefore, Cisco's claims arise in a substantial part out of Dexon's

2  contacts with California.

3      **E.      The Exercise of Personal Jurisdiction is Reasonable**

4      Dexon has failed to meet its burden of making a "compelling case" that the exercise of

5  jurisdiction is unreasonable.  *Boschetto*, 539 F.3d at 1016.  To determine the reasonableness of

6  exercising personal jurisdiction, the courts consider several factors: (1) the extent of the

7  defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of

8  defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4)

9  the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of

10 the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

11 effective relief; and (7) the existence of an alternative forum.  *Dole Food Co., Inc. v. Watts* (9th

12 Cir. 2002) 303 F.3d 1104, 1114.   In review of these factors, the balance weighs in favor of

13 personal jurisdiction here.

14     During the relevant period, Dexon has admitted to selling approximately 4,600 products in

15 California.  [Feuchtbaum Decl., ¶  1a]  On the other hand, as alleged in Cisco's FAC, Dexon's

16 sales in other states are dispersed, with very few of its sales that are at issue in this lawsuit

17 occurring in Minnesota.[12]  [Doc. 32, ¶ 46]  In further contrast, Dexon's activity in California has

18 been significant, involving more than 1,400 torts[13] committed in this state that potentially would

19 require the depositions and testimony of numerous California third-party witnesses.  Further, most

20 of Cisco's key witnesses reside in this Judicial District.  Given the number of party witnesses

21 required in this matter, it seems likely that Cisco would have a far greater number of witnesses

22 than Dexon would, since Cisco will have the burden of presenting evidence regarding test buys,

23 evidence chain-of-custody, relevant business operations regarding Cisco software and licenses,

24

25 [12]  Cisco's FAC identifies only four counterfeit Cisco products sold in Minnesota.

26 [13] These California torts are comprised of Dexon's: sale of 62 counterfeit products and PAK
27 certificates, and; its procurement of an estimated 1,364 counterfeit products.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

2835-290\4719855v5

16

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  and technical determinations regarding conclusions that products are counterfeit.   Dexon's

2  significant business transactions in this state, as well as its tortious conduct here, should have

3  made Dexon aware of the possibility of being haled into California courts.   Exercising jurisdiction

4  over Dexon in California would comport with traditional notions of fair play and substantial

5  justice.

6     F.     **Dexon's Request For Transfer Should Be Denied Because The Private And
          Public Interest Factors Weigh Against It**

7

8         Dexon's request for transfer is inapplicable because it has already consented to the

9  exclusive jurisdiction of certain courts in California.   *Infra.*   Generally, a party consenting to

10  jurisdiction cannot challenge venue. *White Knight Yacht*, 407 F. Supp. 3d 931 at 943.   However,

11  even if Dexon did have standing to challenge venue, transfer of the case would not be justified

12  because the public and private factors weigh against it.

13         Ordinarily, when evaluating a motion to dismiss on grounds of forum non conveniens, "a

14  plaintiff's choice of forum will not be disturbed unless the private interest and the public interest

15  factors <u>strongly favor</u> trial" in a foreign jurisdiction.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137,

16  1145 (9th Cir. 2001) (emphasis added).   Dexon correctly points out that convenience and fairness

17  are determined based on private and public interest factors.  *Jones v. GNC Franchising, Inc.*, 211

18  F.3d 495, 498 (9th Cir. 2000).   Dexon is wrong, however, to contend that an examination of the

19  factors favor transferring this case to Minnesota.   The relevant factors and their application to this

20  case are:

| Factor | Proper Venue In This Case |
|---|---|
| 1. The state that is most familiar with the governing law. | <u>California</u>.   Although Cisco alleges violations of 15 U.S.C.   §§ 1114, 1117(c), and 1125(a)(1)(A) (federal laws), it also alleges violations of California common law unfair competition, trademark infringement and California unfair business practices (California state laws). Further, the EULA dictates that California law applies. |
| 2. The plaintiff's choice of forum. | <u>California</u>.   Cisco chose California as the forum, which Dexon admits favors California. |
| 3. The respective parties' contacts with the forum. | <u>California</u>.   As explained above, Dexon conducts business in California on a regular and |

PLAINTIFFS' OPPOSITION TO DEXON COMPUTER, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

| | |
|---|---|
| | persistent basis.  This includes sales and shipments to California customers and purchases from California resellers. Cisco is headquartered in California. |
| 4.  The contacts relating to the plaintiff's cause of action in the chosen forum. | <u>California</u>.   Dexon's numerous sales of counterfeit products give rise to Cisco's claims. Moreover, Dexon procured numerous counterfeit products from California, which also give rise to Cisco's allegations. |
| 5.  The differences in the costs of litigation in the two forums. | <u>California</u>.  Given the large number of third-arty witnesses in California, as well as the likely greater number of Cisco witnesses who reside here, the costs of litigation will likely be the less in California. |
| 6.  The availability of compulsory process to compel attendance of unwilling nonparty witnesses. | <u>California</u>.  Many key witnesses are located in California, including: Dexon's customers in California and California resellers with whom Dexon engaged to procure counterfeit products. |
| 7.  The ease of access to sources of proof. | <u>California</u>.  Although there are many sales that occurred outside of California, California would allow ease of access to sources of proof related to numerous California customers.  Further, the key resellers with whom Dexon interacted to procure counterfeit products are in California. Finally, California would allow ease of access to physical evidence that Cisco holds here. |

In light of the above balancing of the factors relevant to transfer, the appropriate venue for the is in California.

## IV.    CONCLUSION

This matter is properly before this Court.  Dexon consented to exclusive jurisdiction and venue in California.  Even if it did not, Dexon committed at least 1,426 tortious acts in this state that are at issue in this action.  From all evidence presently available, it appears that the center of gravity for this matter is in California.  And, even if Dexon did not commit so many tortious acts here, it directed such a significant amount of activity to California that specific personal jurisdiction exists.  Further, Dexon is unable to make a compelling case, as it is required to do, to establish that jurisdiction here would be unreasonable.  Transfer is not justified because the public and private factors strongly weigh in favor of the action continuing where Plaintiffs filed the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    matter.

2        For all of the foregoing reasons, and any others that this Court considers just, Dexon's

3    Motion to Dismiss Cisco's First Amended Complaint should be denied.

4    DATED:  May 7, 2021                        SIDEMAN & BANCROFT LLP

5

6                                        By:        *s/ Louis. P. Feuchtbaum*

7                                              LOUIS P. FEUCHTBAUM
                                               Attorneys for Plaintiffs Cisco Systems, Inc.
8                                              and Cisco Technology, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711