Amanda R. Washton (SB# 227541)
  a.washton@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

Michael M. Lafeber (*pro hac vice*)
  mlafeber@taftlaw.com
O. Joseph Balthazor Jr. (*pro hac vice*)
  jbalthazor@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: 612.977.8400
Fax: 612.977.8650

Attorneys for Movant
Dexon Computer, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>DEXON COMPUTER, INC., a Minnesota corporation,<br><br>           Defendant. | Case No. 3:20-cv-4926-CRB<br><br>**DEFENDANT DEXON COMPUTER, INC.'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:     May 28, 2021<br>Time:    10:00 a.m.<br>Crtrm.:  6<br>Location: Zoom<br><br>Hon. Charles R. Breyer<br>Presiding Judge |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 5

II. ARGUMENT .................................................................................................................. 5

    A. Personal Jurisdiction Standard ........................................................................... 5

        1. Cisco does not argue for general jurisdiction ......................................... 5

        2. Dexon did not commit an intentional tort while physically present in the state ...................................................................................... 5

    B. The End-User License Agreement Does Not Confer Jurisdiction Over Dexon Because Dexon Is Neither A Party To The Agreement Nor A User .......................... 6

    C. Purchasing product from California does not confer jurisdiction ............................. 9

    D. Dexon's minimal sales do not establish "express aiming" at California ................. 10

    E. Cisco has not established that litigating in California is reasonable ........................ 14

III. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Brown v. BMW of N. Am., LLC*, No. 1:14-cv-00931-JMS-DML,
    2016 WL 427517 (S.D. Ind. Feb. 4, 2016) .................................................................... 12

*Alsop v. Carolina Custom Prod., Inc.*, No. 07-cv-212-VAP,
    2007 WL 2441025 (C.D. Cal. June 29, 2007) ............................................................... 11

*Asher Worldwide Enterprises LLC v. Sur La Table, Inc.*, No. 11-cv-1183-MJP,
    2012 WL 112641 (W.D. Wash. Jan. 10, 2012) ............................................................. 11

*Attachmate Corp. v. Celcom Axiata Berhad,* C10-0526-RSM,
    2010 WL 4856793 (W.D. Wash. Nov. 22, 2010) ........................................................... 8

*BMMSOFT, Inc. v. White Oaks Tech.*, Inc., No. C-09-4562 MMC,
    2010 WL 3340555 (N.D. Cal. Aug. 25, 2010) ............................................................ 7, 8

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ........................................................................................ 13

*Drop Dead Co. v. S. C. Johnson & Son, Inc.*,
    326 F.2d 87 (9th Cir. 1963) .......................................................................................... 10

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
    905 F.3d 597 (9th Cir. 2018) ...................................................................................... 5, 6

*FTC - Forward Threat Control, LLC v. Dominion Harbor Enterprises, LLC*,
    2020 WL 5545156 (N.D. Cal. Sept. 16, 2020 ................................................................ 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ..................................................................................................... 10

*Martensen v. Koch*,
    942 F. Supp. 2d 983 (N.D. Cal. 2013) ........................................................................... 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................................................... 11

*Modak v. Alaris Companies, LLC*, No. 08-cv-5118-CW,
    2009 WL 1035485 (N.D. Cal. Apr. 17, 2009) .............................................................. 13

*Monster Energy Co. v. Cycle Locators Inc.*, No. 18-00050-JGB-KKX,
    2018 WL 6431009 (C.D. Cal. June 25, 2018) .............................................................. 11

*New England Duplicating Co. v. Mendes*,
    190 F.2d 415 (1st Cir. 1951) .......................................................................................... 9

*Olympia Steel Bldg. Sys. Corp. v. Gen. Steel Domestic Sales, LLC*, No. 06-cv-1597,
    2007 WL 1217992 (W.D. Pa. Apr. 24, 2007) .............................................................. 12

