IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DEXON COMPUTER, INC.,<br><br>Defendant. | Case No. 20-cv-04926-CRB<br><br>**ORDER DENYING MOTION TO DISMISS** |

Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (collectively, Cisco) are suing Defendant Dexon Computer, Inc. (Dexon) for trademark infringement, trademark counterfeiting, false designation of origin, unfair business practices under California law, and unjust enrichment. Cisco alleges that Dexon has been trafficking counterfeit Cisco products for roughly fifteen years. Dexon moved to dismiss Cisco's original complaint for lack of personal jurisdiction and the Court granted Cisco's request to conduct additional jurisdictional discovery. Cisco then filed an amended complaint.[1] Dexon has now moved to dismiss the amended complaint for lack of personal jurisdiction and, in the alternative, for the Court to transfer this case to the District of Minnesota. The Court concludes that oral argument is unnecessary and denies Dexon's motion.

## I. BACKGROUND

Cisco manufactures networking and communications hardware, software, and related products and services. Amend. Compl. ¶ 12. Cisco has built its brand through

---

[1] The Court denies Dexon's motion to dismiss the original complaint as moot based on the filing of the amended complaint. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015).

significant investment in its CISCO trademark and other related trademarks (Cisco Marks) that Cisco uses in connection with its products and services. Id. ¶¶ 14–17.

Dexon is a Minnesota corporation with its headquarters and sole office in Bloomington, Minnesota. Id. ¶ 4; MTD Amend. Compl. at 6. Cisco alleges that "[f]rom at least July 2006 through the present, Dexon has repeatedly and systematically engaged in schemes to traffic counterfeit Cisco products." Amend. Compl. ¶ 24. Dexon would tell customers that it was selling genuine Cisco products, then deliver the customers counterfeit products bearing Cisco Marks. Id. And when Cisco repeatedly demanded that Dexon both (i) stop selling counterfeit products, and (ii) help Cisco identify the sources of those products, "[i]in almost every instance, Dexon refused to cooperate with Cisco, and refused to identify the counterfeit traffickers who supply it." Id.

Cisco bases these general allegations on numerous specific transactions. For example, in 2015 and 2016, Dexon sold counterfeit Cisco products to companies in Ohio and Missouri. Id. ¶¶ 35–39. In 2017, Dexon sold counterfeit Cisco products to a Cisco investigator in Berkeley, California. Id. ¶ 40. And in 2018 and 2019, Dexon sold counterfeit Cisco products to companies and schools in Arizona, Kentucky, Maryland, Minnesota, Missouri, Nevada, and Texas. Id. ¶¶ 41–48, 53–58. In addition to these sales, Dexon purchased counterfeit Cisco products from a Fremont, California company called PureFutureTech. Id. ¶¶ 51–52.[2]

The Court previously declined to resolve the parties' disagreement regarding whether these allegations were enough to give the Court personal jurisdiction over Dexon. See Minute Entry (dkt. 24). The Court permitted Cisco to conduct limited jurisdictional discovery relevant to Dexon's counterfeit sales in California. See id. Based on that discovery, Cisco amended its complaint with additional allegations. See Amend. Compl.

---

[2] Cisco also describes various transactions and events occurring before 2015 as background examples of Dexon's trafficking practice. See Amend. Compl. ¶¶ 26–33. Cisco alleges that in 2006, Dexon sold counterfeit Cisco products to a Cisco investigator in Virginia; in 2008, the FBI seized counterfeit products from Dexon in Minnesota; in 2010, Dexon sold counterfeit Cisco products to Wayne State University in Michigan; and in 2010, Dexon sold counterfeit Cisco products to a Cisco investigator in California. Id.

¶¶ 59–63.

Cisco now also alleges "that on at least 18 separate occasions during the period spanning from 2017 to 2020, 40 of the Cisco-branded products that Dexon sold/shipped to California are counterfeit." Id. ¶ 60. Cisco has provided transaction information for each of these sales. See id. Cisco further alleges that Dexon has sold Cisco software licenses to customers in California without authorization. See id. ¶ 61. Dexon would obtain Product Activation Key Certificates (PAKs) containing Cisco software access codes, then copy the access codes in counterfeit PAKs. See id. ¶¶ 61–62. Dexon customers who purchased the counterfeit PAKs could thus "access Cisco software without Cisco ever being paid for it." Id. ¶ 62. Cisco has provided transaction information for 8 sales through which Dexon sold 20 counterfeit software licenses. Id.

