Amanda R. Washton (SB# 227541)
  *a.washton@conklelaw.com*
**CONKLE, KREMER & ENGEL**
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100
Fax: (310) 998-9109

David H. Reichenberg (pro hac vice pending)
  *dreichenberg@cozen.com*
**COZEN O'CONNOR**
3 WTC, 175 Greenwich Street, 56th Floor
New York, New York 10006
Phone: (212) 883-4900
Fax: (646) 461-2091

Michael M. Lafeber (*pro hac vice*)
  *mlafeber@taftlaw.com*
O. Joseph Balthazor Jr. (*pro hac vice*)
  *jbalthazor@taftlaw.com*
**TAFT STETTINIUS &**
  **HOLLISTER LLP**
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Phone: 612.977.8400
Fax: 612.977.8650

Mark A. Jacobson (*pro hac vice pending*)
  *mjacobson@cozen.com*
**COZEN O'CONNOR**
33 South 6th Street
Suite 3800
Minneapolis, MN 55402
Phone: (612) 260-9000
Fax: (612) 260-8026

Attorneys for Defendant, Counterclaim
Plaintiff and Third-Party Plaintiff Dexon
Computer, Inc.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation, | Case No. 3:20-CV-4926-CRB |
| Plaintiffs, | **DEFENDANT'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS** |
| v. | Hon. Charles R. Breyer Presiding Judge |
| DEXON COMPUTER, INC., a Minnesota corporation, | Trial Date:          None |
| Defendant. | |
| DEXON COMPUTER, INC., a Minnesota corporation, | |
| Counterclaim Plaintiff and Defendant, | |
| v. | |

CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation,

Counterclaim Defendants and Plaintiffs.

DEXON COMPUTER, INC., a Minnesota corporation,

Third-Party Plaintiff,

v.

ATLANTIX GLOBAL SYSTEMS INTERNATIONAL, LLC, BIZCOM ELECTRONICS, INC., DIGI DEVICES ONLINE, ENTERPRISE BUSINESS TECHNOLOGIES, INC., FIBER CABLE CONNECTIONS, MJSI, MULTIMODE TECHNOLOGIES, LLC, NETWORK REPUBLIC, OPTIMUM DATA, INC., PARAGON, PURE FUTURE TECHNOLOGY, INC., SEASTAR IT TRADING LLC, SERVER TECH SUPPLY, SOFTNETWORKS, INC., STRADA NETWORKS, LLC, STRATEGIC TELECOM SUPPLY & SOLUTIONS, TEKSAVERS, UNLIMITED NETWORK SOLUTIONS, and WISECOM TECHNOLOGIES,

Third-Party Defendants,

DEFENDANT'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Defendant Dexon Computer, Inc. ("Dexon"), by and through its undersigned counsel, for its Answer, denies each and every allegation in Plaintiffs Cisco Systems, Inc. and Cisco Technology Inc.'s ("Plaintiffs") First Amended Complaint ("Complaint") except as expressly admitted, qualified or otherwise responded to herein and denies that Plaintiffs are entitled to any of the relief requested in their Prayer for Relief.  In response to each of the numbered paragraphs of the Complaint, Dexon states as follows.  To the extent the headings or any other non-numbered statements in the Complaint contain allegations, Dexon denies each and every such allegation.

## INTRODUCTION

1.    Dexon denies the allegations of paragraph 1 of the Complaint.

2.    Dexon denies the allegations of paragraph 2 of the Complaint.

## THE PARTIES

3.    Dexon lacks sufficient information to admit or deny the allegations of paragraph 3 of the Complaint, and on that basis Dexon denies those allegations.

4.    Dexon admits the allegations of paragraph 4 of the Complaint.

5.    Dexon denies the allegations of paragraph 5 of the Complaint.

## JURISDICTION AND VENUE

6.    Admits that the Complaint purports to be one "founded upon violations of Federal trademark laws" but denies any such purported claims have legal or factual merit.  The remaining allegations in paragraph 6 of the Complaint are legal conclusions and questions of law regarding jurisdiction to which no response is required.  To the extent a response is required, Dexon denies such allegations.

7.    Dexon denies the allegations of paragraph 7 of the Complaint.

8.    Dexon denies the allegations of paragraph 8 of the Complaint.

9.    Dexon denies the allegations of paragraph 9 of the Complaint.

10.    Dexon denies the allegations of paragraph 10 of the Complaint.

11.    Dexon denies the allegations in paragraph 11 of the Complaint.

# FACTUAL ALLEGATIONS

## Alleged Cisco Business and History

12.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 12 of the Complaint, and on that basis Dexon denies those allegations.

13.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 13 of the Complaint, and on that basis Dexon denies those allegations.

14.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 14 of the Complaint, and on that basis Dexon denies those allegations.

## Alleged Cisco Trademarks

15.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 15 of the Complaint, and on that basis Dexon denies those allegations.

16.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 16 of the Complaint, and on that basis Dexon denies those allegations.

17.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 17 of the Complaint, and on that basis Dexon denies those allegations.

18.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 18 of the Complaint, and on that basis Dexon denies those allegations.

## Alleged Counterfeit "Cisco" Products

19.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 19 of the Complaint, and on that basis Dexon denies those allegations.

20.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 20 of the Complaint, and on that basis Dexon denies those allegations.

## Alleged Impact on Health, Safety, and National Security Caused by Counterfeit Cisco Products

21.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 21 of the Complaint, and on that basis Dexon denies those allegations.

22.     Dexon lacks sufficient information to admit or deny the allegations of paragraph 22 of the Complaint, and on that basis Dexon denies those allegations.

**Dexon's Alleged History and Practice of Trafficking in Counterfeit Cisco Products**

23.    Dexon admits selling product bearing the Cisco name and/or mark, but denies the remaining allegations of paragraph 23 of the Complaint, including, without limitation, any allegation such product was counterfeit.

24.    Dexon denies the allegations of paragraph 24 of the Complaint.

25.    Dexon denies the allegations of paragraph 25 of the Complaint.

**Alleged Activity Prior to 2015 Purportedly Demonstrating Dexon's Pattern and  Practice of Knowingly Trafficking in Counterfeit Cisco Products**

**Alleged July 27, 2006 Sale of Counterfeit Cisco Products to a Cisco Investigator (Reston, Virginia)**

26.    Dexon denies the allegations in paragraph 26 of the Complaint. Plaintiffs previously commenced a lawsuit against Dexon in 2011 including claims based directly on such allegations which were resolved via a confidential settlement agreement and dismissed with prejudice.

**FBI's Seizure of Alleged Counterfeit Cisco Products from Dexon on February 26, 2008**

27.    Dexon admits the Federal Bureau of Investigation ("FBI") executed a search warrant at Dexon's business location on or about February 26, 2008, but denies the remaining allegations in paragraph 27 of the Complaint including, without limitation, any allegation, suggestion or implication any or "all" of the product taken by the FBI was determined to be counterfeit.  Plaintiffs previously commenced a lawsuit against Dexon in 2011 including claims based directly on such allegations which were resolved via a confidential settlement agreement and dismissed with prejudice.

**Cisco's March 2008 Cease and Desist Letter to Dexon and its CEO**

28.    Dexon admits Plaintiffs sent a letter addressed to Dexon's President and CEO Steve O'Neil on or about March 7, 2008, and that Dexon responded via a letter from its counsel on or about March 18, 2008, but Dexon denies the reminder of the allegations in paragraph 28 of the Complaint, including, without limitation, Plaintiffs' attempted characterizations of

1  the letters or communications which speak for themselves.  Plaintiffs previously commenced

2  a lawsuit against Dexon in 2011 including claims based directly on such allegations which

3  were resolved via a confidential settlement agreement and dismissed with prejudice.

