| | |
|---|---|
| Richard J. Nelson (SBN 141658) | Aaron M. Panner* (D.C. Bar No. 453608) |
| Louis P. Feuchtbaum (SBN 219826) | Kylie C. Kim* (D.C. Bar No. 230277) |
| Artur A. Minasyan (SBN 322248) | Christopher M. Sarma* (D.C. Bar. No. 1510831) |
| **SIDEMAN & BANCROFT LLP** | Alex A. Parkinson* (D.C. Bar No. 166695) |
| One Embarcadero Center | Ryan M. Folio* (New York Bar No. 5823943) |
| Twenty-Second Floor | **KELLOGG, HANSEN, TODD,** |
| San Francisco, CA 94111-3711 | **FIGEL & FREDERICK, P.L.L.C.** |
| (415) 392-1960 | 1615 M Street, NW, Suite 400 |
| rnelson@sideman.com | Washington, D.C. 20036 |
| lfeuchtbaum@sideman.com | (202) 326-7900 |
| aminasyan@sideman.com | apanner@kellogghansen.com |
| | kkim@kellogghansen.com |
| | csarma@kellogghansen.com |
| | aparkinson@kellogghansen.com |
| | rfolio@kellogghansen.com |

*Attorneys for Plaintiffs and Counterclaim Defendants*
*Cisco Systems, Inc. and Cisco Technology, Inc.*

* Admitted *pro hac vice*. Mr. Folio is not admitted in the District of Columbia; his practice is supervised by members of the firm.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>    Plaintiffs and Counterclaim Defendants,<br><br>    v.<br><br>DEXON COMPUTER, INC., a Minnesota Corporation,<br><br>    Defendant and Counterclaim Plaintiff. | Case No. 3:20-cv-4926-CRB<br><br>**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS CISCO SYSTEMS, INC.'S AND CISCO TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT DEXON COMPUTER, INC.'S SECOND AMENDED COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  March 17, 2022<br>Time:  10:00 a.m.<br>Courtroom:  6<br>Judge:  Honorable Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 17, 2022, at 10:00 a.m., or as soon thereafter as this matter can be heard, in Courtroom 6 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, before the Honorable Charles R. Breyer, Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco") will, and hereby do, respectfully move this Court for an order dismissing the second amended counterclaims by Defendant and Counterclaim Plaintiff Dexon Computer, Inc. ("Dexon") in their entirety and with prejudice.  *See* Dkt. 92.

This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities below; the record in this matter; and such other and further papers, evidence, and argument as may be submitted to support this Motion.

DATED:  January 31, 2022                          Respectfully Submitted,

By:  */s/ Aaron M. Panner*
　　　Aaron M. Panner

| | |
|---|---|
| Richard J. Nelson (SBN 141658) | Aaron M. Panner* |
| Louis P. Feuchtbaum (SBN 219826) | Kylie C. Kim* |
| Artur A. Minasyan (SBN 322248) | Christopher M. Sarma* |
| **SIDEMAN & BANCROFT LLP** | Alex A. Parkinson* |
| One Embarcadero Center | Ryan M. Folio* |
| Twenty-Second Floor | **KELLOGG, HANSEN, TODD,** |
| San Francisco, CA 94111-3711 | **　FIGEL & FREDERICK, P.L.L.C.** |
| (415) 392-1960 | 1615 M Street, NW, Suite 400 |
| rnelson@sideman.com | Washington, D.C. 20036 |
| lfeuchtbaum@sideman.com | (202) 326-7900 |
| aminasyan@sideman.com | apanner@kellogghansen.com |
| | kkim@kellogghansen.com |
| | csarma@kellogghansen.com |
| | aparkinson@kellogghansen.com |
| | rfolio@kellogghansen.com |

*Attorneys for Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc.*

\* Admitted *pro hac vice*.  Mr. Folio is not admitted in the District of Columbia; his practice is supervised by members of the firm.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

BACKGROUND ....................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

I.    DEXON'S LANHAM ACT CLAIM FAILS TO ALLEGE ANY FALSE STATEMENT ................................................................................................... 4

II.    DEXON'S FAILURE TO PLEAD FALSE STATEMENTS IS LIKEWISE FATAL TO THE BUSINESS-TORT COUNTERCLAIMS ............................................... 7

