Richard J. Nelson (SBN 141658)
Louis P. Feuchtbaum (SBN 219826)
Artur A. Minasyan (SBN 322248)
**SIDEMAN & BANCROFT LLP**
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111-3711
(415) 392-1960
rnelson@sideman.com
lfeuchtbaum@sideman.com
aminasyan@sideman.com

Aaron M. Panner* (D.C. Bar No. 453608)
Kylie C. Kim* (D.C. Bar No. 230277)
Christopher M. Sarma* (D.C. Bar. No. 1510831)
Alex A. Parkinson* (D.C. Bar No. 166695)
Ryan M. Folio* (New York Bar No. 5823943)
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
kkim@kellogghansen.com
csarma@kellogghansen.com
aparkinson@kellogghansen.com
rfolio@kellogghansen.com

*Attorneys for Plaintiffs and Counterclaim Defendants
Cisco Systems, Inc. and Cisco Technology, Inc.*

* Admitted *pro hac vice*.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>  Plaintiffs and Counterclaim Defendants,<br><br>  v.<br><br>DEXON COMPUTER, INC., a Minnesota Corporation,<br><br>  Defendant and Counterclaim Plaintiff. | Case No. 3:20-cv-4926-CRB<br><br>**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS CISCO SYSTEMS, INC.'S AND CISCO TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT DEXON COMPUTER, INC.'S THIRD AMENDED COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 17, 2022<br>Time:  10:00 a.m.<br>Courtroom:  6<br>Judge:  Honorable Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2022, at 10:00 a.m., or as soon thereafter as this matter can be heard, in Courtroom 6 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, before the Honorable Charles R. Breyer, Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco") will, and hereby do, respectfully move this Court for an order dismissing the third amended counterclaims by Defendant and Counterclaim Plaintiff Dexon Computer, Inc. ("Dexon") in their entirety and with prejudice.  *See* Dkt. 107.

This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities below; the record in this matter; and such other and further papers, evidence, and argument as may be submitted to support this Motion.

DATED: April 27, 2022                    Respectfully Submitted,

                                         By:  */s/ Aaron M. Panner*
                                              Aaron M. Panner

| | |
|---|---|
| Richard J. Nelson (SBN 141658) | Aaron M. Panner* |
| Louis P. Feuchtbaum (SBN 219826) | Kylie C. Kim* |
| Artur A. Minasyan (SBN 322248) | Christopher M. Sarma* |
| **SIDEMAN & BANCROFT LLP** | Alex A. Parkinson* |
| One Embarcadero Center | Ryan M. Folio* |
| Twenty-Second Floor | **KELLOGG, HANSEN, TODD,** |
| San Francisco, CA 94111-3711 | **FIGEL & FREDERICK, P.L.L.C.** |
| (415) 392-1960 | 1615 M Street, NW, Suite 400 |
| rnelson@sideman.com | Washington, D.C. 20036 |
| lfeuchtbaum@sideman.com | (202) 326-7900 |
| aminasyan@sideman.com | apanner@kellogghansen.com |
| | kkim@kellogghansen.com |
| | csarma@kellogghansen.com |
| | aparkinson@kellogghansen.com |
| | rfolio@kellogghansen.com |

*Attorneys for Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc.*

\* Admitted *pro hac vice.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ iii

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

BACKGROUND .................................................................................................................................. 2

LEGAL STANDARD .......................................................................................................................... 4

ARGUMENT ........................................................................................................................................ 4

    I.    DEXON FAILS TO ALLEGE ANY FALSE STATEMENT OF FACT ................. 4

        A.    Cisco's Alleged Representations Related to Licensing Are Not Adequately Alleged To Be False ................................................................. 5

        B.    Cisco Made No False Statement Regarding "Used," "Counterfeit," or "Refurbished" Equipment ......................................................................... 8

        C.    Dexon's "Trade Libel Per Se" Counterclaim Fails for Additional Reasons ........................................................................................................... 9

    II.    DEXON'S FAILURE TO ALLEGE RESULTING HARM ALSO BARS MOST OF ITS COUNTERCLAIMS ................................................................ 10

        A.    Any Harms Dexon Suffered Did Not Result from Cisco's Purported Misrepresentations Regarding Secondary-Market Equipment ................... 10

        B.    Dexon Does Not Allege Any Harm to Three Customer Relationships ....... 11

    III.    DEXON'S DECLARATORY-JUDGMENT COUNTERCLAIM FAILS FOR LACK OF JURISDICTION ........................................................................ 12

CONCLUSION .................................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adobe Sys. Inc. v. Kornrumpf*, 780 F. Supp. 2d 988 (N.D. Cal. Jan. 19, 2011) ............................... 13

*Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086 (N.D. Cal. 2000) .............................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4, 5

*BankAmerica Pension Plan v. McMath*, 2001 WL 263290 (N.D. Cal. Mar. 5, 2001) ....................... 7

*Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377 (1986) ................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 4, 8

*Cisco Sys. Inc. v. Link US, LLC*, 2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) ................................ 7

*Corbello v. DeVito*, 2010 WL 11579262 (D. Nev. Mar. 31, 2010) ................................................... 6

*Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2016 WL 4182402
    (N.D. Cal. Aug. 8, 2016), *aff'd*, 773 F. App'x 623 (Fed. Cir. 2019) ....................................... 9

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................................... 4

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ......................................................... 2, 12

*Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001 (N.D. Cal. 2009) ................. 13

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................................................... 7

*Unisense Fertilitech A/S v. Auxogyn, Inc.*, 896 F. Supp. 2d 822 (N.D. Cal. 2012) ......................... 13

*United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997) ............................................................... 7

*Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010) .................................................................. 6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................................... 4

**STATUTES**

Cal. Civ. Code § 45 ........................................................................................................................... 4

Cal. Civ. Code § 45a ......................................................................................................................... 9

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................................ 9

Fed. R. Civ. P. 9(b) ........................................................................................................................ 4, 9

Fed. R. Civ. P. 12(b)(1) ..................................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1

**OTHER AUTHORITY**

5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004) ................ 8

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether Dexon's third amended counterclaims should be dismissed with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Dexon's third amended counterclaims ("TAC"), like the earlier versions, rely on two sets of supposed misrepresentations that Cisco allegedly made regarding secondary-market products sold by Dexon: first, that Dexon's customers do not automatically obtain a license to use pre-installed software; and, second, that purportedly new Cisco hardware sold by Dexon is "used."

With regard to the licensing-related allegations, Dexon elaborates on its earlier assertions that certain sales of Cisco equipment "constitute[] a 'sale' of both hardware and associated embedded software." TAC ¶ 157; *see id.* ¶¶ 138-161. But legal assertions carry no weight on a motion to dismiss, and Dexon pleads no facts that Cisco sells software to any reseller; that any reseller has title to software that it could convey to any end user; that Dexon in particular has ever obtained title to software; or that Dexon conveyed title to such software to any customer, let alone the specific customers it identifies in the TAC. As this Court held before, Dexon thus pleads only that it was "harmed when Cisco told [Dexon's] customer a true statement (e.g. that the products [Dexon] sell[s] likely have invalid licenses)." Order Granting Mot. To Dismiss Counterclaims at 12 n.3 (Mar. 16, 2022) ("March Order"), Dkt. 106 (internal quotation marks omitted). At a minimum, because "Cisco's 'statement' that the EULA applies to its secondary-market products is deceptive (if at all) only because of the disputed legal consequences of the initial sale," *id.* at 8, such statements are legal opinions and cannot support Dexon's fraud-based counterclaims.

With regard to the latter set of alleged statements, the TAC adds nothing of substance to what Dexon alleged before; the counterclaims based on representations regarding the "used" status of secondary-market equipment therefore fail for the same reasons that the Court dismissed the earlier counterclaims.

The Court also should dismiss Dexon's new declaratory-judgment count for lack of jurisdiction. Dexon does not seek a declaration regarding the parties' rights with respect to any

particular sale or any particular set of circumstances. Dexon therefore does not identify a concrete controversy that this Court can resolve through a "decree of a conclusive character," but instead seeks "an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). Such a claim does not properly invoke this Court's jurisdiction under the Declaratory Judgment Act.

Dexon's third amended counterclaims should be dismissed in their entirety and with prejudice. *See* March Order 13.

## BACKGROUND

1. Dexon's first amended counterclaims asserted claims under federal and state antitrust law, California's Unfair Competition Law, the Declaratory Judgment Act, the Lanham Act, and state common law. *See* Dexon's First Am. Counterclaims ("FAC") (July 29, 2021), Dkt. 50. The Court dismissed these counterclaims without prejudice. *See* Order Granting Mot. To Dismiss Counterclaims (Dec. 9, 2021) ("December Order"), Dkt. 87.

The Court rejected Dexon's argument that, because the first-sale doctrine applies to the software pre-installed on Cisco equipment, Cisco's alleged statements to customers that they need a license to use the software are false. The Court explained that the first-sale "doctrine applies to purchased software, not to purchased software <u>licenses</u>," and that "Dexon alleges no plausible facts suggesting that initial owners of Cisco equipment own (rather than merely license) the embedded software." *Id.* at 12. Likewise, the Court rejected Dexon's allegation that Cisco falsely informs customers that their products are "used," explaining that Dexon had "not pleaded with particularity the 'who, what, or when' regarding Cisco's allegedly misleading definition of 'used,' who was misled, and how specifically the misrepresentation caused Dexon harm." *Id.* at 14; *see also id.* at 12.

2. Dexon's second amended counterclaims asserted claims under the Lanham Act, for intentional interference, and for trade libel, still based on the same basic alleged misrepresentations. Dexon added allegations that customers do not assent to Cisco's licensing practices because Cisco does not give customers adequate notice. *See* Dexon's Second Am.

1  Counterclaims ¶¶ 125, 130 ("SAC") (Jan. 10, 2022), Dkt. 92.  Dexon also added certain details
2  about Cisco's communications with four of Dexon's customers:  Fort Bend Independent School
3  District ("FBISD"), Lockridge Grindal and Nauen ("Lockridge"), Accuray, Inc. ("Accuray"), and
4  Meadowridge Networks, Inc. ("Meadowridge").  *See id.* ¶¶ 146-157.  Dexon alleged that Cisco
5  falsely informed Lockridge that its products were counterfeit.  *See id.* ¶ 153.

6        On March 16, 2022, this Court dismissed these counterclaims.  The Court again rejected
7  Dexon's allegation that Cisco falsely informs customers that they need a license, again holding
8  that statements that Dexon's customers likely have invalid licenses are true, and further holding
9  that, at a minimum, any purported misrepresentations were statements of legal opinion, not false
10 statements of fact.  *See* March Order 8, 12 & n.3.  The Court also held that Dexon did not
11 plausibly allege that Cisco's definition of the word "used" caused Dexon harm.  *Id.* at 8-9.  The
12 Court noted that Dexon failed to allege any harm to its customer relationships with Lockridge,
13 Accuray, and Meadowridge.  *See id.* at 10-11.  Finally, the Court noted the absence of a clear
14 allegation that the products Dexon sold to Lockridge – some of which Cisco allegedly said were
15 counterfeit – were in fact genuine.  *See id.* at 12 n.3.

16     **3.**    In its third amended counterclaims, Dexon re-asserts its counts for Lanham Act
17 false advertising, intentional interference with contractual relations, intentional interference with
18 prospective economic advantage, and trade libel (Counts II-V).  Additionally, Dexon seeks
19 declaratory relief (Count I) and asserts "trade libel per se" (Count VI).  The gravamen of the
20 counterclaims is unchanged:  Dexon still alleges that Cisco interferes with the secondary market
21 by misrepresenting the need for a license and mislabeling secondary-market equipment.

22       Dexon now asserts that Cisco's misrepresentations about licensing "are not merely off the
23 cuff 'opinion' statements by lower level Cisco employees or representatives."  TAC ¶ 127.  And it
24 again asserts that Cisco sells (rather than licenses) its software, purporting to describe "the facts
25 and circumstances surrounding the original transactions."  *Id.* ¶ 134.

26       Finally, Dexon adds allegations about its customers.  According to Dexon, Cisco falsely
27 told FBISD that its products were "refurbished," *id.* ¶ 165, and Cisco's statement that FBISD
28 required a "valid software license" was "especially egregious" because the products at issue "were

3     Case No.  3:20-cv-4926

Cisco phones," which "utilize 'open source' software." *Id.* ¶ 169. Dexon also alleges that Lockridge, Accuray, and Meadowridge sought refunds or replacement products and discontinued business with Dexon because they thought "that the[ir] switches would not work." *Id.* ¶¶ 172, 174, 178.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted), and that rises "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because Dexon's counterclaims sound in fraud, it must also satisfy Rule 9(b)'s heightened pleading standard by alleging, with particularity, "the who, what, when, where, and how of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted), including "what is false or misleading about a statement, and why it is false," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## ARGUMENT

Dexon's third amended counterclaims fail for the exact reasons that this Court dismissed the first and second amended counterclaims: Dexon fails to allege any false or misleading statement that caused it harm. Nor does it allege – with respect to the declaratory-judgment counterclaim – that there is any case or controversy between Cisco and Dexon over enforcement of Cisco's copyrights that could give rise to declaratory-judgment jurisdiction.

### I.  DEXON FAILS TO ALLEGE ANY FALSE STATEMENT OF FACT

This Court has now twice held that the failure to allege with particularity a false statement of fact that caused harm to Dexon is fatal to Dexon's counterclaims under the Lanham Act, for intentional interference, and for trade libel. The same conclusion applies to the third amended counterclaims. Dexon's newly asserted counterclaim for "trade libel per se" fails for the same reason. *See* Cal. Civ. Code § 45 (libel requires a "false and unprivileged publication"). Accordingly, Counts II-VI of the third amended counterclaims should be dismissed with prejudice.

### A. Cisco's Alleged Representations Related to Licensing Are Not Adequately Alleged To Be False

This Court has held that "Cisco makes no misrepresentation [of fact] when it informs secondary-market equipment purchasers that they need a software license." December Order 12; *see also* March Order 8, 12. Dexon alleges nothing to warrant reconsideration of this dispositive holding.

**1.** Dexon still fails to plausibly allege that Cisco made false statements regarding customers' need for a valid license to use Cisco software.

**a.** Dexon's allegations fail first of all because none of the new allegations even purport to relate to the Cisco equipment at issue in its counterclaims: that is, the equipment that Dexon sold to FBISD, Lockridge, Accuray, and Meadowridge. Dexon does not allege from whom it purchased *that* equipment, whether *that* seller ever represented that it was selling not just equipment but also embedded software (or whether it made any contrary representation), what basis, if any, Dexon had for believing that *it* was acquiring title to software on *that* equipment, and so forth.

Dexon alleges that Cisco notifies end users about software licenses on the inside – not the outside – of product packaging and that the notices changed over time. *See* TAC ¶¶ 145-153. But there is no allegation about the notices that *Dexon's* customers actually received. *See id.* ¶¶ 146-154. Dexon is well aware that Cisco's policy is to sell equipment but license software, and it knows the precise circumstances under which it acquired the equipment at issue in the third amended counterclaims. Yet it alleges nothing to support its assertion that it conveyed title to Cisco's software to the four customers at issue here. Accordingly, it alleges no facts to suggest that Cisco's statement to those four customers – that they did not have valid licenses to use Cisco software – was false.

**b.** Furthermore, the allegations Dexon added to the third amended counterclaims do not distinguish these counterclaims from those the Court dismissed in March. Dexon's assertion (TAC ¶¶ 125-127) that Cisco sells its software to end users is a legal conclusion not presumed true on a motion to dismiss. *See Iqbal*, 556 U.S. at 678. And Dexon's supposed allegations of "the

facts and circumstances surrounding the original transactions," TAC ¶ 134, purport to show only that Cisco does not sufficiently notify customers about its licensing practices or obtain their affirmative assent – both things that Dexon already alleged in the second amended counterclaims that the Court dismissed.  *See*, *e.g.*, SAC ¶¶ 125, 130.

The new allegations simply reinforce the conclusion that Dexon fails to plead any misrepresentation.  Dexon does not allege what could (perhaps) matter:  that *it* obtains title to Cisco software when it purchases Cisco equipment.  Dexon does not allege that because it cannot:  it obviously knows that Cisco's policy is to sell hardware and to license software.  Dexon alleges that it purchased one switch from a Cisco authorized reseller; that "the invoice contains absolutely no mention of a separate or independent license agreement governing the switch's embedded software"; and that the statement that "title to software will remain with the applicable licensor(s)" was in "small lowercase print" and did not refer specifically to "embedded software."  TAC ¶¶ 140, 142.  But these allegations do nothing to support the claim that Cisco sells the software installed on its equipment:  Dexon is not an end user – it is a secondary-market reseller – and in any event it does not allege that the authorized reseller that made the sale to Dexon had title to any software pre-installed on the switch or that the reseller ever represented to Dexon that it was conveying such title.  And, again, there is no allegation that the switch in question was sold to FBISD, Lockridge, Accuray, or Meadowridge.

**c.**     Dexon still fails to plausibly plead that *any* of its end users own Cisco's software such that they have no need for a valid license.  "This argument is rather simple:  an owner cannot convey more than he owns."  *Corbello v. DeVito*, 2010 WL 11579262, at *15 (D. Nev. Mar. 31, 2010).  Applied here, Dexon cannot plausibly allege that its customers own Cisco's software unless Dexon first alleges that *it* owns the software.  *See*, *e.g.*, *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1112 (9th Cir. 2010) ("Because [the software reseller] was not an owner, his customers are also not owners[.]"); *Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1092 (N.D. Cal. 2000) (at summary judgment, holding that a copyright defendant's "failure to trace" software licenses "to a sale renders the first sale doctrine inapplicable").

Dexon can make no such allegation because it does not allege that Cisco sells its software

to its authorized resellers (or to any end user) such that they could ever sell that software to Dexon (or otherwise). Wherever Dexon obtains the Cisco equipment that it sells, it cannot plausibly allege that it owns the software, or that its customers do either – and it does not try alleging otherwise. *See Cisco Sys. Inc. v. Link US, LLC*, 2019 WL 6682838, at *8 (N.D. Cal. Dec. 6, 2019) ("when the first sale doctrine's applicability is necessary to a party's claim, that party must plead facts showing that there was a sale rather than a license").

For all these reasons, "Cisco makes no misrepresentation when it informs secondary-market equipment purchasers that they need a software license." December Order 12.

**2.** Dexon's allegation that Cisco misrepresented to FBISD that it required a software license for Cisco phones, which "utilize 'open source' software," TAC ¶ 169, does not allege any false statement. Dexon does not allege that the phones do not also utilize proprietary software. On the contrary, Dexon alleges that the phones require an "independent Cisco service and license to operate." *Id.* There is no plausible allegation that Cisco misrepresented at any time to FBISD the need for a valid license to operate the Cisco phones.

**3.** In any event, as this Court has held, Cisco's alleged statements are legal opinions because they relate to "the disputed legal consequences of the initial sale" of Cisco's equipment. March Order 8. Dexon's assertion that Cisco's misrepresentations "are not merely off the cuff 'opinion' statements by lower level Cisco employees" does not alter that conclusion. TAC ¶ 127. This Court held that the misrepresentations are statements of opinion as a matter of law because their truth or falsity "depends on the resolution of a disputed legal issue" – not because of the manner in which the misrepresentations were made or the identities of the speakers. March Order 8. Because Dexon challenges the same alleged misrepresentations as before, the March Order applies. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also BankAmerica Pension Plan v. McMath*, 2001 WL 263290, at *4 (N.D. Cal. Mar. 5, 2001) (Breyer, J.) ("Under the 'law of the case' doctrine, this Court is precluded from reconsidering . . . issue[s] absent certain conditions[.]") (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

**B.     Cisco Made No False Statement Regarding "Used," "Counterfeit," or "Refurbished" Equipment**

As before, Dexon also fails to allege that Cisco made any false statement regarding the "used," "counterfeit," or "refurbished" status of secondary-market equipment.

**1.**     Dexon alleges generally that Cisco "disrupt[s] secondary market sales" by "advising Dexon's actual and prospective customers that" Dexon sells "used" equipment. TAC ¶ 163. But Dexon does not allege that Cisco used the word "used" in communications with FBISD, Lockridge, Accuray, or Meadowridge. These allegations therefore fail because Dexon does not identify any Dexon customer who relied on the supposedly misleading use of the term "used" in refusing to deal with Dexon.

**2.**     Dexon's counterclaims also confirm the inadequacy of its allegations that Cisco "falsely advised . . . Lockridge that 'six switches' purchased from Dexon were 'counterfeit.' " *Id.* ¶ 170.

In the March Order, this Court noted the absence of a clear allegation that the products Dexon sold to Lockridge were *not* counterfeit, and it instructed Dexon to "remedy this problem." March Order 12 n.3. Dexon has not done so, because it cannot. In the last round of briefing, it conceded it merely "suspects" that Cisco labeled the switches counterfeit because they were traded on the secondary market. Dexon's Opp'n to Cisco's Mot. To Dismiss at 5 n.1 ("Opposition") (Feb. 22, 2022), Dkt. 103. Mere "suspicion" of wrongdoing does not state a claim plausibly, however, let alone with particularity. *Twombly*, 550 U.S. at 555 ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." (alterations in original) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004))).

Dexon adds an allegation that, "[o]n information and belief, only four (4) of the six (6) switches are currently alleged to be counterfeit by Cisco" in its pending lawsuit against Dexon. TAC ¶ 170. This Court already considered Dexon's argument in the last round of briefing. *See* Opposition 5 n.1. And an allegation that Cisco does not allege that two of the switches are counterfeit is *not* tantamount to an allegation that the switches are genuine. In any event, it is

implausible to claim that Dexon was harmed because Cisco incorrectly informed a Dexon customer that all of the switches Dexon sold were counterfeit when, in truth, only two-thirds of the switches were counterfeit. *See* March Order 9 ("To the extent that Dexon's customers cancelled the contract or otherwise changed their behavior, they did so because they learned key facts: Dexon is not an authorized reseller, Dexon's products may lack valid licenses, and customers need to purchase new licenses.").

      **3.**      Finally, Dexon's allegation that a Cisco representative "falsely advised" an FBISD representative that its equipment was "refurbished" is implausible. TAC ¶ 165. As explained below, Dexon's counterclaims about FBISD fail because Dexon does not allege materiality or causation. *See infra* Part II.A. And, especially in context, Dexon's allegations do not plead falsity with the required specificity. Dexon does not plead any facts to show that the equipment was, in reality, new. Its conclusory assertions satisfy neither Rule 8 nor Rule 9(b). *See* December Order 12-13. Finally, again, Dexon does not plead, and cannot plausibly allege, that FBISD relied on the "refurbished" statement when it cancelled its contract. *See* March Order 9.

      **C.**      **Dexon's "Trade Libel Per Se" Counterclaim Fails for Additional Reasons**

Dexon's counterclaim for "trade libel per se" (Count VI) should also be dismissed for the additional reason that none of the misrepresentations are libelous per se. "Libel per se is intended to redress false statements that seriously impugn morals, character or reputation in a way that jumps off the page without the need for further explanation." *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2016 WL 4182402, at *3 (N.D. Cal. Aug. 8, 2016), *aff'd*, 773 F. App'x 623 (Fed. Cir. 2019); *see also* Cal. Civ. Code § 45a ("A libel which is defamatory of the plaintiff without the necessity of explanatory matter . . . is said to be a libel on its face."). The "clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385 (1986).

Cisco's purported misrepresentations do not rise to this level: "in and of themselves," they "have no apparent tendency, under any reasonable interpretation, to impute to [Dexon] 'in connection with the sale of such goods, fraud, dishonesty or questionable business methods' or otherwise to defame [Dexon]." *Id.* at 385-86; *see also id.* (defendant's communications with

9       Case No. 3:20-cv-4926

PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

competitor's customers were not libelous per se, even though they claimed that the competitor's contact-lens solution caused irritation and did not work). Statements that Dexon sells "used" or "refurbished" equipment or fails to convey a license to the equipment implies no wrongful conduct on Dexon's part. A false statement that a party is *knowingly* passing off counterfeit goods as genuine might qualify as libel per se – such conduct could be criminal – but Dexon does not allege that Cisco ever made such a statement about Dexon to anyone (let alone the customers at issue in the third amended counterclaims). This counterclaim should accordingly be dismissed for this reason as well.

## II. DEXON'S FAILURE TO ALLEGE RESULTING HARM ALSO BARS MOST OF ITS COUNTERCLAIMS

The misrepresentation-based counterclaims (except Count VI – "trade libel per se") should also be dismissed because Dexon does not plausibly allege that any of Cisco's misrepresentations caused it harm.

### A. Any Harms Dexon Suffered Did Not Result from Cisco's Purported Misrepresentations Regarding Secondary-Market Equipment

Dexon still does not plausibly allege that any misrepresentations regarding the "used," "counterfeit," or "refurbished" status of secondary-market equipment were material or proximately caused it harm. In the March Order, this Court dismissed Dexon's allegations regarding the word "used" for just this reason:

> To the extent that Dexon's customers cancelled the contract or otherwise changed their behavior, they did so because they learned key facts: Dexon is not an authorized reseller, Dexon's products may lack valid licenses, and customers need to purchase new licenses. Dexon alleges that FBISD cancelled the contract because it "believed the Cisco equipment purchased from Dexon was 'used' <u>and/or that it would lack a necessary license to use such equipment</u>." . . . But the latter explanation is the only plausible one. *Without more*, the Court finds it implausible that FBISD cared about how Cisco conceptualizes "used" equipment on its website. *FBISD simply cared about whether the hardware it bought from Dexon would*

*work.*

March Order 9 (italicized emphases added).

Dexon now tries – and fails – to allege more.[1]  For Lockridge and Meadowridge, Dexon asserts that the customers thought their products "would not work" because they were "counterfeit" and "used," respectively.  TAC ¶¶ 172, 178.  These allegations are conclusory; Dexon pleads no facts to support its self-serving allegations about its customers' thought processes.  Moreover, for all four customers, Dexon fails to plead facts to exclude the alternative explanation – which this Court recognized as "the only plausible one" – for these customers' decisions to eschew business with Dexon:  that Dexon cannot sell Cisco's software or a license to use it.  March Order 9.  Even Dexon recognizes this cause for its customers' dissatisfaction.  *See* TAC ¶¶ 168 (FBISD worried "it would not be able to use such products due to the absence of a 'valid software license' "), 172 (Lockridge), 174 (Accuray).  Thus, Dexon's counterclaims should be dismissed to the extent they rely on allegations about Cisco's use of the words "used," "counterfeit," and "refurbished."

### B.     Dexon Does Not Allege Any Harm to Three Customer Relationships

Dexon still does not plausibly allege any harm to its relationships with Lockridge, Accuray, and Meadowridge.  *See* March Order 10-11 (rejecting Dexon's allegations for this reason).  Dexon added allegations that these customers "demanded a refund," TAC ¶¶ 172, 174, 178, but it does not allege that Dexon issued these refunds.  Dexon further alleges that Meadowridge "was also provided a replacement or substitute product at a reduced priced [sic]," *id.* ¶ 178, but this allegation suggests only that Dexon made an additional sale that it would not have made but-for Cisco's purported misrepresentations.  Finally, Dexon alleges that it lost future business opportunities from these customers, *see id.* ¶¶ 172, 174, 178, but it identifies none in particular.  That is insufficient.  *See* December Order 15 (requiring Dexon to plead an existing economic relationship "with *a probability of future economic benefit*" and to "identify the

---

[1] Dexon does not allege that Cisco used the words "used," "counterfeit," or "refurbished" in communications with Accuray.  *See* TAC ¶¶ 173-174.

particular purchasers who have refrained from dealing with [Dexon], and *specify the transactions of which* [*it*] *claims to have been deprived*") (emphases added).  Thus, Dexon's counterclaims should be dismissed to the extent they rely on allegations about these customers.

### III.  DEXON'S DECLARATORY-JUDGMENT COUNTERCLAIM FAILS FOR LACK OF JURISDICTION

Dexon's declaratory-judgment counterclaim should be dismissed because it fails to allege a concrete controversy between Dexon and Cisco of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.  Jurisdiction over a declaratory-judgment action requires that "the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (brackets and internal quotation marks omitted).  Dexon's claim does not satisfy that standard:  it instead makes a generic argument that, in some ill-defined circumstances, some as-yet unidentified customers ("actual or potential") might have a right to "use and transfer" some unidentified products under the first-sale doctrine.  TAC ¶ 184.  This is insufficient under *MedImmune*.

To be sure, the parties dispute whether (and in what circumstances) the first-sale doctrine applies to software pre-installed on Cisco's products.  Accordingly, it is possible that there could arise a situation in which Cisco would assert that an end user needs a license to use certain software, and Dexon would disagree.  But the counterclaims do not identify any *actual* end users or *actual* circumstances in which Dexon – or even Dexon's customer – seeks to use Cisco's equipment but is prevented from doing so because of a concern that Cisco will bring what Dexon would claim is a meritless lawsuit for copyright infringement.

As to the specific customers Dexon identifies in the third amended counterclaims – FBISD, Lockridge, Accuray, and Meadowridge – Dexon alleges neither that they obtained title to the software installed on the equipment that they purchased nor that there is any live controversy at all with respect to their rights to use the Cisco equipment they allegedly obtained from Dexon.  And Dexon does not identify any specific potential customers, the equipment that they seek to

1  purchase, how Dexon acquired or would propose to acquire it, or the circumstances that would
2  give rise to a transfer of title to any software pre-installed on the as-yet hypothetical equipment.
3  Dexon is thus "asking the Court to issue an advisory opinion based upon an unstated, hypothetical
4  set of facts." *Unisense Fertilitech A/S v. Auxogyn, Inc.*, 896 F. Supp. 2d 822, 830 (N.D. Cal.
5  2012); *see also Adobe Sys. Inc. v. Kornrumpf*, 780 F. Supp. 2d 988, 994-95 (N.D. Cal. Jan. 19,
6  2011) (dismissing secondary-market reseller's request for a declaratory judgment that the first-sale
7  doctrine applies, because it did "not plead any facts to suggest that it owned any of the particular
8  copies of . . . software").

9        Dexon does *not* claim that Cisco has threatened to sue it for selling genuine Cisco products
10 on the ground that such sales infringe any right that Cisco has. *Cf.* December Order 13 (Dexon
11 has no "'real and reasonable apprehension' of liability . . . for selling genuine products.") (citing
12 *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009)).
13 Dexon likewise does not claim that any of its actual end users have a reasonable apprehension of
14 suit. And its counterclaims do not even go so far as to identify the actual circumstances of any
15 pending *potential* sale that would allow the Court to issue a legal "decree of a conclusive
16 character" to resolve an actual dispute. Dexon asks this Court to issue responses to a series of
17 "what if" questions. This is not permissible under the Declaratory Judgment Act or Article III.

## CONCLUSION

19       The Court should dismiss Dexon's third amended counterclaims in their entirety and with
20 prejudice.

| | | |
|---|---|---|
| DATED: April 27, 2022 | | Respectfully submitted, |
| | | By:   /s/ Aaron M. Panner |
| | |         Aaron M. Panner |

| | |
|---|---|
| Richard J. Nelson (SBN 141658) | Aaron M. Panner* |
| Louis P. Feuchtbaum (SBN 219826) | Kylie C. Kim* |
| Artur A. Minasyan (SBN 322248) | Christopher M. Sarma* |
| **SIDEMAN & BANCROFT LLP** | Alex A. Parkinson* |
| One Embarcadero Center | Ryan M. Folio* |
| Twenty-Second Floor | **KELLOGG, HANSEN, TODD,** |
| San Francisco, CA 94111-3711 |    **FIGEL & FREDERICK, P.L.L.C.** |
| (415) 392-1960 | 1615 M Street, NW, Suite 400 |
| rnelson@sideman.com | Washington, D.C. 20036 |
| lfeuchtbaum@sideman.com | (202) 326-7900 |
| aminasyan@sideman.com | apanner@kellogghansen.com |
| | kkim@kellogghansen.com |
| | csarma@kellogghansen.com |
| | aparkinson@kellogghansen.com |
| | rfolio@kellogghansen.com |

*Attorneys for Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc.*

\* Admitted *pro hac vice.*