Amanda R. Washton (SB# 227541)
*a.washton@conklelaw.com*
**CONKLE, KREMER & ENGEL**
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100
Fax: (310) 998-9109

Michael M. Lafeber (*pro hac vice*)
*mlafeber@taftlaw.com*
O. Joseph Balthazor Jr. (*pro hac vice*)
*jbalthazor@taftlaw.com*
**TAFT STETTINIUS &
  HOLLISTER LLP**
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Phone: 612.977.8400
Fax: 612.977.8650

David H. Reichenberg (*pro hac vice*)
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
Direct: (212) 790-4626
Office: (212) 790-4500
Fax: (212) 790-4545
Email: DReichenberg@manatt.com

Attorneys for Defendant, Counterclaim Plaintiff
and Third-Party Plaintiff Dexon Computer, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation,<br><br>        Plaintiffs and Counterclaim<br>        Defendants,<br><br>        v.<br><br>DEXON COMPUTER, INC., a Minnesota corporation,<br><br>        Defendant, Counterclaim<br>        Plaintiff and Third Party<br>        Plaintiff.<br><br>        v.<br><br>AND RELATED CROSS-ACTIONS | Case No. 3:20-CV-4926-CRB<br><br>**DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:    Hon. Charles R. Breyer<br>Date:     June 17, 2022<br>Time:    9:00 a.m.<br>Crtrm.:  6<br><br>Hon. Charles R. Breyer<br>Presiding Judge<br><br>Trial Date:      None |

0640.002\9962

Case No. 3:20-CV-4926-CRB

DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S NOTICE OF MOTION AND
MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE** that on June 17, 2022 at 9:00 a.m., or as soon thereafter as this

3  matter can be heard, in Courtroom 6 on the 17th Floor of the United States District Court for the

4  Northern District of California, San Francisco Division, 450 Golden Gate Avenue, before the

5  honorable Charles R. Breyer, Defendant and Counterclaim Plaintiff Dexon Computer, Inc.

6  ("Dexon") will, and hereby does, respectfully move this Court for and order granting leave to file

7  fourth amended counterclaims against Plaintiffs and Counterclaim Defendants Cisco Systems, Inc.

8  and Cisco Technology, Inc. (together "Cisco").

9      This Motion is based on this Notice of Motion and Motion; the following Memorandum of

10 Points and Authorities below, the supporting Declaration of Michael M. Lafeber; the PROPOSED

11 Fourth Amended Counterclaims; and such other and further papers, evidence, and argument as may

12 be submitted to support this Motion.

13

14  Dated: May 11, 2022                    Respectfully submitted,

15                                          /s/Amanda Washton
                                           _____
16  Michael M. Lafeber                     Amanda Washton
    mlafeber@taftlaw.com                   a.washton@conklelaw.com
17  O. Joseph Balthazor Jr.                **CONKLE, KREMER & ENGEL, PLC**
    jbalthazor@taftlaw.com                 3130 Wilshire Boulevard
18  **TAFT STETTINIUS & HOLLISTER LLP**    Suite 500
    2200 IDS Center                        Santa Monica, CA 90403
19  80 S. 8th St.                          Tel: (310) 998-9100
    Minneapolis, MN 55402
20  Tel: 612.977.8400
    Fax: 612.977.8650
21                                         *Attorneys for Defendant*
                                           Dexon Computer, Inc.
22

23

24

25

26

27

28

# I.

## STATEMENT OF ISSUE PRESENTED AND REQUESTED RELIEF

Defendant and Counterclaim Plaintiff Dexon seeks leave to file its PROPOSED Fourth Amended Counterclaims against Plaintiffs and Counterclaim Defendants Cisco to incorporate newly discovered facts supporting Dexon's claims herein. Namely, Dexon recently discovered Cisco's purported "End User License Agreement" ("EULA") applicable to products sold by Cisco during 2012-2017 contains an "exception" expressly allowing the transfer and use of such Cisco products on the secondary market. As detailed in Dexon's PROPOSED Fourth Amended Counterclaims, Dexon has sold and will continue to sell Cisco products governed by Cisco's purported EULA containing this "exception." Cisco's blanket advertisements and publications directed to secondary market purchasers, including Dexon's customers, fail to delineate between products governed by such "exception" and products governed by Cisco's current purported EULA with the "exception" removed. Accordingly, such blanket advertisements are false, directly contradicted by Cisco's own purported applicable EULA, and provide further support for Dexon's claims herein, including Dexon's declaratory judgment, Lanham Act, tortious interference and trade libel per se claims.

# II.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Newly Discovered 2012-2017 "Exception" Allowing Transfer of Embedded Software

Dexon's current Third Amended Counterclaims ("TAC") challenge Cisco's *undisputed* practice of falsely advertising and publishing to Dexon's customers that their transfer and use of Cisco products is prohibited based upon a purported EULA allegedly covering the products' embedded software. Dexon's TAC details Cisco's selling process and highlights the absence of any proper notice of the purported EULA to, or assent to the purported EULA by, the original purchasers. Accordingly, no valid or enforceable license is created and the original transaction constitutes a "sale"; meaning subsequent downstream transactions are protected by the "first sale doctrine" codified at 17 U.S.C. § 109.

On or about April 19, 2022, Dexon learned for the first time that Cisco's purported EULA governing products sold by Cisco in 2012 included an "exception" expressly allowing the transfer

1  and use of embedded software by secondary market purchasers.  Namely, Dexon's counsel was

2  contacted by a California attorney adverse to Cisco in another matter who disclosed the text of an

3  "exception" alleged to be included in Cisco's 2012 EULA.   The "exception" was alleged to provide:

5  
> Exceptions
> 1. Software Bundled with Hardware: In situations where Products
> combine Hardware and Software and there is no separate Product code or
> License Fee charged for the Software on the applicable Cisco then-current
> published price list at the time of transfer (and therefore a separate License
> Fee for the Software cannot be determined), an exception will be made to
> allow for the transfer without the transferee being required to pay a new
> License Fee.

11  (Declaration of Michael M. Lafeber in Support of Motion For Leave to File Fourth Amended

12  Counterclaims, ¶2) ("Lafeber Dec. ¶__").

13       Dexon contacted Cisco via email on April 21, 2022 to advise of the newly discovered

14  information and Dexon's intent to amend subject to completing its evaluation and investigation.

15  Due to Cisco's practice of "overwriting" its purported online EULA and applicable policies, Dexon

16  had not yet been able to locate the earlier version of any Cisco purported EULA incorporating the

17  apparent "exception."  In the interest of judicial economy, Dexon advised that it would provide a

18  draft of any proposed amendments upon completion.  Dexon also proposed stipulating to extend the

19  April 28, 2022 due date for Cisco's anticipated motion to dismiss Dexon's TAC.  (Lafeber Dec. ¶3).

20       Dexon followed-up on April 25, 2022 and provided Cisco with the promised draft of

21  Dexon's then current PROPOSED Fourth Amended Counterclaims.  Dexon also included a draft or

22  proposed stipulation allowing the amendments and extending the schedule for Cisco's anticipated

23  motion to dismiss Dexon's TAC. (Lafeber Dec. ¶4).

24       Cisco responded that same day and confirmed that Cisco's earlier documents did in fact

25  include an apparent "exception."  According to Cisco,  "[T]he new language that Dexon has cited

26  last appeared in a 2014 document."  Cisco further advised that it was "looking for the documents

27  that would apply for the relevant time period and will share those with you, whatever they might

28  say." (Lafeber Dec. ¶4).

DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S NOTICE OF MOTION AND
MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS

1    In the interest of judicial economy, Dexon responded on April 26, 2022, and again proposed

2    stipulating to extend the due date for Cisco's motion to dismiss Dexon's TAC pending a resolution

3    of Dexon's anticipated amendment.  Dexon explained that the newly discovered "exception" was

4    highly relevant regardless of whether it was last used in 2014.  Namely, Dexon noted that it has sold

5    and will continue to sell Cisco products from as early as 2009 forward – including model years

6    governed by the apparent "exception."  Further, Cisco has published, and continues to publish

7    advertisements and communications advising secondary market consumers that such products are

8    governed by a purported EULA prohibiting the sale and subsequent use of such products on the

9    secondary market. (Lafeber Dec. ¶5).

10    As explained in Dexon's April 26th response, Cisco's published communications fail to

11    distinguish products governed by earlier versions of its purported EULA containing the "exception."

12    Dexon's response reasoned that the proposed stipulation would give the parties an opportunity to

13    further investigate the facts, give Cisco more time to decide whether it was amenable to stipulating

14    to the proposed amendments, and defer Cisco's motion to dismiss Dexon's TAC until the

15    amendment issue was resolved. (Lafeber Dec. ¶5).

16    Cisco's April 27, 2022 response revealed that the "exception" was in effect for a period

17    which included 2012-2017.  Specifically, Cisco explained that the "exception" was included in

18    Cisco's "Software Transfer and Re-licensing Policy" from at least 2012 until some unknown period

19    in 2017. ("No later than 2017, Cisco's Software License Transfer and Re-Use Policy ("Policy") was

20    revised to remove the Fee Exception.")  (Lafeber Dec. ¶6).

21    Cisco also provided full versions of its   2014 "Cisco Software Transfer and Re-Licensing

22    Policy" containing the "exception" and its 2017 "Software License Transfer and Re-Use Policy"

23    with the "exception" removed.  Despite confirming that the "exception" was in effect for a

24    significantly longer relevant period of time, Cisco's response rejected the proposed stipulation

25    allowing the parties an opportunity to resolve any proposed amendments prior to Cisco filing its

26    motion to dismiss. (Lafeber Dec. ¶6).

27    By way of response dated May 2, 2022, Dexon sought clarification as to when the 2017

28    policy removing the "exception" went into effect.  ("Your email indicates that 'No later than 2017,

DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S NOTICE OF MOTION AND
MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS

1  Cisco's Software License Transfer and Re-Use Policy ('Policy') was revised to remove the Fee

2  Exception.'  When does Cisco claim the amended 'Policy' removing the 'Fee Exception' went into

3  effect?")  (Lafeber Dec. ¶7).

4          Cisco's May 6, 2022 response explained that it was presently unable to confirm when the

5  2017 Policy went into effect.  ("The next version of that document I was able to locate is from 2017,

6  and that document does not contain the Fee Exception.  So, the reasonable conclusion is that the Fee

7  Exception had been removed prior to or in 2017.")  (Lafeber Dec. ¶7).

8          In light of Cisco's unwillingness to stipulate, Dexon was forced to bring the present motion.

9  True and correct "redline" and "clean" versions of Dexon's PROPOSED Fourth Amended

10  Counterclaims are provided herewith.  Lafeber Dec., Exhibit B.

11  **B.**     **Liberal Standard for Amendment Met**

12          Granting leave to amend when in the Court's discretion should be "applied with extreme

13  liberality." *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir.2001). In

14  considering whether to grant a party leave to amend, in the absence of any apparent or declared

15  reason – such as undue delay, bad faith dilatory motive on the part of the movant, undue prejudice

16  to the opposing party by virtue of allowance of the amendment, futility of amendment, and repeated

17  failure to cure deficiencies by amendments previously allowed – the leave sought should, as the

18  rules require, be "freely given". *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222

19  (1962).

20          Not all of the factors merit equal weight. As the 9th Circuit has articulated, it is the

21  consideration of prejudice to the opposing party that carries the greatest weight.  *DCD Programs,*

22  *Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir.1987). The party opposing amendment "bears the

23  burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir.1987).

24  Though prejudice may be established by demonstrating that a motion to amend was made after

25  discovery had closed or was about to close (see *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d

26  1080, 1087 (9th Cir.2002)), "the mere prospect of additional discovery is insufficient" to constitute

27  substantial prejudice. *Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2013 WL 5592620, at

28  \*15 (N.D. Cal. Oct. 10, 2013). Moreover, if discovery is not yet underway or if there is no "need to

DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S NOTICE OF MOTION AND
MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS

1   reopen discovery and therefore delay proceedings…" then there is no indication of undue delay or

2   prejudice. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999).

3   Although a party's prior leaves to amend is a consideration in whether a court should grant

4   a party's motion for leave to amend, if the party was not aware "of the factual basis for the

5   amendment prior to a previous amendment," (quoting *Alsabur v. Autozone, Inc.*, No. CV 13-01689-

6   KAW, 2014 WL 1340730, at *5 (N.D. Cal. Apr. 3, 2014)) then such a factor should "not weigh

7   against [the party's] motion for leave." *Harris v. Best Buy Stores, L.P.*, No. 15-CV-00657-HSG,

8   2015 WL 8527332 (N.D. Cal. Dec. 11, 2015).

9   In the present case, Dexon's proposed amendments are based on new recently discovered

10   information.  Such information was previously unavailable to Dexon in part due to Cisco's practice

11   of "overwriting" its online EULA and Software Transfer and Re-Licensing Policies.  In fact, Cisco

12   itself is apparently unable to easily ascertain when its current Software Transfer and Re-Use Policy

13   with the applicable "exception" removed went into effect. (Lafeber Dec. ¶¶3, 7).

14   Upon discovering this new information, Dexon immediately notified Cisco.  In the interest

15   of judicial economy, Dexon proposed extending the due date for Cisco's motion to dismiss Dexon's

16   TAC to allow both parties an opportunity to further investigate and evaluate Cisco's confirmed

17   "exception." Dexon timely brought the present motion after receiving confirmation of the

18   "exception" and its extended 2012-2017 duration.

19   As alleged in Dexon's PROPOSED Fourth Amended Counterclaims, Dexon has sold and

20   continues to sell Cisco products originally sold by Cisco or authorized resellers to the original

21   purchasers or end users during the 2012-2017 and therefore governed by the applicable "exception."

22   (Dexon's PROPOSED Fourth Amended Counterclaims, Lafeber Dec., Ex. B, ¶¶184, 187, 204).

23   Further, Cisco's "published price list" at the time of such original transactions contained no separate

24   "Product code or License Fee" for the embedded software contained within such products.[1]

25   (Dexon's PROPOSED Fourth Amended Counterclaims, Lafeber Dec., Ex. B, ¶163).  As a result,

26

27   _____

28   [1] The absence of any published "license fee" for such embedded software further confirms Dexon's primary argument that the original transaction was a "sale" and no valid software license was created.

1   Cisco's form advertisements and publications advising secondary market purchasers, including

2   Dexon's customers, that they are prohibited from transferring and using such products are false and

3   tortious.

4       Dexon's PROPOSED Fourth Amended Counterclaims provide detailed examples of such

5   false Cisco communications directed to products governed by the 2012-2017 policy "exception,"

6   including products involved in Dexon's original counterclaims.   These include products

7   subsequently sold on the secondary market by Dexon to Accuray, Inc. and Lockridge Grindal.

8   (Dexon's PROPOSED Fourth Amended Counterclaims, Lafeber Dec., Ex. B, ¶¶184, 187)

9       As explained in Dexon's PROPOSED Fourth Amended Counterclaims, Cisco's

10  advertisement and publications fail to delineate products governed by the acknowledged earlier

11  "exception."  (Dexon's PROPOSED Fourth Amended Counterclaims, Lafeber Dec., Ex. B, ¶¶164,

12  169-171).  Worse, Cisco's publications direct consumers to the current online version of their EULA

13  and Software Transfer and Re-Use Policy with the earlier applicable "exception" removed.  While

14  Dexon's primary argument is that Cisco failed to provide proper notice of its alleged EULA or

15  obtain the necessary assent to the purported EULA at the time of the original "sale," it cannot be

16  allowed to unilaterally remove the "exception" and change the terms of its purported EULA *after*

17  the original transaction.  (*Id.*)

18      Cisco has contended the  undisputed 2012-2017 "exception" was "not in effect during the

19  period relevant to Dexon's counterclaims." (April 27, 20020 Feuchtbaum email, Lafeber Dec., Ex.

20  A).  Such contention is presumably based on a misunderstanding that Dexon's has not sold or will

21  not continue to sell products governed by the 2012-2017 "exception."  On the contrary, Dexon's

22  amended counterclaims clarify that Dexon currently has in inventory Cisco products sold by Cisco

23  or Cisco's authorized resellers to the original consumers and end users in 2012-2017.  Moreover,

24  due to the nature of the secondary market, Dexon will continue to receive more such products in

25  inventory.

26      As detailed in Dexon's PROPOSED Fourth Amended Counterclaims, Dexon has previously

27  sold and will continue to sell Cisco products sold by Cisco and/or Cisco's authorized resellers to the

28  original consumers and end users in 2012-2017.  (Lafeber Dec., ¶9); (Dexon's PROPOSED Fourth

1  Amended Counterclaims, Lafeber Dec., Ex. B, ¶¶184, 187, 204).   Moreover, Dexon's original

2  counterclaims involve Cisco products sold by Cisco and/or Cisco's authorized resellers to the

3  original consumers and end users in 2012-2017, including products subsequently sold on the

4  secondary market by Dexon to Accuray, Inc. and Lockridge Grindal. (*Id.*)

5        In addition to the fact that Dexon only recently learned of the "exception" and timely sought

6  the proposed amendments, discovery has not yet commenced in the present case and the proposed

7  amendments will result in no unfair prejudice to Cisco.

8                                    **III.**

9                              **CONCLUSION**

10       Dexon respectfully requests that it be granted leave to file its PROPOSED Fourth Amended

11 Counterclaims incorporating the highly relevant newly discovered facts confirming an "exception"

12 expressly allowing secondary market purchasers of Cisco products, including Dexon's actual and

13 prospective customers at issue herein, to freely transfer and use Cisco's embedded software.

14

15  Dated: May 11, 2022                    Respectfully submitted,

16                                         */s/Amanda Washton*

17  Michael M. Lafeber                     Amanda Washton
    mlafeber@taftlaw.com                   a.washton@conklelaw.com
18  O. Joseph Balthazor Jr.                **CONKLE, KREMER & ENGEL, PLC**
    jbalthazor@taftlaw.com                 3130 Wilshire Boulevard
19  **TAFT STETTINIUS & HOLLISTER LLP**    Suite 500
    2200 IDS Center                        Santa Monica, CA 90403
20  80 S. 8th St.                          Tel: (310) 998-9100
    Minneapolis, MN 55402
21  Tel: 612.977.8400
    Fax: 612.977.8650
22                                         *Attorneys for Defendant*
                                           Dexon Computer, Inc.
23

24

25

26

27

28

DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S NOTICE OF MOTION AND
MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS