Richard J. Nelson (SBN 141658)
Louis P. Feuchtbaum (SBN 219826)
Alexander J. Bukac (SBN 305491)
**SIDEMAN & BANCROFT LLP**
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111-3711
(415) 392-1960
rnelson@sideman.com
lfeuchtbaum@sideman.com
abukac@sideman.com

Aaron M. Panner* (D.C. Bar No. 453608)
Kylie C. Kim* (D.C. Bar No. 230277)
Alex A. Parkinson* (D.C. Bar No. 166695)
Ryan M. Folio* (New York Bar No. 5823943)
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
kkim@kellogghansen.com
aparkinson@kellogghansen.com
rfolio@kellogghansen.com

*Attorneys for Plaintiffs and Counterclaim Defendants
Cisco Systems, Inc. and Cisco Technology, Inc.*

* Admitted *pro hac vice*.

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>DEXON COMPUTER, INC., a Minnesota Corporation,<br><br>Defendant and Counterclaim Plaintiff. | Case No. 3:20-cv-4926-CRB<br><br>**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS CISCO SYSTEMS, INC.'S AND CISCO TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANT AND COUNTERCLAIM PLAINTIFF DEXON COMPUTER, INC.'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COUNTERCLAIMS**<br><br>Date:  June 17, 2022<br>Time:  10:00 a.m.<br>Courtroom:  6<br>Judge:  Honorable Charles R. Breyer |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

STATEMENT OF THE ISSUES TO BE DECIDED ...................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .............................................................. 1

BACKGROUND ................................................................................................................................... 2

LEGAL STANDARD ........................................................................................................................... 5

ARGUMENT .......................................................................................................................................... 6

I.   This Court Should Deny The Motion Because Of Dexon's Undue Delay, Its Repeated Pleading Failures, And Prejudice To Cisco ............................................................. 6

II.  The Court Should Also Deny The Motion Because Amendment Would Be Futile ........... 11

CONCLUSION .................................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alexander v. Franklin Res., Inc.*, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007)..............................10

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990)................................................................6

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) .......................................2, 6, 11

*Cramer v. Dickinson*, 2011 WL 719611 (E.D. Cal. Feb. 22, 2011).....................................................9

*Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432 (9th Cir. 1986) ............8

*Foman v. Davis*, 371 U.S. 178 (1962)..................................................................................................6

*Hernandez v. DMSI Staffing, LLC*, 79 F. Supp. 3d 1054 (N.D. Cal. 2015),
       aff'd, 677 F. App'x 359 (9th Cir. 2017)......................................................................................10

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990)..............................................................6, 9

*Jordan v. Cty. of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982).........................................................1, 6

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994) .....................................................................................9

*Kantrow v. Celebrity Cruises, Inc.*, 533 F. Supp. 3d 1203 (S.D. Fla. 2021).......................................9

*Knudsen v. Sprint Commc'ns Co.*, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) .......................2, 11

*Mir v. Fosburg*, 646 F.2d 342 (9th Cir. 1980) .....................................................................................6

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989).........................................11

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ......................................8

*Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118 (9th Cir. 1988) ........................................................8

*Rosfeld v. Univ. of Pittsburgh – of Commonwealth Sys. of Higher Educ.*,
       2020 WL 4584356 (W.D. Pa. Aug. 10, 2020) .........................................................................9

*Tesla Motors, Inc. Sec. Litig., In re*, 75 F. Supp. 3d 1034 (N.D. Cal. 2014),
       aff'd, 671 F. App'x 670 (9th Cir. 2016)......................................................................................11

*Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240 (N.D. Cal. 2014) ...........................................8

*Weaver v. Mateer & Harbert, P.A.*, 2011 WL 13140720 (M.D. Fla. June 7, 2011).......................1, 9

*Weiss v. Am. Acad. of Ophthalmology, Inc.*, 2021 WL 4776676 (N.D. Cal. Oct. 13, 2021) .............8

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)............................................8

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................................................. 2, 8, 11

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 5, 6

Civil L.R. 3-13 ................................................................................................................................. 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco") hereby submit their Opposition to Defendant and Counterclaim Plaintiff Dexon Computer, Inc.'s ("Dexon") Motion for Leave To File Fourth Amended Counterclaims.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether Dexon's motion for leave to file its fourth amended counterclaims should be denied.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In this Court's Order dismissing Dexon's second amended counterclaims against Cisco, it gave Dexon leave to amend "one last time." Dexon took that opportunity, and Cisco's motion to dismiss Dexon's third amended counterclaims is fully briefed.

Now Dexon seeks to amend a fourth time. This Court should deny Dexon's request – not only because granting leave to amend would "fly in the face of the Court's previous Order," *Weaver v. Mateer & Harbert, P.A.*, 2011 WL 13140720, at *7 (M.D. Fla. June 7, 2011), but also for additional and fully sufficient reasons. To date, Dexon's counterclaims all have alleged that its customers *own* (as opposed to license) Cisco's software, and that Cisco therefore made a misrepresentation when it told Dexon's customers they had to obtain a software license in accordance with Cisco's End User License Agreement ("EULA"). In its fourth amended counterclaims, Dexon alleges for the first time that its customers *license* (as opposed to own) Cisco's software. In support, it cites a provision that allegedly appeared in a 2012 version of Cisco's EULA.

Dexon's delay in asserting this theory is inexcusable and justifies denial of leave. Dexon claims to have been selling Cisco equipment for years, allegedly including equipment to which the relevant provision would apply, so it had every reason – if not a legal obligation – to be familiar with the provision before this litigation began. Moreover, every one of Dexon's previous three rounds of counterclaims before this Court over the last year has focused on Cisco's EULAs. At a minimum, Dexon should have investigated this theory at the outset of this litigation. *See Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir. 1982) ("[T]he

liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party.").

Granting leave to amend would also unduly prejudice Cisco, which has incurred substantial litigation costs in defending against Dexon's three earlier sets of counterclaims. In-house counsel and Cisco personnel have invested substantial time in this matter. Recently, Dexon has further inflated these costs by asserting antitrust claims against Cisco in a new lawsuit in the Eastern District of Texas, even though Dexon previously asserted the same claims (and received an adverse ruling) here. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160-61 (9th Cir. 1989) (affirming denial of leave to amend – even though discovery had not commenced – because the plaintiff had imposed substantial costs on the defendant through its litigation conduct).

Finally, this Court should deny leave because amendment would be futile. Just like Dexon's previous three counterclaims, its fourth amended counterclaims fail to plead with particularity that Cisco made any false statement that harmed Dexon. Dexon's new theory depends upon an allegation, which Dexon states "on information and belief," that text in a 2012 version of Cisco's EULA applied to its sales of Cisco equipment and granted its customers a license to use Cisco's software. But as a matter of law, allegations "made on 'information and belief' . . . are not sufficient for Rule 9(b) pleading[.]" *Knudsen v. Sprint Commc'ns Co.*, 2016 WL 4548924, at *11 (N.D. Cal. Sept. 1, 2016) (Breyer, J.). And, in any event, Dexon does not plausibly plead that it ever obtained a license or that it had any ability to grant one to its customers.

The Court should deny Dexon's motion for leave to amend.

## BACKGROUND

1. Dexon has previously filed three amended counterclaims against Cisco. This Court dismissed the first two and gave Dexon leave to amend "one last time." Order Granting Mot. To Dismiss Counterclaims at 13 (Mar. 16, 2022) ("March Order"), Dkt. 106; *see also* Order Granting Mot. To Dismiss Counterclaims (Dec. 9, 2021) ("December Order"), Dkt. 87. Dexon did so, and Cisco has moved to dismiss Dexon's third amended counterclaims. *See* Dexon's

1  Third Am. Answer, Affirmative Defenses, Counterclaims and Third-Party Claims (Apr. 6, 2022)
2  ("TAC"), Dkt. 107; Cisco's Notice of Mot. and Mot. To Dismiss Dexon's Third Am.
3  Counterclaims (Apr. 27, 2022) ("Cisco Mot."), Dkt. 111.
4  　　　　On April 27, 2022 – the same day Cisco moved to dismiss the third amended
5  counterclaims – Dexon filed an antitrust lawsuit against Cisco in the Eastern District of Texas.
6  *See* Notice of Pendency of Other Action or Proceeding Pursuant to Local Rule 3-13
7  (May 16, 2022) ("Texas Complaint"), Dkt. 118.  The factual allegations that Dexon makes in the
8  Texas Complaint closely resemble those it made in its first amended counterclaims, which this
9  Court dismissed with leave to amend.  *See id.*  Dexon did not notify this Court about the Texas
10 Complaint, as Civil Local Rule 3-13 requires.  Instead, Cisco filed the required notice.  *See id.*
11 　　　　On the same day Dexon filed its opposition to Cisco's motion to dismiss its third
12 amended counterclaims, Dexon moved this Court for leave to file its fourth amended
13 counterclaims.  *See* Dexon's Notice of Mot. and Mot. for Leave To File Fourth Am.
14 Counterclaims (May 11, 2022) ("Dexon Mot."), Dkt. 116.  These counterclaims assert a new
15 legal theory.  To date, all of Dexon's counterclaims have asserted that its customers *own* the
16 software pre-installed on Cisco equipment (as opposed to licensing it), and that Cisco therefore
17 made a misrepresentation when it told Dexon's customers they lacked a software license and had
18 to obtain one in accordance with Cisco's EULA.  *See* TAC at 22 (heading: "Cisco's Improper
19 Intereference [sic] With Secondary Market:  Original Transaction a 'Sale' *not a* '*License*'")
20 (emphasis added).  This Court rejected Dexon's first and second amended counterclaims because
21 Dexon failed to plead with particularity that Cisco *sold* its software to anyone, or that Cisco
22 made any harmful misrepresentation when it told customers they lacked a license.  *See*
23 December Order 12, 14; March Order 7-8.
24 　　　　In its motion for leave, Dexon claims to have "newly discovered facts" suggesting that
25 Dexon's customers *licensed* Cisco software (as opposed to owning it).  Dexon Mot. at 3.
26 According to Dexon's counsel, "[o]n or about April 19, 2022, . . . Dexon's California local
27 counsel was contacted by an attorney adverse to Cisco in another matter who . . . explained that
28 Cisco's 2012 EULA contained an 'exception' which allowed secondary market purchasers to

freely transfer and use Cisco products, including the products' embedded software." Declaration of Michael M. Lafeber in Supp. of Dexon's Mot. for Leave To File Fourth Am. Counterclaims ¶ 2 (May 11, 2022) ("Lafeber Decl."), Dkt. 116-1.

Counsel for Dexon contacted counsel for Cisco two days later, who stated that Cisco would "look[ ] for the documents that would apply for the relevant time period and . . . share those with [Dexon's counsel], whatever they might say." *Id.* ¶ 4. Within a week, Cisco's counsel had "provided full versions" of documents containing the cited provision and confirmed that the provision was in effect from 2012 to 2017. *Id.* ¶ 6.[1]

Dexon requested that Cisco stipulate to the filing of Dexon's fourth amended counterclaims in the interest of "judicial economy," but Cisco declined. Lafeber Decl. Ex. A at 4, 6. Cisco explained that the counterclaims "depend upon an allegation, which [Dexon] states on information and belief, that a 2012 exception to certain licensing fees . . . was applicable during the period from 2019-2021, the period during which all of the relevant conduct in Dexon's [proposed fourth amended counterclaims] is alleged to have occurred" – and that this presumption was "wrong." *Id.* at 2. Dexon disagreed, *see id.* at 1, and sought leave to file its fourth amended counterclaims on May 11, 2022.

2.  The fourth amended counterclaims allege that, from 2012 to 2017, an "exception" in Cisco's "Software License Transfer and Re-licensing Policy" granted Dexon's customers a license to use and transfer the software pre-installed on Cisco's products. Lafeber Decl. Ex. B, Dexon's Proposed Fourth Am. Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ¶ 166 ("FAC"). The relevant provision states:

> Software Bundled with Hardware: In situations where Products combine Hardware and Software and there is no separate Product code or License Fee charged for the Software on the applicable Cisco then-current published price list at the time of transfer (and therefore a separate License Fee for the Software cannot be

---

[1] Counsel for Dexon explained that it "had not yet been able to locate" the documents "[d]ue to Cisco's practice of 'overwriting' its purported online EULA and applicable policies." Lafeber Decl. ¶ 3.

determined), an exception will be made *to allow for the transfer without the transferee being required to pay a new License Fee*. *Id.* (emphasis added); *see* Lafeber Decl. ¶ 2. The provision, by its terms, states that (in certain circumstances) a transferee from a licensee will not be required to pay a new licensing fee. Dexon asserts that the provision applied to certain unspecified products that it sold to Lockridge Grindal and Nauen ("Lockridge") and Accuray Inc. ("Accuray"). In support of that allegation, Dexon offers two further allegations, both only "[o]n information and belief": (1) "Cisco's 'published price list' contained no separate 'Product code or License Fee' for embedded software" from 2012 to 2017, FAC ¶ 167; and (2) the products Dexon sold to Lockridge and Accuray were originally "sold by Cisco or Cisco authorized sellers" when the relevant provision was in effect, *id.* ¶¶ 188, 191.

Dexon now alleges that Cisco misrepresented the effect of this provision. Specifically, Dexon alleges that Cisco's "form advertisements and publications," websites, and "'Brand Protection Team' letters" fail to delineate between products that are, and are not, governed by the relevant provision, and they therefore misinform "secondary market purchasers" that their "use and transfer of embedded software is prohibited." *Id.* ¶¶ 173, 175-176. Dexon also alleges that Cisco misinformed Lockridge and Accuray that they lack software licenses. *See id.* ¶¶ 187, 190.

The fourth amended counterclaims assert the same causes of action as the third – for a declaratory judgment (Count I), Lanham Act False Advertising (Count II), Intentional Interference (Counts III-IV), Trade Libel and Trade Libel Per Se (Counts V-VI). They differ in that Dexon now challenges the above alleged misrepresentations, and it seeks a declaration that the EULA "expressly allows the use and transfer of embedded software by secondary market consumers," *id.* ¶ 211. Dexon says it is entitled to a declaratory judgment, in part, because it "has in inventory Cisco products" to which it believes the relevant provision applies, and it intends to sell them. *Id.* ¶ 208.

**LEGAL STANDARD**

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with . . . the court's leave," and "[t]he court should freely give leave when justice

so requires." Fed. R. Civ. P. 15(a)(2).  But "the liberality in granting leave to amend is subject to several limitations." *Ascon*, 866 F.2d at 1160.  A court may deny leave for "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [or 5] futility of amendment[.]"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Another factor is whether the plaintiff has previously amended.  *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) ("[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims.").

A district court's decision denying leave to amend is reviewed for abuse of discretion. *See Foman*, 371 U.S. at 182.  "Absent a definite and firm conviction that the district court committed a clear error of judgment, [the Ninth Circuit] will not disturb the district court's decision."  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

## ARGUMENT

### I. THIS COURT SHOULD DENY THE MOTION BECAUSE OF DEXON'S UNDUE DELAY, ITS REPEATED PLEADING FAILURES, AND PREJUDICE TO CISCO

*Undue delay.*  Dexon unduly delayed investigating its new theory and, by extension, amending its counterclaims to assert it.  "[T]he liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party."  *Jordan*, 669 F.2d at 1324.  "Where the party seeking amendment knows *or should know* of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied."  *Id.* (emphasis added); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew *or should have known* the facts and theories raised by the amendment in the original pleading.") (emphasis added).

To the extent the EULA provision at issue has any relevance to its counterclaims, Dexon should have known about it at the outset of this litigation.  Dexon claims to have been selling Cisco equipment for years.  FAC ¶ 29 (Dexon admits to selling Cisco products as early as 2010);

*id.* ¶ 119 ("Dexon provides new, refurbished and discontinued hardware products, including authentic or genuine products to its customers from leading manufacturers including . . . Cisco."); *id.* ¶ 120 ("Dexon obtains Cisco products from reliable suppliers, subjects such products to extensive quality control, and then resells such products[.]").  And Dexon specifically alleges that it has "regularly sold" Cisco products to which the relevant provision applies.  *Id.* ¶ 169.  No responsible vendor could sell equipment to a customer without fully understanding potential limitations on the use of the equipment – including any need for software licenses.  There can be no serious excuse for Dexon's failure to be fully informed about any relevant licensing terms years ago – let alone during the many months Dexon was previously given to amend its counterclaims.

In any event, from June 17, 2021 until today, Dexon's counterclaims have consistently alleged that Cisco made a misrepresentation to Dexon's customers when it told them they lacked a software license and had to obtain one in accordance with Cisco's EULA.[2]  To make such an allegation in good faith, Dexon should have, at a minimum, obtained copies of the licensing agreements that its counterclaims put at issue.

Dexon argues that it "had not yet been able to locate" the agreements "[d]ue to Cisco's practice of 'overwriting'" them, Lafeber Decl. ¶ 3, but that is not convincing given that Dexon alleges that it was a secondary-market vendor of Cisco equipment throughout the relevant period and therefore would have had every reason to be familiar with the agreements' terms.  Moreover, Dexon has alleged that Cisco's representations regarding required software licenses caused customers to demand refunds.  *See*, *e.g.*, FAC ¶ 185 (Lockridge "demanded a refund of all amounts paid to Dexon"); *id.* ¶ 188 (same for Accuray).  How is it possible that Dexon failed to verify at that time whether its customers' demands were justified?

---

[2] *See* Dexon's Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ¶¶ 13-22 (June 17, 2021), Dkt. 43; Dexon's Am. Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ¶¶ 99-109 (July 29, 2021), Dkt. 50; Dexon's Second Am. Answer, Affirmative Defenses, Counterclaims and Third-Party Claims ¶¶ 124-132 (Jan. 10, 2022), Dkt. 92; TAC at 22.

Dexon should have investigated the licensing agreements at the core of its counterclaims more than a year and three rounds of briefing ago.  Its failure to do so is inexcusable and supports denying its motion.  *See Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (affirming denial of leave to amend in part because the plaintiff "failed to justify the delay in seeking leave to amend the complaint to assert an entirely new theory of liability which was inconsistent with the original complaint").[3]

***Repeated failures.***  Next, Dexon's motion for leave should be denied because it has repeatedly failed to cure the deficiencies in its counterclaims, leading this Court to advise Dexon that its third amended counterclaims would be its "last."  A district court's discretion to deny leave to amend is particularly broad "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Weiss v. Am. Acad. of Ophthalmology, Inc.*, 2021 WL 4776676, at *10 (N.D. Cal. Oct. 13, 2021) (Breyer, J.) (denying leave to amend because "[t]he Court has twice given [the plaintiff] leave to amend his complaint," and, "[i]n its last order, the Court specified the additional facts [the plaintiff] must plead to state a viable claim[.]").[4]

This Court has dismissed Dexon's counterclaims with leave to amend twice, each time specifying the facts that Dexon would have to plead to state a claim against Cisco.  *See, e.g.*, December Order 12 ("Dexon alleges no plausible facts suggesting that initial owners of Cisco equipment own (rather than merely license) the embedded software."); *id.* at 15 ("in light of Rule 9(b), Dexon's allegations are far too unspecific"); March Order 12 n.3 ("[T]he Court understands almost all of Dexon's allegations to take the form of 'I was harmed when Cisco told my customer

---

[3] *See also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend in part because plaintiff delayed two years); *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) (affirming denial of leave to amend in part because "[t]he factual bases of the claims were known to [the plaintiff] long before").

[4] *See also Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240, 1254 (N.D. Cal. 2014) (Breyer, J.) ("Plaintiff was already granted previous leave to amend, which the Court considers as part of its analysis of the instant motion.").

a true statement' (e.g. that the products I sell likely have invalid licenses) rather than 'I was harmed when Cisco told my customer an incorrect statement' (e.g. that the products I sell are 'counterfeit' when they are not). If it chooses to amend, Dexon should remedy this problem."). But as Cisco explained in its motion to dismiss the third amended counterclaims, Dexon still has added nothing of substance to what it alleged before. *See generally* Cisco Mot.

Independently, this Court's statement that the third amended counterclaims would be Dexon's "last" weighs heavily against amendment. Federal courts routinely enforce their own admonitions that a party will have "one last time" to amend.[5] For example, in *Weaver*, a magistrate judge granted a pro se litigant leave to amend "*one last time*." 2011 WL 13140720, at *1. The litigant moved to amend again, and another magistrate denied the motion, explaining the litigant "received clear notice that the [previous amendment] would be his last . . . , and he should have worked diligently . . . at that time." *Id.* at *7. Likewise, this Court's statement gave Dexon clear notice that the third amended counterclaims would be its last, and Dexon should have worked diligently to pursue its new theory before filing. "Allowing [Dexon] to file a [fourth] amended complaint [now] . . . would fly in the face of the Court's previous Order," and this Court should deny the motion for leave. *Id.*

***Prejudice.*** Finally, Dexon's motion for leave should be denied because another round of briefing on another set of amended counterclaims would be unduly prejudicial to Cisco. "Expense, delay, and wear and tear on individuals and companies count toward prejudice." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). Courts likewise consider "the opportunity costs" that companies incur when their employees have to take time away from "engaging in their normal duties." *Jackson*, 902 F.2d at 1388.

---

[5] *See also, e.g., Cramer v. Dickinson*, 2011 WL 719611, at *1, *5 (E.D. Cal. Feb. 22, 2011) (denying leave to amend in part because court informed plaintiff her previous complaint was her "last"); *Kantrow v. Celebrity Cruises, Inc.*, 533 F. Supp. 3d 1203, 1216 (S.D. Fla. 2021) (denying leave to amend "[b]ecause the Court ha[d] already given Plaintiffs three opportunities to file a complaint that satisfies federal pleading standards and warned them that the Second Amended Complaint would be their final opportunity"); *Rosfeld v. Univ. of Pittsburgh – of Commonwealth Sys. of Higher Educ.*, 2020 WL 4584356, at *6 (W.D. Pa. Aug. 10, 2020) (denying leave to amend because "[t]he Court . . . expressly warned that this would be [Plaintiff's] last chance").

Granting Dexon's motion for leave would prejudice Cisco.  Cisco has incurred substantial litigation costs in defending against three of Dexon's counterclaims.  In-house counsel has also invested substantial time in this matter – for example, by retaining counsel, coordinating meetings between counsel and Cisco employees, and reviewing work product.  That time has come at the expense of engaging in other duties.  Had Dexon diligently investigated the bases for its claims a year ago, the money and time that Cisco spent over the last year and three rounds of briefing could have been reduced.  Dexon's decision to file a new and duplicative antitrust case in the Eastern District of Texas will, of course, require Cisco to spend still more money and time to transfer antitrust claims that Cisco already defended successfully before this Court.

Indeed, the Texas Complaint is hard to square with Dexon's claim to be acting in the interests of "judicial economy."  After this Court dismissed Dexon's antitrust counterclaims with leave to amend, Dexon twice decided not to reassert those counterclaims here and instead filed a new lawsuit asserting the same claims against Cisco in the Eastern District of Texas.  Such "forum shopping" suggests an improper purpose to prolong this litigation no matter the merits of Dexon's counterclaims, *see Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007), and it independently supports denying the motion for leave, *see*, *e.g.*, *Hernandez v. DMSI Staffing, LLC*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015) (denying motion for leave because "the facts suggest that Plaintiff has engaged in forum-shopping" by filing a "state court action to hedge her bet[s]"), *aff'd*, 677 F. App'x 359 (9th Cir. 2017).

Dexon is incorrect to argue that because "discovery has not yet commenced," "the proposed amendments will result in no unfair prejudice to Cisco." Dexon Mot. at 9.  Discovery need not have started for a defendant to suffer prejudice.  For example, in *Ascon*, the Ninth Circuit affirmed denial of leave to amend even though discovery had not yet started, because the plaintiff "ha[d] already been granted leave to amend," had been dismissed twice before and sought to plead a new legal theory, and the defendant "ha[d] already incurred substantial litigation costs," which

plaintiff could have avoided by being "more careful." 866 F.2d at 1160-61. That is exactly the situation here – prejudice to Cisco therefore justifies denying Dexon's motion for leave.[6]

## II. THE COURT SHOULD ALSO DENY THE MOTION BECAUSE AMENDMENT WOULD BE FUTILE

Dexon's motion for leave should also be denied because amendment would be futile, for at least two reasons.

*First*, Dexon does not plead plausibly – let alone with the required particularity – that the relevant provision even applies to products it sold. *See* December Order 6 (holding Rule 9(b) applies to Dexon's counterclaims); March Order 6 (same). Dexon alleges that Lockridge and Accuray bought products to which a licensing agreement containing the relevant provision applies. FAC ¶¶ 167, 188, 191. But it makes those allegations "[o]n information and belief," and it does not plead any facts supporting its belief, even though it sold the products. For example, Dexon does not identify the specific equipment it sold to either customer, the date of manufacture or sale, the software to which the provision supposedly applied, or whether a license to that software could be priced separately from the hardware. As a matter of law, these allegations "made on 'information and belief' . . . are not sufficient for Rule 9(b) pleading because they are not 'accompan[ied] [by] a statement of facts on which the belief is founded.'" *Knudsen*, 2016 WL 4548924, at *11 (brackets in original) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

Rule 9(b) likewise dooms Dexon's allegation that unspecified "form advertisements and publications," websites, and "'Brand Protection Team' letters" fail to delineate between products that are, and are not, governed by the provision. *See* FAC ¶¶ 173, 175-176. Particularity requires "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." December Order 6. Because Dexon

---

[6] *See also In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1047-48 (N.D. Cal. 2014) (Breyer, J.) (denying leave to amend – even though discovery had not yet commenced – because the plaintiff, despite "twice being granted leave to amend," still failed to comply with Rule 9(b)), *aff'd*, 671 F. App'x 670 (9th Cir. 2016).

fails to point to any advertisement, publication, website, or letters in particular, its counterclaims fail.

*Second*, to plausibly allege that Cisco misrepresents to Dexon's customers that they lack a license, Dexon must first allege that *it* in fact transferred a license to its customers. But Dexon does not allege anything about how (or whether) it obtained a license to the relevant software or how (or whether) it transferred a valid license to its cutomers or how (or whether) its customers otherwise obtained such a license. *Cf.* Cisco Mot. 6 ("Dexon cannot plausibly allege that its customers own Cisco's software unless Dexon first alleges that *it* owns the software."). Because Dexon does not adequately allege that its customers actually licensed Cisco's software, it cannot allege that Cisco made any misrepresentation when it informed them that they lacked a license.

## CONCLUSION

The Court should deny Dexon's motion for leave to file fourth amended counterclaims.

DATED:  May 25, 2022               Respectfully submitted,

                                   By:   */s/ Aaron M. Panner*
                                         Aaron M. Panner

| | |
|---|---|
| Richard J. Nelson (SBN 141658) | Aaron M. Panner* |
| Louis P. Feuchtbaum (SBN 219826) | Kylie C. Kim* |
| Alexander J. Bukac (SBN 305491) | Alex A. Parkinson* |
| **SIDEMAN & BANCROFT LLP** | Ryan M. Folio* |
| One Embarcadero Center | **KELLOGG, HANSEN, TODD,** |
| Twenty-Second Floor | **FIGEL & FREDERICK, P.L.L.C.** |
| San Francisco, CA 94111-3711 | 1615 M Street, NW, Suite 400 |
| (415) 392-1960 | Washington, D.C. 20036 |
| rnelson@sideman.com | (202) 326-7900 |
| lfeuchtbaum@sideman.com | apanner@kellogghansen.com |
| abukac@sideman.com | kkim@kellogghansen.com |
| | aparkinson@kellogghansen.com |
| | rfolio@kellogghansen.com |

*Attorneys for Plaintiffs and Counterclaim Defendants Cisco Systems, Inc. and Cisco Technology, Inc.*

* Admitted *pro hac vice.*