RICHARD J. NELSON (State Bar No. 141658)
E-Mail:      rnelson@sideman.com
LOUIS P. FEUCHTBAUM (State Bar No. 219826)
E-Mail:      lfeuchtbaum@sideman.com
ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:      zalinder@sideman.com
LYNDSEY C. HEATON (SBN 262883)
E-Mail:      lheaton@sideman.com
ALEXANDER J. BUKAC (State Bar No. 305491)
E-Mail:      abukac@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:      (415) 392-1960
Facsimile:      (415) 392-0827

Attorneys for Plaintiffs
CISCO SYSTEMS, INC. and
CISCO TECHNOLOGY, INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>DEXON COMPUTER, INC., a Minnesota corporation,<br><br>            Defendant.<br><br>_____<br><br>AND RELATED CROSS-ACTIONS | Case No. 3:20-cv-04926 CRB<br><br>**PLAINTIFFS CISCO SYSTEMS, INC.'S AND CISCO TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; INCORPORATED MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>**PUBLIC REDACTED VERSION**<br><br>Date:          May 26, 2023<br>Time:          10:00 a.m.<br>Judge:          Hon. Charles R. Breyer<br>Location:      Courtroom 6, 17th Floor<br>                      450 Golden Gate Ave.<br>                      San Francisco, CA |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 26, 2023, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Charles R. Breyer, located in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA, Cisco Systems, Inc. ("CSI") and Cisco Technology, Inc. ("CTI") (together, "Cisco") will and hereby do move, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, for the issuance of a preliminary injunction against Defendant Dexon Computer, Inc. ("Dexon") to: (1) enjoin Dexon from continuing to sell counterfeit products bearing Cisco's trademarks, and (2) enjoin Dexon from enabling its sale of counterfeit products ████████████████████████████████████████████████████████████████████████████████████████████

Cisco's motion is made upon this Notice of Motion and Motion, the incorporated Memorandum of Points & Authorities in support thereof, the declarations and exhibits filed herewith, any reply papers filed in further support, the complete files and records of this action, and any further information or argument that may be presented to the Court at or before the hearing on this Motion.

DATED:  April 18, 2023                    SIDEMAN & BANCROFT LLP


                                          By:   _/s/ Richard J. Nelson_
                                                Richard J. Nelson
                                                Attorneys for Plaintiffs
                                                CISCO SYSTEMS, INC. and
                                                CISCO TECHNOLOGY, INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT .............................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES ....................................................................3

I.  INTRODUCTION...................................................................................................3

II.  STATEMENT OF FACTS.........................................................................................4

    A.  Cisco's Business and Marks...............................................................................4

    B.  Dexon's Unlawful Conduct................................................................................4

        1.  Unless Stopped, Dexon Will Continue to Sell Counterfeit Products ............4

        2.  Dexon ███████████████████████████████████ ...........7

        3.  Dexon ██████████████████████ ........................................8

III.  ARGUMENT .....................................................................................................10

    A.  Cisco is Entitled to a Preliminary Injunction .....................................................10

        1.  Cisco is Likely to Prevail on its Lanham Act Claims ...............................11

        2.  Cisco Will Suffer Irreparable Injury Absent Injunctive Relief ...................13

        3.  The Balance of the Hardships Favors Granting Injunctive Relief ..............16

        4.  The Public Interest Favors Granting Injunctive Relief ..............................16

    B.  The Court Should Not Require Any Bond .............................................................17

IV.  CONCLUSION ...................................................................................................17

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adidas America, Inc. v. Skechers USA, Inc.*,
5
   890 F.3d 747 (9th Cir. 2018).............................................................................................. 13

6

*AirWair International Ltd. V. ITX USA LLC*,
   No. 19-cv-07641-SI, 2021 WL 5302922 (N.D. Cal. Nov. 15, 2021).......................... 2, 13, 16
7

*Arc of California v. Douglas*,
8
   757 F.3d 975 (9th Cir. 2014)............................................................................................. 16

9

*BGC Inc. v. Robinson*,
10
   No. 22-cv-01582-JSW, 2022 WL 2915703 (N.D. Cal. July 25, 2022)................................ 15

11

*Brookfield Commc'n v. West Coast Entm't*,
   174 F.3d 1036 (9th Cir. 1999).......................................................................................11, 12
12

*Cadence Design Sys., Inc. v. Avant! Corp.*,
13
   125 F.3d 824 (9th Cir. 1997)............................................................................................. 16

14

*Cisco Systems, Inc. v. Shenzhen Usource Technology Co.*,
15
   No. 5:20-cv-04773-EJD, 2020 WL 4196273 (N.D. Cal. Aug. 17, 2020) .................. 13, 15, 17

16

*Cisco Systems, Inc. v. Wuhan Wolon Comm. Tech. Co., Ltd.*,
   No. 5:21-cv-04272-EJD, 2021 WL 4962661 (N.D. Cal. July 23, 2021) ............................. 12
17

*Coach, Inc. v. Diana Fashion*,
18
   No. 11-2315 SC, 2011 WL 5182332 (N.D. Cal. Dec. 13, 2011) .......................................... 11

19

*eBay, Inc. v. Bidder's Edge, Inc.*,
20
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................................ 16

21

*Merscorp Holdings, Inc. v. Mers, Inc.*,
   No. 16-cv-04380-BLF, 2016 WL 4440252 (N.D. Cal. Aug. 22, 2016)................................ 17
22

*North Atlantic Operating Co. v. Evergreen Distributors, LLC*,
23
   No. 13-cv-4974 (ERK)(VMS), 2013 WL 5603602 (E.D.N.Y. Sept. 27, 2013) ................... 15

24

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F.2d 1132 (9th Cir. 1986)............................................................................................. 16
25

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
26
   240 F.3d 832 (9th Cir. 2001)............................................................................................... 13

27

*Surfvivor Media, Inc. v. Survivor Productions*,
28
   406 F.3d 625 (9th Cir. 2005).............................................................................................. 12

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

*Synopsys, Inc. v. InnoGrit, Corp*,
    No. 19-cv-02082-LHK, 2019 WL 2617091 (N.D. Cal. Jun. 26, 2019) .................................. 10

*Triad Sys. Corp. v. Se. Express Co.*,
    64 F.3d 1330, 1338 (9th Cir. 1995) ........................................................................................ 16

*Ubiquiti Networks, Inc. v. Kozmi USA Corp.*,
    No. C 12-2582 CW, 2012 WL 234670 (N.D. Cal. Jun. 20, 2012) ......................................... 12

*United States Futsal Federation v. USA Futsal LLC*,
    No. 17-cv-04206-LB, 2018 WL 2298868 (N.D. Cal. May 21, 2018).................................... 11

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*,
    766 F.2d 1319 (9th Cir. 1985)................................................................................................ 17

*Vineyard House, LLC v. Constellation Brand U.S. Operations, Inc.*,
    No. 4:19-cv-0124-YGR, 2021 WL 254448 (N.D. Cal. Jan. 26, 2021) .................................. 13

*Warner Bros. Entertainment v. Global Asylum, Inc.*,
    No. cv-12-9547 PSG, 2021 WL 6951315 (C.D. Cal. Dec. 10 2012)..................................... 16

**Statutes**

15 U.S.C. 1125 ................................................................................................................... 11, 13

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## SUMMARY OF ARGUMENT

Dexon produced documents at the end of 2022 and early 2023 ████████████
████████████████████████████ These recently-produced documents also reveal ██████████████████████████
████████████████████████████
████████████████████████
██████████████████████. This has resulted in ██████████
████████████████████████
██████████████. And the new documents show t████████████
████████████████████████████
████████████████████████████████
██████████. Given Dexon's extensive history of counterfeit sales, it is inevitable that ████████
████████████████████████
████████████████████
██████████████████████████
████████████████ Further, the recently-produced documents ████████████
████████████████████████
████████████████████████████ As
Cisco has just become aware of the scope and breadth of this continued, egregious infringing
activity in recent months, it now moves for a preliminary injunction to stop Dexon's continuing
illegal conduct during the pendency of this case so that Dexon does not further harm Cisco and its
customers, consistent with the injunction standard applicable in the Ninth Circuit.

*First*, Cisco is likely to succeed on the merits of its Lanham Act claims because, as the new
evidence shows, Dexon continues to procure and sell counterfeit Cisco products using
unauthorized imitations of Cisco's incontestable registered marks, and misleads and confuses end
customers regarding the origin of the "Cisco" products it sells.

*Second*, Dexon's conduct causes irreparable injury to Cisco.  Cisco is entitled to a
rebuttable presumption of irreparable harm upon a finding that Dexon violated any of its rights

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    under the Lanham Act.  *See AirWair International Ltd. V. ITX USA LLC*, No. 19-cv-07641-SI,

2    2021 WL 5302922, at *2 (N.D. Cal. Nov. 15, 2021) (citing 15 U.S.C. 1116(a)).  Beyond the

3    presumption of irreparable harm, Dexon's unlawful conduct is causing Cisco the quintessential

4    irreparable harm: damage to goodwill and loss of reputation.  Customers who purchase counterfeit

5    "Cisco"-branded products from Dexon have been, and will continue to be, frustrated at Cisco if

6    those counterfeit "Cisco"-branded products do not function as expected.  The harm is exacerbated

7    ████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████

9        *Third*, the balance of hardships tips in Cisco's favor because Dexon's sale of counterfeit

10   "Cisco"-branded products is itself impermissible, as is ██████████████████████████████

11   ████████████████████████████████████████████████████████████████████████

12   ██████████████████████████████████.  Any theoretical hardship to Dexon is self-

13   inflicted, non-cognizable and far outweighed by the irreparable harm to Cisco.

14       *Fourth*, preventing consumer confusion and protecting consumers from counterfeit goods

15   serve the public interest.

16       For these reasons, as described more fully below, Cisco respectfully submits that the Court

17   should issue a preliminary injunction to help stem the tide of irreparable harm to Cisco.

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3      This motion is necessary to stop Dexon's ongoing, rampant trafficking in counterfeit

4  goods, which has continued unabated even after Cisco filed its Complaint in this action.  It is ripe

5  because Dexon has only recently produced documents that establish: (1) ███████████████

6  ███████████████████ (2) i███████████████████

7  ████████████████████████████████████████████

8  ████████████████████████████  and, (3) ███████████████

9  The motion is further timely because ████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████

12      Counterfeit "Cisco"-branded networking products pose a significant issue, as they are used

13 in some of the most sensitive networks in the United States: military installations, financial

14 institutions, hospitals, and federal, state, and local government.  Cisco takes seriously its

15 responsibility to have a strong brand protection program to protect customers (both big and small),

16 and their network infrastructures from counterfeits that come into the United States.  Dexon's

17 counterfeiting trafficking causes irreparable harm to Cisco and its valuable reputation for

18 providing high quality and reliable products.  It also creates an unacceptable risk of harm to

19 Cisco's customers, who believe they are buying genuine Cisco products for critical infrastructure,

20 but instead receive counterfeit "Cisco"-branded products.  Dexon has sold counterfeit "Cisco"-

21 branded products to critical end customers—where the possibility of having a substandard or

22 corrupted firewall, network switch, or other mission-critical unit has extraordinary implications—

23 including hospitals, local government entities (including the City of Eureka and East Bay

24 Municipal Utility District), financial institutions, and universities.  In fact, a counterfeit "Cisco"

25 switch s██████████████████████████████████ It is hard

26 to over-emphasize the seriousness of Dexon's counterfeiting activity.

27      To remedy the ongoing irreparable harm caused by Dexon, Cisco seeks the issuance of a

28 preliminary injunction to: (1) enjoin Dexon from continuing to sell counterfeit products bearing

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Cisco's trademarks, and (2) ████████████████████████████████

2   ███████████████████████████████████████████████████████████████

3   ██████████████████████████████████████   For the reasons discussed above and set

4   forth below, Cisco respectfully requests that the Court grant its motion in full and enter the

5   proposed order filed concurrently with this motion.

6   **II.      STATEMENT OF FACTS**

7       **A.      Cisco's Business and Marks**

8       Cisco was founded in 1984 and is the worldwide leader in networking equipment for

9   information systems.  Declaration of Charles Williams ("Williams Decl.") ¶ 2, filed herewith.

10  Since its founding, Cisco has used the Cisco trademarks continuously and exclusively in

11  connection with networking hardware and has invested heavily in the Cisco brand, which includes

12  the Cisco word mark and the Cisco logo (together, the "CISCO Marks").  *Id.* ¶ 3-5.  Cisco has

13  spent millions of dollars marketing networking hardware products in connection with the CISCO

14  Marks.  *Id.* ¶ 6.  Because of Cisco's longtime use of and investment in the CISCO Marks and the

15  quality of Cisco products, the CISCO brand has built up a tremendous amount of consumer

16  goodwill.  *Id.* ¶¶ 7.

17       **B.      Dexon's Unlawful Conduct**

18          **1.      Unless Stopped, Dexon Will Continue to Sell Counterfeit Products**

19       Dexon is a reseller of hardware and software products that has repeatedly engaged in the

20  purchase and resale of counterfeit "Cisco"-branded products.  Dexon is not a Cisco authorized

21  reseller.  *See* Williams Decl. ¶ 10.  Cisco has confirmed, through extensive analysis of various

22  products obtained from Dexon's customers, that many of the products that Dexon sold and

23  claimed were genuine Cisco products were actually counterfeit "Cisco"-branded products.  *See*

24  Williams Decl. ¶ 13; *see also* First Amended Complaint, ¶¶ 40-63 (Doc. 32).[1]

25

26   ───────────────────

27  [1] Cisco has filed concurrently herewith a Motion for Leave to File a Second Amended Complaint
    in order to address, in part, ████████████████████████████████████████████████

28  ███████████████████████████████████████

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Since the filing of the Complaint, Cisco has learned of additional instances of Dexon

2  selling counterfeit "Cisco"-branded products.  Declaration of Richard J. Nelson ("Nelson Decl.")

3  ¶¶ 5-10, 21-22, 25-27 and 28 filed herewith.  Much of the new information was learned ████

4  ███████████████████████████████████████████████████.[2]  Other counterfeit sales were

5  determined through Cisco subpoenas to Dexon's customers over the past few months, which

6  revealed additional products.

7    The counterfeit "Cisco"-branded products that Dexon distributes, offers for sale, and sells:

8  (1) are confusingly similar to Cisco's own authentic products; (2) bear counterfeit and confusingly

9  similar imitations of the CISCO Marks; (3) are not manufactured by Cisco or any party associated,

10  affiliated, or connected with Cisco or licensed, authorized, sponsored, endorsed, or approved by

11  Cisco in any way; or (4) often consist of products that have been manipulated or altered, including

12  by modifying software to bypass compliance and authentication tests.  Williams Decl. ¶ 14.

13  Cisco's analyses of the products identified "pure counterfeits" as well as counterfeits that were

14  altered by the counterfeiter from how Cisco manufactured the product.  *Id.*  In many cases the

15  label on the product packaging listed a number for an anti-counterfeit label that did not correspond

16  with the product ID or serial number in Cisco's manufacturing databases, but instead was invalid.

17  Williams Decl. ¶ 15.  In other cases, a product's unique Media Access Control (MAC) address, or

18  the serial number for the mother board that is installed in the product, which should have been

19  linked with the corresponding MAC address and serial number in Cisco's databases, instead linked

20  to other products or were entirely invalid.  *Id.*

21    Dexon shows little care in sourcing the "Cisco"-branded products it sells, ████

22  ██████████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████████

24  █████████████████  Nelson Decl. ¶ 3.  ██████████████████████████████

25

26  ───────────────────────
[2] After this Court dismissed Dexon's counter-claim asserting antitrust claims against Cisco [Dkt.

27  87], Dexon refiled those claims in Texas, as described in the Notice of Pendency of Other Action
[Dkt. 118].  The Texas case will be referred to in this motion as the "Texas Litigation."

28



1    <span style="background:black; color:black">████████████████████████████████████</span> *Id*. <span style="background:black; color:black">██████</span>

2    <span style="background:black; color:black">████████████████████████████████████████████████</span>

3    <span style="background:black; color:black">█████████████████████████████████████████</span>

4    <span style="background:black; color:black">██████████████████</span> *Id*. ¶ 4. <span style="background:black; color:black">██████████████████</span>

5    <span style="background:black; color:black">█████████████████████████████████████████</span>

6    <span style="background:black; color:black">████████████████████████████████████████</span>

7    <span style="background:black; color:black">████████████</span>. *Id*.

8        And Dexon's sales of counterfeit "Cisco"-branded product have continued after the filing

9    of the initial Complaint in this matter.  As just a few examples, on August 27, 2020, Dexon sold

10   two counterfeit WS-C9300-24T-E switches to the Regional Justice Information System (REJIS)

11   located in St. Louis, Missouri.  *Id*. ¶ 5.  On December 17, 2021, Dexon sold two Cisco-branded

12   QSFP-40G-LR4 modules in a test buy that Cisco arranged.  *Id*. *¶* 6.  Dexon sold these products for

13   only $595 each, which is a shockingly low price (the list price for these products is $17,737 each).

14   *Id*.  Cisco analyzed the modules and determined they were counterfeit.  *Id*.  And on or about

15   <span style="background:black; color:black">████████████████████████████████████████</span>

16   *Id*. ¶ 7.

17       Another recent example demonstrates how Dexon is continuing to harm its customers and

18   Cisco in a variety of ways, all surrounding the sale of counterfeits.  <span style="background:black; color:black">████████████</span>

19   <span style="background:black; color:black">██████████████████████████████████████████</span>

20   <span style="background:black; color:black">██████████████████████████████████████████</span>

21   <span style="background:black; color:black">████████████████████████████████████</span> *Id*. ¶ 8.

22   <span style="background:black; color:black">███████████████████████████████████████</span>

23   <span style="background:black; color:black">████</span> *Id*. <span style="background:black; color:black">███████████████████████████████</span>

24   <span style="background:black; color:black">█████████████████████████████████</span>

25   <span style="background:black; color:black">████████████████████████</span> *See Id*. ¶ 16.  Approximately <span style="background:black; color:black">████████████</span>

26   contacted Cisco customer support ("TAC"), stating that the switch was in its "core" network and

27   Cisco replaced it immediately based on the SMARTNet contract to ensure the customer's systems

28   would continue to function.  However, Cisco engineers subsequently reviewed console readout

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    information from that device and determined that the switch was, in fact, counterfeit.  *Id.* ¶ 8.

2          When Dexon sells counterfeit Cisco products to customers that fail, ████████████

3    ████████████████████████████████████████████████████████  For

4    example, ██████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████

6    ████████████████████████████████████  *Id.* ¶ 9.  ████████████

7    ██████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████████

10   ██████████████████████  *Id.*  This, with no acknowledgement or

11   concern that the product was counterfeit and, thus, not Cisco's to fix – revealing how Dexon's

12   continued infringing activity harms Cisco's brand and goodwill ████████████████

13   ████████████████  Instead, ████████████████████████████████

14   ████████████████████████████████  *See, e.g., id.* ¶¶ 11-13.

15          **2.     Dexon** ████████████████████████████████████

16   ███████████

17          The documents that Dexon just recently produced demonstrate ████████████

18   ██████████████████████████████████████████████████████████

19   ████████████████████████████████████  *Id.* ¶ 14.  In addition,

20   ██████████████████████████████████████████████████████  *Id.*

21          Another  major  method  ████████████████████████████████

22   ██████████████████████████████████████████████████████████

23   ██████████████████████████████  On  ████████████  for example,

24   ██████████████████████████████████████████████████████████

25   ██████████████████████████  *Id.* ¶ 15.

26          Like  many  manufacturers  of  technical  equipment,  Cisco  sells  optional  enhanced  service

27   contracts, in addition to its hardware and software products.  Williams Decl. ¶ 8.  For good reason,

28   Cisco limits the products that can be put under a SMARTNet contract to (1) Cisco products that are

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

sold through authorized distribution, or (2) Cisco products obtained from a non-Cisco source which are inspected by Cisco to ensure they are genuine. *Id.* ¶ 9.  If a customer purchases a "Cisco" product from a secondary market reseller (like Dexon) and has the products inspected by Cisco (and obtains a license for the accompany software), the products qualify for SMARTNet entitlement. *See Id.* The purpose of this requirement is to ensure that only genuine Cisco products are placed under SMARTNet coverage. *Id.*  Further, Cisco SMARTNet can only be purchased from Cisco authorized resellers and not by secondary market brokers, such as Dexon. *Id.*  Thus, Dexon must work through rogue Cisco Partners in order to purchase SMARTNet for its customers. *Id.*  As a result Cisco has no way of knowing when Dexon is behind SMARTNet sales, unless a customer discloses it. *Id.*  It was not until discovery in the Texas Litigation ███████████████████████████████████ ██████████████████ Nelson Decl. ¶ 16.

Dexon has been aware since at least 2014 that it needs to have Cisco products inspected (and confirmed to be genuine) before a customer can have an enforceable service contract with Cisco. Nelson Decl. ¶ 17.  In fact, on September 21, 2020, counsel for Cisco provided a detailed letter to Dexon's counsel, highlighting that a product needs to be inspected if Dexon wanted to arrange for a SMARTNet contract for it, as was Cisco's well-established and public policy. *Id.* ¶ 18.  Yet, ███ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* ¶ 19.  In fact, ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ and, considering Dexon's history ███████████ ███████████████████████ further discovery is likely to uncover ██████████████████████ ██████████████████████ *Id.* ¶ 20.

**3.    Dexon** █████████████████████████████
█████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  ██████████████ *Id.* ¶ 21. ███████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████ *Id.* (emphasis added). ████████████████████████

9  ████████████████████████████████████████████████████

10 █████████████████████████████████████ *Id.* ███████████

11 ████████████████████████████████████████████ *Id.*

12 In ██████████████████████████████████████████████████

13 ██████████████████████ contacted Cisco to assist them.

14 Cisco examined photographs and determined that they were counterfeit.  *Id.* ¶ 22. ███████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████ *Id.* (emphasis

20 supplied).[3] ████████████████████████████████████████

21 ███████████████████████████████[4]

22      As another example, ████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████ *Id.* ¶ 7. ██████████████████████████████

25  _____

26 [3] █████████████████████████████████████████████████

27 ████████████████████████████████████████ *Id.* ¶ 22.

28 [4] Similar to the other examples cited in this motion, this ██████████████████████████
   ███████ only came to light after Dexon produced documents for the Texas Litigation.



LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ᴺᴰ FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  ████████████████████████████████ then opened a TAC request with

2  Cisco due to the switch not operating.  *Id.*  Cisco analyzed the product as part of trying to solve

3  ████ problem and determined that it was counterfeit.  *Id.*  Cisco informed ████ that the switch

4  was counterfeit, denied the RMA request, and asked for the identity of the vendor that supplied the

5  switch.  *Id.* █████████████████████████████████

6  ██████████ *Id.* ███████████████████████████

7  ████████████ *Id.* ██████████████████████

8  █████████████████

9  Further, in the incident involving ██████████████ described above,



10  █████████████████████████████████

11  ██████████████████████████

12  ███████████ *Id. ¶ 23.* ███████████████

13  █████████████████████████ *Id.* ████

14  ████████████████████████████████

15  ████████████████████████████

16  ████████████████████████████

17  █████████████ *Id.* █████████████████

18  *Id.* ¶ 24.  This is clear evidence that, absent an injunction, Dexon intends to continue its infringing

19  and unlawful conduct, ████████████████████████████ even

20  while this lawsuit is pending.

21  **III.    ARGUMENT**

22      **A.    Cisco is Entitled to a Preliminary Injunction**

23      A plaintiff seeking a preliminary injunction must make a four-fold showing: (1) that it is

24  likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of

25  preliminary relief; (3) that the balance of the equities tips in its favor; and (4) that an injunction is

26  in the public interest.  *Synopsys, Inc. v. InnoGrit, Corp*, No. 19-cv-02082-LHK, 2019 WL

27  2617091, at *2 (N.D. Cal. Jun. 26, 2019) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555

28  U.S. 7, 20 (2008)).

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

As demonstrated below, the Court should issue a preliminary injunction on the basis that: (a) Cisco has established a substantial likelihood of success on the merits of its Lanham Act claims; (b) Cisco is suffering, and will continue to suffer, irreparable harm due to Dexon's unlawful actions, including ongoing harm to Cisco's goodwill and reputation; (c) the balance of hardships weighs in Cisco's favor, as Dexon has no legitimate interest in selling counterfeit "Cisco"-branded products or improperly trading on Cisco's goodwill and reputation; and (d) the public interest weighs in favor of preventing Dexon from continuing its scheme to deceive the public by selling counterfeit "Cisco"-branded products.  Because each of the factors for preliminary injunctive relief tip sharply in Cisco's favor, the Court should grant Cisco's request for such relief.

### 1.    Cisco is Likely to Prevail on its Lanham Act Claims

Among other claims, Cisco has alleged causes of action under the Lanham Act for trademark infringement and counterfeiting, and false designation of origin.  Cisco can prevail on its infringement and counterfeiting claims by showing that "without its consent, [Dexon] used in commerce a reproduction or a copy of [Cisco's] registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers."  *Coach, Inc. v. Diana Fashion*, No. 11-2315 SC, 2011 WL 5182332, at *3 (N.D. Cal. Dec. 13, 2011) (citing *Brookfield Commc'n v. West Coast Entm't*, 174 F.3d 1036, 1046-47 (9th Cir. 1999)).  Cisco will also prevail on its false designation of origin claim under section 1125(a) as the elements of that cause of action "track those of trademark infringement." *United States Futsal Federation v. USA Futsal LLC*, No. 17-cv-04206-LB, 2018 WL 2298868, at *12 (N.D. Cal. May 21, 2018); *see also Brookfield*, 174 F.3d at 1047 n.8 (noting the analysis under sections 1114 and 1125 is "oftentimes identical").

None of these elements is remotely in question.  As described above, Cisco has prior rights to the CISCO Marks, as evidenced by Cisco's long-standing use of the CISCO Marks in connection with the sale of networking hardware and by its ownership of incontestable trademark registrations for the CISCO Marks.  *See* Williams Decl. ¶ 3-7; Ex. A.  Dexon has procured and sold counterfeit Cisco products using unauthorized imitations and counterfeits of the CISCO

1  Marks.  *See* Nelson Decl. ¶¶ 5-11, 21-23, 25-27 and 28.  Cisco's analysis of the "Cisco"-branded

2  products Dexon sold (both before the filing of the Complaint and after) have confirmed that they

3  were counterfeit.  *Id.;* Williams Decl. ¶¶ 13-15.

4  Regarding Cisco's false designation of origin claim, ███████████████████████

5  ███████████████████████████████████████████████████████████████

6  ████████████  *See Id.* ¶¶ 11-15.  ████████████████████████████

7  ████████████████████████ – enhanced service contracts which Dexon ***knows require***

8  ***an inspection by Cisco to confirm they are genuine before such a contract is valid.***  *Id.* ¶¶ 13-20.

9  Dexon's use of the Cisco Marks in this fashion unquestionably signals to prospective customers

10  that they are receiving genuine, Cisco-approved products from Dexon.  But in reality, and as is

11  discussed throughout, many of these products are in fact counterfeit "Cisco"-branded products,

12  which neither originate from Cisco nor are in anyway affiliated, connected, or associated with

13  Cisco.  *See Id.* ¶¶ 5-11, 21-23, 25-27 and 28.

14  Moreover, Dexon's use of the CISCO Marks is likely to cause consumer confusion.  To

15  determine whether confusion is likely, courts in the Ninth Circuit analyze the following factors:

16  (1) strength of the mark; (2) relatedness of the goods; (3) similarity of the marks; (4) actual

17  confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendant's intent; and (8)

18  likelihood of expansion.  *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 631 (9th

19  Cir. 2005) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

20  But "in cases involving counterfeit marks, it is unnecessary to perform this step-by-step

21  examination because counterfeit marks are inherently confusing."  *Cisco Systems, Inc. v. Wuhan*

22  *Wolon Comm. Tech. Co., Ltd.*, No. 5:21-cv-04272-EJD, 2021 WL 4962661, at *6 (N.D. Cal. July

23  23, 2021) (collecting cases); *see also Brookfield*, 174 F.3d at 1056 ("In light of the virtual identity

24  of the marks, if they were used with identical products or services likelihood of confusion would

25  follow as a matter of course.").  That confusion attaches both to Cisco's infringement and false

26  designation of origin claims.  *See, e.g., Ubiquiti Networks, Inc. v. Kozmi USA Corp.*, No. C 12-

27  2582 CW, 2012 WL 234670, at *14 (N.D. Cal. Jun. 20, 2012) (recognizing confusion inherent in

28  counterfeit marks applicable to claims under both section 1114 and 1125).

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

### 2.   Cisco Will Suffer Irreparable Injury Absent Injunctive Relief

"Under the Lanham Act, plaintiff is 'entitled to a rebuttable presumption of irreparable harm upon a finding of a violation' of 'any right of the registrant' of a registered mark or under 15 U.S.C. 1125." *AirWair International Ltd. v. ITX USA LLC*, No. 19-cv-07641-SI, 2021 WL 5302922, at *2 (N.D. Cal. Nov. 15, 2021) (quoting 15 U.S.C. 1116(a)).  As Cisco has established proof of Dexon's Lanham Act violations, the Court should presume irreparable harm.

Presumed harm notwithstanding, "[t]he principle 'that trademark infringement causes irreparable injury and necessitates immediate injunctive relief' is well settled and 'is universally recognized in the courts of [the Ninth] Circuit." *Cisco Systems, Inc. v. Shenzhen Usource Technology Co.*, No. 5:20-cv-04773-EJD, 2020 WL 4196273, at *24 (N.D. Cal. Aug. 17, 2020) (quoting *Steinway & Sons v. Robert Demars & Friends*, No. 80-04404, 1981 WL 40530, at *7 (N.D. Cal. Jan. 28, 1981)).  Accordingly, the "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  Likewise, the "evidence of loss of control over business reputation . . . constitute[s] irreparable harm." *Adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018); *see also Vineyard House, LLC v. Constellation Brand U.S. Operations, Inc.*, No. 4:19-cv-0124-YGR, 2021 WL 254448, at *14 (N.D. Cal. Jan. 26, 2021) ("The loss of control over one's trademarks, reputation, and goodwill is quintessentially irreparable injury.").  Cisco has established both here.

(a)   *Irreparable Harm Related to Sales of Counterfeit Products*

Counterfeit "Cisco"-branded products which fail or degrade create the false impression that Cisco products are unreliable, especially when such counterfeit products are used in critical applications by hospitals, the military, and other organizations with sensitive infrastructure, thereby improperly and irreparably tarnishing Cisco's reputation.  Williams Decl. ¶ 12.  As a result, Cisco suffers substantial and irreparable harm to its brand, image, business and goodwill with the public.  *Id.*  Moreover, there is ample and concrete evidence of a loss of reputational control in that customers who have received counterfeit "Cisco"-branded products from Dexon, which do not undergo the rigorous quality control that genuine Cisco products do, contact Cisco

1   seeking warranty coverage or other assistance when those products fail.  Nelson Decl. ¶ 7,-10, 22,

2   25-28.  These customers unfortunately and wrongly often blame Cisco for the counterfeit products

3   they purchased from Dexon.  See, e.g., id. ¶¶ 25-28.

4        (b)    *Exacerbated Irreparable Harm Related to Accompanying SMARTNet Contracts*

5       The harm to Cisco's reputation and goodwill is amplified ███████████████████████

6   ████████████████████████████████████████████████████████████

7   █████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████████

9   ███████████████████   *See* Nelson Decl. ¶¶ 11-20, 25-28.  These descriptions, which imply

10   Cisco's authorization and approval of the products Dexon sells, are false.  When customers learn

11   that their reliance on those descriptions is unfounded, Cisco suffers.

12       Recent discovery in the Texas action has revealed the extent of such issues.  One customer

13   wondered, for example, how a product could be counterfeit if it was allowed to be placed under

14   SMARTNet.  *See id.* ¶ 25.  ██████████████████████████████████

15   █████████████████████████████████████████████   contacted Cisco's TAC

16   support seeking a solution for a failed WS-C2960X-L switch ████████████████████████

17   ██████████████████████████████████████████████████████████████

18   Cisco reviewed the console readout for the product, determined that the switch was not genuine,

19   and denied the RMA request.  *Id.* ██████   responded, asking "[h]ow was the device allowed to be

20   added to SmartNet (sic) if it is counterfeit."  Cisco explained that "placing a product on

21   support/SmartNet (sic) does not guarantee that a product is genuine," but rather only confirms that

22   the "serial number is a valid serial number."  *Id.* ███████████████████████████████

23   ██████████████████████████████████████████████   *Id.* ¶26.

24       Another longtime Cisco customer threatened to initiate legal action against Cisco if their

25   invalid SMARTNet contract was not honored.  ████████████████████████████████

26   ███████████████████████████████████████████████████████████████████

27   █████████████   sent a request to Cisco to confirm that ████████████   was entitled to "use the

28   contract."  *Id.* ¶ 27.  After Cisco informed ███████████   that the SMARTNet contract would not

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

be valid unless the product was inspected, ████████ expressed extreme frustration stating: "I'm an ISP and this is core hardware. If this hardware were to die while we are having this dispute, and Cisco would fail to honor its contract, <u>I would suffer irreparable harm for which I would hold Cisco responsible for in Court</u>." *Id.* (emphasis supplied).

Prohibiting Dexon from misleading customers about the origin of the products it sells will undoubtedly forestall the irreparable harm Cisco faces. Injunctions routinely issue to halt such conduct. *See, e.g., North Atlantic Operating Co. v. Evergreen Distributors, LLC*, No. 13-cv-4974 (ERK)(VMS), 2013 WL 5603602, at *15 (E.D.N.Y. Sept. 27, 2013) (enjoining "any acts calculated to cause purchasers to believe that counterfeit or infringing products are sold under the control or supervision of [plaintiff], when they are not")[5].

   (b)   *Dexon's Concealed Activity Further Highlights the Irreparable Harm*

The fact that Cisco has only recently learned ████████████████████ ███████████████████████████ only highlights the significant and ongoing irreparable harm here. Without discovery produced recently by Dexon in the Texas Litigation, █████████████████ ██████████████████████████████████████ and unable to stop it. Even since the filing of this Complaint, Dexon has continued to expose Cisco and Cisco's customers to further harm based on sales of counterfeit "Cisco"-branded products and dashed customer expectations that were created by Dexon's ████████████████ ███████████████████ And, Dexon's documents have shown ██████████ ████████████████████, making putting a stop to the harm nearly impossible.

---

[5] *See also Cisco Systems, Inc. v. Shenzhen Usource Technology Co.*, No. 5:20-cv-04773-EJD, 2020 WL 5199434, at *36 (N.D. Cal. Aug. 17, 2020) (injunction prohibiting "a false description or representation including words or other symbols tending to falsely describe or represent such goods" as being genuine"); *BGC Inc. v. Robinson*, No. 22-cv-01582-JSW, 2022 WL 2915703, at *6 (N.D. Cal. July 25, 2022) (injunction prohibiting "using any false designation of origin or false description or statement which can or is likely to lead the trade or public or individuals erroneously to believe that any good or service has been provided, produced, distributed, offered for distribution, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for [Plaintiff], when such is not true in fact").

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Nelson Decl. ¶ 28.  These are harms that cannot be repaired with monetary damages and certainly

2  cannot be addressed ███████████████████████████████.  Further, Cisco

3  has only recently uncovered the magnitude of these irreparable harms, which is why it now moves

4  for injunctive relief to stop them.  *Arc of California v. Douglas*, 757 F.3d 975, 990–91 (9th Cir.

5  2014) (discussing moving for injunctive relief in the context of "ongoing, worsening injuries").

6  They are harms that will continue until Dexon is enjoined.

7  **3.   The Balance of the Hardships Favors Granting Injunctive Relief**

8  Cisco seeks to halt Dexon's: (1) sale of counterfeit "Cisco"-branded products, and (2)

9  facilitation of those sales ███████████████████.  Such injunctive relief is

10  narrowly tailored to address conduct that is unlawful in any event.  It will also prevent the

11  irreparable harm Cisco is suffering as a result of Dexon's continuing unlawful conduct.  Any

12  putative hardship that injunctive relief would theoretically cause Dexon is self-inflicted, non-

13  cognizable or of little weight, and is far outweighed by the immeasurable damage suffered by

14  Cisco.  *See Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded by*

15  *statute on other grounds as recognized by 2Die4Kourt v. Hillair Capital Management, LLC*, 692

16  Fed. Appx. 336 (9th Cir. 2017) ("[A defendant] cannot complain of the harm that will befall it

17  when properly forced to desist from its infringing activities."); *Cadence Design Sys., Inc. v. Avant!*

18  *Corp.*, 125 F.3d 824, 830 (9th Cir. 1997); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058,

19  1069 (N.D. Cal. 2000).

20  As Dexon cannot be cognizably damaged by an injunction requiring it to respect Cisco's

21  intellectual property rights, the balance of hardships weighs entirely in Cisco's favor.  *See Polo*

22  *Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) ("If the defendants

23  sincerely do not intend to infringe, the injunction harms them little; if they do, it gives [Cisco]

24  substantial protection of its trademark.").

25  **4.   The Public Interest Favors Granting Injunctive Relief**

26  "The prevention of confusion, protection of intellectual property rights, and protection of

27  the public from counterfeit goods are in the public interest."  *AirWair International Ltd.*, 2021 WL

28  5302922, at *4; *see also Warner Bros. Entertainment v. Global Asylum, Inc.*, No. cv-12-9547 PSG

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   (CWx), 2021 WL 6951315, at *23 (C.D. Cal. Dec. 10 2012) (quoting *Kos Pharm., Inc. v. Andrx*

2   *Corp.*, 369 F.3d 700, 730 (3d Cir. 2004) ("Where 'there is a likelihood of consumer confusion

3   created by the use of confusingly similar marks, it follows that if such use continues, the public

4   interest would be damaged.").  Dexon's sale of counterfeit products deceives consumers into

5   believing that they are receiving genuine Cisco products when, in fact, they receive counterfeit

6   products which have not been subject to the rigorous quality control that genuine Cisco products

7   undergo.  *See* Williams Decl. ¶ 16.

8         Moreover, as discussed above, Cisco customers, the general public, and the performance of

9   key computer infrastructure in government, military, and other sensitive installations are directly

10  impacted by exposure to counterfeit "Cisco"-branded products, which could fail at critical

11  moments and expose customers' computer systems to countless vulnerabilities.  *See supra,* I.

12  Indeed, as shown above, Dexon's customers have contacted, and continue to contact, Cisco

13  because the counterfeit products – ███████████████████████████████████████████

14  █████████████████████████████ – had failed.

15        Dexon's infringing activities jeopardize critical infrastructure, put the safety of citizens at

16  risk, and sow confusion, distrust, and frustration among Cisco's customers.  Accordingly, the

17  public interest strongly favors injunctive relief here.

**B.      The Court Should Not Require Any Bond**

19        No bond should be required here as a court "may dispense with the filing of a bond when it

20  concludes there is no realistic likelihood of harm to the defendant from enjoining his or her

21  conduct."  *Merscorp Holdings, Inc. v. Mers, Inc.*, No. 16-cv-04380-BLF, 2016 WL 4440252, at *5

22  (N.D. Cal. Aug. 22, 2016).  And, a substantial likelihood of success on the merits "tips in favor of

23  a minimal bond or no bond at all."  *People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional*

24  *Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985); s*ee Cisco Systems, Inc.*, 2020 WL

25  5199434, at *14 (granting TRO without requiring security).

**IV.    CONCLUSION**

27        For the foregoing reasons, Cisco respectfully requests the Court grant Cisco's motion and

28  enter the requested preliminary injunction against Dexon.

1   DATED:  April 18, 2023                    SIDEMAN & BANCROFT LLP

2

3                                             By:     /s/ Richard J. Nelson
                                                    Richard J. Nelson
4                                                   Attorneys for Plaintiffs
                                                    CISCO SYSTEMS, INC. and
5                                                   CISCO TECHNOLOGY, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711