John A. Conkle (SB# 117849)
 j.conkle@conklelaw.com
Amanda R. Washton (SB# 227541)
 a.washton@conklelaw.com
CONKLE, KREMER & ENGEL, PLC
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

Michael M. Lafeber (*pro hac vice*)
 mlafeber@taftlaw.com
David McDaniel (*pro hac vice*)
 dmcdaniel@taftlaw.com
O. Joseph Balthazor Jr. (*pro hac vice*)
 jbalthazor@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Phone: (612) 977-8400 • Fax: (612) 977-8650

Attorneys for Defendant and Third-Party Plaintiff
Dexon Computer, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>DEXON COMPUTER, INC., a Minnesota corporation,<br><br>        Defendant. | Case No. 3:20-CV-4926-CRB<br><br>**DEFENDANT DEXON COMPUTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS IV-VIII AND COUNT IX (¶¶ 202-204) OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:    October 20, 2023<br>Time:    10:00 AM.<br>Dept.:    Zoom |
| AND RELATED CROSS-ACTIONS | Hon. Charles R. Breyer<br>Presiding Judge |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................3

II. ARGUMENT ..............................................................................................................4

    A. COPYRIGHT INFRINGEMENT ..................................................................4

        1. Direct Copyright Infringement ..........................................................4

            (a) Product activation keys ........................................................4

            (b) Software embedded inside Cisco's hardware .......................5

        2. Indirect Copyright Infringement ........................................................6

    B. INDUCEMENT OF BREACH OF CONTRACT ..........................................7

    C. CISCO FAILS TO ALLEGE A PLAUSIBLE DMCA CLAIM ....................7

    D. TRAFFICKING IN COUNTERFEIT OR ILLICIT LABELS ......................9

    E. COMMON LAW FRAUD ...........................................................................10

    F. UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.) .......................................................................................................10

III. CONCLUSION .........................................................................................................10

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Cisco has failed to clearly articulate its copyright infringement claim. Namely, whether such claims are based on Dexon's sale of authentic PAKs, or whether they are based on end users using embedded software in violation of a purportedly applicable license agreement. Either way, such claims fail. Providing access to copyrighted content via an authentic PAK does not, as a matter of law, constitute copyright infringement because it does not violate any of the exclusive rights set forth in the Copyright Act. If instead, Cisco's copyright infringement claim is based on Dexon's downstream secondary market end user customers utilizing embedded software, it too fails. Cisco has failed to plead facts sufficient to plausibly show that Cisco's original transfer of the embedded software constituted a license rather than a sale. While Cisco may invoke the Ninth Circuit's *Vernor* three-part test, the SAC's conclusory pleadings do not plausibly allege *facts* to satisfy it.

For Cisco's DMCA claim, the SAC alleges that Dexon bypassed a "technological measure" under the DMCA by selling authentic PAKs. But the only so-called "technological measure" identified in the SAC are Cisco's alleged agreements with its channel partners that purportedly restrict such partners' sales of authentic PAKs to Dexon. Courts, including in this District, have correctly concluded, based on a thorough examination of the DMCA's legislative history, that using credentials of PAKs as intended does not violate the DMCA.

Cisco has likewise failed to allege plausible facts demonstrating that Dexon affixes counterfeit or illicit labels to Cisco product. Nor could Cisco, as a PAK is not a "label" under Section 2318. And Cisco's claims of inducement to breach contract also fail: 1) for lack of any alleged independent wrongful act by Dexon that caused any purported breach; and 2) for failure to identify a specific contracting party. Lastly, Cisco's common law fraud claim fails to plausibly allege reliance or the required who, what, when, where, and how of the alleged fraud. Dexon's motion to dismiss should be granted in its entirety.

## II. ARGUMENT

### A. COPYRIGHT INFRINGEMENT

#### 1. Direct Copyright Infringement

Even with the benefit of briefing, Cisco's claim of copyright infringement remains unclear. Cisco proclaims that it has properly alleged copyright infringement, but neither the SAC nor Cisco's opposition brief provides the necessary connective tissue between the software protected by copyright and the "licenses" that Dexon allegedly sold to support its claims. Cisco alleges that it owns software that is protected by copyright, SAC ¶ 22, but when alleging the facts surrounding purported copyright infringement, Cisco alleges that Dexon improperly sold authentic PAKs or licenses, *not* software products. SAC ¶¶ 24, 96-103. The SAC does not allege that Dexon copied or distributed an actual software product.

If Cisco bases its copyright infringement claim on Dexon's sale of authentic PAKs, that claim too fails as a matter of law. Alternatively, if Cisco bases a copyright infringement claim on Cisco's end users using the hardware that they lawfully purchased, then the SAC fails to plead facts sufficient to meet the *Vernor* test for the first sale doctrine, barring Cisco's copyright claim.

##### (a) Product activation keys

Cisco's PAKs are not protected by copyright. Because the key itself is not protected by copyright law, and because the key provides access to content, selling a product activation key violates no exclusive right under the Copyright Act. *See Microsoft Corp. v. Softicle.com*, 2017 WL 5517379, at *2 (D.N.J. Sept. 29, 2017) (collecting cases and dismissing direct copyright infringement claim based on selling "product activation keys" for software, explaining that "[p]roviding a link to a website containing infringing material does not, as a matter of law, constitute direct copyright infringement").[1] As a matter of law, providing access to copyrighted material is not an exclusive right under Section 106.

---

[1] Cisco's attempt to distinguish *Tarantinto v. Gawker Media, LLC*, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014), fails. Cisco tries to drum up a difference between publishing hyperlinks for everyone in the world to see *(Gawker)* and selling a product activation key to one person (Dexon). Doc. No. 290 at 14. It identifies distinctions without a difference in *Perfect 10* and *Pearson* as well. *Id.* at 13. Cisco overlooks that in all those cases, the defendant was accused of providing *access* to

### (b) Software embedded inside Cisco's hardware

If Cisco bases its copyright infringement claim on Cisco's end users using hardware that comes with embedded software (i.e., hardware they purchased from Dexon), that claim fails. Cisco does not allege that Dexon makes unlawful copies of the software or unlawfully distributes copies of it. The SAC lacks detail as to how Dexon acquires the software or, more importantly, how the *original* transfer of the software from Cisco constituted a license rather than a sale.

Cisco contends it need not allege any facts to overcome a first sale argument at the pleadings stage because Dexon's reliance on that doctrine is "premature." Doc. No. 290 at 7. Courts in this District have said the opposite: "In order to allege an act of direct infringement that would not fall within the 'first sale' and 'essential step' exceptions to the Copyright Act, [plaintiff] must allege facts supporting the three *Vernor* factors." *See Microsoft Corp. v. A&S Elecs., Inc.*, No. 15-CV-03570-YGR, 2015 WL 8527414, at *4 (N.D. Cal. Dec. 11, 2015) (dismissing direct copyright infringement claim under *Vernor* for failure to allege facts surrounding sale or license); *see also Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1079 (9th Cir. 2015) (discussing burden shifting under first sale analysis, explaining that "a downstream possessor, who may be many times removed from any initial claimed license, is hardly in a position to prove either a negative—the absence of a license—or the unknown—the terms of the multiple transfers of the software.").

Despite arguing that the first sale doctrine analysis is premature, Cisco argues at length that it has established that it licenses software, rather than sells it, in a futile attempt to invoke *Vernor*. But Cisco merely concludes that it licenses, rather than sells, its software, without alleging any *facts* surrounding the original transfer. Cisco fails to appreciate that in *Vernor*, Autodesk alleged that the defendant was selling copies of a specific, identifiable software product: "AutoCAD software." *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1104 (9th Cir. 2010). Autodesk also explained how the original transfer from Autodesk constituted a license. *See id.* ("Autodesk reached a settlement agreement with its customer . . . [CTA], which Autodesk had accused of unauthorized use of its software. As part of the settlement, Autodesk licensed ten copies of Release 14 to CTA. CTA agreed

---

copyrighted material, just like Dexon when it provides a customer with a product activation key. Providing access simply does not violate the copyright act.

to the SLA, which appeared (1) on each Release 14 package that Autodesk provided to CTA; (2) in the settlement agreement; and (3) on-screen, while the software is being installed.").

Unlike the software owner in *Vernor*, Cisco makes *no attempt* to allege *facts* establishing how the original transfer of the software product at issue in this case constituted a license rather than a sale. Cisco merely labels the arrangement as a license. But in the Ninth Circuit, "merely labeling the arrangement as a license rather than a sale is not sufficient." *See Microsoft*, 2015 WL 8527414, at *4 ("Microsoft's argument fails to address the question of whether the parties originally in possession of the software . . . acquired that software as owners or as licensees." (citing *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1179 (9th Cir. 2011))). As in *Microsoft*, Cisco fails to allege facts supporting its conclusory assertion that the original purchase of the hardware constituted a license to the hardware's embedded software rather than a sale of it. In any event, [c]onsumers who purchase a product containing a copy of embedded software have the inherent legal right to use that copy of the software." *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004). Because Cisco does not allege facts surrounding the original transfer of the (still unidentified) Cisco software, it has failed to state a copyright infringement claim based on Dexon's alleged sales of that software.[2]

### 2. Indirect Copyright Infringement

"To establish secondary infringement, [a claimant] must first demonstrate direct infringement" by another. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 937 (9th Cir. 2010). Because it has not plausibly alleged direct infringement, its indirect infringement claim must also fail.

---

[2] Cisco points to this Court's order dismissing Dexon's counterclaims relating to the first sale doctrine in a vain attempt to invoke the law of the case doctrine. But in that order, the Court was analyzing whether Dexon alleged a false advertising claim based on Cisco's statements to Dexon's customers. The Court was not analyzing the allegations in the SAC to determine whether Cisco stated a plausible claim for copyright infringement, and so Cisco's reliance on it is inapposite.

### B. INDUCEMENT OF BREACH OF CONTRACT

Cisco's brief fails to explain how placing a purchase order could plausibly support a tortious claim for inducement of breach of contract. The SAC does not allege any facts as to how Dexon actually *induces* breach of contract by Cisco's channel partners. Nor can it.

The SAC (and Cisco's brief) fails to identify an underlying wrongful act that would support an inducement claim. Cisco does not allege that Dexon misrepresents its authority regarding SMARTNet; rather, the SAC alleges that Dexon is honest and upfront about the channel partner's position. SAC ¶¶ 104-107. To the extent Cisco bases its inducement claims on fraud, the SAC does not meet the heightened pleading standard of Fed. R. Civ. P. 9. For instance, Cisco alleges Dexon "falsely represent[ed]" that "that it was once an Authorized Partner but 'made the choice to break [its] relationship with Cisco.'" (*Id.* ¶¶ 104-105). But Cisco's pleading does not identify with particularity the who, what, when, where, and how the alleged fraud occurred. Nor could it; the SAC alleges that Dexon's employees warn channel partners about risks, but the partners proceed anyway. *Id.* 107.

Cisco also claims that it has identified the specific contract (the "Indirect Channel Partner Agreement") by citing more than 20 paragraphs in the SAC. See Doc. No. 290 at 17 (citing SAC ¶¶ 104-124), but even there, the SAC does not identify any counter-signatories to any specific agreement. Cisco also fails to acknowledge that it has used varying versions of that agreement over time. Cisco's inducement claim fails as a matter of law.

### C. CISCO FAILS TO ALLEGE A PLAUSIBLE DMCA CLAIM

Cisco's opposition fails to explain how it has plausibly alleged a DMCA violation based on Dexon selling authentic PAKs that worked exactly as intended. Cisco cites to several cases where a court found that a plaintiff sufficiently pleaded a DMCA violation because the defendants used a password or product activation key *without authorization*. According to Cisco, what makes access "unauthorized" is that the consumer buys the authentic PAK from a reseller like Dexon, which is not a party to Cisco's indirect channel partnership agreement (a contract). But the indirect channel partnership agreement (or end-user license agreement) is not the "technological measure"—the product activation key system is. The SAC alleges that Dexon sold PAKs that worked as intended.

As the court in *iSpotTv* explained, using credentials as intended does not violate the plain language of the DMCA. *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-cv-06815-MEMF-MARX, 2023 WL 1967958, at *12 (C.D. Cal. Jan. 25, 2023). There, the district court examined the DMCA and studied its legislative history. *Id.* (quoting S. REP. 105-190, 11). Accepting the allegations as true, the court determined that the alleged conduct fell outside the DMCA's plain language. *See id.* ("The allegations in the FAC indicate that, rather than avoiding or bypassing the system, [Defendant] simply used the Horizon credentials as they were intended to be used."). The same is true here.

The district court's sound reasoning in *iSpotTv* (and in *Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. 15-cv-2288 SBA, 2015 WL 13022288, at *2 (N.D. Cal. Aug. 19, 2015)), underscores how the district court in *Synopsys, Inc. v. InnoGrit, Corp.*, 19-CV-02082-LHK, 2019 WL 4848387, at *7-10 (N.D. Cal. Oct. 1, 2019), and its progeny misapplied the DMCA. Cisco improperly treats agreements between private parties as the "technological measure" that is bypassed rather than the license key system (or other technology) itself. The only reason Cisco contends that Dexon is not authorized to sell authentic PAKs is because Dexon is not a party to a Cisco indirect channel partnership agreement. But Cisco's indirect channel partnership agreement is not and cannot be *a technological measure* under the DMCA. The technological measure is the *license key system*, and Cisco does not allege that Dexon circumvents anything but a contract to which Dexon is not a party.

Even if *Synopsys* and its progeny were decided correctly, Cisco ignores the specific allegations in those cases that made the claims plausible on their face. For example, in *Synopsys*, the plaintiff alleged that the defendant "*bypassed the license* key system *by altering* identifying *information on* various license *server computers* in order to *facilitate more concurrent usage of Synopsys software* than permitted under the license." *Synopsys, Inc. v. Libr. Techs., Inc.*, 2022 WL 783898, at *2 (N.D. Cal. Mar. 15, 2022) (emphasis added)); *see also Synopsys*, 2019 WL 4848387, at *9 (denying motion to dismiss where allegations "go far beyond the allegation that [defendant] lacked authorization to use a license key" as alleged defendant "a*ffirmatively manipulated* the

identifying information" of *at least 15 computers* in order to bypass the Host ID restriction and wrongfully run software) (emphasis added)).[3]

The SAC does not plead any plausible facts that Dexon altered the authentic PAKs in any manner or engaged in "any additional actions" identified by the court in *Synopsys*, 2019 WL 4848387, at *9. The only allegations in the SAC relate to Dexon selling authentic PAKs that worked exactly as intended. Because the DMCA does not cover the conduct alleged in the SAC, the court should dismiss the DMCA claim with prejudice.

### D.   TRAFFICKING IN COUNTERFEIT OR ILLICIT LABELS

Cisco's purported trafficking in counterfeit or illicit "labels" claim should also be dismissed. Like its DMCA claim, Cisco stretches a statute far beyond the scope evident from its plain language. Under Section 2318, an "illicit label" means "a genuine certificate, licensing document, registration card, or similar labeling component." 18 U.S.C. § 2318(b)(4). A "counterfeit label" means "an identifying label or container that appears to be genuine, but is not." *Id.* § 2318(b)(1). The SAC alleges that because Dexon sells PAKs without being authorized, the PAK is a counterfeit or illicit label. But the PAK system is a technological measure under the DMCA, not a "genuine certificate, licensing document, registration card, or similar labeling component" or "an identifying label or container." 18 U.S.C. § 2318(b)(1), (4). Because the SAC fails to plead facts establishing that Dexon sold a "label" under section 2318, the court should dismiss the section 2318 claim.

Even if the SAC plausibly alleged that Dexon sold an "illicit label" under section 2318, Cisco's conclusory pleading fails to state a plausible claim under Section 2318. Cisco contends that *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-CV-00561-WHO, 2017 WL 3485881, at *12 (N.D. Cal. Aug. 15, 2017), does not apply because there, the complaint alleged that the defendant made unauthorized copies of the software at issue. Doc. No. 290 at 17. That is no distinction because the SAC *also* does *not* allege that Dexon copied or altered anything. Cisco's allegations do not establish

---

[3] If Cisco wants to recover for "unauthorized" use of its PAKs, it can pursue breach of contract claims against its end-user customers. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004) ("It is not clear whether a consumer who circumvents a technological measure controlling access to a copyrighted work in a manner that enables uses permitted under the Copyright Act but prohibited by contract can be subject to liability under the DMCA.").

that the authentic PAKs were distributed for use apart from their intended software, and for that reason, Cisco has not stated a claim under Section 2318.

### E. COMMON LAW FRAUD

Dexon has shown that Cisco's allegations of fraud relating to customers contacting Cisco fail to plead reliance *by Cisco*. Yet Cisco tries to reframe its fraud claim in its opposition, focusing solely on allegations that Dexon employees used a personal email address to contact Cisco. Yet the SAC includes a lone allegation of an unidentified Dexon employee using a personal email address, but at the same time, it alleges that Cisco did *not* rely on the alleged "fraud" and did *not* replace the product at issue. (SAC ¶ 184, viii). Without reliance, there is no plausible fraud.

### F. UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code §§ 17200 et seq.)

Cisco's California UCL claims fail for the same reasons as the inducement and fraud claims.

## III. CONCLUSION

For all of the reasons stated above, Dexon requests that its motion to dismiss be granted in its entirety.

Dated: September 26, 2023
CONKLE, KREMER & ENGEL, PLC

By: */s/ Amanda R. Washton*
John A. Conkle
Amanda R. Washton

Michael M. Lafeber *(pro hac vice)*
David McDaniel *(pro hac vice)*
O. Joseph Balthazor Jr. *(pro hac vice)*
TAFT STETTINIUS & HOLLISTER LLP

Attorneys for Defendant and Third-Party Plaintiff Dexon Computer, Inc.