RICHARD J. NELSON (State Bar No. 141658)
E-Mail: *rnelson@sideman.com*
LOUIS P. FEUCHTBAUM (State Bar No. 219826)
E-Mail: *lfeuchtbaum@sideman.com*
ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail: *zalinder@sideman.com*
LYNDSEY C. HEATON (SBN 262883)
E-Mail: *lheaton@sideman.com*
ALEXANDER J. BUKAC (State Bar No. 305491)
E-Mail: *abukac@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for Plaintiffs and Cross-Defendants
CISCO SYSTEMS, INC. and
CISCO TECHNOLOGY, INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CISCO SYSTEMS, INC., a Delaware corporation, and CISCO TECHNOLOGY, INC., a California corporation,

Plaintiffs,

v.

DEXON COMPUTER, INC., a Minnesota corporation,

Defendant.

AND RELATED CROSS-ACTIONS

Case No. 3:20-cv-04926 CRB

**PLAINTIFFS CISCO SYSTEMS, INC. AND CISCO TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANT DEXON COMPUTER, INC.'S MOTION TO STAY INJUNCTION PENDING APPEAL**

Date: December 1, 2023
Time: 10:00 a.m.
Ctrm.: Zoom

Honorable Charles R. Breyer

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. ARGUMENT ..... 2

A. THIS COURT LACKS JURISDICTION TO STAY THE PRELIMINARY INJUNCTION ..... 2

B. DEXON CANNOT MEET THE STANDARDS FOR GRANTING A STAY ..... 3

1. DEXON CANNOT SHOW A LIKELIHOOD OF IRREPARABLE HARM ..... 4

2. DEXON CANNOT SHOW IT IS LIKELY TO SUCEED ON THE MERITS ..... 8

a. The Court Applied the Correct Standard In Granting the Preliminary Injunction ..... 8

b. The Injunction Order Complies With Rule 65 ..... 10

C. CISCO WILL BE IRREPARABLY HARMED IF THE INJUNCTION IS STAYED ..... 12

D. THE PUBLIC INTEREST FAVORS MAINTAINING THE INJUNCTION ..... 13

III. CONCLUSION ..... 14

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajilon Pro. Staffing, LLC v. Griffin*, No. CV–09–561–PHX–DGC, 2009 WL 1507559 (D. Ariz. May 29, 2009) ........ 6, 7

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) ........ 4

*Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ........ 9

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 890126 (N.D. Cal. Jan. 23, 2013) ........ 11

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ........ 5

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 2021-1839, 2022 WL 1530491 (Fed. Cir. May 16, 2022) ........ 10, 11

*Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, No. CIV. 2:10-2751, 2011 WL 4594910 (E.D. Cal. Feb. 23, 2011) ........ 13

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ........ 12

*CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051 (E.D. Cal.), aff'd, 348 F. App'x 288 (9th Cir. 2009) ........ 4

*Davis v. City and County of San Francisco*, 890 F.2d 143, 1450 (9th Cir. 1989) ........ 11

*Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145 (9th Cir. 2011) ........ 12

*DocRx, Inc. v. DocRx Dispense, Inc.*, No. CV-14-00815-PHX-PGR, 2015 WL 1778360 (D. Ariz. Apr. 20, 2015) ........ 9

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ........ 4

*Doe #1 v. Trump*, 957 F.3d at 1058–59 ........ 4

*Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022) ........ 9

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

*Fed. Trade Comm'n v. Noland*,
No. CV-20-00047-PHX-DWL, 2021 WL 2439288 (D. Ariz. June 15, 2021) .......... 3

*Husky Ventures, Inc. v. B55 Invs., Ltd.*,
911 F.3d 1000 (10th Cir. 2018) .......... 6, 7

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .......... 1

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980) .......... 5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .......... 9

*Master Tax LLC v. Ultimate Software Grp., Inc.*,
770 F. App'x 386 (9th Cir. 2019) .......... 9

*Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*,
308 F. Supp. 2d 1208 (W.D. Wash. 2003), aff'd, 372 F.3d 1330 (Fed. Cir. 2004) .......... 13

*Newmark Realty Cap., Inc. v. BGC Partners, Inc.*,
No. 16-CV-01702-BLF, 2017 WL 8314663 (N.D. Cal. Dec. 18, 2017) .......... 5

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 3, 4, 8

*Overstreet v. Apex Linen Serv., Inc.*,
No. 217CV02923APGCWH, 2018 WL 2245145 (D. Nev. Apr. 19, 2018) .......... 2

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
204 F.3d 867 (9th Cir. 2000) .......... 1, 2, 3

*Reno Air Racing Ass'n, Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006) .......... 11

*Robinson v. Best Price Distributors*,
LLC, No. 2:21-CV-06689-RGK-JC, 2022 WL 3013131 (C.D. Cal. June 14, 2022) .......... 9

*Rocky Mountain Farmers Union v. Goldstene*,
No. CV-F-09-2234 LJO DLB, 2012 WL 217653 (E.D. Cal. Jan. 23, 2012) .......... 2

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983) .......... 3

*Russell Rd. Food & Beverage, LLC v. Galam*,
No. 2:13-CV-776 JCM NJK, 2013 WL 2949615 (D. Nev. June 13, 2013) .......... 3

*Stanley v. Univ. of S. California*,
13 F.3d 1313 (9th Cir. 1994) .......... 9

*Theorem, Inc. v. Citrusbyte, LLC*,
No. CV 21-4660-GW-AGRX, 2022 WL 1314041 (C.D. Cal. Jan. 18, 2022) .......... 4, 6, 13

**Statutes**

Federal Rule of Civil Procedure 62(c) .......... 2

Federal Rule of Civil Procedure Rule 65 .......... 10, 11, 12

Federal Rule of Civil Procedure Rule 65(d) .......... 11

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Plaintiffs and Cross-Defendants CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC. (collectively, "Cisco") hereby submit their Opposition to Dexon Computer, Inc.'s ("Dexon") motion for a stay pending appeal of the Order Granting Preliminary Injunction, dated October 3, 2023 ("the Order").

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In its Motion to Stay the Preliminary Injunction Pending Appeal ("Motion"), Dexon ignores and misstates the law, rehashes arguments that were dismissed in the briefing on the injunction, and makes spurious and unsupported claims of "harm" to justify a stay. Dexon's motion should be denied.

*First*, the Court should deny the motion because, under settled Ninth Circuit law, the appeal of the preliminary injunction divested this Court of jurisdiction disturb the injunctive status quo. *See, e.g*, *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000). The status quo is that which existed when the notice of appeal was filed – i.e., after the injunction was in place. *Id*.

*Second*, irreparable harm is a threshold issue and Dexon's failure to show the probability of irreparable harm to it absent a stay is a further, singular basis to deny relief. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011).

*Third*, Dexon's repetition of arguments this Court has already heard and rejected demonstrate Dexon that has nothing new to offer and that it will not prevail on its appeal. This Court acted well within its discretion, applied the proper standard, and issued a clear and narrow ruling – to allow a stay here would merely further Dexon's goals to delay imposition of the fully-warranted injunction while its baseless appeal is decided.

*Fourth*, Dexon does not refute the Court's finding of irreparable harm to Cisco in the absence of an injunction, leaving this factor squarely in Cisco's favor.

And, *lastly*, the public's interests are served by maintaining the injunction, because it mitigates the damage and confusion customers will otherwise face when Dexon sells them counterfeit "Cisco"-branded products.

For these reasons and as discussed further below, Cisco respectfully requests that this

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Court deny Dexon's request for a stay of the Order Granting Preliminary Injunction.

## II. ARGUMENT

### A. THIS COURT LACKS JURISDICTION TO STAY THE PRELIMINARY INJUNCTION

As a threshold matter, Dexon's motion must fail because this Court does not have jurisdiction to alter the injunctive status quo while the appeal is pending. While Federal Rule of Civil Procedure 62(c) gives district courts authority to "suspend, modify, restore, or grant" an injunction during an appeal, the Ninth Circuit has interpreted that Rule to allow alterations to an injunction only to preserve the existing state of affairs at the time the injunction was entered. See *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) (holding a district court lacked jurisdiction to vacate a prohibitory injunction while an appeal of that injunction was pending and vacating an injunction does not preserve the status quo in which the injunction was in effect).

In a case similar to this, *Rocky Mountain Farmers Union v. Goldstene*, No. CV-F-09-2234 LJO DLB, 2012 WL 217653, at *1–2 (E.D. Cal. Jan. 23, 2012), the District Court applied *Prudential* and explained: "this Court lacks jurisdiction to grant defendants' motion to stay the injunction and judgments pending appeal."

In that case, like this one, the defendants request "to suspend the preliminary injunction [was] based on defendants' arguments that they are likely to succeed on the merits of their claims on appeal and that they—and not plaintiffs—will experience irreparable harm pending appeal if the preliminary injunction is not stayed." Also like this case, "Defendants' arguments [were] based on issues that this Court resolved in its orders, and are the issues that are currently pending appeal." *Id.* "Thus, Defendants' motion improperly seeks to re-litigate issues this Court resolved in its order granting the preliminary injunction and orders on the summary judgment motions" which means "Defendants' motion, if granted, would alter the status of the appeal, as it would require this Court to reconsider and reverse the core issues of the appeal. This Court lacks jurisdiction to grant this relief." *Id.* (citations omitted); *see also Overstreet v. Apex Linen Serv., Inc.*, No. 217CV02923APGCWH, 2018 WL 2245145, at *1 (D. Nev. Apr. 19, 2018) ("Here, the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

entirety of the case in this court is Overstreet's application for a [mandatory] injunction. Consequently, a stay of that injunction, even in part, would constitute finally adjudicating the parties' rights directly involved in the appeal, would materially change the status of the case on appeal, and would alter the status quo. I therefore conclude I lack jurisdiction to alter the injunction previously entered, so I will not stay the injunction's requirement that Apex reinstate the three terminated employees"); *Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 2439288, at *2 (D. Ariz. June 15, 2021) ("Clearly, dissolution of the preliminary injunction would alter the status quo and therefore go beyond what is permitted by [the federal rules]").

Here, vacating the injunction as requested by Dexon would alter the status quo by adjudicating the precise issue on appeal. The status quo pending appeal is that Dexon is preliminarily enjoined from selling counterfeit "Cisco"-branded products. To decide Dexon's motion, the Court would need to decide whether the injunction it granted should have been granted. But once Dexon filed its appeal, that issue fell within the exclusive jurisdiction of the Ninth Circuit. "Accordingly, this court cannot address the merits of [Dexon's] motion." *Russell Rd. Food & Beverage, LLC v. Galam*, No. 2:13-CV-776 JCM NJK, 2013 WL 2949615, at *2–3 (D. Nev. June 13, 2013). It is not surprising, then, that none of the cases Dexon cites are *district court* cases granting a stay of a prohibitory injunction pending appeal, because that is what the Ninth Circuit's decision in *Prudential* prohibits.

Because this Court lacks jurisdiction to grant defendants' motion to stay, Dexon's Motion must be denied.

**B. DEXON CANNOT MEET THE STANDARDS FOR GRANTING A STAY**

Even if this Court had jurisdiction to grant a stay of the injunction, it could only do so under "extraordinary circumstances." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (citation omitted). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). Rather, it is "an exercise of judicial discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34 (citation omitted). Four factors

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

(which are similar to those already considered in the court's decision to grant the preliminary injunction) are considered when evaluating such a motion: "(1) whether the stay applicant has made a strong showing that [it is] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426.

Dexon bears the burden of showing that this Court should exercise its discretion to stay its own preliminary injunction order and must do so by showing more than a mere preponderance; it "must show a 'reasonable probability' or 'fair prospect' of success.'" *Theorem, Inc. v. Citrusbyte, LLC*, No. CV 21-4660-GW-AGRX, 2022 WL 1314041 at *1 (C.D. Cal. Jan. 18, 2022). Reliance on the same arguments that the district court rejected in deciding to issue the underlying preliminary injunction is insufficient. *Id.* at *2; *see also CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1085 (E.D. Cal.), aff'd, 348 F. App'x 288 (9th Cir. 2009) ( raising "essentially the same arguments" made in the original opposition to a motion for a preliminary injunction is insufficient to grant a stay). As shown below, Dexon fails to satisfy any of these four factors and its Motion should be dismissed on its merits as well as its jurisdictional deficiencies.

### 1. DEXON CANNOT SHOW A LIKELIHOOD OF IRREPARABLE HARM

As the Ninth Circuit wrote in one of the cases relied on by Dexon, *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020), "'if the petition has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.'"(internal citations omitted). The merits analysis must, "therefore begin our *Nken* analysis with consideration of irreparable harm." *Id.*; *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (listing the *Nken* factors and explaining, "We first consider the government's showing on irreparable harm, then discuss the likelihood of success on the merits under the sliding scale approach").

Here, Dexon fails to meet the burden to show more than just "some possibility of irreparable injury", but that such injury "is likely to occur during the period before the appeal is decided." *Doe #1 v. Trump*, 957 F.3d at 1058–59. "It is well established [that] monetary injury is

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). And irreparable injury must be actual and imminent, not remote or speculative. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Dexon fails to meet each of these tests. The harm it complains of is entirely monetary (for which Dexon has a remedy given Cisco has already deposited the bond if Dexon does indeed suffer harm), and, at best, vague and speculative.

Dexon's claims of the mere possibility of "irreparable harm" fall into two categories, neither of which rises to the level of "harm" that would warrant a stay, nor are they supported by sufficient evidence. First, Dexon claims that its business will be vaguely affected by its use of the tool to identify counterfeit product it might otherwise have unknowingly sold. To begin, its strains reason to understand how using a tool that takes seconds to provide feedback on the genuineness of a package and allows Dexon to comply with the Lanham Act harms Dexon's business. In fact, Dexon's ability to more-effectively protect its customers from buying counterfeit "Cisco" products counterfeit products helps, not harms, Dexon. Dexon also claims that suppliers would stop doing business with the company if the suppliers had to provide package data in order to verify the genuineness of the product. But this fact – even if it were sufficiently supported by the record – is not sufficient to show irreparable harm to Dexon.

The type of "harm to business" that Dexon complains of – stemming from compliance with an injunction to stave off infringement – does not warrant stay of an injunction. In *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-CV-01702-BLF, 2017 WL 8314663, at *1 (N.D. Cal. Dec. 18, 2017), a court in this District had issued a preliminary injunction to stop the defendant from using the plaintiff's marks during the litigation. The defendants moved to stay the preliminary injunction order, arguing that irreparable harm would occur because the defendants "will incur costs to comply with the injunction" and "they will lose goodwill of the [mark]" when their sales professionals are forced to adopt new branding. *Id.* The court rejected this argument, holding that being "inconvenienced," "placed in an awkward position due to the changes" required "to comply with the injunction order," or experiencing "dissatisfactions of the [sales] professionals" did not constitute irreparable harm. *Id.* at *2. The finding of lack of irreparable

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

harm was sufficient for the court to deny the motion to stay the preliminary injunction. *Id.* ("Accordingly, Defendants have not provided evidence to show that they would suffer probable irreparable harm if no stay is granted. As the irreparable harm factor has not been established, the Court need not consider other factors.").

Further, in *Theorem, Inc. v. Citrusbyte, LLC*, cited above, the plaintiff brought claims for trademark infringement, dilution, and unfair competition, and was granted a preliminary injunction to stop the defendant from using the plaintiff's marks during the pendency of the lawsuit. 2022 WL 1314041, at *1. The defendant appealed the order to the Ninth Circuit and moved in the district court to stay the preliminary injunction pending the appeal. It argued that, "enforcement of the preliminary injunction would cause irreparable harm by imposing fundamental business changes that could not be easily undone." *Id.*, at *2. The court rejected this argument, holding that "temporarily rebranding the business" and the costs involved therein do not constitute irreparable harm and denied the motion to stay. *Id.* ("To stay the preliminary injunction pending appeal at this juncture would only serve to allow the irreparable harm against Plaintiff to continue."). So too here, where lifting the injunction would only allow the ongoing, irreparable harm to Cisco to continue during the pendency of Dexon's appeal.

Dexon's cited authority in support of its position is inapposite and, in fact, favors Cisco. Neither the *Ajilon* nor the *Husky Ventures* cases cited by Dexon analyzed irreparable harm in the context of a motion to stay an injunction. And, in fact, both support Cisco's position, as the courts in each case found sufficient irreparable harm to the *plaintiffs* if an injunction was not put in place. In *Ajilon Pro. Staffing, LLC v. Griffin*, No. CV–09–561–PHX–DGC, 2009 WL 1507559 at *1 (D. Ariz. May 29, 2009), the court granted a temporary restraining order in favor of the plaintiff which prevented the defendant from breaching the confidentiality and non-solicitation terms of his employment agreement, and the plaintiff sought entry of a preliminary injunction to the same effect. The court granted the plaintiff's request for a preliminary injunction, finding it had established irreparable harm because the defendant's "direct and local competition" with the plaintiff presented the likelihood of irreparable harm, not the other way around. *Id.* at *4. If anything, *Ajilon* reinforces the point that it is Cisco that will be irreparably harmed if the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

injunction is lifted.

In *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1004-5 (10th Cir. 2018), defendants appealed the entry of a permanent injunction on the ground that the plaintiff had not proven irreparable harm. The Tenth Circuit affirmed the district court's judgment and determined that the defendants' numerous and documented threats to the plaintiff's business demonstrated a likelihood of irreparable harm to the plaintiff that money damages alone could not remedy. *Id*. at 1014 ("Simply put, the threat of irreparable harm here was apparent and far from speculative. Based on the foregoing, we see no reason not to uphold the district court's grant of the injunction."). As with *Ajilon*, *Husky Ventures* supports Cisco's position (and the Court's prior ruling) that Cisco is likely to suffer irreparable harm unless Dexon's unlawful conduct is enjoined, not the other way around. *Id*. at 1013.

Dexon provides scant evidentiary support for the harm it claims it will suffer, relying on one paragraph from a declaration submitted by Leo Kaas, a Dexon officer:

> In addition to direct lost revenue and sunk product costs, any such 'non-genuine' determinations would prevent Dexon from completing a previously promised and contracted for order with its customer. Dexon differentiates itself from Cisco's authorized sellers in part due to Dexon's ability to locate, procure and ship product customers require immediately, often due to a network issue. Having already quoted, procured and promised to provide a needed product by a given date, Dexon would be unable to honor such promise to its customer, likely resulting in lost future business.
>
> Kaas Decl, Dkt No. 260-1, ¶7.

It strains logic, but it essentially appears that Dexon is claiming that if it promised a product to a customer and then found out the product it intended to sell was counterfeit, it would somehow be harmed by not being able to fulfill the order. There is no "harm" stemming from weeding counterfeit out of Dexon's supply chain and preventing its customer from purchasing non-genuine goods.[1] Even if this were a type of harm that could be considered, the support for it is so speculative as to be insufficient to satisfy this prong.

---

[1] Further, any monetary loss to Dexon stemming from a later finding that the preliminary injunction should not have issued is covered by the bond this Court put in place.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Dexon's second category of irreparable harm is even more curious. Dexon appears to argue that the language of the injunction itself (and the Court's factual findings) are damaging to Dexon and could harm Dexon's reputation. This argument is specious at best and, tellingly, is wholly unsupported by any case law holding that a stay is required because a Court's factual findings in support of a preliminary injunction order could cause reputational harm to the party that is enjoined. If Dexon was correct, that were true, then no preliminary injunction which seeks to curtail unlawful and disreputable behavior could ever stand. In sum, none of Dexon's argument support a finding of probable irreparable harm sufficient to warrant the imposition of a stay and its Motion can be denied on that basis alone.

### 2. DEXON CANNOT SHOW IT IS LIKELY TO SUCEED ON THE MERITS

As to the second main factor in the stay analysis, Dexon would need to make "a strong showing that [it is] likely to succeed on the merits," for its Motion to be granted, yet it cannot do so. *Nken*, 556 U.S. at 434. In support of this factor, Dexon repeats arguments it raised in opposition to the preliminary injunction motion, which have already been soundly rejected by this Court. Should the Court decide this motion on the merits, these arguments should be similarly rejected.

#### a. The Court Applied the Correct Standard In Granting the Preliminary Injunction

The language of the Court's injunction is clearly prohibitory and not mandatory. The Court explicitly "enjoined [Dexon] from selling counterfeit Cisco products." Order at p. 13:27-28. As the Court summarized: "the injunctive relief that Cisco seeks is for Dexon to stop selling counterfeit Cisco product. To comply with the injunction, Dexon could choose to simply stop selling <u>all</u> Cisco products. In that event, Dexon would not have to take any action – and clearly, the injunction would not qualify as 'mandatory.' The Court fails to see how giving Dexon **a less restrictive option to comply with the injunction** (taking seconds to scan a product before a sale, rather than ceasing all sales) results in a heightened burden for Dexon." Order at p. 5:26-6:4 (second emphasis added). While Dexon complains in its brief that the injunction requires Dexon

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

to "change its standard business practices and take [] affirmative action," that is simply not the case. Dexon cites no case to support its argument that an injunction against the sale of counterfeit products is somehow transformed from prohibitory to mandatory because the Court provided a less restrictive alternative to the complete bar on selling counterfeit "Cisco"-branded products. And courts have held that similar restrictions on selling counterfeit products are considered prohibitory. *See Robinson v. Best Price Distributors*, LLC, No. 2:21-CV-06689-RGK-JC, 2022 WL 3013131, at *2 (C.D. Cal. June 14, 2022) (enjoining the defendants from marketing and selling any of plaintiff's trademarked products under the prohibitory standard); *DocRx, Inc. v. DocRx Dispense, Inc.*, No. CV-14-00815-PHX-PGR, 2015 WL 1778360, at *4 (D. Ariz. Apr. 20, 2015) (describing as prohibitory an injunction "prohibiting the defendants from using any variant of the plaintiff's [] service mark and from registering or using a domain name containing, confusingly similar to, or identical to the [] service mark"). None of the cases cited by Dexon involve a court finding a prohibition on selling counterfeit to be mandatory.[2]

Further, even if Dexon's heightened standard did apply, there is ample analysis in the Court's Order showing that Cisco would meet that bar as "the facts and the law clearly favor" it here. *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). In its Order, the Court found that Cisco had presented "further and significant evidence of counterfeit sales" and that

---

[2] *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (finding that injunctions which prohibit enforcement of a new law or policy (in that case, the DREAM Act) are prohibitory and not mandatory); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (holding that, while an injunction restraining a party from further acts of infringement would be prohibitory, requiring recall of products and payment of restitution was considered mandatory); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (finding that "an injunction compelling USC to install Coach Stanley as the head coach of the women's basketball team and to pay her $28,000 a year more than she received when her employment contract expired" was considered mandatory); *Doe v. Snyder*, 28 F.4th 103, 106 (9th Cir. 2022) (finding a requested preliminary injunction that would compel the Arizona Health Care Cost Containment System to pay for male chest reconstruction surgeries to be mandatory); *Master Tax LLC v. Ultimate Software Grp., Inc.*, 770 F. App'x 386, 387 (9th Cir. 2019) (finding that an injunction requiring the defendant to submit to an audit and provide materials to plaintiff was mandatory in nature).

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Dexon did not put forth any sufficient evidence to refute those determinations nor did it dispute it sold the products in question. *See* Order at pp. 5-9. No matter which standard should apply the Court chose, this Court's Order makes it clear that Cisco has already met it.

**b. The Injunction Order Complies With Rule 65**

Dexon also claims that the injunction's clear language regarding what is prohibited – the "selling [of] counterfeit Cisco products" – is somehow "vague," and argues that the Order was required to provide guidance as to what a counterfeit product is. Here too, Dexon cites to no applicable authority to support its position. None of the cases it cites relate to the sale of counterfeit products. And Cisco has found no cases in the counterfeiting context that require a court to define what a counterfeit product is beyond the language of the Lanham Act, which the Court's Order incorporates.

In *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, the Federal Circuit found that a broad prohibition against using "any [of plaintiff's] confidential, proprietary, or trade secret information, including any files obtained from the Hard Drive or during the course of Former [d]efendants' employment with [the plaintiff]" to be ambiguous as the order did not "identify any particular trade secrets or describe what acts [were] prohibited." *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 2021-1839, 2022 WL 1530491, at *1 (Fed. Cir. May 16, 2022). That case is wholly distinguishable, because the injunction in that case created significant ambiguity around what could be identified as a trade secret. Further, the Federal Circuit found that the lower court had failed to engage in analysis of the likelihood of success on the merits for many of the 70 trade secrets alleged to have been misappropriated and which were subject to the injunction. *Id.* at *2. Those facts are wholly distinguishable from the Court's analysis of Cisco's counterfeit claims here.

Far from giving short shrift to the matter, the Order included multiple pages of analysis and found that Cisco provided "significant evidence of counterfeit sales" and "persuasive evidence that – given Dexon's apparent concealment of its counterfeit sales and the difficulty of uncovering counterfeit sales in general – there is likely many more counterfeit sales that [Cisco] is unaware of." Order at p. 8:9 and 8:16-18. The Court held that "the evidence of counterfeit sales that Cisco

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

has put forth suffices to demonstrate a likelihood of success of the merits of its Lanham Act claim", providing ample explanation of its analysis. Order at p. 6:26-7:1.

Further, while the court in *Carl Zeiss* acknowledged the general rule that a preliminary injunction should not incorporate other documents in its prohibitory language, it made clear that "the Ninth Circuit 'has not taken a rigid approach' to Rule 65(d)'s no-incorporation requirement and has allowed, for example, attachment of a confidential appendix as part of the injunction." *Id.* at *2 (*citing Davis v. City and County of San Francisco,* 890 F.2d 143, 1450 (9th Cir. 1989) and *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1132–33 (9th Cir. 2006) (explaining the Ninth Circuit "permit[s] incorporation by reference in certain limited scenarios"). Here, there is no ambiguity nor is there any negative effect to the Court's off-hand reference to Cisco's revised preliminary injunction proposal as part of the Order since the Court explicitly reiterated the language of that proposal within the language of the injunction itself. *Compare* Order at 13:26-14:6 *with* Dkt. 258 at p. 8:19-26.

Dexon's other authority is similarly unhelpful to its position. In *Brocade*, the Court only found that the specificity requirements of Rule 65 were violated because the proposed injunction enjoined using certain trade secrets and then referred to a trial exhibit as the document providing the descriptions of those secrets. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 890126, at *10 (N.D. Cal. Jan. 23, 2013). The court found that the trial exhibit did not provide enough detail because, as to at least one trade secret, proof at trial showed that the secret included a four-part algorithm, but the trial exhibit incorporated into the proposed preliminary injunction mentioned none of those steps. *Id.* Here, there is no similar ambiguity in the activities enjoined – Dexon is prohibited from selling counterfeit 'Cisco"-branded products, and the prohibition only applies to products advertised by Dexon as "new" and for which Cisco has provided Dexon a method to verify the genuine nature of the product packaging. Order at 13:26-14:3. There is nothing left out of the Court's order or description of what is enjoined or how the "safe harbor" would operate. And, in *Brocade*, rather than refuse to grant an injunction, the court granted the motion on revised (and redacted) terms, incorporating language to specifically describe the trade secrets at issue. *Brocade*, at * 12. The Court has already done that

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

here by incorporating the language from Cisco's proposal into the Order.

The *Columbia Pictures* case is also inapposite. The court there found, in a copyright infringement context, that referring to a prohibition on using a term "widely known to be associated with copyright infringement" on a website or from soliciting a user base "generally understood, in substantial part, to be engaging in infringement" was impermissibly vague. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013). Such language is not comparable to the injunction at issue here, which directly prohibits Dexon from selling counterfeit "Cisco"-branded products, and says nothing about Dexon's suppliers nor limiting its purchases from some undefined list of "widely known" vendors of counterfeit.

The *Del Webb* case is also unhelpful to Dexon. The Court in that case found that an injunction was partially too broad because it prohibited using undefined "illegal, unlicensed and false practices" in connection with performing residential inspections. *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1150 (9th Cir. 2011). Here, by contrast, the preliminary injunction contains specific and tailored text that bars only the sale of counterfeit "Cisco"-branded products.

Thus, Dexon's arguments regarding Rule 65 fail, as does its likelihood of success on the merits of its appeal.

### C. CISCO WILL BE IRREPARABLY HARMED IF THE INJUNCTION IS STAYED

For the same reasons that this Court granted the preliminary injunction in the first place, Cisco will be irreparably harmed by a stay of the injunction here. The Lanham Act has a rebuttable presumption of irreparable harm upon finding a likelihood of success on the merits. Order at p. 9:1-21. Dexon failed to rebut that presumption of irreparable harm and its regurgitation here of arguments made in opposition to the motion for preliminary injunction are just as unavailing now. This Court has already rejected Dexon's arguments about delay, finding that "Cisco has persuasively argued that it did not know – nor could it have known – about the extent of Dexon's continued sales of counterfeit products or its sales of SMARTnet contracts for those products, because Dexon was actively working to conceal where those products and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

contracts originated." Order at 10:5-10. Further, Cisco introduced evidence of customer frustration with Cisco that harmed Cisco's good will, all caused by Dexon's sales of counterfeit "Cisco"-branded products, providing significant evidence of irreparable harm. Order at 11:21-23 ("there is also ample evidence in the record of customer confusion and consternation related to Dexon's sales of counterfeit Cisco product").[3]

The court in the *Theorem* case rejected similar arguments in denying a stay, finding that "the preliminary injunction only prevents Defendants from continuing their alleged trademark infringement, and the Court sees no reason to prioritize Defendants' allegations of irreparable harm over Plaintiff's similar claims, especially when the Court *already* agreed with Plaintiff as to irreparable harm over several rounds of extended briefing." *Theorem*, 2022 WL 1314041, at *2; *see also Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1217 (W.D. Wash. 2003), aff'd, 372 F.3d 1330 (Fed. Cir. 2004) (finding that "[c]learly [the plaintiff] has a strong interest in ensuring that its trademark is not infringed, as does the public in general in protection of trademark," in denying a motion to stay).

It is Cisco that will suffer immediate and substantial harm if a stay is granted and Dexon's repeated arguments on lack of harm to Cisco should be rejected once again.

### D. THE PUBLIC INTEREST FAVORS MAINTAINING THE INJUNCTION

One purpose of trademark law is to prevent consumer confusion. In a trademark action, the "public interest" is the right of the public not to be deceived or confused. *Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, No. CIV. 2:10-2751, 2011 WL 4594910, at *3 (E.D. Cal. Feb. 23, 2011). As the Court noted, there was substantial evidence regarding customer confusion that "would be avoided were Dexon enjoined from selling counterfeit product in the first place." Order at 11:28-12:1. Further, beyond confusion, the security risk to consumers relating to use of counterfeit goods is in additional factor in favor of keeping the injunction in pace. In sum, the

---

[3] Dexon also rehashes arguments regarding Cisco's cancellation of SMARTnet contracts, Dexon's total volume of sales of Cisco product vs. the amount of counterfeit yet discovered, and the global counterfeiting probably facing all OEMs. This Court already addressed – and rejected – these arguments in granting the preliminary injunction.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

public interest strongly favors maintaining the injunction here.

## III. CONCLUSION

For the reasons set forth above and in Cisco's previous submissions to this Court, and as: (1) this Court lacks jurisdiction to stay the injunction pending appeal; (2) Dexon cannot show probability of irreparable harm; (3) Dexon cannot show likelihood of success on appeal; (4) Cisco will be irreparably harmed if the injunction is lifted; and (5) the public's interests are served by maintaining the stay in place, Cisco respectfully requests that this Court deny Dexon's request for a stay of the Order granting preliminary injunction in its entirety.

DATED: November 6, 2023

SIDEMAN & BANCROFT LLP

By: */s/Lyndsey C. Heaton*
Lyndsey C. Heaton
Attorneys for Plaintiffs and Cross-Defendants
CISCO SYSTEMS, INC. and
CISCO TECHNOLOGY, INC.