John A. Conkle (SB# 117849)
 j.conkle@conklelaw.com
Amanda R. Washton (SB# 227541)
 a.washton@conklelaw.com
CONKLE, KREMER & ENGEL, PLC
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

Michael M. Lafeber (*pro hac vice*)
 mlafeber@taftlaw.com
David McDaniel (*pro hac vice*)
 dmcdaniel@taftlaw.com
O. Joseph Balthazor Jr. (*pro hac vice*)
 jbalthazor@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Phone: (612) 977-8400 • Fax: (612) 977-8650

Attorneys for Defendant and Third-Party Plaintiff
Dexon Computer, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a Delaware corporation and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DEXON COMPUTER, INC., a Minnesota corporation,<br><br>Defendant.<br><br>AND RELATED CROSS-ACTIONS | Case No. 3:20-CV-4926-CRB<br><br>**DEFENDANT DEXON COMPUTER, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY INJUNCTION PENDING APPEAL**<br><br>Date:   December 1, 2023<br>Time:   10:00 AM<br>Crtrm.:  Zoom<br><br>Hon. Charles R. Breyer<br>Presiding Judge |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Dexon Computer Inc. ("Dexon") respectfully submits the following reply brief in support of its motion to stay the Court's preliminary injunction, ECF No. 313 ("Def.'s Mot. Stay"). All of the *Nken* factors warrant a brief stay of the injunction while the appeal is pending. *See id.* Nothing argued or otherwise raised in Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc's. (collectively, "Cisco's") opposition brief ("Pls.' Opp. Br."), ECF No. 316, provides otherwise.

*First*, this Court has jurisdiction under Fed. R. Civ. P. 62(d) to suspend the injunction while the Ninth Circuit considers Dexon's appeal. Other courts, including in this District, agree. Cisco's arguments to the contrary would preclude a court from ever exercising jurisdiction to stay after the filing of an appeal—in direct contravention of Rule 62(d) and Fed. R. App. P. 8(a)(1).

*Second*, Dexon is likely to prevail on the merits. The injunction fails to comply with Fed. R. Civ. P. 65 on its face, and the Court applied the wrong standard in granting the mandatory injunction. Instead of addressing Dexon's arguments directly, Cisco ignores the express requirements of Rule 65 and the language of the Injunction Order, ECF No. 293, and focuses upon what Cisco wishes were in the injunction. Cisco's attempts to rewrite the injunction do not provide a reason to deny the requested stay.

*Lastly*, Cisco's other arguments fail to overcome the remaining *Nken* factors that favor the grant of a brief stay. For all of these reasons, and those raised in Dexon's original motion, Dexon respectfully requests that the Court stay and suspend the injunction while the appeal of the injunction order is pending at the Ninth Circuit.

## II. ARGUMENT

### A. THIS COURT HAS JURISDICTION TO STAY THE INJUNCTION PENDING AN APPEAL

Fed. R. Civ. P., Rule 62(d), expressly provides this Court with jurisdiction to suspend the injunction until such time as the Ninth Circuit rules on Dexon's interlocutory appeal. Rule 62(d) states: "While an appeal is pending from an interlocutory order … that grants… an injunction, the court may suspend, … an injunction on terms for bond or other terms that secure the opposing party's rights." Dexon's motion to stay the injunction pending the appeal does not seek to alter the terms of the injunction or vacate the mandatory injunction until such time as the Ninth Circuit decides the

appeal. A stay would leave all of the disputed issues intact for the Ninth Circuit's consideration. Dexon's asks this Court to suspend the injunction until such time as the Ninth Circuit rules on the appeal to avoid the harm it imposes upon Dexon.

This Court has expressly recognized it retains authority to stay an injunction even after the filing of a notice of appeal. *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2527044, at *1 (N.D. Cal. July 2, 2012). "Both the court of appeals and the district court have the authority to stay an order pending appeal," and "[f]or the district court, Federal Rule of Civil Procedure 62(c) vests the power to stay an order pending appeal with the district court.").[1] In *Apple*, the district court issued a preliminary injunction, which enjoined the sales of Samsung's tablet computers. On that same day, Samsung filed an appeal of the preliminary injunction. *Id.* After the preliminary injunction went into effect, Samsung moved to stay the injunction pending resolution of the appeal. *Id.* The district court expressly noted that it retained the authority to decide if it should stay the injunction pending the appeal under then-Rule 62(c), and considered four applicable equitable factors in ruling on Samsung's motion to stay. *Id.* at *1-2. Other courts have similarly found that they possessed jurisdiction to resolve a motion to stay after a party has appealed. *See, e.g., Wit v. United Behav. Health*, 2020 WL 8614181, at *1–3 (N.D. Cal. Dec. 28, 2020) (issuing order deciding motion to stay after party filed appeal); *Tri-Dam v. Frazier*, 2022 WL 2067878, at *4 (E.D. Cal. June 8, 2022) (citing Rule 62(d) and applying *Nken* in determining propriety of a stay pending appeal of injunction); *see also Flores v. Bennett*, 2023 WL 3751998, at *2 (E.D. Cal. June 1, 2023) (deciding motion to stay preliminary injunction utilizing *Nken* factors after appeal of injunction order to Ninth Circuit); *Payan v. Los Angeles Cmty. Coll. Dist.*, 2020 WL 5289845, at *2 (C.D. Cal. May 29, 2020) (deciding motion to stay permanent injunction under *Nken* factors although "appeal remains pending as of the filing of this Order.").

Further, in order to seek a motion to stay an injunction at the Ninth Circuit, "[a] party must ordinarily move first in the district court for the following relief…an order suspending, modifying,

---

[1] The current rule that applies to injunctions pending appeal is Fed. R. Civ. P. 62(d). Prior to the 2018 Amendments, the applicable rule was Fed. R. Civ. P. 62(c). "The provisions for staying an injunction… are reorganized by consolidating them in new subdivisions (c) and (d). There is no change in meaning." Committee Notes on Rules, 2018 Amendment to Rule 62, Fed. R. Civ. P.

restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). As other courts have noted, to give effect to Fed. R. App. 8(a), "we are persuaded that the district court retained jurisdiction to grant appellant's request for a stay despite the fact that a notice of appeal to this Court was filed prior to the request for a stay…[s]uch a conclusion is consistent with the general principle that an application for a stay of the judgment or order of a district court should ordinarily be made in the first instance in the district court." *Matter of Miranne*, 852 F.2d 805, 806 (5th Cir. 1988) (citing Fed. R. App. P. 8(a)); *see also Broidy Cap. Mgmt. LLC v. Muzin*, 2022 WL 2157047, at *2 (D.D.C. June 15, 2022); 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2904 (3d ed. Apr. 2023 Update) ("Rule 62(c) says that the district court may act in connection with injunctions "while an appeal is pending." It may be argued that this means that the court may not make an order under Rule 62(c) before the appeal has been taken, and further, that after the taking of the appeal the district court no longer has jurisdiction of the case. However, those arguments would make the rule a nullity and are unsound.") (emphasis added).

The cases cited by Cisco are inapposite. In *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000), the Ninth Circuit found that the district court lacked the jurisdiction to vacate its own order during the appeal. But here, Dexon is not asking this Court to vacate the order or for other modifications. Instead, Dexon is seeking, pursuant to Rule 62(d), for this Court to merely suspend the injunction pending appellate review. Further, Cisco's citation of *Rocky Mountain Farmers Union v. Goldstene*, 2012 WL 217653, at *2 (E.D. Cal. Jan. 23, 2012) is of no help to Cisco. There, the district court found Rule 62(c) inapplicable, because it found that the requested "stay,"

> …goes even farther than requesting the current status quo to roll back to the pre-injunction status quo. At the time of the injunction, California enforced the LCFS under the 2011 regulations. Pursuant to the LCFS, the regulated parties' required reductions increased significantly in 2012. It appears that defendants are requesting an order that would not only change the status quo by allowing California to enforce the LCFS, **but to allow enforcement that imposes higher restrictions than had been imposed previously**. Defendants cite no authority, and this Court finds none, to support the proposition that this Court has jurisdiction to grant this type of relief.

Id. at *2 (emphasis added).

Dexon's motion does not seek a modification of the injunction that would result in it having even greater latitude to conduct its business than existed previously. Instead, by staying the injunction pursuant to Dexon's request, the status of the injunction issues under appeal would remain intact and would be preserved to allow the Ninth Circuit to conduct its review.

Cisco's citation to *Overstreet v. Apex Linen Serv., Inc.*, 2018 WL 2245145, at *1 (D. Nev. Apr. 19, 2018) fares no better. There, the court entered an injunction order to reinstate three terminated employees. *Id.* And as noted by the court, "the entirety of the case in this court is Overstreet's application for a § 10(j) injunction," such that granting the movant's motion would "even in part, [] constitute finally adjudicating the parties' rights directly involved in the appeal," and "would materially change the status of the case on appeal." *Id.* Here, the injunction ordered by the Court does not finally dispose of any issue in the litigation, let alone provide final adjudication of the parties' rights that are directly involved in the appeal. This case concerns several causes of action and Cisco seeks monetary damages not limited to injunctive relief.

Nor is *Fed. Trade Comm'n v. Noland*, 2021 WL 2439288, at *2 (D. Ariz. June 15, 2021) of any help to Cisco. In that case the court issued an order requesting briefing regarding the impact of a Supreme Court decision on an asset freeze and receivership. *Id.* But the court expressly noted that "there is no proper request for judicial relief pending before the Court." *Id.* Indeed, the court noted that "when the FTC argued the memorandum could be treated as a motion, the Individual Defendants took umbrage with this suggestion and clarified that their filing wasn't a motion. So be it." Accordingly, with no motion before it, the court's dicta regarding Rule 62(d) was unnecessary as it ordered that "that the Court will take no action in response to the Individual Defendants' memorandum." *Id.* at *3. Similarly, Cisco's unclear citation of *Russell Rd. Food & Beverage, LLC v. Galam*, 2013 WL 2949615, at *1 (D. Nev. June 13, 2013) (denying motion to vacate or modify preliminary injunction) is similarly inapposite, as it did not concern a motion to stay an injunction pending appeal, and instead sought modification or to vacate the injunction after filing of a notice of appeal.

Thus, this Court has jurisdiction over Dexon's request for a stay for the limited period of the appeal and such exercise of jurisdiction is consistent with the precepts of Fed. R. Civ. P. 62(d), Fed. R. App. P. 8, and other decisions from district courts in the Ninth Circuit.

### B.   A STAY OF THE INJUNCTION PENDING APPEAL IS NECESSARY

As detailed previously throughout Dexon's initial motion, Dexon has demonstrated a stay pending resolution of the appeal is warranted. Cisco agrees with Dexon that the proper analysis for a stay is governed by the equitable factors discussed in *Nken v. Holder*, 556 U.S. 418 (2009). Nothing raised in Cisco's opposition warrants denial of the requested stay.

#### 1.   Dexon is likely to prevail on appeal as the Court's vague injunction lacks detail and violates Rule 65

The Court's injunction runs afoul of Rule 65's "no-other-document" requirement. Fed. R. Civ. P. 65(d)(1) expressly requires that every injunction must "state its terms specifically" and "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." (Emphasis added.) "[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000). The no-other-document requirement established by Rule 65(d) means "that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Columbia Pictures Industries, Inc. v. Fung*, 710 F. 3d 1020, 1047-48 (9th Cir. 2013); *see also Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008) ("Rule 65(d) is satisfied only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." (quotations omitted).); *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (same).

The no-other-document requirement of Rule 65(d) is no mere technicality. The rule "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see also* Wright & Miller, Fed. Practice and Procedure, § 2955 (2013) (explaining "one of the principle abuses of the pre-federal rules practice

[was] the entry of injunctions that were so vague that defendant was at a loss to deter what he had been restrained from doing").

The requirements contained in Rule 65(d) are mandatory. *See Mayflower Industries v. Thor Corp.*, 182 F.2d 800, 801 (3d Cir. 1950) ("We cannot think that when the rule-makers said 'every' instead of 'sometimes' or 'generally,' or some other looser word, they meant anything less than what they said."); *see also Commercial Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1356 (10th Cir. 1972) ("We can only reiterate that Rule 65 must be strictly complied with.  Great care must be used in the granting of interlocutory or final injunctive relief because of the extraordinary nature of that remedy."); *Brumby Metals, Inc. v. Bargen*, 275 F.2d 46 (7th Cir. 1960) (same, favorably cited by *Farrell v. Danielson*, 296 F.2d 39, 42 (9th Cir. 1961)).

Rule 65(d)'s no-other-document requirement may be satisfied if an injunction specifically incorporates another document by reference.  This may be the case "in certain limited scenarios, for example, where the referenced document is physically attached to the [order] itself," *State of California v. Campbell*, 138 F.3d 772, 783 (9th Cir. 1998), or when "attaching a confidential appendix to its injunction*." Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982).  In those limited circumstances, the attached document becomes part of the injunction for the purposes of the no-other-document rule.

The injunction here did not comply with Rule 65(d) and did not attach another document to itself.  Rather than provide the required detail in a single document, the order violates the express prohibition of Rule 65 by merely vaguely referencing "Cisco's Revised Proposal."  (Dkt. 293 p. 14 ("Pursuant to the specific terms in Cisco's revised proposed injunction, see Cisco Revised Proposal at 6-8 (¶¶1-6), Dexon is hereby enjoined from selling counterfeit Cisco products."))  It is unclear what document the Court's Order is referring to.  No docket entry is titled "Revised Proposal" though the memorandum portion cites Dkt. 258-1 as the "Cisco Revised Proposal."

While referencing a vague and ambiguous external document is itself fatal, assuming it was a reference to Cisco's Amended [PROPOSED] Preliminary Injunction Order (Dkt. 258-1), and such document had been attached to the Court's Order, the Order would have still been deficient.  Cisco's Amended PROPOSED Preliminary Injunction Order itself lacked the requisite details and would

also have required referencing multiple additional documents/communications to attempt to ascertain the injunction's scope and parameters. (*See* Dkt. 260 pp. 2-9; Dkt. 301 pp. 6-7.) Cisco's Amended [PROPOSED] Preliminary Injunction Order does not identify the "tool" nor any rules or parameters of its use, including failing to specify the products it is, or is not, compatible with. The sole language found in Cisco's Amended [PROPOSED] Preliminary Injunction Order concerning the "tool" states, "Cisco has provided Dexon with a method to determine whether a new, in-box, "Cisco"-branded product Dexon intends to sell is likely to be genuine or likely to be counterfeit and has agreed to provide Dexon access to such tool to aid in abiding by the injunction's prohibitions." it mentions and repeatedly refers to correspondence between the parties. (Dkt. 258-1 ¶ 8.)

In addition to being improperly referenced and incomplete, the language in Cisco's Amended [PROPOSED] Preliminary Injunction Order is misleading to the extent it suggests the "tool" is applicable to all "new, in-box" products. Searching for and finding additional extraneous documents not referenced in the court's order reveals the "tool" is in fact limited solely to new-in-the-box products having a "packout label and the BP carton label" and does not work for a significant amount of the products at issue, including used equipment and products not having a "packout label" such as transceivers. (Dkt. 239-1.)

Neither Dexon, nor its non-party suppliers, should have to attempt to piece together multiple unidentified extraneous documents and/or communications to determine exactly what the injunction requires.

As noted previously, other courts applying the law of the Ninth Circuit have found similar injunctions do not comport with the standard demanded by Union Pacific. *See, e.g., Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2022 WL 1530491, at *3 (Fed. Cir. May 16, 2022) (applying Ninth Circuit law and vacating provision of injunction that failed to sufficiently detail what particular acts were prohibited); *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1150 (9th Cir. 2011) (vacating injunction where examples of prohibited past conduct do not sufficiently define what additional future conduct will be covered); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013) (finding provisions of injunction too vague as "Rule 65(d), overall, prefers certainty to flexibility").

Tellingly, Cisco's opposition brief makes little effort to explain why the injunction is compliant despite referencing other inadequate documents. Pls.' Opp. Br. at 10-12. For example, Cisco makes no effort to identify what "tool" or "method" defines the scope of the injunction in its brief or where that "tool" can be defined in the Injunction Order. Instead, Cisco's arguments regarding compliance with Rule 65 merely consist of attempts to distinguish the cases cited by Dexon (Pls.' Opp. Br. at 10:5-23; 11:3-12:7). Cisco fails to explain why the injunction order's (vague and unclear) reference to outside documents satisfies Rule 65. Accordingly, a stay of the injunction is appropriate as Dexon is likely to prevail in its appeal.

**2.    Dexon has demonstrated that it is likely to succeed on the merits as the Court did not apply the heightened standard applicable to mandatory injunctions**

This Court also applied the wrong legal standard in granting the mandatory injunction. As described in Dexon's opening motion, that error alone is dispositive. *See Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022) ("[A] district court abuse[s] its discretion by employing an erroneous legal standard."); *Master Tax LLC v. Ultimate Software Grp., Inc.*, 770 F. App'x 386, 387 (9th Cir. 2019) (vacating mandatory injunction where "[o]ur holding that the district court applied an erroneous legal standard is sufficient to resolve this appeal"). Accordingly, Dexon's appeal is very likely to succeed.

Instead of squarely addressing Dexon's arguments, Cisco constructs a strawman argument. Namely, Cisco misconstrues the injunction as requiring Dexon to stop selling all Cisco-branded products or all purportedly "counterfeit Cisco products." *Id.*[2] But that is not what the Court actually ordered. Instead, the preliminary injunction order literally "enjoins selling counterfeit Cisco products," *and* "shall only apply to Cisco products which are advertised by Dexon as 'new,' and ***for which Cisco has provided Dexon a method to verify the genuine nature of the product packaging***." Injunction Order, ECF No. 293 at 13-14 (emphasis added).

---

[2] Throughout Cisco's brief, it repeatedly states "Dexon is preliminarily enjoined from selling counterfeit "Cisco"-branded products." *See, e.g.*, Pls.' Opp. Br. at 3, 8, 9, 10. There is a lone citation in Cisco's brief where Cisco acknowledges that the injunction "only applies to products advertised by Dexon as "new" and for which Cisco has provided Dexon a method to verify the genuine nature of the product packaging." *Id.* at 11.

The scope of the Court's injunction is limited to only those products where action on Dexon's part is required. *Id.* The injunction requires Dexon to change its standard business practices and take the affirmative action of utilizing Cisco's tool(s), which is not addressed in Cisco's arguments. The actions required by the injunction are a radical departure from the status quo, and therefore mandatory. Worse, the injunction appears to require Dexon's non-party vendors and suppliers to change their standard business practices and take affirmative actions to comply with the order, including furnishing Dexon with certain packaging information needed for these tools before being allowed to drop ship products to Dexon's customers. (Dkt. 293 Injunction Order at 12 ("[T]he Court believes the solutions Cisco discussed with Dexon, like Dexon obtaining packaging information from its drop shippers to input into the tool, sufficiently address those concerns."). The Court has previously acknowledged that Dexon has no way of knowing which products are purportedly "counterfeit" without affirmative action with the tools provided by Cisco.[3]

Cisco's repeated invocation of the descriptor "prohibitive" in connection with the term injunction does not make it so. Nor does the availability of even more draconian impositions upon Dexon transform the Court's mandatory injunction into a prohibitory injunction (or vice versa). Cisco makes much of the fact that the Court stated that it could have ordered an even more strict option to comply with the injunction. Pls.' Opp. Br. at 8. Yet, it is not the severity of the required action or restriction that makes an injunction mandatory—instead it is what the injunction requires for compliance, and its disruption of the status quo prior to trial, that distinguishes mandatory injunctions from those that are merely prohibitory. "A mandatory injunction orders a responsible party to take action, while [a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014).

Here, as the injunction requires action by Dexon and Dexon's non-party vendors and suppliers to utilize methods provided by Cisco to "verify the genuine nature of the product

---

[3] And even then, as has repeatedly been pointed out by Dexon, the use of the unspecified tools provided by Cisco is far from definitive as to whether a given product is a so-called "counterfeit" product.

packaging," it is mandatory despite Cisco's desires to the contrary. Moreover, the cases cited in Cisco's brief focus on prohibitions on counterfeit products, and do not address situations, as here, that require the party subject to an injunction to take particular actions to comply with the injunction order. Pls.' Br. at 9-10. Accordingly, Cisco's citations to cases concerning the propriety of prohibitive injunctions are inapposite and fail to address Dexon's likelihood of prevailing on appeal.

### 3. Cisco's arguments on the other *Nken* factors are unpersuasive

None of Cisco's other arguments satisfactorily refute Dexon's showing that the other equitable *Nken* factors have been met. Throughout its brief, Cisco's arguments are directed to generalized prohibitions on so-called "counterfeit goods" in the abstract. But as detailed previously, that is not what the actual injunction mandated. Nor does Cisco address how a brief stay of the actual injunction that was issued impact, let alone harm, it or the public interest in any specific or tangible way. In contrast, Dexon has already detailed how it is and will continue to suffer irreparable harm in the marketplace while it must operate under the Court's improper injunction in its opening motion.

## III. CONCLUSION

This Court has jurisdiction to suspend its mandatory injunction under Rule 62. And for the reasons discussed above and in Dexon's opening motion, each of the equitable factors strongly favor a brief stay of the Court's injunction pending appellate review.

Dated: November 13, 2023                    CONKLE, KREMER & ENGEL, PLC

By:  */s/ Amanda R. Washton*
     John A. Conkle
     Amanda R. Washton

     Michael M. Lafeber *(pro hac vice)*
     David McDaniel *(pro hac vice)*
     O. Joseph Balthazor Jr. *(pro hac vice)*
     TAFT STETTINIUS & HOLLISTER LLP

     Attorneys for Defendant and Third-Party Plaintiff
     Dexon Computer, Inc.