UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., et al.,<br><br>        Plaintiffs,<br><br>       v.<br><br>DEXON COMPUTER, INC., et al.,<br><br>        Defendants. | Case No. 20-cv-04926-CRB (RMI)<br><br>**ORDER RE: SECOND DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 321 |

Now pending before the court is a discovery dispute concerning the responses to a number of Requests For Admission ("RFA") that were propounded by Plaintiff Cisco Systems, Inc. ("Cisco") to Defendant Dexon Computer, Inc. (Dexon). *See* Ltr. Br. (dkt. 321) at 1-5. Upon review of the Parties' filing, pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument.

In this case, Cisco has alleged that "[f]rom at least July 2003 through the present, Dexon has repeatedly and systematically engaged in schemes to traffic counterfeit Cisco products . . . [where] Dexon falsely represented to the public that various Cisco-branded products it was selling are genuine, when in fact they are not." *See* First Amend. Compl. (dkt. 32) at 8, 25-30 (bringing claims for trademark infringement, use of a counterfeit mark, unfair competition, unfair business practices, and unjust enrichment). In the course of discovery, Cisco propounded a number of RFAs that were phrased either as, (1) "Admit that you sold a Cisco-branded [stating a specific model number] switch, with serial number [stating a specific serial number], to [stating a specific customer name]"; or, that were phrased as, (2) "Admit that you attempted to obtain technical assistance from Cisco for a Cisco-Branded [stating a specific model number] switch, with serial

number [stating a specific serial number]." *See generally* Ltr. Br., Exh-1 (dkt. 321-1) at 5-116. Dexon's response to all of these RFAs appears to be nearly identical, and Dexon has merely responded to the effect that: "[i]n addition to all its General and Specific Objections incorporated herein by reference, Dexon responds that it lacks sufficient knowledge or information, and that Dexon has made a reasonable inquiry such that the information it knows or can readily obtain is insufficient to enable it to admit or deny the Request, and therefore, the Request is denied." *See id*.

Cisco contends that these blanket denials are unsupportable because they "contradict information from Dexon's own documents that were produced in discovery." *See* Ltr. Br. (Dkt. 321) at 1. Cisco then sets forth numerous incidents of such, but the court only finds it necessary to set forth two exemplars. In RFA No. 85, Cisco asked Dexon to admit that it had sold "a Cisco-branded WS-C2960X-48FPD-L switch, with serial number FOC2204T5WU, to Murray State University." *See* Ltr. Br., Exh-1 (dkt. 321-1) at 9. Dexon responded with its boilerplate response quoted above. *See id*. However, a sales sheet produced by Dexon in discovery, bearing the Bates Number DEXON_0592545, shows a sale of a Cisco-branded WS-C2960X-48FPD-L switch, with serial number FOC2204T5WU, to Murray State University. *See* Ltr. Br. (dkt. 321) at 2, n.1. The same is true for the responses as to the eight products described in RFA Nos. 86, 87, 88, 89, 90, 92, 93, and 94 (asking Dexon to admit selling certain Cisco-branded equipment to MedRisk, Inc.) *See* Ltr. Br., Exh-1 (dkt. 321-1) at 9-11. However, an internal email produced in discovery by Dexon, bearing the Bates Number DEXON_0111343, appears to show that Dexon sold those products, with those serial numbers, to MedRisk, Inc, which it had procured from Server Tech. *See* LTr. Br. (dkt. 321) at 2, n.2. Cisco has produced numerous other indicia of the untenability of Dexon's boilerplate responses. *See id*. at 2-3. At bottom, Cisco requests either an order deeming all of its RFAs admitted, or an order directing Dexon to amend its responses to conform with Rule 36, by first reviewing information from persons and documents within its control. *Id*. at 3.

Dexon's arguments in response are wholly unpersuasive. Dexon submits that the RFAs called for it to "speculate," because of the fact that the Cisco-branded products at issue are not currently in its possession, and also because they were often shipped directly to the end-user or customer from a third-party warehouse, and others that were in its possession, were wrapped and

2

1  packaged – thus, Dexon contends that it cannot be *absolutely* certain that each (or any of them)
2  *actually* bore the serial numbers set forth in each RFA. *See id*. at 3-4. The court finds that this
3  suggestion is too clever by half in that it takes so myopic of a view of the concept of knowledge as
4  to render it impossible for Dexon to have any knowledge about anything at issue in this case.
5  Accordingly, to the extent that Dexon objects by contending that the RFAs call for speculation in
6  this regard, that objection is **OVERRULED**. Dexon also suggests – without any serious effort at
7  persuasion – that Cisco's RFAs concerning technical assistance use "vague and undefined terms"
8  when asking Dexon to admit or deny whether it attempted to seek technical assistance from Cisco
9  regarding certain products with certain serial numbers. *See id*. at 3. The court finds that these are
10 not vague terms, and that their commonly understood meaning requires no further elaboration. For
11 example, in RFA No. 150, Cisco asked Dexon to admit whether it "attempted to obtain technical
12 assistance from Cisco for a Cisco-branded WS-C2960X-48TS-L switch, with serial number
13 FCW1902B0MF." *See* Ltr. Br., Exh. 1 (dkt. 321-1) at 26. Dexon responded in boilerplate fashion
14 to the effect that "[i]n addition to all its General and Specific Objections incorporated herein by
15 reference, Dexon objects to this Request to the extent that it is unclear, vague, overbroad and
16 ambiguous as to what Plaintiffs mean by the undefined phrase 'attempted to obtain technical
17 assistance.' Dexon further responds that it lacks sufficient knowledge or information, and that
18 Dexon has made a reasonable inquiry such that the information it knows or can readily obtain is
19 insufficient to enable it to admit or deny the Request, and therefore, the Request is denied." *Id*.
20 Dexon's objections about vagueness and overbreadth, as well as its contention that it lacks
21 knowledge to admit or deny the RFA, is undermined by two documents it produced in discovery
22 (bates numbers DEXON_0693195, and DEXON_0694562). *See* Ltr. Br. (dkt. 321) at 2. As noted
23 by Cisco, "[t]he referenced document, ending 3195, is a 264 page email between Dexon and
24 Cisco's TAC that has data readouts from various switches for which Dexon was seeking
25 assistance, among these a WS-C2960X-48TS-L switch, SN FCW1902B0MF[;] [and] [t]he
26 referenced document, ending 4562, is an email between Dexon and an engineer at Cisco's TAC,
27 regarding SR ("Service Request") number 685917809, for a technical issue with a WS-C2960X-
28 48TS-L switch, SN FCW1902B0MF." *See id*. at 2, n.7. For this reason, it clearly appears that

3

1   Dexon is being disingenuous when it suggests that it lack sufficient knowledge to properly
2   respond to the RFA. Furthermore, the objection to the effect that the RFAs relating to the attempts
3   to seek technical assistance from Cisco have used "vague and undefined terms" is **OVERRULED**
4   as wholly meritless and unsupported by any argument or explanation.

5   Lastly, Dexon resists Cisco's effort to compel it to render proper responses to the RFAs by
6   repeatedly couching its own documents (on which Cisco relies to undermine Dexon's boilerplate
7   assertions that it lacks a basis of absolutely-certain knowledge with which to admit or deny the
8   RFAs) by stating that the documents "included hearsay within hearsay." *Id*. at 4.; *see also id*. "Nor
9   do those documents (which are not actually referenced in the RFAs) establish [*with absolute*
10  *certainty*] that any particular physical products actually bore a specific serial number."; *see also id*.
11  "Cisco is relying on hearsay within hearsay in support of its requests, and seeks admissions
12  regarding information that is not, or has never been, within Dexon's control." The essence of
13  Dexon's argument in avoiding these RFAs is manifest in its contention to the effect that "Cisco's
14  assertions proceed from the false assumption that because a Dexon-produced document references
15  products, including purported "PID"s and serial numbers, that such products were actually sold to
16  an entity and bore that serial number. The fact that a portion of the records "reference" something
17  in a purported document does not make it so and does not relieve Cisco of its burden of proof (and
18  Cisco makes no reasonable argument concerning products having no identifying documentation) .
19  . . Cisco's RFAs improperly call for Dexon to engage in unbridled speculation." *See id*. at 4. As
20  stated above, this argument is too clever by half, and if accepted by the court, it would allow
21  Dexon to avoid all RFAs and never admit anything. At bottom, Dexon is essentially stating that its
22  own paper records are incapable of giving it the absolute knowledge on which basis an RFA may
23  be admitted because, after all, who knows what serial number is *actually* affixed to any of the
24  Cisco-branded product that were either shipped from a third-party location or that were under
25  wraps and inside packaging when Dexon possessed them? This is not a serious argument. Nor is it
26  serious to cry "hearsay" when faced with your own documents that undermine your argument as to
27  why you lack a truthful basis to contend that you lack knowledge to answer an RFA.

28  For these reasons, **all** of Dexon's objections are **OVERRULED** and Dexon is **ORDERED**

to amend its RFA responses forthwith to conform with Rule 36 and with the holdings expressed herein. Furthermore, counsel for Dexon are admonished to avoid this sort of gamesmanship in the future as the court finds that its positions in this dispute were so without merit as to have constituted a waste of judicial time and resources.

**IT IS SO ORDERED.**

Dated: December 12, 2023

_____
ROBERT M. ILLMAN
United States Magistrate Judge

5