*Premier Fabrics, Inc. v. Walters & Mason Retail, Inc.*, No. CV 18-2126-JFW(SKX),
    2018 WL 6164766 (C.D. Cal. Aug. 1, 2018) .......................................................................... 10

*Rearden LLC v. Rearden Com., Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ............................................................................................... 9

*Renner v. Roundo AB*, No. 1:08-cv-209,
    2010 WL 3906242 (W.D. Pa. Sept. 29, 2010) ...................................................................... 11

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ............................................................................................. 10

*Wescott v. Reisner*,
    2018 WL 2463614 (N.D. Cal. June 1, 2018) ......................................................................... 7

*Zumba Fitness, LLC v. Brage*, No. 11-cv-5361-GHK-CWX,
    2011 WL 4732812 (C.D. Cal. Oct. 6, 2011) ........................................................................ 14

**STATE CASES**

*As You Sow v. Crawford Laboratories, Inc.*,
    50 Cal.App.4th 1859 (1996) ................................................................................................ 13

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*,
    20 Cal. App. 4th 1372, 25 Cal. Rptr. 2d 242 (1993) .............................................................. 9

## I.  INTRODUCTION

Despite telling this court that it needed jurisdictional discovery to establish personal jurisdiction over Dexon in California, Cisco has relied principally on a discredited argument that Dexon contractually consented to jurisdiction in California.  Namely, Cisco argues the End-User License Agreement (EULA) covering the software used by Dexon's customers lists California as the agreed-upon forum.  The fatal flaw is that Dexon does not use the software and is therefore not a party to the EULA .

## II.  ARGUMENT

### A.  Personal Jurisdiction Standard

#### 1.  Cisco does not argue for general jurisdiction

Cisco does not contend that this court has general jurisdiction over Dexon.  *See* (Doc. No. 35 at 14 (providing only the standard for specific jurisdiction)).  This court may therefore focus its analysis on whether it has specific jurisdiction over Dexon in California.

#### 2.  Dexon did not commit an intentional tort while physically present in the state

Cisco erroneously relies on *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018), for the proposition that the first two prongs of the specific jurisdiction test are satisfied because Dexon committed an intentional tort while present in California.  *See* (Doc. No. 35 at 15 ("[P]ersonal jurisdiction is likely to exist . . . when a foreign defendant commits a tortious act at issue in that case within the forum.")). Contrary to Cisco's argument, *Freestream Aircraft* involved an intentional tort (defamation) allegedly committed "while the defendant was *physically present* in the state." *Id.* (emphasis added).  The analysis in *Freestream Aircraft* applies only where a defendant has allegedly committed an intentional tort (like defamation) while being physical present in the state.  *See id.* ("The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors.").

Cisco's reliance on *Martensen v. Koch*, is equally flawed.  942 F. Supp. 2d 983, 992 (N.D. Cal. 2013).  That case involved a claim for false imprisonment, and because part of the imprisonment occurred in California, the court determined that applying the effects test was unnecessary.  *Id.* at 994-96.

Unlike the claims and allegations in those cases, Cisco has not alleged Dexon has ever been physically present in California, let alone when it sold allegedly counterfeit product. *See generally* (Doc. No. 32). Dexon has in fact never been physically present in California. (Doc. No. 10-1 at ¶¶ 6-7). Because Dexon did not commit the allegedly infringing acts while present in California, and because Cisco does not allege otherwise, Cisco has not automatically established the first two prongs of the specific jurisdiction standard under *Freestream Aircraft* or *Martensen*.

### B. The End-User License Agreement Does Not Confer Jurisdiction Over Dexon Because Dexon Is Neither A Party To The Agreement Nor A User

Cisco's principal argument is that Dexon contractually consented to jurisdiction in California pursuant to the terms of the software's EULA. (Doc. No. 35 at 16-17). As its name implies, the EULA is an agreement between Cisco and the end user of the software. (Doc. No. 35-1 at 2). Dexon is not a party to the EULA and never consented to the terms of the EULA. Tellingly, Cisco completely ignores and fails to address the plain language repeated throughout the EULA—and expressly cited in Dexon's opening memorandum—confirming the parties to the EULA are limited to Cisco and the end user.

Without limitation, the EULA unambiguously provides that it is "an agreement between You and Cisco Systems, Inc. or its affiliates (**"Cisco"**) and governs your Use of Cisco Software." (Doc. No. 35-2 at 2). Further, "You" and "Your" is expressly limited to the individual or legal entity licensing the software. *See* (*id.* at 25) ("**'You'** and **'Your'** means the individual or legal entity licensing the Software under this EULA."). To avoid any uncertainty, the agreement clarifies further that "Use" means to actual download, install, activate, access, or otherwise use the Software. *See* (*id.* at 2) ("**'Use'** or **'Using'** means to download, install, activate, access or otherwise use the Software.").

It is black letter law that if a person is not a party to the contract, that person does not consent to personal jurisdiction by reason of a forum-selection clause contained therein. *See FTC - Forward Threat Control, LLC v. Dominion Harbor Enterprises, LLC*, No. 5:19-cv-06590-EJD, 2020 WL 5545156, at *6 (N.D. Cal. Sept. 16, 2020) ("Movants did not sign the Agreement, did not consent to the forum selection clause, and therefore are not subject to the jurisdiction of California courts absent other countervailing considerations."); *Wescott v. Reisner*, No. 17-cv-06271-EMC, 2018 WL

2463614, at *3 (N.D. Cal. June 1, 2018) ("Because Ms. Condon was not a party to the agreement, however, she cannot be said to have consented to the forum selection clause; thus, she did not submit to the jurisdiction of California courts."); *BMMSOFT, Inc. v. White Oaks Tech.*, Inc., No. C-09-4562 MMC, 2010 WL 3340555, at *3 (N.D. Cal. Aug. 25, 2010) ("There are two parties to the EULA, "[Plaintiff]" and "You," the latter being an unambiguous reference to the licensee, as reflected both in the title of the agreement, 'End User License Agreement,' and in the above-quoted language therefrom.")  The same reasoning applies here with full force.  Because Dexon is not a party to the EULA, it did not consent to personal jurisdiction in California.  *Id.*

Although unclear, Cisco appears to argue Dexon is a party to the EULA merely because it facilitated the sale of the software to the actual end user.  (Doc. No. 35 at 16-17).  Namely, makes the conclusory statement that "[b]y its plain terms, the EULA applied to anyone who *purchased* a software license."  (Doc. 35 at 9) (emphasis added).  Cisco failed to provide the specific language it relies on.  In fact, nowhere does the EULA use the term "purchaser" or provide that a non-user middle-man distributor is somehow a party to the agreement.

Critically, at no point in time was Dexon a "user" of the software, and Cisco does not allege otherwise.  *See generally* (Doc. No. 34).  Recognizing this problem, Cisco appears to misleadingly suggest that Dexon's provision of assistance to Dexon customer and end user Claremont McKenna College somehow qualifies as "use" under the EULA.  (Doc. No. 35 at 10) ("Dexon obtained the serial number from this customer for the product on which the software was to be activated . . . Dexon emailed the PAK to Claremont McKenna College, and. . .Dexon sent a follow-up email to facilitate activation of the software that Dexon had purchased and then resold.").  This is the standard procedure for Dexon's sales of Cisco software licenses.  It provides the applicable serial number, obtains a PAK, and forwards the PAK to the end user for activation of the software.  Cisco's argument confirms Claremont McKenna – not Dexon – is the "user" and activated the software.

In fact, Cisco's own jurisdictional discovery requests acknowledged Dexon is not a "user" of the software.  Namely, Cisco's document requests sought "all TRANSMITTAL DOCUMENTS for each CALIFORNIA LICENSE that Dexon sold." "TRANSMITTAL DOCUMENTS" was

expressly defined as all documents "by which Dexon conveyed any activation key or other information *necessary to activate or use* a given Cisco license or service, including, but not limited to Cisco's 'Product Activation Key.'" (Declaration of Michael Lafeber, Ex. A) (emphasis added). As this definition confirms, Dexon merely transmitted the activation keys to the end users and does not "use" the software.  Applying Cisco's reasoning, retailers such as Best Buy would be a party to every EULA governing physical software sold in their brick and mortar stores.

This district has correctly rejected similar attempts seeking to improperly expand the scope of an EULA to cover non-parties.  In *BMMSOFT, Inc. v. White Oaks Tech., Inc.*, the Court determined that the defendant was not a party to an EULA because nothing in the EULA at issue "provide[d] that a party who purchase[s] Software on behalf of the licensee somehow also becomes a licensee." 2010 WL 3340555, at *3.  As in that case, nothing in the present EULA makes Dexon a party by virtue of purchasing the software for resale.

Moreover, even if Dexon *were* a party to the EULA, which it is not, the alleged or supposed "passive" or "implied" acceptance of the EULA from afar would not be sufficient to confer jurisdiction.  *See Attachmate Corp. v. Celcom Axiata Berhad*, No. C10-0526-RSM, 2010 WL 4856793, at *2 (W.D. Wash. Nov. 22, 2010) ("Defendant's acceptance of the EULAs in the form of 'click-through' agreements is insufficient to establish the contacts necessary for the exercise of personal jurisdiction. The EULAs themselves constitute contracts entered into by Defendant from afar, and without more, cannot satisfy minimum contacts. Defendant's acceptance and breach of these contracts occurred entirely outside of Washington. Though Defendant may have foreseen that its conduct would result in a breach of these agreements, and defendant engaged in some communication with Plaintiff, the crux of Defendant's contact with the forum remains its mere acceptance of the EULAs.").[1]

---

[1] Cisco's attempt to rely on the EULA is also inconsistent with its contention the software is counterfeit.  To the extent the software was counterfeit (which Dexon disputes) the EULAs are likewise invalid.  Put another way, Cisco cannot attempt to benefit from EULAs it contends are not authentic and Cisco itself never consented to.

Lastly, Cisco's cryptic and unexplained contention that Dexon's alleged "silence" in the face of an unidentified "duty to act" somehow supports the exercise of jurisdiction lacks merit. (Doc. No. 35 at 16-17). Cisco relies on an irrelevant case wherein personal jurisdiction was not an issue. *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1384, 25 Cal. Rptr. 2d 242, 250 (1993), *as modified on denial of reh'g* (Jan. 7, 1994). In *Golden Eagle*, the California Court of Appeals analyzed whether an actual named party to an insurance policy had accepted a renewal offer based on the named party's receipt and enjoyment of benefits under the policy. *Id.* The Court noted that the named insured's "silence coupled with retention of a renewal policy or renewal certificate may constitute sufficient evidence of an acceptance so as to place the renewal in full force and effect." *Id.* Unlike the named insured in *Golden Eagle*, Dexon is not a named party to the EULA and was never an intended or actual end user of the software.

### C. Purchasing product from California does not confer jurisdiction

Cisco contends that this Court has specific jurisdiction over Dexon in California because Dexon *procured* limited alleged counterfeit Cisco products from California for resale. (Doc. No. 35 at 20).[2] Namely, Cisco relies on *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1197 (9th Cir. 2012), for the proposition that Dexon's procurement of products from a California company constitutes "use in commerce" and therefore supports jurisdiction. (Doc. No. 35 at 18).

As an initial matter, *Rearden* is not a personal jurisdiction case. *Id.* Rather, the Ninth Circuit analyzed whether certain non-sales activities constituted use in commerce for purpose of establishing rights and/or priority in the subject mark. *Id.* Moreover, as with *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir. 1951), *Rearden* involved the issue of priority and registrability, and is therefore inapposite.

---

[2] Dexon is compelled to respond to Cisco's false assertion Dexon attempted "to conceal" such product acquisitions (Doc. No. 35 at 11, n.3 ("Cisco discovered these products despite Dexon's efforts to conceal them.") Cisco fails to explain that Dexon *voluntarily and willingly* agreed to produce relevant invoices—the identical information the District of Minnesota ultimately determined Dexon was obligated to produce via subpoena. Likewise, the Court agreed Dexon properly objected to, withheld and was not obligated to produce additional information sought by Cisco.

The sole case cited by Cisco involving alleged "infringement" via shipment is *Drop Dead Co. v. S. C. Johnson & Son, Inc.*, 326 F.2d 87, 93 (9th Cir. 1963). Unlike the present case, the alleged "infringement" in *Drop Dead* was proactive shipment by the product manufacturer for the purpose of obtaining a registration. It did not involve the passive *receipt* of a shipment by another party. Cisco has not cited to a single case standing for the proposition that Dexon's receipt of product shipped from California—product Dexon did not manufacture or affix the mark to—somehow constitutes an independent tort occurring in or connected to California for jurisdiction purposes.[3]

As Dexon argued in its opening memorandum, such passive purchases are not sufficient to establish the "express aiming" requirement, especially where Dexon made such purchases from its Minnesota office. *See Premier Fabrics, Inc. v. Walters & Mason Retail, Inc.*, No. CV 18-2126-JFW(SKX), 2018 WL 6164766, at *5 (C.D. Cal. Aug. 1, 2018) "Although Plaintiff argues that [defendant]'s purchases of the allegedly infringing products from [a California distributor] are sufficient to satisfy the express aiming requirement, the Court disagrees. . . . [I]t is undisputed that [defendant] consummated the entire purchase from [the California distributor] from its offices in Tennessee."); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S. Ct. 1868, 1874 (1984) (determining that "mere purchases, even if occurring at regular intervals, are not enough to warrant" jurisdiction over out-of-state defendant).

### D. Dexon's minimal sales do not establish "express aiming" at California

To establish the express aiming requirement, Cisco must show that Dexon has done "something more" than simply selling products in the state or maintaining a website. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several

---

[3] Cisco erroneously contends Dexon "shipped" the subject product out of California. (Doc. No. 35 at 18 ("The sole act of shipping a single product with an infringing trademark is sufficient to establish liability under the Lanham Act.")). Contrary to Cisco's argument, Dexon is not the company "shipping" product it procured from California. Rather, Dexon merely ordered the subject product which was then shipped by the seller to Dexon.

factors, including the interactivity of the defendant's website . . . the geographic scope of the defendant's commercial ambitions . . . and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (internal citations and quotations omitted).

In the present case, Cisco does not even attempt to address the fact that despite having four (4) months to conduct jurisdictional discovery, it has uncovered a total of 26 transactions involving sales of 60 *allegedly* counterfeit products into California over an approximate five (5) year time period. These figures represent a mere .125% of Dexon's total sales over the same period. Likewise, Cisco has failed to distinguish (or even acknowledge) the cases cited by Dexon in which Ninth Circuit has determined that express aiming does not arise where, as here, the only relevant contact with the forum is an extremely small percentage of the defendant's overall sales. *Asher Worldwide Enterprises LLC v. Sur La Table, Inc.*, No. 11-cv-1183-MJP, 2012 WL 112641, at *5 (W.D. Wash. Jan. 10, 2012); *Monster Energy Co. v. Cycle Locators Inc.*, No. 18-00050-JGB-KKX, 2018 WL 6431009, at *4 (C.D. Cal. June 25, 2018); *Alsop v. Carolina Custom Prod., Inc.*, No. 07-cv-212-VAP, 2007 WL 2441025, at *7-8 (C.D. Cal. June 29, 2007).

Acknowledging the de minimis amount of relevant California sales, Cisco attempts to improperly imply or suggest – via extrapolation – that there must be more counterfeit sales. (Doc. No. 35 at 9 ("…[J]urisdictional discovery revealed that approximately 27% of all Cisco products and software that Dexon sold into California, and which Cisco was able to examine, are counterfeit."); (Doc. No. 35 at 13 ("Out of [the] 226 products examined, Cisco determined that 60, or 27% of [such] products. . .were counterfeit.")). Such attempts at "extrapolation" to support jurisdiction are legally and factually flawed.

First, such attempts at "extrapolation" have been repeatedly rejected as a basis for supporting personal jurisdiction. *See Renner v. Roundo AB*, No. 1:08-cv-209, 2010 WL 3906242, at *12 (W.D. Pa. Sept. 29, 2010) ("[I]t is unclear what percentage of [Defendant]'s total sales and revenues—or [Plaintiff]'s for that matter—were comprised of Pennsylvania-related distribution. At best, the court can extrapolate from available information that the number of [Defendant] machines which found their way into the Commonwealth during the years in question comprised a small percentage of

[Plaintiff]'s total unit sales and an even smaller percentage of [Defendant]'s total sales. No evidence has been provided concerning the percentage of revenues derived from [Defendant]'s forum-related sales."); *Olympia Steel Bldg. Sys. Corp. v. Gen. Steel Domestic Sales, LLC*, No. 06-cv-1597, 2007 WL 1217992, at *5 (W.D. Pa. Apr. 24, 2007) ("Olympia and Universal provide documentation of five contacts between Anthem and Pennsylvania residents and between General Steel and Pennsylvania residents not connected with actual sales. Plaintiffs ask that this Court then extrapolate from this figure and presume that the Defendants have contacted Pennsylvania residents at least 6,560 times. Personal jurisdiction is a fact intensive inquiry. I will not base the exercise of jurisdiction upon an extrapolation. The Plaintiffs had ample time to engage in discovery on this limited issue."), *on reconsideration in part*, No. 06-cv-1597, 2007 WL 1816281 (W.D. Pa. June 22, 2007); *Brown v. BMW of N. Am., LLC*, No. 1:14-cv-00931-JMS-DML, 2016 WL 427517, at *2 (S.D. Ind. Feb. 4, 2016) (granting motion to dismiss for lack of personal jurisdiction where plaintiff acknowledged she did not have evidence of defendant's Indiana sales and instead tried to "extrapolate the amount that [defendant] earned from the United States").[4]

Second, Cisco's implied "extrapolation" is factually flawed. Namely, Cisco misleadingly suggests its jurisdictional discovery consisted of a random sampling of Dexon's California customers – selected primarily due to COVID constraints. (Doc. No. 35 at 9 n.2, 19-20). On the contrary, Cisco has repeatedly represented that it analyzes information obtained from resellers such as Dexon via a proprietary trade secret algorithm or formula. According to Cisco—such proprietary algorithm or formula provides an extremely reliable indication of which products are likely to be counterfeit. Cisco is believed to have utilized such algorithm or formula in selecting its subpoena

---

[4] Federal courts have similarly denied motions to compel answers to jurisdictional discovery that attempt to extrapolate the defendant's revenues because such extrapolations are tenuous. *See James v. Osmose, Inc.*, No. 2014-cv-64, 2015 WL 9239789, at *3 (D.V.I. Dec. 17, 2015) ("Interrogatory No. 5 asks for revenues Osmose received from sales of its products to GSWP at a particular plant from 2005 to the present. Plaintiffs argue that this information would allow them to extrapolate—without explaining on what basis or by what methodology—a percentage of that revenue that could be attributable to wood that went to the Virgin Islands. The presence of many variables in that possible extrapolation, argues defendant, makes too tenuous any connection between the information sought and the areas to be explored per the September 2015 Order. The Court agrees.").

targets. Accordingly, based on the alleged reliability of Cisco's algorithm or formula, the de minimis .125% of California products allegedly determined to be counterfeit would actually *significantly overstate* any percentage expected across Dexon's total California sales.

Rather than addressing the analogous Ninth Circuit cases involving de minimis relevant sales, Cisco repackages the same cases on which it relied during the first round of briefing, *As You Sow v. Crawford Laboratories, Inc.*, 50 Cal.App.4th 1859, 1870 (1996), *as modified* (Dec. 13, 1996). (Doc. No. 35 at 19-20). As Dexon has already explained, (Doc. No. 23 at 9), the court there reasoned that specific jurisdiction arose over the out-of-state defendant because the defendant "contract[ed] directly with private distributors located in California" and "purposefully consummated business arrangements with California companies on 16 separate occasions so it could profit from the products' use in California." *Id.* No such contract exists here; *As You Sow* is therefore inapposite.

In another attempt to satisfy the "something more" requirement, Cisco relies on Dexon's passive website as a basis to assert specific jurisdiction. (Doc. No. 35 at 20-21). But in the Ninth Circuit, a website is not a sufficient contact on which to base specific jurisdiction if the website provides general information, does not target California, and the defendant does not offer it services over the internet. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997).

For example, in *Modak v. Alaris Companies, LLC*, the district court explained that the defendant's website did not support specific jurisdiction because (1) the "website provide[d] only general information about its services and employment opportunities; (2) the defendant "d[id] not provide business services over the internet; and (3) the plaintiff made "no showing that [defendant]'s website specifically targets prospective employees in the Northern District of California." No. 08-cv-5118-CW, 2009 WL 1035485, at *5 (N.D. Cal. Apr. 17, 2009).

It is undisputed Dexon's website is materially indistinguishable from the passive website in *Modak*. Dexon's website provides general information about the company. Dexon does not provide services over the internet. And there is no evidence in this record that Dexon actively targets California through its website. For those reasons, this court may readily reject Cisco's reliance on Dexon's website.

**E.     Cisco has not established that litigating in California is reasonable**

Cisco wholly ignores Dexon's alternative argument that, even if this court determines that Dexon expressly aimed its conduct at California, that the exercise of personal jurisdiction over Dexon would nevertheless violate the third prong's requirement that "the exercise of jurisdiction . . . comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom*, 874 F.3d at 1068.  In *Zumba Fitness, LLC v. Brage*, the district court determined that there was "some purposeful direction" based on sales to California residents, but the court ultimately concluded that "the degree of Defendant's purposeful interjection into the Central District of California is so small that it favors a finding of unreasonableness."  No. 11-cv-5361-GHK-CWX, 2011 WL 4732812, at *3-4 (C.D. Cal. Oct. 6, 2011).

Therefore, even if the Court determines that Dexon purposefully directed its activities at California, it may nevertheless determine that the exercise of jurisdiction in unreasonable based on Dexon's minimal sales in California.

## III.     CONCLUSION

For the foregoing reasons, Dexon respectfully requests that this Court grant its renewed motion to dismiss for lack of personal jurisdiction or, alternatively, transfer this action to the United States District Court of Minnesota.

Dated:  May 14, 2021            Respectfully submitted,

Amanda R. Washton, member of
CONKLE, KREMER & ENGEL
Professional Law Corporation

By:   */s/Amanda R. Washton*
          Amanda R. Washton
          Attorneys for Movant
          Dexon Computer, Inc.

# PROOF OF SERVICE

**Cisco Systems, Inc. v. Dexon Computer, Inc., et al.**
**Case No. 3:20-cv-4926**

STATE OF , COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of . My business address is 3130 Wilshire Boulevard, Suite 500, Santa Monica, CA 90403-2351.

On May 14, 2021, I served true copies of the following document(s) described as **DEFENDANT DEXON COMPUTER, INC.'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION** on the interested parties in this action as follows:

Richard J. Nelson
Louis P. Feuchtbaum
Angela M. He
Artur A. Minasyan
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
E-Mail: rnelson@sideman.com
E-Mail: lfeuchtbaum@sideman.com
E-Mail: ahe@sideman.com
E-Mail: aminasyan@sideman.com
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 14, 2021, at Santa Monica, California.

*/s/Amanda R. Washton*
Amanda R. Washton