Cisco further alleges that Cisco software licenses came with End User License Agreements. Id. ¶ 63. These agreements not only indicated that software license sales by unauthorized entities like Dexon were prohibited, but also provided that disputes relating to the End User License Agreements would be "subject to the exclusive jurisdiction of the Federal Courts of the Northern District of California or the California Superior Court for Santa Clara County." Id.

Based on these allegations, Cisco's amended complaint asserts (1) a federal trademark infringement claim; (2) a federal trademark counterfeiting claim; (3) a federal false designation of origin claim; (4) a California unfair business practices claim; and (5) an unjust enrichment claim.

Dexon now moves to dismiss Cisco's amended complaint for lack of personal jurisdiction. See MTD Amend. Compl. (dkt. 34). In the alternative, Dexon requests that the Court transfer this action to the District of Minnesota. Id. at 18.

## II. PERSONAL JURISDICTION

### A. Legal Standard

A federal district court's jurisdiction over a defendant is the same as "the jurisdiction of a court of general jurisdiction in the state where the district court is located."

Fed. R. Civ. P. 4(k)(1)(A).  California "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."  Daimler AG v. Bauman, 517 U.S. 117, 125 (2014); see also Cal. Civ. Proc. Code § 410.10.  Under the Fourteenth Amendment's Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"  Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316–17 (1945)).  This inquiry "has long focused on the nature and extent of 'the defendant's relationship with the forum state.'"  Id. (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty., 137 S. Ct. 1773, 1779 (2017)).  And that "focus" has resulted in "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked jurisdiction."  Id.

A federal court may exercise general jurisdiction over a defendant only if the defendant is "essentially at home" in the forum state.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  Although general jurisdiction does not depend on the defendant's case-related "activity" in the forum state, it does depend on the defendant's relationship with the forum state—for companies, whether the defendant is incorporated, headquartered, or (in exceptional cases) otherwise "at home" there.  Ford Motor Co., 141 S. Ct. at 1024.

Specific jurisdiction is "different" in that it "covers defendants less intimately connected with a State," and "only as to a narrower class of claims."  Id.  While general jurisdiction depends on the relationship between the defendant and the forum, specific jurisdiction depends on the relationship between "the defendant, the forum, and the litigation."  Walden v. Fiore, 571 U.S. 277, 284 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).  "Although a nonresident defendant's physical presence within the territorial jurisdiction of the court is not required," such a defendant

4

must still have "minimum contacts" with the forum state "such that the suit does not offend traditional notions of fair play and substantial justice." Id. at 283 (citation omitted).

With those principles in mind, the Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. (citation omitted).

### 1. Purposeful Direction

For a court to have specific jurisdiction over a defendant, the defendant must purposefully direct its activities at the forum state or purposefully avail itself of the privilege of conducting activities there. See id. For "suits sounding in tort," the Ninth Circuit has applied a distinct "purposeful direction analysis." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020) (quotation omitted). To show purposeful direction, a plaintiff "usually" alleges that the defendant took certain "actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Schwarzenegger, 374 F.3d at 803. The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. (citing Calder v. Jones, 465 U.S. 783 (1984); Dole Foods Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).

The Supreme Court has explained that the contacts supporting purposeful direction "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Ford Motor Co., 141 S. Ct. at 1025 (quoting Keeton, 465 U.S. at 774). The defendant must

5

have "reached out beyond its home—by, for example, exploiting a market in the forum state." Id. (quotations and alterations omitted). Thus, a defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state. See Walden, 571 U.S. at 284–85 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92 (1980)). Nor does a defendant purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows the person resides there. See id. at 285. Instead, "it is the defendant's own conduct that must form the necessary connection with the forum state." Id.

### 2. Nexus Between Contacts and the Litigation

The plaintiff's claims must also "arise out of or relate to the defendant's contacts" with the forum state. Ford Motor Co., 141 S. Ct. at 1025 (quoting Bristol-Myers, 137 S. Ct. at 1780). Claims "arise out of" the defendant's contacts with the forum state when there is a causal connection between the contacts and the claims. See id. at 1026. Claims that do not "arise out of" the defendant's contacts may nonetheless "relate to" those contacts. See id. at 1026–28. The Supreme Court has not articulated a precise "relate to" test, but if a company attempts to directly serve the market for its product in the forum state, and its product causes an injury in the forum state, that is enough. See id. at 1027 (explaining that when a company serves the market of a forum state, and the company's product causes an injury in the forum state, the forum state's courts have jurisdiction over the company even if the specific product that caused the injury was not designed, made, or sold by the company in the forum state).

### 3. Reasonableness

Finally, the exercise of jurisdiction over the defendant must be "reasonable." Schwarzenegger, 374 F.3d at 802. In determining reasonableness, courts "may evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared

6

interest of the several States in furthering fundamental substantive social policies." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (quotations omitted).

**B.   Discussion**

Dexon argues that the Court lacks specific jurisdiction over Dexon because even if Dexon intentionally shipped Cisco products to California, "Dexon's minimal California sales fail to demonstrate that Dexon expressly aimed its activities at California, and its lack of knowledge of counterfeit products shows that it did not know that its act of shipping Cisco products would cause harm in California." MTD Amend. Compl. at 13.[3] Dexon also argues that Cisco's claims do not "arise out of" or "relate to" Dexon's activities in California, see id. at 15–16, and that exercising personal jurisdiction over Dexon would be unreasonable, see id. at 16–17.

These arguments fail. For the reasons set forth below, Cisco's allegations establish that Dexon purposefully directed its conduct at California by intentionally selling counterfeit products in California; Cisco's claims arise out of and relate to those transactions; and exercising personal jurisdiction over Dexon is reasonable. Therefore, the Court has specific jurisdiction over Dexon.

**1.   Purposeful Direction**

Because this trademark infringement suit sounds in tort, the Court must "apply a purposeful direction analysis." Wanat, 970 F.3d at 1208. Cisco's allegations establish that Dexon sold counterfeit Cisco products in California and thus "purposefully directed activities" at California. Id. As discussed above, Cisco alleges that Dexon sold counterfeit Cisco products to a Cisco investigator in Berkeley, California in 2017 and sold at least 40 counterfeit Cisco products and 20 counterfeit Cisco software licenses to customers in California from 2017 to 2020. Thus, Cisco alleges that Dexon engaged in "intentional act[s]" by intentionally selling these products; that those acts were "expressly aimed" at California because Dexon sold the products directly to California customers; and that the

---

[3] Cisco does not argue that courts in California may exercise general personal jurisdiction over Dexon. See Opp. to MTD Amend. Compl. (dkt. 35).

7

acts caused harm that Dexon knew was "likely to be suffered" in California because the sale of counterfeit products in California would plainly harm Cisco's business interests there. Schwarzenegger, 374 F.3d at 803. By intentionally "exploiting" the California market, Dexon purposefully directed its conduct at California. Ford Motor Co., 141 S. Ct. at 1025.

Dexon's arguments to the contrary are unavailing.

First, Dexon argues that it could not have expressly aimed any tortious conduct at California when Dexon's "only contact with the forum is an extremely small percentage" of its overall sales, amounting to "1/8 of 1%" of those sales. MTD Amend. Compl. at 13–14. This argument finds no support in Supreme Court or Ninth Circuit caselaw, which does not articulate a "small percentage of sales" exception to the purposeful direction principles discussed above. Dexon's contacts with California would be insufficient if they were "random, isolated, or fortuitous." Keeton, 465 U.S. at 774. But Dexon's repeated, intentional, and direct sales to California customers were not random, isolated, or fortuitous—even if Dexon also sold many more products elsewhere.[4]

Second, Dexon argues that Dexon's purchases of counterfeit products from California entities cannot support jurisdiction here. MTD Amend. Compl. at 14. But the Court need not resolve that question because Dexon's sales in California establish that Dexon purposefully directed its activities at California.

Third, Dexon argues that Cisco has failed to establish that Dexon knew its conduct was likely to cause harm in California because Dexon did not know that it was selling

---

[4] The district court cases on which Dexon relies do not persuade the Court otherwise. Asher Worldwide Enters. LLC v. Sur La Table, Inc. addressed copyright infringement claims that did not implicate any "specific transaction" in the forum state. 2012 WL 112641, at *1, 4 (W.D. Wash. Jan. 10, 2012). In Alsop v. Carolina Custom Prods., Inc., like here, less than 1% of the defendant's sales were to customers in the forum state; but, unlike here, "none of [those] sales included the allegedly infringing products." 2007 WL 2441025, at *7 (C.D. Cal. June 29, 2007). Monster Energy Co. v. Cycle Locators Inc.'s reasoning is unclear, see 2018 WL 6431009, at *7–8 (C.D. Cal. 2018), but to the extent that Monster Energy held that sales of infringing products directly to customers in the forum state cannot support personal jurisdiction based on the defendant's much larger sales volume elsewhere, when the lawsuit arises partly from sales in the forum state, this Court disagrees.

8

counterfeit products, and Cisco's mere presence in California is not enough to show knowledge of likely harm there. See MTD Amend. Compl. at 13–15. The amended complaint plausibly alleges that Dexon knowingly sold counterfeit products. See Amend. Compl. ¶¶ 25, 34, 60, 62, 64. Dexon's conclusory statement to the contrary is a factual, merits argument that the Court may not consider at this stage. And although it is undoubtedly true that Dexon's knowledge of Cisco's presence in California could not give rise to jurisdiction over Dexon, see Walden, 571 U.S. at 284–85, here jurisdiction is based on Dexon's direct relationship with California, not Cisco's presence there.

In short, Dexon purposefully directed its conduct towards California by intentionally and repeatedly selling counterfeit Cisco products to customers in California.[5]

### 2. Nexus Between Contacts and the Litigation

This lawsuit also "arises out of or relate[s] to" Dexon's contacts with California. Ford Motor Co., 141 S. Ct. at 1025 (quoting Bristol-Myers, 137 S. Ct. at 1780). Indeed, the connection between Dexon's contacts with California and Cisco's claims could hardly

---

[5] Dexon has abandoned its argument that Dexon's sales to Cisco's investigator cannot show purposeful direction. See MTD Original Compl. (dkt. 10) at 14–15. Dexon's many sales to other California customers have diminished the investigator transaction's importance. In any event, the various district court decisions (including this Court's prior decision) holding that investigator transactions cannot establish personal jurisdiction, see, e.g., Cisco Sys Inc. v. Link US, LLC, No. 18-cv-07576-CRB, 2019 WL 6682838, at *4 (N.D. Cal. Dec. 6, 2019); Buccellati Holding Italia SPA v. Laura Buccellati, LLC, 935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013), are contrary to the Supreme Court's personal jurisdiction jurisprudence. That jurisprudence focuses (it bears repeating) "on the relationship among the defendant, the forum, and the litigation." Walden, 571 U.S. at 284 (quoting Keeton, 465 U.S. at 775). Even when splintered, the modern Supreme Court's opinions have always rested on this "particular notion of defendant-focused fairness." J. McIntyre Machinery, Ltd v. Nicastro, 564 U.S. 873, 891 (2011) (Breyer, J., concurring); see also id. at 882 ("The principle inquiry . . . is whether the defendant's activities manifest an intention to submit to the power of a sovereign.") (plurality opinion); id. at 891 ("Adjudicatory authority is appropriately exercised where actions by the defendant himself give rise to the affiliation with the forum.") (Ginsburg, J., dissenting). A plaintiff's "unilateral activity" cannot establish a defendant's purposeful direction, Walden, 571 U.S. at 284 (quotation omitted), but no one suggests that an investigator placing an order is enough. The defendant (here, Dexon) must still engage in certain conduct—fulfilling the order by shipping the product to California—and thereby direct its actions at the forum state. It makes no difference whether Dexon transacted with a Cisco investigator. The purchaser's identity has no bearing on Dexon's intentions or reasonable expectations, so the purchaser's identity has no place in the defendant-focused fairness analysis. District court decisions to the contrary have given undue weight to plaintiffs' conduct and intent while disregarding the Supreme Court's emphasis on "the defendant's relationship with the forum state." Ford Motor Co., 141 S. Ct. at 1024 (quoting Bristol-Myers, 137 S. Ct. at 1779).

9

be more direct; Cisco asserts that Dexon's sales of counterfeit Cisco products in California (and elsewhere) constitute violations of federal and California law. Thus, Cisco's claims "arise out of" Dexon's contacts with California because they have a causal relationship with those contacts, and Cisco's claims "relate to" Dexon's contacts with California because Dexon caused Cisco's injuries in California while attempting to serve the California market. Id. at 1026–28.

Dexon seeks to avoid this conclusion by mischaracterizing Cisco's claims as centering on "manufactur[ing] and importing of counterfeit products . . . not the . . . down-stream sales made by innocent 'middle man' re-sellers like Dexon." MTD Amend. Compl. at 15–16. The amended complaint consists entirely of claims against Dexon for selling counterfeit Cisco products in various states including California. That Cisco might also have potential claims against entities that manufacture or import those products is irrelevant.

### 3. Reasonableness

Because Cisco's allegations establish that Dexon purposefully directed its tortious conduct at California, and this litigation arises out of or relates to that conduct, Dexon has the burden of presenting a "compelling case" that it would be unreasonable for the Court to exercise personal jurisdiction over Dexon. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). Dexon argues that it would be unreasonable for the Court to exercise personal jurisdiction because California sales represent a small fraction of Dexon's overall sales (most of which occur in Minnesota) and because litigating outside California will not burden Cisco. See MTD Amend. Compl. at 16–17.

The Court concludes that Dexon has failed to carry its burden of presenting a compelling case that exercising jurisdiction over Dexon would be unreasonable. Dexon does not deny that it routinely conducts business in California. And while some witnesses and pieces of evidence are likely located in Minnesota, others (including customers who allegedly purchased counterfeit products from Dexon, along with the allegedly counterfeit products) are likely located in California. Thus, this Court can reasonably exercise

10

jurisdiction over Dexon.[6]

### III. MOTION TO TRANSFER

#### A. Legal Standard

"For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district of division to which all parties have consented." 28 U.S.C. § 1404(a). A court must "weigh multiple factors in its determination whether transfer is appropriate in a particular case." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). These factors are: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Id. at 498–99.

#### B. Discussion

Dexon argues that the relevant factors favor transferring this case to Minnesota because Dexon's witnesses live in Minnesota, the relevant transaction documents are in Minnesota, Dexon's sales to its customers were negotiated in Minnesota, and Cisco's core claims arise under federal law. See MTD Amend. Compl. at 19.

Having weighed the relevant factors, the Court concludes that transfer is not appropriate. Although many of the relevant agreements were negotiated and executed outside of California, many of the transactions giving rise to Cisco's claims were consummated in California. And Cisco asserts claims under both federal and California (but not Minnesota) law, such that this Court is more familiar with the law governing the

---

[6] Given the Court's conclusion that Dexon's activities in California subject Dexon to the Court's jurisdiction, the Court need not determine whether Dexon consented to such jurisdiction via the software End User License Agreements. See MTD Amend. Compl. at 17–18; Opp. to MTD Amend. Compl. at 10–11.

11

case. Cisco's headquarters are in California, but Dexon also has meaningful contacts with California—in addition to Dexon's sales giving rise to Cisco's claims, Dexon routinely conducts business in California. Finally, given that witnesses and evidence are likely located in both Minnesota and California, cost and evidentiary issues do not clearly favor either potential forum.

IV. **CONCLUSION**

For the foregoing reasons, the Court denies Dexon's motion to dismiss and Dexon's request to transfer this case to the District of Minnesota.

**IT IS SO ORDERED.**

Dated: May 20, 2021



CHARLES R. BREYER
United States District Judge