**Dexon's June 2010 Sale of Alleged Counterfeit Cisco Products to
WayneState University (Detroit, Michigan) and Cisco's C&D Letter**

6  29.    Dexon admits selling and shipping Cisco product to Wayne State University on or

7  about February 21, 2010 but denies the remainder of the allegations in paragraph 29 of the

8  Complaint, including, without limitation, any allegation the product involved was

9  counterfeit.  Plaintiffs previously commenced a lawsuit against Dexon in 2011 including

10  claims based directly on such allegations which were resolved via a confidential settlement

11  agreement and dismissed with prejudice.

12  30.    Dexon admits Plaintiffs sent a letter addressed to Dexon's President and CEO Steve

13  O'Neil on or about August 6, 2010 concerning Dexon's sale of Cisco product to Wayne

14  State University, but Dexon denies the reminder of the allegations in paragraph 30 of the

15  Complaint, including, without limitation, Plaintiffs' attempted characterization of the letter

16  which speaks for itself.  Plaintiffs previously commenced a lawsuit against Dexon in 2011

17  including claims based directly on such allegations which were resolved via a confidential

18  settlement agreement and dismissed with prejudice.

19  31.    Dexon admits it responded via a letter from counsel to Plaintiff's Wayne State

20  University allegations on or about August 23, 2010, but Dexon denies the reminder of the

21  allegations in paragraph 31 of the Complaint, including, without limitation, Plaintiffs'

22  attempted characterization of the letter which speaks for itself. Plaintiffs previously

23  commenced a lawsuit against Dexon in 2011 including claims based directly on such

24  allegations which were resolved via a confidential settlement agreement and dismissed with

25  prejudice.

26  32.    Dexon admits Plaintiffs sent a follow-up letter concerning or relating to the Wayne

27  State University allegations on or about August 30, 2010, but Dexon denies the reminder of

28  the allegations in paragraph 32 of the Complaint, including, without limitation, Plaintiffs'

attempted characterization of the letter which speaks for itself. Plaintiffs previously commenced a lawsuit against Dexon in 2011 including claims based directly on such allegations which were resolved via a confidential settlement agreement and dismissed with prejudice.

### Dexon's July 2010 Sale of Alleged Counterfeit Cisco Products to a Cisco Investigator (Los Angeles, California)

33.    Dexon denies the allegations in paragraph 33 of the Complaint. Plaintiffs previously commenced a lawsuit against Dexon in 2011 including claims based directly on such allegations which were resolved via a confidential settlement agreement and dismissed with prejudice.

### <u>Dexon's Alleged Illegal Conduct Giving Rise to the Present Lawsuit</u>

34.    Dexon denies the allegations in paragraph 34 of the Complaint.

### Dexon's July 2015 Sale of Alleged Counterfeit Cisco Product to Things Remembered, Inc. (Highland Heights, Ohio) and Cisco's C&D Letter

35.    Dexon admits selling Cisco product to Things Remembered, Inc. on or about July 2015, but denies the remainder of the allegations in paragraph 35 of the Complaint, including any allegation the product was counterfeit.

36.    Dexon admits Plaintiffs sent a letter addressed to Dexon's counsel relating to the Things Remembered, Inc. allegations on or about August 27, 2020 and that Dexon responded thereto, but Dexon denies the reminder of the allegations in paragraph 36 of the Complaint, including, without limitation, Plaintiffs' attempted characterizations of the letters or communications which speak for themselves.

### Dexon's December 2016 Sale of Alleged Counterfeit Cisco Products to Jack Henry & Associates, Inc. (Monett, Missouri) and Cisco's C&D Letter

37.    Dexon admits selling Cisco product to Jack Henry & Associates, Inc. ("Jack Henry") on or about December 2016, but denies the remainder of the allegations in paragraph 37 of the Complaint, including, without limitation, any allegation the product was counterfeit.

38.     Dexon admits Plaintiffs sent a letter addressed to Dexon's counsel relating to the Jack Henry allegations, but Dexon denies the reminder of the allegations in paragraph 38 of the Complaint, including, without limitation, Plaintiffs' attempted characterization of the letter which speaks for itself.

39.     Dexon admits it responded to Plaintiffs' Jack Henry allegations via a letter from Dexon's counsel, but denies the reminder of the allegations in paragraph 39 of the Complaint, including, without limitation, Plaintiffs' attempted characterizations of the responsive letter which speaks for itself.

**Dexon's October 2017 Sale of Alleged Counterfeit Cisco Products to a Cisco Investigator (Berkeley, California)**

40.     Dexon denies the allegations in paragraph 40 of the Complaint.

**Dexon's January 2018 Sale of Alleged Counterfeit Cisco Product to Community Health Alliance (Reno, Nevada) and Cisco's C&D Letter**

41.     Dexon admits selling Cisco product to Community Health Alliance ("CHA") on or about January 2018, but denies the remainder of the allegations in paragraph 41 of the Complaint, including, without limitation, any allegation the product was counterfeit.

42.     Dexon admits Plaintiffs and Dexon's counsel exchanged a series of letters or communications relating to the CHA allegations, but denies the remainder of the allegations in paragraph 42 of the Complaint, including, without limitation, Plaintiffs' attempted characterizations of the letters or communications which speak for themselves.

**Dexon's April 2018 Sale of Alleged Counterfeit Cisco Products to Tucson Medical Center (Arizona)**

43.     Dexon admits selling Cisco product to Tucson Medical Center ("TMC") on or about April 2018, but denies the remainder of the allegations in paragraph 43 of the Complaint, including, without limitation, any allegation the product was counterfeit.

DEFENDANT'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS

**Dexon's April 2018 Sale of Alleged Counterfeit Cisco Products to DARCARS (Maryland) and Cisco's C&D Letter**

44.     Dexon admits selling Cisco product to DARCARS on or about April 2018, but denies the remainder of the allegations in paragraph 44 of the Complaint, including, without limitation, any allegation the product was counterfeit.

45.     Dexon admits Plaintiffs sent a letter addressed to Dexon's counsel relating to the DARCARS allegations, but Dexon denies the reminder of the allegations in paragraph 45 of the Complaint, including, without limitation, Plaintiffs' attempted characterization of the letter which speaks for itself.

**Dexon's August 2018 Sale of Alleged Counterfeit Cisco Products to Lockridge, Grindal, Nauen, PLLP (Minneapolis, Minnesota)**

46.     Dexon admits selling Cisco product to Lockridge, Grindal, Nauen, PLLP on or about August 2018, but denies the remainder of the allegations in paragraph 46 of the Complaint, including, without limitation, any allegation the product was counterfeit.

**Dexon's August 2018 Sale of Alleged Counterfeit Cisco Products to Regional Justice Information Service (St. Louis, MO) and Cisco's C&D Letter**

47.     Dexon admits selling Cisco product to Regional Justice Information Service ("RJIS") on or about August 2018, but denies the remainder of the allegations in paragraph 47 of the Complaint, including, without limitation, any allegation the product was counterfeit.

48.     Dexon admits Plaintiffs sent a letter addressed to Dexon's counsel relating to the RJIS allegations, but Dexon denies the reminder of the allegations in paragraph 48 of the Complaint, including, without limitation, Plaintiffs' attempted characterization of the letter which speaks for itself.

**Dexon's Purchases in 2018 of Alleged Counterfeit Switches from PureFutureTech (Fremont, California)**

49.     Dexon admits purchasing Cisco product from PureFutureTech on or about 2018 and that the purported supplier of such product was HongKong Sellsi, a former authorized licensed seller of Cisco products, but lacks sufficient information to admit or deny the

1  remaining allegations of paragraph 49 of the Complaint, and on that basis Dexon denies such

2  allegations.

3  50.    Dexon admits Plaintiffs served it with a subpoena relating to a lawsuit involving

4  Plaintiffs, PureFutureTech and HongKong Sellsi and that Plaintiffs were ultimately required

5  to file a motion relating to such non-party subpoena.  Dexon denies the remaining allegations

6  of paragraph 50 of the Complaint, including, without limitation, any allegation, suggestion

7  or implication Dexon "refused to cooperate" with, or in any way failed to meet its obligations

8  arising from, the subpoena.

9
10
### Dexon's Purchases in 2017 to 2019 of Alleged Counterfeit Transceivers from Pure Future Tech, Inc. (Fremont, California)

11  51.    Dexon admits purchasing Cisco product from Pure Future Tech, Inc. in the period

12  2017-2019 but denies any such product was counterfeit.  Dexon lacks sufficient information

13  to admit or deny the remaining allegations in paragraph 51 of the Complaint and on that

14  basis denies such allegations.

15  52.    Dexon denies the allegations in paragraph 52 of the Complaint, including, without

16  limitation, any allegation Dexon knew or reasonably should have known any Cisco product

17  was allegedly counterfeit, or that Dexon was willfully blind to such alleged fact.

18
19
### Dexon's Sales of Alleged Counterfeit Products to Murray State University (Murray, Kentucky) in 2018 and 2019 and Cisco's C& Letter

20  53.    Dexon admits selling Cisco product to Murray State University ("MSU") in or about

21  2018 and 2019, but denies the remainder of the allegations in paragraph 53 of the Complaint,

22  including, without limitation, any allegation the product was counterfeit.

23  54.    Dexon admits Plaintiffs sent a letter addressed to Dexon's counsel relating to the

24  MSU allegations, but Dexon denies the reminder of the allegations in paragraph 54 of the

25  Complaint, including, without limitation, Plaintiffs' attempted characterization of the letter

26  which speaks for itself.

27
28

**Dexon's July 2019 Sale of Alleged Counterfeit Cisco Products to MedRisk (King of Prussia, Pennsylvania)**

55.    Dexon admits selling Cisco product to MedRisk on or about July 2019, but denies the remainder of the allegations in paragraph 55 of the Complaint, including, without limitation, any allegation the product was counterfeit.

**Dexon's September 2019 Sale of Alleged Counterfeit Cisco Products to Coppell Independent School District (Coppell, Texas) and Cisco's C&D Letter**

56.    Dexon admits selling Cisco product to Coppell Independent School District ("CISD") on or about September 2019, but denies the remainder of the allegations in paragraph 56 of the Complaint.

57.    Dexon denies any allegation, suggestion or implication in paragraph 57 of the Complaint that Cisco product it sold to CISD was counterfeit.  Dexon lacks sufficient information to admit or deny the remainder of the allegations in paragraph 57 of the Complaint and on that basis denies such allegations.

58.    Dexon admits Plaintiffs sent a letter addressed to Dexon's counsel relating to the CISD allegations, but Dexon denies the reminder of the allegations in paragraph 58 of the Complaint, including, without limitation, Plaintiffs' attempted characterization of the letter which speaks for itself.

**Dexon's Alleged California Directed Conduct Identified Through Jurisdictional Discovery**

59.    Dexon admits Plaintiffs conducted jurisdictional discovery herein, but denies the remainder of the allegations in paragraph 59 of the Complaint, including, without limitation, Plaintiffs' characterization of such jurisdictional discovery, as well as any allegation such discovery revealed any "illegal and tortious" conduct by Dexon in California or elsewhere.

**Dexon's Sale of Alleged Counterfeit Cisco Products to California Customers**

60.    Dexon denies the allegations in paragraph 60 of the Complaint.

**Dexon's Sale of Alleged Counterfeit Cisco Licenses to California Customers**

61.     Dexon admits Cisco has transmitted software licenses via Product Activation Key Certificates ("PAK") and that such PAKs have included a code that allows users to utilize the subject software.  Dexon denies the remainder of the allegations in paragraph 61 of the Complaint.

62.     Dexon denies the allegations in paragraph 62 of the Complaint.

63.     Dexon denies the allegations in paragraph 63 of the Complaint.

64.     Dexon denies the allegation in paragraph 64 of the Complaint.

**FIRST PURPORTED CLAIM FOR RELIEF**
**Federal Trademark Infringement**
*(15 U.S.C. § 1114)*

65.     Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-64 in response to the allegations in paragraph 65 of the Complaint.

66.     Dexon denies the allegations of paragraph 66 of the Complaint.

67.     Dexon denies the allegations of paragraph 67 of the Complaint.

68.     Dexon denies the allegations of paragraph 68 of the Complaint.

69.     Dexon denies the allegations of paragraph 69 of the Complaint.

70.     Dexon denies the allegations of paragraph 70 of the Complaint.

71.     Dexon denies the allegations of paragraph 71 of the Complaint.

72.     Dexon denies the allegations of paragraph 72 of the Complaint.

**SECOND PURPORTED CLAIM FOR RELIEF**
**Federal Trademark Counterfeiting**
*(15 U.S.C. § 1114)*

73.     Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-72 in response to the allegations in paragraph 73 of the Complaint.

74.     Dexon denies the allegations of paragraph 74 of the Complaint.

75.     Dexon denies the allegations of paragraph 75 of the Complaint.

76.     Dexon denies the allegations of paragraph 76 of the Complaint.

77.     Dexon denies the allegations of paragraph 77 of the Complaint.

78.     Dexon denies the allegations of paragraph 78 of the Complaint.

79.     Dexon denies the allegations of paragraph 79 of the Complaint.

### THIRD PURPORTED CLAIM FOR RELIEF
**False Designation of Origin**
***(15 U.S.C. § 1125)***

80.     Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-79 in response to the allegations in paragraph 80 of the Complaint.

81.     Dexon denies the allegations of paragraph 81 of the Complaint

82.     Dexon denies the allegations of paragraph 82 of the Complaint.

83.     Dexon denies the allegations of paragraph 83 of the Complaint.

84.     Dexon denies the allegations of paragraph 84 of the Complaint.

85.     Dexon denies the allegations of paragraph 85 of the Complaint.

### FOURTH PURPORTED CLAIM FOR RELIEF
**California Unfair Business Practices**
**(Cal. Bus. & Prof. Code *§§ 17200 et seq.*)**

86.     Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-85 in response to the allegations in paragraph 86 of the Complaint.

87.     The allegations in paragraph 87 of the Complaint are legal conclusions of law regarding California Business and Professions Code §§ 17200 et seq to which no response is required.  To the extent such allegations imply or suggest Dexon has in any way violated California Business and Professions Code §§ 17200 et seq Dexon denies such allegations.

88.     Dexon denies the allegations of paragraph 88 of the Complaint.

89.     Dexon denies the allegations of paragraph 89 of the Complaint.

90.     Dexon denies the allegations of paragraph 90 of the Complaint.

91.     Dexon denies the allegations of paragraph 91 of the Complaint.

92.     Dexon denies the allegations of paragraph 92 of the Complaint.

### FIFTH PURPORTED CLAIM FOR RELIEF
**Unjust Enrichment**
**(Common Law)**

93.     Dexon restates and incorporates by reference its responses to the allegations in paragraphs 1-92 in response to the allegations in paragraph 93 of the Complaint.

94.   Dexon admits the allegations of paragraph 94 of the Complaint.

95.   Dexon denies the allegations of paragraph 95 of the Complaint.

## AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of Dexon, and without admitting that Plaintiffs claims have any merit or that Plaintiffs have suffered any loss, damage, or injury, Dexon alleges the following affirmative defenses to the Complaint.  By designating the following as affirmative defenses, Dexon does not in any way waive or limit any defenses which are or may be raised by their denial, allegations, and averments set forth herein.  These defenses are pled in the alternative, are raised to preserve the rights of Dexon to assert such defenses, and are without prejudice to Dexon's ability to raise other and further defenses.  Dexon expressly reserves all rights to reevaluate their defenses and/or assert additional defenses upon discovery and review of additional documents and information, upon the development of other pertinent facts, and during pretrial proceedings in this action.  Dexon expressly incorporate all allegations of its Answer, Counterclaims and Cross-Claims as if fully set forth in each of the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE
### (Res Judicata and Collateral Estoppel)

96.   Plaintiffs' claims and/or recovery are barred, in whole or in part, by the doctrines of res judicata and collateral estoppel.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

97.   Plaintiffs' claims and/or recovery are barred, in whole or in part, by the doctrine of laches.  Plaintiffs' have had longstanding knowledge concerning the legal open or "secondary" market for its products and have proactively engaged in unfair and tortious behavior in an effort to selectively manipulate and control such secondary market to their advantage.  Plaintiffs have had longstanding specific knowledge of Dexon's activity in the legal secondary market since well before 2011, yet have failed to take timely action to assert their claims herein, resulting in substantial prejudice to Defendants.

1

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

2

3    98.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by the doctrine of

4    estoppel.   Plaintiffs' advertises that consumers can purchase their products from their

5    "Authorized Channel Partners" or "Authorized Resellers."  Plaintiffs have known, or should

6    have known such "Authorized Channel Partners" and/or "Authorized Resellers" participate

7    in and sell their products on the secondary market.  Plaintiffs have allowed these "Authorized

8    Channel Partners" and/or "Authorized Resellers" to maintain their "authorized" status

9    despite knowledge of their participation in the secondary market, including evidence of their

10   sale of counterfeit Cisco products.  Plaintiffs know, or should have reasonably known, that

11   secondary market resellers such as Dexon rely upon Plaintiffs' endorsement of such

12   "authorized" vendors when sourcing Cisco products, including, without limitation,

13   procuring Cisco product from such "authorized vendors'" end customers.  Plaintiffs have

14   also actively contributed to the presence of counterfeit product in the marketplace by,

15   without limitation, failing to properly police and control their manufacturers and failing to

16   properly manage their product serial numbers.  As one example, Plaintiffs "authorized"

17   vendors intentionally modify or change product serial numbers in order to ensure the subject

18   product(s) qualify for Plaintiffs' SmartNet service packages. Plaintiffs are therefore

19   estopped from pursuing claims against Dexon or seeking damages related to alleged

20   counterfeit products.

21

## FOURTH AFFIRMATIVE DEFENSE
### (First Sale Doctrine and Exhaustion)

22   99.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by the first sale

23   doctrine, which protects secondary market resellers such as Dexon from liability for the

24   purchase, importation, and resale of genuine Cisco products and exhausts Plaintiffs' rights

25   in further transactions.

26

27

28

### FIFTH AFFIRMATIVE DEFENSE
### (Statutes of Limitations)

100.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by applicable statutes of limitations, including but not limited to CAL. CIV. PROC. CODE §§ 337–38, CAL. BUS. & PROF. CODE § 17208, and 17 U.S.C. § 507.  Some or all of Plaintiffs' claims involve conduct outside of the applicable statutes of limitations.

### SIXTH AFFIRMATIVE DEFENSE
### (Waiver)

101.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by the doctrine of waiver. Plaintiffs have promoted and advertised its "authorized" sellers despite having full knowledge certain such "authorized" sellers: i) have been caught selling counterfeit product; and ii) actively and regularly deal with secondary market resellers such as Dexon. Secondary market resellers such as Dexon have understandably relied upon Plaintiffs' promotion and endorsement of such "authorized" sellers when sourcing Cisco products for their customers. As noted above, Plaintiffs have also intentionally failed or refused to provide or offer their claimed "tools" for detecting counterfeit product to secondary market resellers such as Dexon, and have actively contributed to the presence of counterfeit product in the marketplace by, without limitation, failing to properly police and control their manufacturers and failing to properly manage their product serial numbers.  Accordingly, Plaintiffs have waived any claims related to Dexon's unwitting sale of alleged counterfeit goods, including any such goods sourced directly or indirectly from Plaintiffs' "authorized" vendors.

### SEVENTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

102.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by the doctrine of unjust enrichment.  Plaintiffs have engaged in unfair and tortious practices and made misrepresentations to consumers regarding: i) the quality and authenticity of products sold by secondary market resellers such as Dexon; and ii) Plaintiffs' rights to restrict consumers

1  use and transfer of Cisco hardware and software.  Such conduct has improperly steered

2  customers from Dexon to Plaintiffs and unjustly enriched Plaintiffs.

3  <center>**EIGHTH AFFIRMATIVE DEFENSE**
**(Unclean Hands/Inequitable Conduct)**</center>

4

5  103.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by the doctrines of

6  unclean hands, inequitable conduct, and similar defenses.  Without limitation, Plaintiffs

7  have: (i) intentionally misled consumers into thinking that genuine products on the

8  secondary market are used, counterfeit, or stolen, (ii) sold products to resellers whom it

9  knew, or should have known, were reselling the products on the secondary market, (iii) held

10  out certain entities as "Authorized Resellers" even though Plaintiffs knew or should have

11  known these entities sold counterfeit goods, and engaged in other inequitable practices that

12  bar recovery on its claims.

13  <center>**NINTH AFFIRMATIVE DEFENSE**
**(Redundancy)**</center>

14

15  104.    Plaintiffs' claims and/or recovery are barred, in whole or in part, because they are

16  redundant and/or duplicative of one another.

17

18  <center>**TENTH AFFIRMATIVE DEFENSE**
**(Abandonment)**</center>

19

20  105.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by abandonment of

21  any marks at issue. Plaintiffs' have failed to properly police and exercise adequate quality

22  control over its marks and have thereby abandoned their rights therein.

23  <center>**ELEVENTH AFFIRMATIVE DEFENSE**
**(Conduct of Others)**</center>

24

25  106.    Plaintiffs' claims and/or recovery are barred, in whole or in part, because the

26  conduct complained of is the conduct of others, including, without limitation, Plaintiffs'

27  "authorized" vendors and/or Plaintiffs' licensed manufacturers.

28

## TWELVE AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

107.    Plaintiffs' claims and/or recovery are barred, in whole or in part, because Plaintiffs failed to mitigate, minimize, or attempt to avoid damages.  Without limitation, Plaintiffs could have pursued legal remedies earlier, assisted secondary market resellers like Dexon in detecting and fighting counterfeit products, and/or properly policed and prevented the manufacture and distribution of counterfeit product within their own manufacturing and distribution network.

## THIRTEENTH AFFIRMATIVE DEFENSIVE
### (Lack of Personal Jurisdiction)

108.    Plaintiffs are barred from pursuing their claims against Dexon in this Court because the Court lacks personal jurisdiction over Dexon.

## FOURTEENTH AFFIRMATIVE DEFENSIVE
### (Improper Venue)

109.    Plaintiffs are barred from pursuing their claims against Dexon in this Court because venue is improper.

## FIFTEENTH AFFIRMATIVE DEFENSIVE
### (Failure to State a Claim)

110.    The Complaint, in whole or in part, fails to state any claim upon which relief can be granted.

## SIXTEENTH AFFIRMATIVE DEFENSIVE
### (One Satisfaction Rule / Bar on Double Recovery)

111.    Plaintiffs' claims and/or recovery are barred, in whole or in part, by the one satisfaction rule and/or the bar on double recoveries.

## COUNTERCLAIMS

112.    Counterclaim Plaintiff Dexon Computer, Inc. asserts the following counterclaims against Counterclaim Defendants Cisco Systems, Inc., and Cisco Technology, Inc. (hereinafter referred to jointly as "Cisco") alleges as follows:

## THE PARTIES

113.    Defendant and Counterclaim Plaintiff Dexon Computer, Inc. ("Dexon") is a Minnesota corporation with its principal place of business at 9201 E. Bloomington Freeway, Suite BB, Bloomington, Minnesota 55420.

114.    On information and belief, Plaintiff and Counterclaim Defendant Cisco Systems, Inc. ("CSI") is a Delaware corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

115.    On information and belief, Plaintiff and Counterclaim Defendant Cisco Technology, Inc. ("CTI") is a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

## JURISDICTION

116.    This Court has subject matter jurisdiction over Dexon's counterclaims pursuant to 28 U.S.C. §§ 1367 and 1332.  Dexon's counterclaims arise out of the same controversy as plaintiffs' Federal claims, there is complete diversity of citizenship between Plaintiffs and Dexon, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

## FACTS

### The Secondary Market for Cisco Products

117.    As with any economic activity where there are significant profits, market forces have operated to create a "secondary" market for Cisco products.  On information and belief, authentic or genuine Cisco products come to the secondary market in the United States in a variety of ways including: (a) Cisco's knowing sale of such products to secondary market suppliers in the context of either specific end user deals or when Cisco needs to move inventory; (b) Cisco's authorized resellers' purchase of product in excess of what they need for a specific end user order and subsequent resale of such product into the secondary market; (c) Cisco end user's resale of new, unused product; and (d) through importation of such product from abroad where it has been sold by distributors, resellers, or end users under

DEFENDANT'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND
THIRD-PARTY CLAIMS

similar circumstances.  On information and belief, Cisco resists attempts by end users and resellers to return product, resulting in a natural supply of secondary market Cisco product. Given the substantial profits available from sale of Cisco-branded products, market forces dictate that a secondary market will develop for such products.  These market forces benefit end users in that they reduce prices for such products.

118.   Dexon is an independent secondary-market reseller of computer networking products, including routers, Ethernet switches and other computer hardware.  Dexon provides new, refurbished and discontinued hardware products, including authentic or genuine products to its customers from leading manufacturers including, without limitation, Hewlett Packard, Dell, Juniper Networks and Cisco.

119.   Dexon obtains Cisco products from reliable suppliers, subjects such products to extensive quality control, and then resells such products to other resellers and to end users, at a profit but frequently at prices lower than those offered by Cisco "Authorized" sellers.

120.   Secondary market resellers of Cisco products, including Dexon, are highly incentivized to detect and stamp out the sale of counterfeit goods.  While a manufacturer such as Cisco may blame rogue actors when a dissatisfied customer confronts it with a counterfeit product, an independent reseller's own reputation suffers significantly when it sells a customer a counterfeit goods.  Unsurprisingly, most independent resellers, including Dexon, take proactive steps to detect and prevent the sale of counterfeit product.

121.   Cisco has created an "Authorized Channel Network" in which Cisco sells products to entities it refers to as "Authorized Channel Partners" or "Authorized Resellers."  Within this "Authorized" network, Cisco exerts strict control over how, and at what prices, its "Authorized" partners can buy and sell Cisco products.

122.   "Authorized Reseller" status is not foolproof protection against counterfeit products. Cisco's "Authorized" sellers are likewise victimized by the presence of counterfeit product in the marketplace and have been caught selling counterfeit Cisco product.

123.   While manufacturers like Cisco are permitted to control the initial sale of their products, they may not wield trademark or copyright protections to dictate the terms by

which their products are resold by other parties.  The well-established "first sale doctrine" protects parties who engage in the subsequent resale of Cisco's products, even if those subsequent resales occur outside the "Authorized" channels. Cisco may not forbid the resale of its products outside the "Authorized" network.

**Cisco's Improper Interference with the Secondary Market**

**Falsely Claiming Purchasers' Use and Transfer is Restricted**

124.    Cisco products, like virtually all modern electronics, contain embedded software. And just as a car, refrigerator, or cell phone will not function properly without internal software, Cisco's products—including the Cisco products resold by Dexon—cannot function without Cisco's embedded software.

125.    Cisco uses the fact that its products have embedded software as an attempted end-around to the first sale doctrine.  It does so by attempting to unilaterally impose purported contractual restrictions on the use and transfer of its products *after* their purchase.  Namely, Cisco attempts to rely on purported "End User License Agreements" seeking to restrict the owners' use and/or transfer of the subject hardware, including the embedded software packaged and sold with the hardware (and without which the hardware will not function).

126.    Cisco attempts to rely on such purported "End User License Agreements" ("EULA") despite the absence of any assent to such purported agreements/contracts by the owners of the hardware.  Specifically, Cisco does not require or mandate that end users acknowledge, read, accept or provide any affirmative assent to such purported agreements/contracts before purchasing or using the Cisco goods sold by Dexon.  In fact, Cisco purports to advise purchasers or end users of its alleged "End User License Agreement" by directing them to domain names or websites containing the purported EULA (i.e. www.cisco.com/go/eula; www.cisco.com/go/license)

127.    In the event any purchasers or end users actually go to the cited domain names or websites, they are not required to provide any affirmative assent such as a "click through." Rather,  Cisco's purported EULA states that that their "download, installation, or use of the Cisco Technology" constitutes assent.  Notably, the new Cisco equipment sold on the

1  secondary market by resellers such as Dexon has never been "download[ed], install[ed] or
2  use[d]. . ."

3  128.   Cisco's purported EULA provides or has provided that Cisco will grant a license only
4  to consumers who purchase Cisco hardware with embedded software from a so-called
5  "Approved Source," defined as "Cisco or . . . [a] Cisco authorized reseller, distributor, or
6  systems integrator[.]" Cisco warns that end users are "not licensed to Use the Software on
7  secondhand or refurbished Cisco equipment not authorized by Cisco, or on Cisco equipment
8  not purchased through an Approved Source."

9  129.   In other words, Cisco attempts to prevent consumers from making any use of Cisco
10  hardware they have lawfully purchased on the secondary market by prohibiting use of the
11  embedded software.  Cisco further informs consumers that the "embedded Cisco software
12  that runs on the hardware" is "not transferable," and purchasers of secondary market Cisco
13  equipment "must acquire a new license from Cisco before the software can be used."  The
14  only way to avoid having to purchase a new license, Cisco says, is to buy refurbished
15  equipment through Cisco's own program.

16  130.   These representations to consumers are false. Pursuant to the first sale doctrine, and
17  absent any assent to Cisco's purported EULA, consumers who purchase Cisco hardware
18  may use embedded software.  They may also transfer the embedded software, along with the
19  hardware, freely.  Cisco may not sidestep the first sale doctrine based on embedded software
20  (to which the first sale doctrine indisputably applies) solely because consumers did not
21  purchase the hardware through Cisco's more lucrative supply chain.  And it may not deceive
22  consumers by telling them that products purchased on the secondary-market are governed
23  by a purported EULA restricting their use and/or transfer despite the absence of any assent
24  to such EULA.

25  131.   Cisco's misrepresentations regarding consumers' rights to buy, use and transfer
26  secondary-market Cisco products deters consumers from purchasing Cisco goods on the
27  secondary market.  Dexon has lost sales of products that would have been made but for
28  Cisco's false representations to consumers regarding their ownership rights for Cisco

DEFENDANT'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND
THIRD-PARTY CLAIMS

1  hardware and embedded software purchased on the secondary market.  These false

2  representations have unjustly enriched Cisco at Dexon's expense.

3  132.    On occasions where secondary market sellers obtain Cisco product directly from an

4  "Authorized" seller, Cisco falsely threatens that the end users rights are restricted because

5  the sale was contrary to the "Authorized" seller's agreement with Cisco.   Cisco's

6  enforcement of this improper policy is selective.  In addition to being contrary to well-

7  established agency principles, such alleged agreements between Cisco and its "Authorized"

8  sellers are often not properly renewed or maintained and are therefore not in force and effect.

9  **Falsely Labeling New Secondary Market Products "Used"**

10  133.    Cisco also falsely labels genuine, lawfully obtained Cisco products as "used," simply

11  because such products were traded on the secondary market. As a result, end users or

12  resellers who communicate with Cisco about the status of certain Cisco products are

13  deliberately provided with misinformation.

14  134.    Cisco's contortion of the term "used" is particularly egregious. Rather than give the

15  term its ordinary meaning, Cisco has unilaterally decided that "used equipment" means

16  "previously owned equipment that is now owned by a party other than the original

17  customer," including both "opened and unopened equipment."  Cisco's form letters from its

18  Brand Protection Team have and continue to direct secondary market customers, including

19  Dexon's customers, to domains and websites (i.e. www.cisco.com/go/relicensing) which

20  misleadingly inform or have informed such customers that all products purchased on the

21  secondary market are "used."  Such site defines or has defined "used" as "previously owned

22  equipment that is now owned by a party other than the original customer" including both

23  "opened and unopened equipment."

24  135.    Accordingly, Cisco routinely publicly criticizes and labels secondary market product

25  which has never been used – including product contained in unopened sealed boxes – as

26  "used" contrary to consumers' well understood meaning of such term.

27  136.    Cisco knows that its unilateral definition of the term "used" is contrary to the common

28  consumer understanding, and that consumers are misled by its use of the term.

1

**Cisco's Tortious Efforts to Interfere with Dexon's Business**

2   137.   Because Cisco regards secondary market resellers like Dexon as a threat to its excess

3   profits, Cisco spends substantial money and effort to attack secondary market participants

4   such as Dexon and to chill reseller and end user participation in the secondary market.  These

5   steps include but are not limited to employing a team of "Brand Protection" employees

6   whose primary responsibility is to intervene with resellers and end users in cases where they

7   are either contemplating the purchase of product, or have ordered product, from the

8   secondary market. Brand Protection personnel use a variety of tools to disrupt secondary

9   market sales, including: (i) advising resellers and end users that product from the secondary

10   market is suspect, may damage or jeopardize their network operations, may void Cisco

11   warranties, may be counterfeit, and is otherwise unreliable.

12   138.   Such tortious conduct includes, without limitation, falsely advising Dexon's actual

13   and prospective customers that: i) Dexon does not sell new but rather "used" Cisco product;

14   ii) Dexon's products are "counterfeit" solely because they were sold on the secondary market

15   despite the fact such products are in fact genuine; iii) Dexon products violate a purported

16   EULA despite the absence of any assent to such EULA and/or despite the fact the relevant

17   product (i.e. phones) require no license.

18   139.   Cisco has presented, published, and/or caused to be published the false and

19   misleading message that alleged "genuine" and/or "new" Cisco gear only comes from Cisco

20   and its "Authorized" sellers.

21   140.   Cisco has engaged in a pattern and practice of this tortious conduct with the intent to

22   disrupt contracts between Dexon and its customers, pending opportunities with such

23   customers, future business with such customers, and even with the apparent goal of driving

24   Dexon out of business altogether.

25   141.   As a direct result of Cisco's tortious interference, Dexon has suffered significant

26   damages, including the cancellation of numerous pending orders, loss of opportunity to bid

27   on projects, and the loss of entire relationships with many of its top customers.

28

## Count I
### Lanham Act False Advertising
### (15 U.S.C. § 1125(a)(1)(B))

142.   Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

143.   Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that it is unlawful for any person to use a "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

144.   As set forth above, Cisco has published in commercial advertising and promotion, and continues to publish in commercial advertising and promotion, false or misleading representations of fact regarding the software embedded in Cisco hardware sold on the secondary market.

145.   In addition, Cisco has published in commercial advertising and promotion, and continues to publish in commercial advertising and promotion, false or misleading representations of fact regarding whether products in the secondary market are "used."

146.   Without limitation, on or about July 9, 2019, Sean O'Brien, a member of Cisco's Brand Protection Team, sent a letter to Dexon customer Fort Bend Independent School District.   Fort Bend Independent School District had previously entered into a written contract with Dexon for the purchase of over $1,300,000.00 in new Cisco equipment.   Such letter stated: "According to Cisco Systems' records (www.cisco.com/go/eula, the Cisco goods listed in Exhibit A are not recorded as being sold to Fort Bend Independent School District through one of Cisco's authorized resellers.   It appears you may have purchased the Cisco goods from a company name **Dexon Computer**.   **Unfortunately, Dexon Computers is not a member of the Cisco authorize reseller program.**   As such, Cisco recommends that you return these goods for a refund, along with any other Cisco products received by the vendor, and replace the items with authorized Cisco products sold via an authorized reseller."

147.   Such letter further warned Dexon's customer that such products "may not come with a valid software license" and that "Customers purchasing most Cisco goods outside of Cisco's authorized sales channels would not automatically have a license to use the software."

148.   In addition to falsely advising Dexon's customer it would not have a license to use products purchased from Dexon, such letter referred Dexon's customer to www.cisco.com/go/relicensing containing the false and misleading definition of "used."

149.   As a direct result of the July 9, 2019 correspondence, as well as other communications with Cisco's Brand Protection Team, Fort Bend Independent School District falsely believed the Cisco equipment purchased from Dexon was "used" and/or that it would lack a necessary license to use such equipment.  As a result, Fort Bend Independent School District cancelled its contract with Dexon.

150.   Without limitation, on or about March 14, 2019, Tim Casto, a member of Cisco's Brand Protection Team, sent a letter to Dexon customer Lockridge Grindal and Nauen ("Lockridge").  Such letter falsely advised Dexon customer Lockridge that "six swtiches" purchased from Dexon were "counterfeit."

151.   The March 14, 2019 letter warned that "Dexon is NOT a member of the Cisco Authorized Reseller Program" and that "[r]egardless of what Dexon claims, and regardless of whether its Cisco product is used or is in new sealed boxes, ANY Cisco product it supplies is consider unauthorized."  Such letter falsely represented that absolutely no product obtained from Dexon comes with a "valid software license."

152.   In addition to falsely labeling "six switches" obtained from Dexon counterfeit and falsely stating that no products obtained from Dexon came with a "valid software license," such letter also referred Dexon customer Lockridge to the domain or website containing the false and misleading definition of "used."

153.   As a direct result of the March 14, 2019 correspondence, as well as other communications with Cisco's Brand Protection Team, Lockridge falsely believed all six

1    switches it purchased from Dexon were counterfeit and/or that it would not have the required

2    licenses necessary to use Cisco product purchased from Dexon.

3    154.    Without limitation, on or about , January 27, 2020, Tim Casto, a member of Cisco's

4    Brand Protection Team, sent an email to Dexon customer Accuray Inc. ("Accuray").  Such

5    email acknowledged that products purchased by Accuray from Dexon had been determined

6    to be authentic or "genuine."  However, the email falsely stated that because such genuine

7    products were purchased on the secondary market, they "did not have a valid software

8    license."  The email stated in relevant part, "Cisco reviewed the console readout and

9    determined that the items are genuine. . .The below items, however, show as sold to end

10   users other than Accuray.  This means that the below products do not have a valid software

11   license. . ."

12   155.    Without limitation, on or about July 12, 2021, Shuting Li, on information and belief

13   a member of Cisco's Brand Protection Team, sent an email to Dexon customer Meadowridge

14   Networks, Inc. ("Meadowridge").  Such letter falsely implied product purchased from

15   Dexon was not new or not genuine.  The email stated, "Serial number is verified to be an

16   unauthorized unit is because this unit is now in possession of end customer which is different

17   from the reported end customer.  So it is an overseas diversion unit."

18   156.    As a direct result of the July 12, 2021 email, as well as other communications with

19   Cisco,  Meadowridge understandably understood Cisco to be claiming the products

20   purchased from Dexon to be "used" and/or counterfeit.  In a responsive email, Meadowridge

21   explained, "I am the first end-user to open the box. . .This came to me in an unopened Cisco

22   box and was not a 'used' unit in any sense of the word. . .I had every reason to think that

23   this was a legitimate unit and no reason to believe that it wasn't."

24   157.    Rather than clarify Meadowridge's interpretation and misunderstanding of its prior

25   communications, Cisco responded by directing Meadowridge to a domain or website

26   containing its false and misleading definition of "used."

27

28

158.    The foregoing false and misleading representations of fact were designed to mislead consumers, and have in fact misled consumers, at the expense of Dexon, causing direct and substantial loss and damage to Dexon.

159.    The foregoing false and misleading representations of fact are made willfully and entitle Dexon to recover the profits obtained by Cisco thereby, in addition to Dexon's own damages suffered as a result of Cisco's false and misleading representations of fact.

160.    Cisco's misrepresentations have caused, and unless enjoined by this Court, will continue to cause irreparable injury to Dexon.

<u>**Count II**</u>
**Intentional Interference with Contractual Relations**

161.    Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

162.    Dexon secured contracts with certain customers, including, without limitation, Fort Bend Independent School District, Lockridge, Meadowridge and Accuray for the sale of Cisco products on which Dexon would have earned significant profits.

163.    On information and belief, Cisco knew or should have known of these contractual relationships between Dexon and these third party customers.

164.    On information and belief, Cisco intentionally, or with reckless disregard for the truth, made false and misleading statements about Dexon and the products it sells to these customers in order to disrupt the contractual relationship and to cause these customers to purchase product from Cisco authorized resellers at a higher price.

165.    Cisco's statements in fact disrupted these contractual relationships between Dexon and its customers.

166.    Dexon has suffered substantial economic damage as a result of this wrongful conduct in an amount subject to proof at trial.

167.    Cisco's actions have caused, and unless enjoined by this Court, will continue to cause irreparable injury to Dexon.

1

2

### Count III
### Intentional Interference with Prospective Economic Advantage

3   168.   Dexon repeats and realleges each of the allegations set forth in the preceding

4   paragraphs as if fully set forth herein.

5   169.   An economic relationship existed between Dexon and its actual and prospective

6   customers, including, without limitation, Fort Bend Independent School District, Lockridge,

7   Meadowridge, and Accuray, each of which contained the probability of substantial future

8   economic benefits to Dexon.

9   170.   On information and belief, Cisco knew or should have known of these relationships.

10   171.   On information and belief, Cisco intentionally, or with reckless disregard, engaged

11   in tortious conduct designed to disrupt Dexon's potential benefit from these relationships.

12   172.   Cisco's statements were made with the intent to disrupt the economic relationship

13   between Dexon and its potential and actual customers in order to damage Dexon and or

14   divert business to "Cisco Authorized Resellers" under Cisco's control.

15   173.   As a result of the efforts detailed above, Dexon's relationships with its potential and

16   actual customers have in fact been permanently disrupted and/or materially damaged in a

17   significant number of instances, including its future relationships. As a result of Cisco's

18   tortious efforts, Dexon's customers have refused to pay for certain Cisco goods, have

19   returned and/or cancelled orders for such goods, have removed Dexon's bids from

20   contention for business, and have ceased doing business with Dexon on other products

21   and/or altogether.

22   174.   Dexon has suffered substantial economic damage as a result of this wrongful conduct

23   in an amount subject to proof at trial.

24   175.   Cisco's actions have caused, and unless enjoined by this Court, will continue to cause

25   irreparable injury to Dexon.

26

27

28

**Count IV**
**Trade Libel**

176.   Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

177.   On information and belief, Dexon alleges that Cisco has repeatedly made disparaging statements about Dexon's products as detailed herein, including, without limitation, the statements and representations detailed above to Dexon customers Fort Bend Independent School District, Lockridge, Meadowridge and Accuray.

178.   Cisco's statements disparaged Dexon's products.  On information and belief, Dexon alleges that the claims made were false or materially misleading.

179.   Dexon has suffered and will continue to suffer irreparable harm should Cisco's trade libel be allowed to continue.

180.   As a proximate result of Cisco's statements, prospective and actual customers have been deterred from buying Dexon's products and from otherwise dealing with Dexon. Dexon has suffered substantial economic damage as a result of this wrongful conduct in an amount subject to proof at trial.

**THIRD PARTY CLAIMS**

181.   Third Party Plaintiff Dexon Computer, Inc. asserts the following claims against Third Party Defendants Atlantix Global Systems International, LLC, Bizcom Electronics, Inc., Digi Devices Online, Enterprise Business Technologies, Inc., Fiber Cable Connections, MJSI, Multimode Technologies, LLC, Optimum Data, Inc., Paragon, Pure Future Technology, Inc., Seastar IT Trading LLC, Server Tech Supply, Softnetworks, Inc., Strada Networks, LLC, Unlimited Network Solutions and Wisecom Technologies alleges as follows:

**THE PARTIES**

182.   Third Party Plaintiff Dexon Computer, Inc. ("Dexon") is a Minnesota corporation with its principal place of business at 9201 E. Bloomington Freeway, Suite BB, Bloomington, Minnesota 55420.

183.   On information and belief, Third Party Defendant Atlantix Global Systems International, LLC is a Georgia limited liability corporation with its principal place of business in Georgia.

184.   On information and belief, Third Party Defendant Bizcom Electronics, Inc., is a California corporation with its principal place of business in California.

185.   On information and belief, Third Party Defendant Digi Devices Online is a foreign corporation with its principal U.S. place of business in Texas.

186.   On information and belief, Third Party Defendant Enterprise Business Technologies, Inc. is a New York corporation with its principal place of business in New York.

187.   On information and belief, Third Party Defendant Fiber Cable Connections is a Washington corporation with its principal place of business in Washington.

188.   On information and belief, Third Party Defendant MJSI is a California corporation with its principal place of business in California.

189.   On information and belief, Third Party Defendant Multimode Technologies, LLC is a Minnesota limited liability company with its principal place of business in Minnesota.

190.   On information and belief, Third Party Defendant Opitmum Data, Inc. is a Nebraska corporation with its principal place of business in Nebraska.

191.   On information and belief, Third Party Defendant Paragon is a Massachusetts corporation with its principal place of business in Massachusetts.

192.   On information and belief, Third Party Defendant Pure Future Technology, Inc. is a California corporation with its principal place of business in California.

193.   On information and belief, Third Party Defendant Seastar IT Trading LLC is a Washington limited liability company with its principal place of business in Washington.

194.   On information and belief, Third Party Defendant Server Tech Supply is a Virginia corporation with its principal place of business in Pennsylvania.

195.   On information and belief, Third Party Defendant Softnetworks, Inc. is a New Jersey limited liability company with its principal place of business in New Jersey.

196. On information and belief, Third Party Defendant Strada Networks, LLC is a foreign limited liability company with its principal place of business in British Columbia, Canada.

197. On information and belief, Third Party Defendant Teksavers is a Texas corporation with its principal place of business in Texas

198. On information and belief, Third Party Defendant Unlimited Network Solutions is a corporation with its principal place of business in California.

199. On information and belief, Wisecom Technologies is a corporation with its principal place of business in Maryland.

### Supply of Alleged Counterfeit and Infringing Product

200. The Third Party Defendants are all reputable dealers and merchants with respect to the Cisco products alleged to be counterfeit and thereby infringing herein ("allegedly infringing Cisco product").

201. Dexon obtained such allegedly infringing Cisco product from the Third Party Defendants. While Dexon denies Cisco's allegations and believes the subject products to be genuine, Dexon relied in good faith on the Third Party Defendants in procuring or obtaining such products.

202. Without limitation, the Third Party Defendants warranted that such products sold to Dexon would be "delivered free of the rightful claim of any third person by way of infringement or the like." *See* U.C.C. §2-312(3).

### FIRST THIRD PARTY CLAIM
**(Indemnification - All Third Party Defendants)**

203. Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

204. Dexon was named in this litigation as a direct result of product procured from and/or supplied by the Third Party Defendants.

205. Third Party Defendants should be ordered to indemnify Dexon whether based on express agreement, implied agreement or common law.

## SECOND THIRD PARTY CLAIM
### (Contribution - All Third Party Defendants)

206.  Dexon repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

207.  Dexon was named in this litigation as a direct result of product procured from and supplied by the Third Party Defendants.

208.  Dexon is entitled to contribution from Third Party Defendants, whether based on express agreement, implied agreement or common law, to pay or defray any judgment entered against Dexon herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant, Counterclaim Plaintiff and Third Party Plaintiff Dexon Computer, Inc. prays for judgment and relief against Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc. ("Cisco") and Third Party Defendants Atlantix Global Systems International, LLC, Bizcom Electronics, Inc., Digi Devices Online, Enterprise Business Technologies, Inc., Fiber Cable Connections, MJSI, Multimode Technologies, LLC, Optimum Data, Inc., Paragon, Pure Future Technology, Inc., Seastar IT Trading LLC, Server Tech Supply, Softnetworks, Inc., Strada Networks, LLC, Unlimited Network Solutions and Wisecom Technologies as follows:

a.   Dismissing Plaintiffs' Cisco Systems, Inc. and Cisco Technology, Inc. claims with prejudice, together with costs and disbursements;

b.   Awarding Dexon actual damages, subject to proof at trial but in an amount in excess of $75,000.;

c.   For equitable remedial efforts by Counterclaim Defendants sufficient to rehabilitate Dexon's damaged reputation;

d.   For orders restraining or enjoining Cisco from engaging in similar conduct in the future;

e.   Awarding Dexon damages, lost profits, and treble damages pursuant to the Lanham Act;

1  f.  Awarding Dexon its costs and expenses of litigation, including reasonable

2     attorneys' fees;

3  g.  An award in Dexon's favor against Third Party Defendants sufficient to

4     compensate Dexon for all economic loss, damages, attorney's fees and costs

5     resulting from the claims herein; and

6  h.  Such other and further relief as this Court deems just and equitable.

7

8 Dated:  January 10, 2022    */s/ Amanda R. Washton*

9          Amanda Washton
           *a.washton@conklelaw.com*

10         **CONKLE, KREMER & ENGEL, PLC**
          3130 Wilshire Boulevard, Suite 500

11         Santa Monica, CA 90403

12         Michael M. Lafeber
          *mlafeber@taftlaw.com*

13         O. Joseph Balthazor Jr.
          *jbalthazor@taftlaw.com*

14         **TAFT STETTINIUS & HOLLISTER LLP**
          2200 IDS Center

15         80 S. 8th St.
          Minneapolis, MN 55402

16         David H. Reichenberg (*pro hac vice pending*)
          *DReichenberg@cozen.com*

17         **COZEN O'CONNOR**
          3 WTC, 175 Greenwich Street, 56th Floor

18         New York, New York 10006

19         Mark A. Jacobson (*pro hac vice pending*)
          *mjacobson@cozen.com*

20         **COZEN O'CONNOR**
          33 South 6th Street, Suite 3800

21         Minneapolis, MN 55402

22         Attorneys for Defendant, Counterclaim Plaintiff and

23         Third-Party Plaintiff Dexon Computer, Inc.

24

25

26

27

28

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Dexon Computer, Inc. demands a trial by jury on all issues so triable.

3

4

Dated:  January 10, 2022

5

*/s/ Amanda R. Washton*

Amanda R. Washton
   *a.washton@conklelaw.com*

6

**CONKLE, KREMER & ENGEL, PLC**
3130 Wilshire Boulevard, Suite 500
Santa Monica, CA 90403

7

8

Michael M. Lafeber
   *mlafeber@taftlaw.com*
O. Joseph Balthazor Jr.
   *jbalthazor@taftlaw.com*

9

10

**TAFT STETTINIUS & HOLLISTER LLP**
2200 IDS Center
80 S. 8th Street
Minneapolis, MN 55402

11

12

David H. Reichenberg (*pro hac vice pending*)
   *DReichenberg@cozen.com*

13

**COZEN O'CONNOR**
3 WTC, 175 Greenwich Street, 56th Floor
New York, New York 10006

14

15

Mark A. Jacobson (*pro hac vice pending*)
   *mjacobson@cozen.com*

16

**COZEN O'CONNOR**
33 South 6th Street, Suite 3800
Minneapolis, MN 55402

17

18

Attorneys for Defendant, Counterclaim Plaintiff and Third-Party Plaintiff Dexon Computer, Inc.

19

20

21

22

23

24

25

26

27

28