III.    DEXON'S COUNTERCLAIMS SHOULD BE DISMISSED TO THE EXTENT IT FAILS TO PLEAD RESULTING HARM .......................................................... 8

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..............................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................3

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707
    (N.D. Cal. Apr. 15, 2020)........................................................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................................4

*Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813 (N.D. Cal. 2019) ..............................6

*Cisco Sys. Inc. v. Link US, LLC*, 2019 WL 6682838 (N.D. Cal. Dec. 6, 2019)................................6

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999).....................5

*ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001)............................7, 8

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010).....................................................3

*DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793
    (N.D. Cal. Aug. 1, 2020) ........................................................................................................8

*Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020)...........................................................7

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)...........................................................4, 7

*Miller v. City & Cnty. of S.F.*, 187 Cal. App. 2d 480 (1960) ..........................................................5

*Openwave Messaging, Inc. v. Open-X-change, Inc.*, 2016 WL 2621872
    (N.D. Cal. May 9, 2016).........................................................................................................9

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990).........................................8

*Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976 (N.D. Cal. 2010) .......................................8, 9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ..................................................4, 7

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069 (9th Cir. 2014) .........................4

**STATUTE**

17 U.S.C. § 109(a)............................................................................................................................5

15 U.S.C. § 1125(a)..........................................................................................................................9

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................................. 4, 7, 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Dexon's second amended counterclaims should be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Dexon's second amended counterclaims reassert four of the eleven claims it asserted in its first amended counterclaims: false advertising under the Lanham Act; intentional interference with contractual relations and prospective economic advantage; and trade libel. Each of these claims sounds in fraud, but Dexon fails to plead facts sufficient to overcome the legal deficiencies that led this Court to dismiss its claims before. Despite adding allegations regarding four of Dexon's customer relationships, *see* Dexon's Second Am. Counterclaims ("SAC") ¶¶ 146-157, Dkt. 92, Dexon still fails to plead with the requisite specificity any misrepresentation by Cisco or facts showing that supposedly false statements harmed Dexon. Furthermore, the counterclaims suffer from additional legal defects that require their dismissal. The Court should grant the motion with prejudice.

**BACKGROUND**

**1.** Cisco sued Dexon because Dexon sold counterfeit equipment bearing Cisco's trademarks. After filing its answer and counterclaims, Dexon filed an amended answer and counterclaims asserting eleven causes of action under federal and state antitrust law, California's Unfair Competition Law, the Declaratory Judgment Act, the Lanham Act, and state common law. *See* Dexon's First Am. Counterclaims ("FAC"), Dkt. 50. Cisco moved to dismiss, and the Court dismissed all of these counterclaims without prejudice. Order Granting Mot. To Dismiss Counterclaims at 14-15 ("Order"), Dkt. 87.

In the Order, the Court held that multiple counterclaims failed because Dexon had not alleged a misrepresentation with the requisite particularity. Dexon's factual allegations in the first amended counterclaims centered on two supposed misrepresentations: the first regarding the need for secondary-market purchasers to acquire a license to the software installed on Cisco equipment; the second regarding the "used" status of secondary-market equipment. This Court held that "Cisco's statement that secondary-market equipment purchasers require a software license is not a

misrepresentation," Order 14, explaining:

> Dexon alleges that Cisco informs customers that "although its hardware can be freely resold, the 'embedded Cisco software that runs on the hardware' is 'not transferable,' and purchasers of secondary market Cisco equipment 'must acquire a new license from Cisco before the software can be used.'" Dexon contends that this statement is false because it violates the first sale doctrine. But that doctrine applies to purchased software, not to purchased software <u>licenses</u>. Dexon alleges no plausible facts suggesting that initial owners of Cisco equipment own (rather than merely license) the embedded software. Cisco makes no misrepresentation when it informs secondary-market equipment purchasers that they need a software license.

Order 12 (internal citation omitted).

The Court also held that Dexon had "not pleaded with particularity the 'who, what, or when' regarding Cisco's allegedly misleading definition of 'used,' who was misled, and how specifically the misrepresentation caused Dexon harm." Order 14; *see also id.* at 12.

**2.** Cisco's second amended counterclaims include the last four counts of the first amended counterclaims, i.e., under the Lanham Act (Count I), for intentional interference (Counts II and III), and for trade libel (Count IV). All of these claims rely on the same allegations of fraud as the first amended counterclaims, centered on (1) the need for secondary-market purchasers to obtain software licenses; and (2) the "used" status of secondary-market equipment.

As to Dexon's second amended counterclaims regarding software licenses, Dexon asserts that Cisco "attempt[s] to unilaterally impose purported contractual restrictions on the use and transfer of its products *after* their purchase" through its End User License Agreements ("EULA"). SAC ¶ 125. Dexon asserts that, "[p]ursuant to the first sale doctrine, *and absent any assent to Cisco's purported EULA*, consumers who purchase Cisco hardware may use embedded software. They may also transfer the embedded software, along with the hardware, freely." SAC ¶ 130 (new language emphasized); *cf.* FAC ¶ 104 (identical allegation without the emphasized language). But Dexon does not make any new allegations to supply the necessary fact that this Court held was

missing from the amended counterclaims, namely, that "initial owners of Cisco equipment own (rather than merely license) the embedded software" on Cisco equipment.  Order 12.

With respect to the "used" status of secondary-market equipment, Dexon adds an allegation that "Cisco's form letters . . . direct secondary market customers . . . to domains and websites (i.e. www.cisco.com/go/relicensing) which misleadingly inform or have informed such customers that all products purchased on the secondary market are 'used.'"  SAC ¶ 134.  The website incorporated by reference into Dexon's counterclaim complaint – which this Court may consider on this motion to dismiss, *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) – describes the "Cisco Hardware Inspection and Software Relicensing Program."  *See* Panner Decl. Ex. 1.  In the "Frequently Asked Questions" tab of that same website, the following statement appears in response to the question "How does Cisco define 'used and secondary-market equipment' that qualifies for this program?":

> Cisco defines used equipment as previously owned equipment that is now owned by a party other than the original customer.  Secondary-market equipment is any Cisco equipment – whether it is represented as new, used, or refurbished – that is purchased from a seller that is not an authorized Cisco reseller or distributor.  This includes both opened and unopened equipment.

*Id.*  Accordingly, the website states that "secondary-market equipment" is broader than "used equipment" and includes "both opened and unopened equipment."

3.  In dismissing the intentional interference and trade libel counts in Dexon's first amended counterclaims, the Court noted that "Dexon's allegations are far too unspecific."  Order 15.  In response, Dexon adds certain details concerning Cisco's communications with four Dexon customers:  Fort Bend Independent School District ("FBISD"), Lockridge Grindal and Nauen ("Lockridge"), Accuray, Inc. ("Accuray"), and Meadowridge Networks, Inc. ("Meadowridge").  *See* SAC ¶¶ 146-157.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted), and that rises "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because Dexon's counterclaims sound in fraud, it must also satisfy Rule 9(b)'s heightened pleading standard by alleging, with particularity, "the who, what, when, where, and how of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted), including "what is false or misleading about a statement, and why it is false," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## ARGUMENT

Dexon's second amended counterclaims all fail for the same reasons that the Court dismissed the corresponding causes of action in the first amended counterclaims: Dexon fails to allege with specificity any false or misleading statement that caused Dexon harm (among other deficiencies). The second amended counterclaims should thus be dismissed in their entirety and with prejudice.

### I.  DEXON'S LANHAM ACT COUNTERCLAIM FAILS TO ALLEGE ANY FALSE STATEMENT

The Lanham Act counterclaim fails because Dexon does not plausibly allege that Cisco made a false statement of fact. *See* Order 14 (applying Rule 9(b) to the Lanham Act counterclaim); *see also Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071-72 (9th Cir. 2014) (requiring a false statement). As before, Dexon's misrepresentation allegations center on statements regarding the rights of secondary-market purchasers to use embedded software (*see* SAC ¶¶ 124-132) and the labeling of secondary-market equipment as "used" (*see* SAC ¶¶ 133-136). Notwithstanding the guidance this Court provided in the Order, Dexon does not plausibly allege that the statements it points to are false.

**1.  Software Licenses:** As this Court held, Cisco's statement that secondary-market purchasers do not automatically obtain a license to use copyrighted software installed on secondary-market equipment cannot support a Lanham Act claim because the statement is true. *See* Order 12. Dexon appears to assert that, unless the initial purchaser of Cisco's equipment affirmatively agrees to the EULA, there is no restriction on that purchaser's ability to transfer the software embedded on that equipment. *See* SAC ¶ 130 (focusing on the alleged absence of "assent to Cisco's purported EULA"). But that is incorrect for reasons this Court has explained. *See*

Order 12.  The "first sale" doctrine is a *defense* to copyright infringement:  it provides that once a copy of copyrighted work is *sold* with the copyright owner's authorization, then the copyright holder cannot prevent the resale of that particular copy.  See 17 U.S.C. § 109(a).  But Dexon does not claim that it (or anyone else) purchased the software installed on any Cisco equipment that Dexon sells; accordingly, there is no first *sale*, and secondary transferees, to whom no license has been granted, do not acquire any right to use the copyrighted software.  That is true whether or not any prior transferee agreed to – or was even aware of – the terms of the EULA.  That is what this Court held before, and Dexon alleges nothing to address this legal defect.  See Order 12.

In particular, none of the specific representations that Cisco allegedly made to FBISD, Lockridge, or Accuray contains false statements.  Cisco allegedly (SAC ¶ 147) told FBISD that "[c]ustomers purchasing most Cisco goods outside of Cisco's authorized sales channels would not automatically have a license to use the software"; Cisco allegedly (SAC ¶ 151) told Lockridge that unauthorized products would not come with a "valid software license"; and Cisco allegedly (SAC ¶ 154) told Accuray that secondary-market products "did not have a valid software license."  But Dexon fails to allege any facts that would render those statements false.

Furthermore, Cisco's representation that purchasers of secondary-market Cisco equipment must acquire a new software license is a statement of legal opinion and therefore not "actionable under the Lanham Act."  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see Miller v. City & Cnty. of S.F.*, 187 Cal. App. 2d 480, 483 (1960) ("a misrepresentation of law is not an actionable fraud . . . , at least where, as here, no confidential relationship exists between the parties"); *see also* Cisco Mot. To Dismiss Dexon's First Am. Counterclaims at 23-24, Dkt. 72.

2. **"Used" Status:**  Dexon does not allege that Cisco made any false statement regarding the "used" status of secondary-market equipment.  The statement on Cisco's website that Dexon incorporates by reference into its counterclaims (SAC ¶ 134; and which Dexon quoted with a screenshot in its opposition to Cisco's prior motion to dismiss, *see* Dexon's Opp'n to Mot. To Dismiss at 25, Dkt. 81) reveals that the challenged representation is about "used *and secondary market* equipment."  Panner Decl. Ex. 1.  That phrase encompasses not only equipment "owned by

a party other than the original customer" – i.e., Cisco's definition of "used equipment" – but also "new, used, or refurbished" equipment "purchased from a seller that is not an authorized Cisco reseller or distributor." *Id.* Cisco expressly discloses that secondary-market equipment may be "unopened." Dexon does not allege any facts to support the assertion that this language is false or deceptive.

While this Court and another in this district allowed certain fraud-based counterclaims to proceed in a similar posture – *see Cisco Sys. Inc. v. Link US, LLC*, 2019 WL 6682838, at *9 (N.D. Cal. Dec. 6, 2019) (Breyer, J.); *Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 830 (N.D. Cal. 2019) – the allegations in those cases were quite different. Those counterclaimants alleged that Cisco told customers that secondary-market equipment *was* "used," "even when it has never been turned on or even opened." *Link*, 2019 WL 6682838, at *8; *see Beccela's*, 403 F. Supp. 3d at 821 ("Cisco allegedly misinforms customers who contact it by telling them that products sold on the secondary market are used, which it defines as 'previously owned equipment that is now owned by a party other than the original customer,' including both 'opened and unopened equipment.' "). In that circumstance, the existence of an *accurate* definition on Cisco's website could be "insufficient to set a reasonable consumer straight." *Link*, 2019 WL 6682838, at *9. Here, by contrast, there is no allegation that Cisco falsely told anyone that unopened equipment was "used," and Dexon does not allege any facts to support its assertion that the definition, on its own, is misleading at all.

Far from bolstering its claim, Dexon's allegations regarding its four customer relationships underscore the deficiencies of its general allegations. Dexon does not allege that Cisco told FBISD that its equipment was used – it claims only (SAC ¶ 148) that a letter from Cisco referred FBISD to Cisco's website where a definition of "used" appears. Cisco allegedly (SAC ¶ 151) acknowledged the equipment that Lockridge purchased from Dexon might be "used" *or* "in new sealed boxes." Dexon does not allege that Cisco told Accuray anything about the used status of its equipment. And Dexon does not allege that Cisco told Meadowridge that its equipment was "used"; it again alleges (SAC ¶ 157) that Cisco directed Meadowridge to its website. None of this

6
Case No. 3:20-cv-4926
PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

satisfies Dexon's burden.

## II. DEXON'S FAILURE TO PLEAD FALSE STATEMENTS IS LIKEWISE FATAL TO THE BUSINESS-TORT COUNTERCLAIMS

Dexon's business-tort counterclaims – intentional interference with contractual relations, intentional interference with prospective economic advantage, and trade libel – fail for the same reasons. Because these counterclaims sound in fraud, *see* Order 14, Rule 9(b) requires Dexon to allege falsity. *See Kearns*, 567 F.3d at 1126 (claimant must allege "the particular circumstances surrounding such representations"); *see also Vess*, 317 F.3d at 1102 ("The Federal Rules of Civil Procedure apply . . . irrespective of whether the substantive law at issue is state or federal.").

Falsity is an element of each counterclaim. The Supreme Court of California recently held that "to state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act," which includes fraud. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). An at-will contract is one that "may be terminated, by its terms, at the prerogative of a single party, whether it is because that party found a better offer from a competitor, because the party decided not to continue doing business, or for some other reason." *Id.* at 1147. As alleged in the second amended counterclaims, FBISD and Dexon entered into an at-will contract; FBISD allegedly "cancelled" the contract, but Dexon does not allege that FBISD breached any obligation by doing so. SAC ¶ 149. Thus, Dexon's counterclaim for intentional interference with contractual relations requires it to allege falsity. Dexon must also allege falsity to state a claim for intentional interference with prospective economic advantage. *See ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 644 (Cal. Ct. App. 2001) ("interference with prospective economic advantage requires false statements of fact"). And Dexon's counterclaim for trade libel also requires falsity. *See id.* at 641 ("To constitute trade libel, a statement must be false.").

Dexon does not plausibly allege that Cisco made a false statement of fact to any of the four customers it identifies. Most of those statements are discussed above in connection with the Lanham Act claims. *See supra* pp. 5-6. With one exception, Dexon does not allege any of the other statements to be false either. Dexon alleges (SAC ¶ 146) that Cisco told FBISD that Dexon

7

is not an authorized reseller, but Dexon does not (and cannot) allege that this statement was false. Dexon alleges (SAC ¶ 154) that Cisco told Accuray that certain equipment "show[s] as sold to end users other than Accuray," but Dexon does not allege that statement was false. And Dexon alleges (SAC ¶ 155) that Cisco told Meadowridge that certain equipment "is now in possession of end customer which is different from the reported end customer," but, again, Dexon never alleges that Cisco's statement was false.

Dexon does assert (SAC ¶ 150) that Cisco "falsely advised . . . Lockridge that 'six switches' purchased from Dexon were 'counterfeit.'" As explained below, Dexon's claims related to Lockridge are barred because Dexon does not allege any disruption of its relationship with Lockridge or harm from this alleged statement; furthermore, especially in context, Dexon's allegations fail to plead falsity with the required specificity. Dexon does not plead any facts to show that the equipment was, in reality, genuine. Such conclusory assertions do not satisfy the specificity required by Rule 9(b). *See* Order 12-13.

Accordingly, the Court should dismiss all of Dexon's business-tort counterclaims. *See ComputerXpress*, 113 Cal. Rptr. 2d at 644 ("A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party."); *see also Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 985-86 (N.D. Cal. 2010) (dismissing trade-libel claim because plaintiffs did not plead any false statements).

### III. DEXON'S COUNTERCLAIMS SHOULD BE DISMISSED TO THE EXTENT IT FAILS TO PLEAD RESULTING HARM

Finally, Dexon's counterclaims should be dismissed for another, independent reason: Dexon never alleges that it was harmed by the statements Cisco allegedly made to Lockridge, Accuray, and Meadowridge. For all of its counterclaims, Dexon must plausibly allege harm. *See DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793, at *4 (N.D. Cal. Aug. 1, 2020) (Lanham Act); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589-90 (Cal. 1990) (intentional interference); *Robinson*, 732 F. Supp. 2d at 986 (trade libel).

Dexon alleges (SAC ¶ 149) that FBISD "cancelled its contract with Dexon." As noted above, however, Dexon does not allege that Cisco made any false statement to FBISD. And, with

respect to the remaining customers named in the SAC, Dexon makes no allegation of having suffered harm. Dexon alleges (SAC ¶ 153) that "Lockridge falsely believed all six switches it purchased from Dexon were counterfeit and/or that it would not have the required licenses necessary to use Cisco product purchased from Dexon,"[1] but not that Lockridge cancelled any purchase. Dexon alleges (SAC ¶ 156) that Meadowridge complained to Cisco, but Dexon does not allege that Meadowridge altered its dealings with Dexon. And Dexon alleges nothing about its commercial relationship with Accuray aside from the observation (SAC ¶ 154) that Accuray was a "customer" that had purchased "products."

Dexon has accordingly failed to allege this required element of its counterclaims. *See*, *e.g.*, *Robinson*, 732 F. Supp. 2d at 986 (dismissing trade-libel claim because complaint was "devoid of any allegation that [claimant] suffered *any* pecuniary or special damages"). The Court should therefore dismiss all four counterclaims to the extent they rely on allegations about Lockridge, Accuray, and Meadowridge. The same is true for FBISD with respect to Dexon's Lanham Act claim because Dexon does not allege that FBISD cancelled its contract because of any statement "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B); *see Openwave Messaging, Inc. v. Open-X-change, Inc.*, 2016 WL 2621872, at *5 (N.D. Cal. May 9, 2016) (statements are not commercial advertising or promotion if they are a "few isolated comments made with respect to a few customers").

In addition to this deficiency infecting all of Dexon's counterclaims, the intentional interference with prospective economic advantage counterclaim also fails because Dexon does not allege a "probability of *future* economic benefit" from any of the purported customer relationships that it claims to have lost as a result of Cisco's alleged conduct. Order 15 (emphasis added) (internal

---

[1] The "and/or" – which appears elsewhere in the SAC (¶¶ 149, 156) – itself undermines the adequacy of Dexon's allegations. Where a plaintiff is required to plead fact A, and an allegation of fact B is legally inadequate, the allegation "A and/or B" is insufficient by its terms. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020) ("Where a claim rests on an 'and/or' pleading, both allegations connected by 'and/or' must independently suffice to state a claim."). Thus, even if Dexon had alleged that Lockridge cancelled a purchase, it would fail to show harm based on any representation that the equipment was "counterfeit" rather than that Lockridge lacked necessary software licenses.

quotation marks omitted).  In particular, Dexon alleges nothing about the prospect of any future sales or service contracts.  *See* SAC ¶¶ 146-157.  And without such allegations, "it is impossible for the Court to determine whether it is reasonably probable that the prospective economic advantage would have been realized but for [Cisco's alleged] interference."  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019).

## CONCLUSION

The Court should dismiss Dexon's second amended counterclaims in their entirety and with prejudice.

DATED:  January 31, 2022

Respectfully Submitted,

By:  */s/ Aaron M. Panner*
       Aaron M. Panner

Richard J. Nelson (SBN 141658)
Louis P. Feuchtbaum (SBN 219826)
Artur A. Minasyan (SBN 322248)
**SIDEMAN & BANCROFT LLP**
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111-3711
(415) 392-1960
rnelson@sideman.com
lfeuchtbaum@sideman.com
aminasyan@sideman.com

Aaron M. Panner*
Kylie C. Kim*
Christopher M. Sarma*
Alex A. Parkinson*
Ryan M. Folio*
**KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
kkim@kellogghansen.com
csarma@kellogghansen.com
aparkinson@kellogghansen.com
rfolio@kellogghansen.com

*Attorneys for Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc.*

* Admitted *pro hac vice*.  Mr. Folio is not admitted in the District of Columbia; his practice is supervised by members of the firm.

10

Case No. 3:20-cv-4926

PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION